# EXHIBIT  A

Mark A. Linder, CA Bar No. 268796
Case A. Dam, CA Bar No. 589054
**THE LANIER LAW FIRM**
6810 FM 1960 West
Houston, TX 77069
Telephone 713-659-5200
Facsimile 713-659-2204

Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

**TERRY LEE SIEGFRIED and TERRI SIEGFRIED,**

                              Plaintiffs,

vs.

**3M COMPANY** (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY);
**AIR & LIQUID SYSTEMS CORPORATION** (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);
**ABB, INC.** (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY);
**ALFA LAVAL INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION);
**ATWOOD & MORRILL CO., INC.** d/b/a WEIR VALVES & CONTROLS USA INC.;
**AURORA PUMP COMPANY;**
**A.O. SMITH CORP.;**
**BACOU-DALLOZ USA, INC.,** (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a

Case No.

BC 6 9 1 9 0 0

THIS ACTION CONSTITUTES COMPLEX ASBESTOS LITIGATION

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS (NEGLIGENCE; STRICT LIABILITY, FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B; INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN; RESPIRATOR DEFENDANT'S NEGLIGENCE; RESPIRATOR DEFENDANTS' STRICT LIABILITY; LOSS OF CONSORTIUM)**

| | |
|---|---|
| 1 | WILLSON SAFETY PRODUCTS); **CARRIER CORPORATION**; |
| 2 | **CARVER PUMP COMPANY**; |
| 3 | **CBS CORPORATION** (a Delaware Corporation) f/k/a VIACOM, INC. (as |
| 4 | successor-by-merger to CBS CORPORATION) (a Pennsylvania |
| 5 | Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also |
| 6 | as successor-in-interest to BF |
| 7 | STURTEVANT; **CLA-VAL CO.**; |
| 8 | **CLEAVER-BROOKS, INC.** (sued |
| 9 | individually and as successor-in-interest to DAVIS ENGINEERING |
| 10 | COMPANY formerly known as AQUA-CHEM, INC. doing business as |
| 11 | CLEAVER-BROOKS DIVISION); |
| 12 | **COOPER WIRING DEVICES**, a division of COOPER INDUSTRIES |
| 13 | (individually and as successor-in-interest to ARROW-HART & |
| 14 | HEGEMAN, INC.); |
| 15 | **COPES-VULCAN, INC.**; **CRANE CO.** (sued individually and |
| 16 | successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE |
| 17 | COMPANY and JENKINS VALVES); |
| 18 | **CRANE ENVIRONMENTAL, INC.** (sued individually and successor-in- |
| 19 | interest to COCHRANE CORPORATION); |
| 20 | **EATON CORPORATION** (sued |
| 21 | individually and as successor-in-interest to CUTLER-HAMMER INC.); |
| 22 | **EATON ELECTRICAL, INC.** (sued |
| 23 | individually and as successor-in-interest to CUTLER-HAMMER INC.); |
| 24 | **ELLIOT TURBOMACHINERY COMPANY** a/k/a ELLIOTT |
| 25 | COMPANY; **EMERSON ELECTRIC CO.** |
| 26 | (individually and as successor-in-interest to KEYSTONE VALVES AND |
| 27 | CONTROLS, INC.); |
| 28 | **FISHER CONTROLS** |

1  **INTERNATIONAL LLC** f/k/a
FISHER GOVERNOR COMPANY;

2  **FMC CORPORATION** (sued
individually and as successor-in-interest

3  to NORTHERN PUMP COMPANY

4  and PEERLESS PUMP COMPANY);
**FOSTER WHEELER ENERGY**

5  **CORPORATION;**

6  **FRASER BOILER SERVICE, INC.;**
**GARDNER-DENVER, INC.;**

7  **GENERAL DYNAMICS**
**CORPORATION** (successor-in-

8  interest to BATH IRON WORKS LTD.

9  f/k/a THE HYDE WINDLASS
COMPANY);

10  **GENERAL ELECTRIC COMPANY**
(individually and as successor-in-

11  interest to MASONEILAN, and

12  MANNING, MAXWELL & MOORE,
INC.);

13  **GIBBS & COX, INC.;**
**THE GORMAN-RUPP COMPANY**

14  (individually and as successor-in-

15  interest to PATTERSON PUMP
COMPANY, and C.H. WHEELER);

16  **GOULDS ELECTRONICS** (as
successor-in-interest to ITE CIRCUIT

17  BREAKER CO.);

18  **GOULDS PUMPS, INC.;**
**HARDIE-TYNES CO., INC.** (sued

19  individually and as successor-in-interest
to HARDIE-TYNES

20  MANUFACTURING CO. and

21  HARDIE-TYNES
MANUFACTURING COMPANY);

22  **HARDIE-TYNES FOUNDRY &**
**MACHINE CO.** (sued individually and

23  as successor-in-interest to HARDIE-
TYNES MANUFACTURING CO. and

24  HARDIE-TYNES

25  MANUFACTURING COMPANY);
**HARDIE-TYNES, LLC** (sued

26  individually and as successor-in-interest

27  to HARDIE-TYNES
MANUFACTURING CO. and

28  HARDIE-TYNES

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | MANUFACTURING COMPANY); |
| 2 | **HERCULES MANUFACTURING COMPANY, INC;** |
| 3 | **HOWDEN NORTH AMERICA, INC.** f/k/a HOWDEN BUFFALO, INC. |
| 4 | (individually and as successor-in-interest to BUFFALO FORGE |
| 5 | COMPANY); |
| 6 | **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest |
| 7 | to DELAVAL TURBINE, INC.); |
| 8 | **INGERSOLL-RAND COMPANY** (individually and as successor-in-interest to TERRY STEAM |
| 9 | TURBINE); |
| 10 | **ITT INDUSTRIES, INC.** (sued individually and as successor-in-interest |
| 11 | to BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN |
| 12 | SPECIALTY); |
| 13 | **KERR MACHINERY CO.** n/k/a KERR PUMP & SUPPLY INC.; |
| 14 | **LAWLER MANUFACTURING COMPANY, INC.** f/k/a LAWLER |
| 15 | AUTOMATIC CONTROLS, INC.; |
| 16 | **THE MARLEY-WYLAIN COMPANY;** |
| 17 | **MUELLER STEAM SPECIALITY COMPANY** n/k/a WATTS WATER |
| 18 | TECHNOLOGIES, INC.; |
| 19 | **THE NASH ENGINEERING COMPANY;** |
| 20 | **OWENS-ILLINOIS, INC.;** |
| 21 | **PPG INDUSTRIES, INC.** (individually and as successor-in- |
| 22 | interest to AKZO NOBEL INC., and DEVOE COATINGS); |
| 23 | **QUIMBY EQUIPMENT COMPANY;** |
| 24 | **ROBERTSHAW CONTROLS COMPANY** (individually and as |
| 25 | successor-in-interest to FULTON |
| 26 | SYLPHON COMPANY); |
| 27 | **ROCKWELL AUTOMATION INC.** (individually and as successor by |
| 28 | merger to ALLEN-BRADLEY |

| | |
|---|---|
| 1 | COMPANY LLC and ROSTONE CORPORATION); |
| 2 | **ROSS OPERATING VALVE** |
| 3 | **COMPANY** d/b/a ROSS CONTROLS; **RSCC WIRE & CABLE, LLC.**; |
| 4 | **SCHNEIDER ELECTRIC, USA, INC.**, f/k/a SQUARE D COMPANY; |
| 5 | **SIEMENS CORPORATION** |
| 6 | (individually and as successor-in-interest to ITE CIRCUIT BREAKER |
| 7 | CO.); |
| 8 | **SIEMENS ENERGY INC.** (individually and as successor by |
| 9 | merger to DRESSER-RAND GROUP, INC.); |
| 10 | **SPIRAX SARCO, INC.**; |
| 11 | **SPX CORPORATION** (sued individually and as successor-in-interest |
| 12 | to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a |
| 13 | division of WYLAIN, INC., and WEIL-McCLAIN); |
| 14 | **STERLING FLUID SYSTEMS,** |
| 15 | **(USA) LLC** f/k/a PEERLESS PUMP COMPANY; |
| 16 | **SULZER PUMPS HOUSTON, INC.** |
| 17 | (sued individually and as successor-in-interest to PACO PUMPS f/k/a |
| 18 | PACIFIC PUMPING COMPANY); **SUPERIOR-LIDGERWOOD-** |
| 19 | **MUNDY** (individually and as successor-in-interest to M.T. Davidson |
| 20 | Co.); |
| 21 | **VELAN VALVE CORP.**; |
| 22 | **VIAD CORP** f/k/a THE DIAL CORPORATION (sued individually and |
| 23 | as successor-in-interest to GRISCOM-RUSSELL COMPANY); |
| 24 | **VIKING PUMP, INC.**, a Unit of IDEX Corporation; |
| 25 | **WARREN PUMPS, LLC** (individually and as successor-in-interest to |
| 26 | QUIMBY PUMP COMPANY); |
| 27 | **WEIL-McCLAIN**; |
| 28 | **WEIL-McCLAIN**, a division of THE MARLEY COMPANY (sued |

1  individually and as successor-in-interest
   to WYLAIN CO.);
2  **WILO USA LLC** (individually and as
   successor-in-interest to WEIL PUMP
3  COMPANY, INC.);
4  **WEIR VALVES & CONTROLS USA
   INC.** f/k/a ATWOOD & MORRILL;
5  **THE WILLIAM POWELL
   COMPANY;**
6  and DOES 1-450, inclusive,
7
   Defendants.
8

## GENERAL ALLEGATIONS

COME NOW, Plaintiffs **TERRY LEE SIEGFRIED and TERRI SIEGFRIED** (hereinafter "Plaintiffs") and complain and allege as follows:

1.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.    At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants 3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR

1   COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a
2   WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH
3   CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M.
4   SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS); CARRIER CORPORATION;
5   CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a
6   VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania
7   Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-
8   interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually
9   and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as
10  AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING
11  DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to
12  ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued
13  individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE
14  COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually
15  and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued
16  individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON
17  ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER
18  INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON
19  ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND
20  CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER
21  GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-
22  interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER
23  WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-
24  DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH
25  IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC
26  COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,
27  MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY
28  (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.

1 WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER
2 CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as
3 successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES
4 MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued
5 individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
6 HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued
7 individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
8 HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING
9 COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.
10 (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO
11 INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,
12 INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY
13 STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to
14 BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR
15 MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING
16 COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-
17 WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS
18 WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-
19 ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO
20 NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;
21 ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to
22 FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as
23 successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE
24 CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
25 RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D
26 COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE
27 CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by
28 merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

1  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,
2  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID
3  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,
4  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC
5  PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as
6  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE
7  DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-
8  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN
9  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
10 WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued
11 individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and
12 as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS
13 USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES
14 1-450 ("Defendants"), inclusive, were individuals, corporations, partnerships and/or
15 unincorporated associations organized and existing under and by virtue of the laws of the State
16 of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,
17 and each of them, were and are authorized to do and are doing business in the State of
18 California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and
19 each of them, were and are authorized to do and are doing business in the State of California,
20 and that said Defendants have regularly conducted business in the County of Los Angeles, State
21 of California.

22      3.      Plaintiffs allege that Plaintiff TERRY LEE SIEGFRIED was exposed to asbestos,
23 asbestos-containing products and/or products designed to be used in association with asbestos
24 products during his tenure as an electrician at Long Beach Naval Shipyard from approximately
25 1969 through 1996.

26      4.      Plaintiffs allege herein that Plaintiff TERRY LEE SIEGFRIED developed
27 malignant mesothelioma as a result of Defendants AIR & LIQUID SYSTEMS
28 CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);

ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH CORP.; CARRIER CORPORATION; CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING, MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

(individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.
WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER
CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as
successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES
MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued
individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued
individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING
COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.
(individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO
INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,
INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY
STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to
BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR
MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING
COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-
WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS
WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-
ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO
NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;
ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to
FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as
successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE
CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D
COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE
CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by

1  merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

2  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,

3  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID

4  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,

5  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC

6  PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as

7  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE

8  DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-

9  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN

10  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);

11  WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued

12  individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and

13  as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS

14  USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES

15  1-450's ("Product Defendants") negligence and Plaintiff TERRY LEE SIEGFRIED'S exposure

16  to asbestos from products sold, shipped, supplied, distributed, installed, removed, or replaced by

17  Product Defendants. These products were defective and inherently dangerous asbestos-

18  containing products and/or products defectively designed to be used in association with asbestos

19  products

20      5.    Plaintiffs additionally allege that Plaintiff TERRY LEE SIEGFRIED developed

21  malignant mesothelioma as a result of Defendants, 3M COMPANY (f/k/a MINNESOTA

22  MINING & MANUFACTURING COMPANY); BACOU-DALLOZ USA, INC., (sued as

23  successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY

24  PRODUCTS); and DOES 351-450's ("RESPIRATOR DEFENDANTS") negligence,

25  defectively designed and manufactured safety masks, intentional misrepresentation,

26  concealment, and negligent misrepresentations to Plaintiff TERRY LEE SIEGFRIED and his

27  employers regarding their safety masks.

28  ///

## FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFFS COMPLAIN OF PRODUCT DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

6.    Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

7.    At all times herein mentioned, each of the named Product Defendants and DOES 1-450 was the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and/or products designed to cut, saw or otherwise manipulate and products containing asbestos, including but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Product Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products and/or products designed to cut, saw or otherwise manipulate, products containing asbestos. The following Product Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity," Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Product Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Product Defendant enjoys the

goodwill originally attached to each such "alternate entity."

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| CARRIER CORPORATION | UNITED TECHNOLOGIES CORPORATION<br>BRYANT HEATING AND AIR CONDITIONING, INC. |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br>DAVIS ENGINEERING |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION<br>CHEMPUMP |
| CRANE ENVIRONMENTAL, INC. | COCHRANE CORPORATION |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |
| FMC CORPORATION | PEERLESS PUMP COMPANY<br>McNALLY INDUSTRIES-NORTHERN PUMP<br>FMC AGRICULTURAL PRODUCTS<br>FMC BIOPOLYMER<br>FMC LITHIUM<br>FMC ALKALI CHEMICALS<br>FMC FORET<br>NORTHERN PUMP COMPANY |

| | | |
|---|---|---|
| 1 | FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| 2 | | FOSTER WHEELER CONTRACTORS, INC. |
| 3 | | FOSTER WHEELER CORPORATION |
| 4 | | FOSTER WHEELER DEVELOPMENT CORP. |
| 5 | | FOSTER WHEELER ENERGY RESOURCES INC. |
| 6 | | FOSTER WHEELER ENERGY SERVICES, INC. |
| 7 | | FOSTER WHEELER ENVIRESPONSE, INC. |
| 8 | | FOSTER WHEELER ENVIRONMENTAL CORPORATION |
| 9 | | FOSTER WHEELER POWER GROUP, INC. |
| 10 | | FOSTER WHEELER POWER SYSTEMS, INC. |
| 11 | | FOSTER WHEELER PYROPOWER, INC. |
| 12 | | FOSTER WHEELER REALTY SERVICES, INC. |
| | | FOSTER WHEELER USA CORPORATION |
| 13 | GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION |
| 14 | | GARDNER COMPANY |
| 15 | | GARDNER DENVER INDUSTRIAL MACHINERY |
| 16 | | COOPER INDUSTRIES, INC. |
| 17 | | SYLTONE PLC |
| 18 | | TAMROTOR |
| 19 | | GEOQUIP |
| 20 | | CHAMPION PNEUMATIC MACHINERY |
| 21 | | WITTIG |
| 22 | | ALLEN-STUART EQUIPMENT COMPANY |
| | | AIR RELIEF |
| | | BUTTERWORTH JETTING SYSTEMS |
| | | INVINCIBLE AIRFLOW SYSTEMS |
| | | HAMWORTHY BELISS & MORCOM |
| | | HOFFMAN AIR AND FILTRATION SYSTEMS |
| | | JOY MANUFACTURING COMPANY |
| 23 | GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| 24 | | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| 25 | | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| 26 | | GENERAL ELECTRIC TRADING COMPANY |
| 27 | THE GORMAN-RUPP COMPANY | C.H. WHEELER |
| | | GRISCOM-RUSSELL |
| 28 | | |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | | |
|---|---|---|
| 1 | GOULDS PUMPS (NY), INC | GOULDS PUMPS (TX), LP |
| 2 | HARDIE-TYNES, LLC | HARDIE-TYNES MANUFACTURING CO. |
| 3 | HOWDEN NORTH AMERICA, INC. | HOWDEN BUFFALO, INC. |
| | | HOWDEN FAN |
| 4 | | HOWDEN FAN COMPANY |
| | | THE HOWDEN FAN COMPANY |
| 5 | | NOVENCO FANS, INC. |
| | | AMERICAN DAVIDSON INC. |
| 6 | | HOWDEN SIROCCO INC. |
| | | HOWDEN BUBBALO FANS |
| 7 | | HOWDEN BUFFALO FORGE CO. |
| | | HOWDEN |
| 8 | | |
| | IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC. |
| 9 | | WARREN PUMPS, INC. |
| | | COLFAX CORPORATION |
| 10 | | IMO PUMP |
| | | IMO AB |
| 11 | | COLFAX PUMP GROUP |
| | | ALLWEILER |
| 12 | | HOUTTUIN |
| | | C.H. WHEELER |
| 13 | | |
| | INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG |
| 14 | | DRESSER-RAND |
| | | POWERWORKS |
| 15 | | THERMOKING |
| | | TERRY STEAM TURBINE COMPANY |
| 16 | | WHITON MACHINE CO. |
| 17 | ITT INDUSTRIES, INC. | ITT SERVICE INDUSTRIES CORPORATION |
| 18 | | RULE INDUSTRIES, INC. |
| | | GOULDS PUMPS, INCORPORATED |
| 19 | | GOULDS PUMPS (IPG), INC. |
| | | A-C PUMP |
| 20 | | AQUIOUS ADVANCED LIQUID SEPARATIONS |
| 21 | | BELL & GOSSETT |
| | | DOMESTIC PUMP |
| 22 | | ENGINEERED PROCESS SOLUTIONS GROUP |
| 23 | | FLOWTRONEX PSI INC. |
| | | ITT FLYGT |
| 24 | | HOFFMAN SPECIALTY |
| | | LOWARA |
| 25 | | MARLOW PUMPS |
| | | McDONNELL & MILLER |
| 26 | | ITT RICHTER CHEMIE-TECHNIK GmbH |
| | | SANITAIRE |
| 27 | | ITT STANDARD |
| | | VOGEL PUMPS |
| 28 | | WEDECO INDUSTRIES, INC. |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| | BRANOM INSTRUMENT COMPANY |
| | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| | BRANOM INSTRUMENT COMPANY |
| OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| | FENCO |
| | MARINE ENGINEERING |
| | FESCO |
| | FIBERGLAS ENGINEERING AND SUPPLY COMPANY |
| | WILLIAM LANE COMPANY |
| | SILICARE INSULATION |
| | ASBESTOS ENGINEERING & SUPPLY CO. |
| | OWENS-BROCKWAY GLASS CONTAINERS |
| | BROCKWAY GLASS CO., INC. |
| | OWENS-ILLINOIS GLASS COMPANY |
| SPX CORPORATION | THE VULCAN SOOT BLOWER COMPANY COPES-VULCAN |
| | WEIL-MCLAIN COMPANY |
| | THE MARLEY WYLAIN COMPANY |
| STERLING FLUID SYSTEMS (USA) LLC | STERLING FLUID SYSTEMS (AMERICAS) INC. |
| | STERLING FLUID SYSTEMS (CANADA) LTD. |
| | STERLING FLUID SYSTEMS (COLOMBIA) LTD. |
| | PEERLESS PUMP COMPANY |
| | LaBOUR PUMP COMPANY |
| | STERLING PEERLESS PUMPS |
| VIAD CORPORATION | THE DIAL CORPORATION |
| | GRISCOM-RUSSELL COMPANY |
| VIKING PUMP, INC. | IDEX CORPORATION |
| | ROTO KING PUMP, INC. |
| | HOUDAILLE VIKING PUMP, INC. |
| WARREN PUMPS, LLC | WARREN PUMPS INC. |
| | WARREN PUMPS-HOUDAILLE, INC. |
| | COLFAX PUMP GROUP |
| | ALWEILER AG |
| | HOUTTUIN BV |

17

|   |   |
|---|---|
|   | IMO PUMP<br>ZENITH PUMPS<br>QUIMBY PUMP CO. |
| WEIR VALVE & CONTROLS USA INC. | ATWOOD & MORRILL CO.,INC.<br>THE WEIR GROUP PLC<br>WEIR MINERALS<br>WEIR CLEAR LIQUID<br>WEIR VALVES & CONTROLS<br>WEIR SERVICES<br>WEIR TECHNA<br>A & M VALVE<br>HOPHOLD A & M, INC. |
| THE WILLIAM POWELL COMPANY | POWELL VALVES |

8.    At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos (hereinafter Defendants' Products).

9.    At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph three 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff TERRY LEE SIEGFRIED herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to Product Defendants, their "alternate entities," and each of them,

1  thereby rendering said products unsafe and dangerous for use by "exposed person." Plaintiffs
2  herein allege that TERRY LEE SIEGFRIED was exposed to asbestos that was caused to be
3  released as a result of exposure to Defendants' Products, including but not limited to those
4  products identified in paragraph 3 above (hereinafter referred to as "Defendants' products" or
5  "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor
6  in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff
7  TERRY LEE SIEGFRIED's injuries.

8       10.   Product Defendants, their "alternate entities," and each of them, had a duty to
9  exercise reasonable care while engaging in the activities mentioned above, and each Product
10  Defendants breached said duty of reasonable care in that Product Defendants, and each of them,
11  failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to
12  test said products; failed to investigate the hazards of said products; failed to warn "exposed
13  person," including Plaintiff TERRY LEE SIEGFRIED of the health hazards of using
14  Defendants' products; failed to warn of the harmful exposures caused by use of said products to
15  cut, saw or otherwise manipulate asbestos containing products; failed to disclose the known or
16  knowable dangers of using Defendants' products; failed to obtain suitable alternative materials
17  to asbestos when such alternatives were available; and as otherwise stated herein.

18       11.   The Defendants' products were and are hazardous to the health and safety of
19  Plaintiff, and others in Plaintiff's position working with and in close proximity to such products,
20  and since on or before 1930, the hazards and dangerous propensities of the Defendants' products
21  were both known and knowable to the Product Defendants, their "alternate entities," and each of
22  them, through the use of medical and/or scientific data and other knowledge available to
23  Defendants, their "alternate entities," and each of them at the time of Product Defendants'
24  manufacture, distribution, sale, research, study, fabrication, design, modification, labeling,
25  assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting
26  for installation, repair, marketing, warranting, re-branding, re-manufacturing for others,
27  packaging and advertising, of those products, which clearly indicated the hazards and dangerous
28  propensities of asbestos presented a substantial danger to users, including Plaintiff, TERRY

1   LEE SIEGFRIED of Defendants' Products through the intended and reasonably foreseeable use
2   of those products.

3       12.     Product Defendants, their "alternate entities," and each of them, knew, or
4   reasonably should have known, that Defendants' Products were dangerous and were likely to be
5   dangerous when used in their intended and reasonably foreseeable manner.

6       13.     Product Defendants, their "alternate entities," and each of them, knew, or
7   reasonably should have known, that Defendants' Products would be installed, repaired,
8   maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept,
9   broken, "ripped out," and/or used to cut, saw or otherwise manipulate products containing
10  asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the
11  release of airborne hazardous and dangerous asbestos fibers, and that through such activity,
12  "exposed person," including Plaintiff TERRY LEE SIEGFRIED herein, would be exposed to
13  said hazardous and dangerous asbestos fibers. Product Defendants, their "alternate entities," and
14  each of them, knew or reasonably should have known that users, such as Plaintiff TERRY LEE
15  SIEGFRIED and others in his position, working with and in close proximity to Defendants'
16  Products would not realize or know the danger. Product Defendants, their "alternate entities,"
17  and each of them negligently failed to adequately warn or instruct of the dangers of the products.
18  A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the
19  same or similar circumstances, would have warned of the dangers to avoid exposing others to a
20  foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities," and each
21  of them to warn was a substantial factor in causing harm to Plaintiff TERRY LEE SIEGFRIED.

22      14.     Plaintiff TERRY LEE SIEGFRIED used, handled, or was otherwise exposed to
23  asbestos from Defendants' Products referred to herein in a manner that was reasonably
24  foreseeable to Product Defendants and each of them. Plaintiff's exposure to Defendants'
25  Products occurred at various locations set forth in **Exhibit "A"** which is attached hereto and
26  incorporated by reference herein.

27      15.     As a direct and proximate result of the conduct of the Product Defendants, their
28  "alternate entities," and each of them, as aforesaid, Plaintiff TERRY LEE SIEGFRIED's

1   exposure to asbestos from use of Defendants' Products caused severe and permanent injury to
2   the Plaintiff. Plaintiffs are informed and believe, and thereon allege, that progressive lung
3   disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without
4   perceptible trauma and that said disease results from exposure to Defendants' Products over a
5   period of time.

6       16.     Plaintiff TERRY LEE SIEGFRIED was informed of his malignant mesothelioma
7   diagnoses on or about October 2017. His malignant mesothelioma was caused by exposure to
8   asbestos from Defendants' Products and/or from the use of Defendants' Products while serving
9   as an electrician at Long Beach Naval Shipyard; both from his on "hands-on" work as an
10  electrician and from working in close proximity to other workers who cut, sawed or otherwise
11  manipulated products containing asbestos. Plaintiff TERRY LEE SIEGFRIED was not aware at
12  the time of exposure that Defendants' Products presented any risk of injury and/or disease.

13      17.     As a direct and proximate result of the aforesaid conduct of Product Defendants,
14  their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has suffered and
15  will continue to suffer permanent injuries and future injuries to his person, body and health,
16  including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,
17  somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and
18  emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his
19  general damage in a sum in excess of the jurisdictional limit of a limited civil case.

20      18.     As a direct and proximate result of the aforesaid conduct of the Product
21  Defendants, their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has
22  incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons,
23  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
24  amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

25      19.     As a further direct and proximate result of the said conduct of the Product
26  Defendants, their "alternate entities," and each of them, Plaintiff has incurred, and will incur,
27  loss of income, wages, profits and commissions, a diminishment of earning potential, and other
28  pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject

1  to proof at trial.

2      20.    Plaintiffs further allege that Product Defendants, their "alternate entities," and

3  each of them, also engaged in the following wrongful acts:

4              (a)    Product Defendants, their "alternate entities," and each of them, suppressed

5      from all consumers, including Plaintiff TERRY LEE SIEGFRIED medical and scientific

6      information concerning the health hazards associated with inhalation of asbestos,

7      including the substantial risk of injury or death therefrom. Although Defendants, and

8      each of them, knew of the substantial risks associated with exposure to asbestos, they

9      willfully and knowingly concealed such information from the users of their asbestos

10     and/or asbestos-containing products in conscious disregard of the rights, safety and

11     welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

12             (b)    Product Defendants, their "alternate entities," and each of them, belonged

13     to, participated in, and financially supported industry organizations which, for and on

14     behalf of Defendants, their "alternate entities," and each of them, actively promoted the

15     suppression of information about the dangers of asbestos to users of the aforementioned

16     products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED as to the

17     safety of their products. Through their participation and association with such industry

18     organizations, Product Defendants and each of them knowingly and deliberately

19     concealed and suppressed the true information regarding asbestos and its dangers, and

20     propagated misinformation intended to instill in users of Defendants' Products a false

21     security about the safety of their products;

22             (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos

23     and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

24     Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

25     "alternate entities," and each of them, knew and possessed medical and scientific

26     information of the connection between the inhalation of asbestos fibers and asbestosis,

27     which information was disseminated through the Asbestos Textile Institute and other

28     industry organizations to all other Product Defendants, their "alternate entities," and each

of them, herein;

(d)     Product Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Product Defendants, their "alternate entities," and each of them, failed to provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing such material;

(f)     Product Defendants, their "alternate entities," and each of them, knew and failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Product Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Product Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading;

(h)     Product Defendants, their "alternate entities," and each of them, and their

officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Product Defendants, their "alternate entities," and each of them, are liable for the oppressive and malicious acts of their "alternate entities," and each of them, and each Product Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

21.    The herein-described conduct of said Product Defendants, their "alternate entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff TERRY LEE SIEGFRIED, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause asbestos to be released, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Product Defendants, their "alternate entities," and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiff, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

22.    Product Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff TERRY LEE SIEGFRIED.

23.    Product Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.    As a direct and proximate result of such intentional conduct by Product

1   Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

2   sustained the injuries and damages alleged herein.

3   WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

4   entities," and each of them, as hereinafter set forth.

5   **SECOND CAUSE OF ACTION**

6   (Strict Liability)

7   AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
    ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF PRODUCT

8   DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
    AND ALLEGE AS FOLLOWS:

9
    25.   Plaintiffs incorporate herein by reference, as though fully set forth therein, each

10  and every one of the general allegations and the allegations contained in the First Cause of

11  Action herein.

12
    26.   Product Defendants, their "alternate entities," and each of them, sold the

13  aforementioned Defendants' Products and failed to adequately warn or instruct of the known

14  and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products,

15  which dangers and risks would not have been, and were not, recognized by ordinary consumers

16  of the products, including Plaintiff, TERRY LEE SIEGFRIED, and the lack of sufficient

17  instructions and/or warnings was a substantial factor in causing harm to Plaintiff TERRY LEE

18  SIEGFRIED and others in Plaintiff's position working with and in close proximity to such

19  products.

20
    27.   Defendants' Products were defective and unsafe for their intended purpose and

21  foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled,

22  removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," cut,

23  sawed, installed, and/or used as intended, or used to cut, saw or manipulate products containing

24  asbestos or otherwise disturbed, said products would result in the release, and therefore

25  inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff

26  TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the

27  possession of the Product Defendants, their "alternate entities," and each of them. At the time

28

Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, the products were substantially the same as when they left the possession of the Product Defendants, their "alternate entities," and each of them and/or any changes made to the products after they left the possession of Defendants, their "alternate entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities," and each of them. Product Defendants' asbestos and asbestos products were used by Plaintiff TERRY LEE SIEGFRIED, and others in Plaintiff's position working with and in close proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of them. The defect in said products was a substantial factor in causing harm and personal injuries to Plaintiff TERRY LEE SIEGFRIED, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

28.     As a direct and proximate result of the actions and conduct outlined herein, Defendants' Products failed to perform as safely as an ordinary consumer would have expected in that Defendants' Products, and each of them, caused respirable asbestos fibers to be released from asbestos products during their ordinary and intended use, and such hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans. Plaintiffs further allege that "exposed person," including Plaintiff TERRY LEE SIEGFRIED, were unaware of the harmful effects of asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures occurred, and thus the failure of Defendants' Products to perform as safely as Plaintiff TERRY LEE SIEGFRIED had reason to expect was a substantial factor in causing his injuries.

29.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiff TERRY LEE SIEGFRIED has suffered the injuries and damages alleged herein.

30.     Plaintiffs further allege that Product Defendants, their "alternate entities," and each of them, also engaged in the following wrongful acts:

(a)     Product Defendants, their "alternate entities," and each of them, suppressed

from all consumers, including Plaintiff TERRY LEE SIEGFRIED, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

(b)     Product Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED and as to the safety of their products. Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff TERRY LEE SIEGFRIED at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific

1    information of the connection between the inhalation of asbestos fibers and asbestosis,

2    which information was disseminated through the Asbestos Textile Institute and other

3    industry organizations to all other Defendants, their "alternate entities," and each of them,

4    herein;

5          (d)    Product Defendants, their "alternate entities," and each of them, failed to

6    warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which

7    were dangerous when breathed and which could cause pathological effects without

8    noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of

9    them, possessed knowledge and were under a duty to disclose that said materials were

10    dangerous and a threat to the health of persons coming into contact therewith;

11         (e)    Product Defendants, their "alternate entities," and each of them, failed to

12    provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate

13    protective masks and other equipment devised to be used when applying, mixing, sawing,

14    cutting, installing and sanding the products of the Defendants, their "alternate entities,"

15    and each of them, despite knowing that such protective measures were necessary, and

16    that they were under a duty to disclose that such materials were dangerous and would

17    result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing

18    such material;

19         (f)    Product Defendants, their "alternate entities," and each of them, knew and

20    failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated,

21    upon inhalation of asbestos would, in time, have a substantial risk of developing

22    irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

23         (g)    Product Defendants, their "alternate entities," and each of them, failed to

24    provide information of the true nature of the hazards of asbestos materials and that

25    exposure to these material would cause pathological effects without noticeable trauma to

26    the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE

27    SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and

28    others who were exposed to asbestos, despite the fact that Product Defendants, their

"alternate entities," and each of them, were under a duty to so inform and said failure was misleading; and

       (h)    Product Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Product Defendants, their "alternate entities," and each of them, are liable for the oppressive and malicious acts of their "alternate entities," and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

      31.    The herein-described conduct of said Product Defendants, their "alternate entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff TERRY LEE SIEGFRIED, in that Product Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Product Defendants, their "alternate entities," and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiff, for the sake of example and by way of punishing said Product Defendants, seeks punitive damages according to proof.

      32.    Product Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff TERRY LEE SIEGFRIED.

      33.    Product Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel

1  and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung

2  cancer and mesothelioma, in conscious disregard of those persons' rights.

3      34.   As a direct and proximate result of such intentional conduct by Product

4  Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

5  sustained the injuries and damages alleged herein.

6      WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

7  entities," and each of them, as hereinafter set forth.

8                          **THIRD CAUSE OF ACTION**

9               (False Representation Under Restatement of Torts Section 402-B)

10      AS AND FOR A FURTHER, THIRD SEPARATE, AND DISTINCT CAUSE OF
    ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS
11  SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
    "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12

13      35.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each

14  and every paragraph of the general allegations and the allegations contained in the First and

15  Second Causes of Action herein.

16      36.   At the aforementioned time when Defendants, their "alternate entities," and each

17  of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

18  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered

19  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

20  marketed, warranted, re-branded, manufactured for others, packaged and advertised the said

21  asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their

22  "alternate entities," and each of them, expressly and impliedly represented to members of the

23  general public, including the purchasers and users of said product, and other "exposed persons,"

24  including, without limitation, Plaintiff TERRY LEE SIEGFRIED and his employers, that

25  asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for

26  which they were intended.

27      37.   The purchasers and users of said asbestos and asbestos-containing products, and

28  other "exposed persons," including, without limitation, Plaintiff TERRY LEE SIEGFRIED, and

1  his employers, relied upon said representations of Defendants, their "alternate entities," and each
2  of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

3       38.    Said representation by Defendants, their "alternate entities," and each of them,
4  were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos
5  and asbestos-containing products and equipment were not safe for their intended use, nor were
6  they of merchantable quality as represented by Defendants, their "alternate entities," and each of
7  them, in that asbestos and asbestos-containing products and equipment have very dangerous
8  properties and defects whereby said products cause asbestosis, other lung damages, and cancer,
9  and have other defects that cause injury and damage to the users of said products and other
10 "exposed persons" thereby threatening the health and life of said persons, including Plaintiff
11 TERRY LEE SIEGFRIED herein.

12      39.    As a direct and proximate result of said false representations by Defendants, their
13 "alternate entities," and each of them, Plaintiffs sustained the injuries and damages alleged
14 herein.

15      WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate
16 entities," and each of them, as hereinafter set forth.

17                        **FOURTH CAUSE OF ACTION**

18                   (Intentional Tort/Intentional Failure to Warn)

19      AS AND FOR A FURTHER, FOURTH SEPARATE, AND DISTINCT CAUSE OF
   ACTION FOR INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN, PLAINTIFFS
20 COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND
                    EACH OF THEM, AND ALLEGES AS FOLLOWS:

21

22      40.    Plaintiffs hereby incorporates by reference, as though fully set forth herein, each
23 and every paragraph of the general allegations and the allegations contained in the First through
24 Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

25      41.    At all times pertinent hereto, the Defendants their "alternate entities," and each of
26 them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code
27 of the State of California to abstain from injuring the person, property, or rights of the Plaintiffs.
28 When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities,"

1   and each of them, did do the acts and omissions in violation of that duty, thereby causing injury

2   to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts

3   falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of

4   the State of California and, more specifically, included suggestions of fact which were not true

5   and which Defendants, their "alternate entities," and each of them, did not believe to be true;

6   assertions of fact which were not true and which Defendants, their "alternate entities," and each

7   of them, had no reasonable ground for believing to be true, and the suppression of fact when a

8   duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty

9   gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the

10  aforementioned Civil Code sections.

11       42.   Since on or before 1930, the Defendants, their "'alternate entities," and each of

12  them, have known and have possessed the true facts of medical and scientific data and other

13  knowledge which clearly indicated that the asbestos and asbestos-containing products and

14  equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health

15  and safety of Plaintiffs, and others in Plaintiff TERRY LEE SIEGFRIED's position working in

16  close proximity with such materials. The Defendants, their "alternate entities," and each of them,

17  have known of the dangerous propensities of the aforementioned materials and products since

18  before that time. With intent to deceive Plaintiff TERRY LEE SIEGFRIED, and others in

19  Plaintiffs' position, and with intent that he and such others should be and remain ignorant of

20  such facts with intent to induce Plaintiffs and such others to alter his and their positions to his

21  and their injury and/or risk and in order to gain advantages, the following acts occurred:

22       (a)   Defendants, their "alternate entities," and each of them, did not label any of

23       the aforementioned asbestos-containing materials, products, and equipment regarding the

24       hazards of such materials and products to the health and safety of Plaintiffs and others in

25       Plaintiffs' position working in close proximity with such materials until 1964, when

26       certain of such materials were labeled by some, but not all, of Defendants, their "alternate

27       entities," and each of them, since on or before 1930. By not labeling such materials,

28       products, and equipment as to their said hazards, Defendants, their "alternate entities,"

and each of them, caused to be suggested as a fact to Plaintiffs that it was safe for Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Plaintiffs and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "alternate entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities," and each of them, sold the aforementioned products, materials, and equipment to Plaintiff TERRY LEE SIEGFRIED's employers and others without advising Plaintiff TERRY LEE SIEGFRIED, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities," and each of them, caused to be positively asserted to Plaintiff TERRY LEE SIEGFRIED that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials;

(d)     Defendants, their "alternate entities," and each of them, suppressed from Plaintiffs medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities," and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public

Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiffs and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)  Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported industry organizations which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED by the suggestions and deceptions set forth above in this cause of action;

(f)  Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the industry organizations to all other Defendants, their "alternate entities," and each of them, herein. Defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiffs. Such facts did mislead Plaintiffs and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff TERRY LEE SIEGFRIED the true facts concerning such knowledge of danger, which Defendants, their "alternate entities," and each of them, were bound to disclose;

(g)  Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were

dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "alternate entities," and each of them, failed to provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective masks and other equipment to be used when applying and installing the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing such material;

(i)     Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from Plaintiff TERRY LEE SIEGFRIED the true nature of the industrial exposure of Plaintiff TERRY LEE SIEGFRIED and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from Plaintiff TERRY LEE SIEGFRIED and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading;

(k)     Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiffs' injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff TERRY LEE SIEGFRIED was in the class of persons with respect to whom a duty was owed to file

1   such reports and who would have been protected thereby if the fact of danger from

2   products complained of had become known;

3        (l)      Defendants, their "alternate entities," and each of them, having such

4   aforementioned knowledge, and the duty to inform Plaintiff TERRY LEE SIEGFRIED

5   about the true facts, and knowing the Plaintiff TERRY LEE SIEGFRIED did not possess

6   such knowledge and would breathe such material innocently, acted falsely and

7   fraudulently and with full intent to cause Plaintiff TERRY LEE SIEGFRIED to remain

8   unaware of the true facts and to induce Plaintiff TERRY LEE SIEGFRIED to work in a

9   dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the <u>Civil</u>

10  <u>Code of the State of California</u>.

11       43.     As a direct and proximate result of such intentional conduct by Defendants, their

12  "alternate entities" and each of them, Plaintiffs sustained and continue to sustain the injuries and

13  damages alleged herein.

14       44.     The herein-described conduct of said Defendants, their "alternate entities," and

15  each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard

16  and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

17  example and by way of punishing said Defendants, seek punitive damages according to proof.

18       WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

19  entities," and each of them, as hereinafter set forth.

20                      **FIFTH CAUSE OF ACTION**

21                      (Respirator Defendant's Negligence)

22       AS AND FOR A FIFTH FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE
    OF ACTION, PLAINTIFFS COMPLAIN OF RESPIRATOR DEFENDANTS 3M COMPANY

23  f/k/a MINNESOTA MINING & MANUFACTURING COMPANY, BACOU-DALLOZ USA,
    INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a

24  WILLSON SAFETY PRODUCTS); and DOES 351-450, and THEIR "ALTERNATE
    ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25

26       45.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the

27  general allegations set forth above.

28       46.     Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

1  DEFENDANTS' safety masks while he and others in his immediate presence removed,

2  replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

3      47.  At all times herein mentioned, RESPIRATOR DEFENDANTS were the

4  successor, successor-in-business, successor-in-product line or a portion thereof, parent,

5  subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an

6  entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,

7  assembling, distributing, buying, offering for sale, supplying, selling, inspecting, marketing,

8  warranting, re-branding, manufacturing for others, packaging and advertising safety masks.

9

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 3M COMPANY | MINNESOTA MINING AND MANUFACTURING |
| BACOU-DALLOZ USA, INC | W.G.M. SAFETY PRODUCTS WILLSON SAFETY PRODUCTS |

14      48.  At all times herein mentioned, RESPIRATOR DEFENDANTS and their "alternate

15  entities" were engaged in the business of researching, manufacturing, fabricating, designing,

16  modifying, labeling, assembling, distributing, buying, offering for sale, supplying, selling,

17  inspecting, servicing, installing, renting, marketing, warranting, re-branding, manufacturing for

18  others, packaging, and advertising safety masks.

19      49.  RESPIRATOR DEFENDANTS knew, or reasonably should have known, that

20  safety masks were dangerous and were likely to be dangerous when used in their intended and

21  reasonably foreseeable manner.

22      50.  At all times herein mentioned, RESPIRATOR DEFENDANTS singularly and

23  jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed,

24  modified, tested or failed to test, warned or failed to warn of the health hazards, labeled,

25  assembled, distributed, bought, offered for sale, supplied, sold, inspected, serviced, installed,

26  repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised

27  safety masks to be used with asbestos, and were unreasonably dangerous because respirable

28  asbestos fibers could be and were inhaled while wearing RESPIRATOR DEFENDANTS' safety

1  masks resulting in personal injuries to users, consumers, workers, bystanders, and others,
2  including Plaintiff, TERRY LEE SIEGFRIED.
3      51.   Said safety masks were used at all times in a manner that was reasonably
4  foreseeable to RESPIRATOR DEFENDANTS thereby rendering said products unsafe and
5  dangerous for use by Plaintiff, TERRY LEE SIEGFRIED. Plaintiffs herein allege that
6  RESPIRATOR DEFENDANTS' negligence caused Plaintiff, TERRY LEE SIEGFRIED, to be
7  exposed to asbestos released from asbestos containing products, and that RESPIRATOR
8  DEFENDANTS' negligence and Plaintiff's exposures to asbestos resulting therefrom were
9  substantial contributing factors in the development of Plaintiff's malignant mesothelioma and
10 death, and therefore proximately caused Plaintiffs' injuries and damages.
11     52.   At all relevant times, RESPIRATOR DEFENDANTS had a duty to exercise
12 reasonable care while engaging in the activities mentioned above and RESPIRATOR
13 DEFENDANTS breached said duty of reasonable care in that RESPIRATOR DEFENDANTS
14 failed to safely and adequately design, manufacture and/or sell its safety masks; failed to test or
15 adequately test its safety masks; failed to investigate the hazards of its safety masks; failed to
16 instruct on safer uses of its safety masks to minimize or eliminate harmful exposures; failed to
17 warn "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, of the health hazards of
18 using RESPIRATOR DEFENDANTS' safety masks; failed to warn of the harmful exposures
19 caused by use of RESPIRATOR DEFENDANTS' safety masks; failed to instruct on safer uses
20 of said safety masks to minimize harmful exposures; failed to disclose the known or knowable
21 dangers of using RESPIRATOR DEFENDANTS' safety masks; and/or failed to obtain or offer
22 suitable alternative RESPIRATOR DEFENDANTS' safety masks when such alternatives were
23 available.
24     53.   Since on or before 1930, the hazards and dangerous propensities of the asbestos
25 were both known and knowable to RESPIRATOR DEFENDANTS through the use of medical
26 and/or scientific data and other knowledge available to RESPIRATOR DEFENDANTS at the
27 time of its manufacture, distribution, sale, research, study, fabrication, design, modification,
28 labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,

1   contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

2   others, packaging and advertising, of its safety masks, all of which clearly indicated the hazards

3   and dangerous propensities of exposures to asbestos and that they presented a substantial danger

4   to end users, including Plaintiff, TERRY LEE SIEGFRIED.

5       54.    RESPIRATOR DEFENDANTS knew, or reasonably should have known, that is

6   safety masks would be used during the installation, repair, maintenance, overhaul, removal,

7   sawing, chipping, hammering, mixing, scraping, sanding, sweeping, breaking, "ripping out,"

8   cutting, dumping, disturbing or handling of asbestos, or otherwise in the ordinary, intended and

9   foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and

10  that through such activity, "exposed person," including Plaintiff, TERRY LEE SIEGFRIED,

11  herein, would be exposed to said hazardous and dangerous asbestos fibers while using

12  RESPIRATOR DEFENDANTS' safety masks in an intended and reasonably foreseeable

13  manner.

14      55.    RESPIRATOR DEFENDANTS' negligent failure to warn was a substantial factor

15  in causing harm to Plaintiff, TERRY LEE SIEGFRIED. RESPIRATOR DEFENDANTS knew

16  or reasonably should have known that users, such as Plaintiff, TERRY LEE SIEGFRIED, and

17  others in his position, working with and in close proximity to asbestos would not realize or

18  know the danger of asbestos while wearing its safety masks. RESPIRATOR DEFENDANTS

19  thereafter negligently failed to adequately warn or instruct of the dangers of asbestos while using

20  its safety masks, as reasonable designers, manufacturers, distributors, sellers, or suppliers, under

21  the same or similar circumstances, would have warned of these dangers to avoid asbestos

22  exposures, a foreseeable risk of harm.

23      56.    At all relevant, RESPIRATOR DEFENDANTS were additionally negligent

24  because they failed to recall/retrofit their safety masks in that RESPIRATOR DEFENDANTS

25  manufactured/distributed/sold products, that RESPIRATOR DEFENDANTS knew or

26  reasonably should have known were dangerous or were likely to be dangerous when used in a

27  reasonably foreseeable manner; that RESPIRATOR DEFENDANTS became aware of the

28  defectiveness of their safety masks after the product was sold to Plaintiff's employer; that

1    RESPIRATOR DEFENDANTS failed to recall/retrofit or warn of the dangers of using their
2    safety masks; that a reasonable manufacturer/distributor/seller under the same or similar
3    circumstance would have recalled/retrofitted the product; that Plaintiff, TERRY LEE
4    SIEGFRIED, was injured by asbestos using RESPIRATOR DEFENDANTS' safety masks; and
5    that RESPIRATOR DEFENDANTS' failure to recall/retrofit their masks was a substantial
6    factor in causing Plaintiff, TERRY LEE SIEGFRIED'S injuries and death.

7         57.    Plaintiffs further allege that RESPIRATOR DEFENDANTS also engaged in the
8    following wrongful acts:

9            (a)    RESPIRATOR DEFENDANTS suppressed from all consumers, including
10   Plaintiff, TERRY LEE SIEGFRIED, medical and scientific information concerning the
11   health hazards associated with inhalation of asbestos, including the substantial risk of
12   injury or death therefrom. Although RESPIRATOR DEFENDANTS knew of the
13   substantial risks associated with exposure to asbestos, they willfully and knowingly
14   concealed such information from the users of their asbestos and/or asbestos-containing
15   products in conscious disregard of the rights, safety and welfare of "exposed person,"
16   including Plaintiff, TERRY LEE SIEGFRIED;

17           (b)    RESPIRATOR DEFENDANTS belonged to, participated in, and
18   financially supported industry organizations, including but not limited to the Gypsum
19   Association, Asbestos Information Association, Industrial Hygiene Foundation and
20   others, which, for and on behalf of RESPIRATOR DEFENDANTS actively promoted the
21   suppression of information about the dangers of asbestos to users of the aforementioned
22   products and materials, thereby misleading Plaintiff, TERRY LEE SIEGFRIED, as to the
23   safety of their products. Through their participation and association with such industry
24   organizations, RESPIRATOR DEFENDANTS knowingly and deliberately concealed and
25   suppressed the true information regarding asbestos and its dangers, and propagated
26   misinformation intended to instill a false security about the asbestos. The Dust Control
27   Committee, which changed its name to the Air Hygiene Committee, of the Asbestos
28   Textile Institute, was specifically enlisted to study the subject of dust control. Discussions

in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff, TERRY LEE SIEGFRIED, at this time;

(c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, RESPIRATOR DEFENDANTS knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to RESPIRATOR DEFENDANTS. RESPIRATOR DEFENDANTS thereafter failed to provide this information to consumers;

(d)    RESPIRATOR DEFENDANTS failed to warn Plaintiff, TERRY LEE SIEGFRIED, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that RESPIRATOR DEFENDANTS and its "alternate entities" possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)    RESPIRATOR DEFENDANTS failed to provide Plaintiff, TERRY LEE SIEGFRIED, with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding asbestos containing products, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff, TERRY LEE SIEGFRIED, and others applying and installing such material;

(f)    RESPIRATOR DEFENDANTS knew and failed to disclose that Plaintiff, TERRY LEE SIEGFRIED, and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of

pneumoconiosis, asbestosis, mesothelioma and/or cancer;

     (g)    RESPIRATOR DEFENDANTS failed to provide information of the true nature of the hazards of its masks and asbestos and that exposure to asbestos would cause pathological effects without immediate, noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff, TERRY LEE SIEGFRIED, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that RESPIRATOR DEFENDANTS were under a duty to so inform and said failure was misleading;

     (h)    RESPIRATOR DEFENDANTS and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS is liable for the oppressive and malicious acts of their "alternate entities" and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

     58.    The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market, supply, distribute and/or sell dangerous safety masks known to allow exposures to asbestos, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of its safety masks, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome so as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said RESPIRATOR DEFENDANTS, seek punitive damages according to proof.

     59.    RESPIRATOR DEFENDANTS engaged in conduct which was intended by

1   RESPIRATOR DEFENDANTS to cause injury to the Plaintiff, and its despicable conduct
2   which was carried on by the RESPIRATOR DEFENDANTS with a willful and conscious
3   disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

4       60.    RESPIRATOR DEFENDANTS engaged in the despicable conduct described
5   herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust
6   hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and
7   mesothelioma, in conscious disregard of those persons' rights.

8       61.    As a direct and proximate result of the conduct of RESPIRATOR
9   DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, was exposed to asbestos which caused
10  severe and permanent injury and death to the Plaintiff, the nature of which, along with the date
11  of Plaintiff diagnosis and death and the date he learned such injuries were attributable to
12  exposure to RESPIRATOR DEFENDANTS. Plaintiffs are now informed and believe, and
13  thereon allege, that progressive lung disease, cancer and other serious diseases are caused by
14  inhalation of asbestos fibers without immediate, perceptible trauma and that said disease results
15  from exposure to asbestos.

16      62.    Plaintiff, TERRY LEE SIEGFRIED suffered from malignant mesothelioma,
17  caused by RESPIRATOR DEFENDANTS' negligence and Plaintiff's exposure to asbestos
18  because of his reliance and use of RESPIRATOR DEFENDANTS' safety masks while
19  handling, cutting, sawing, lathing or otherwise manipulating asbestos and products containing
20  asbestos including those products identified in paragraph 3 above. Plaintiff, TERRY LEE
21  SIEGFRIED, was not aware at the time of exposure that RESPIRATOR DEFENDANTS' safety
22  masks presented any risk of injury and/or disease.

23      63.    As a direct and proximate result of such intentional conduct by RESPIRATOR
24  DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages
25  alleged herein, Plaintiff, TERRY LEE SIEGFRIED, suffered injuries to his person, body and
26  health, and death, including, but not limited to, pain, discomfort, loss of weight, loss of appetite,
27  fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental
28  and emotional distress attendant thereto, all to Plaintiffs' general damage in a sum in excess of

1    the jurisdictional limit of a limited civil case.

2         64.    As a direct and proximate result of the aforesaid conduct of RESPIRATOR

3    DEFENDANTS, Plaintiffs incurred, are presently incurring, and will incur in the future, liability

4    for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical

5    treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to

6    proof at trial.

7         65.    As a further direct and proximate result of the said conduct of the RESPIRATOR

8    DEFENDANTS, Plaintiffs incurred, and will incur, loss of income, wages, profits and

9    commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact

10   amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

11        WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

12   hereinafter set forth.

13                            **SIXTH CAUSE OF ACTION**

14                        (Respirator Defendants' Strict Liability)

15        AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF
         ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF RESPIRATOR
16   DEFENDANTS AND THEIR "ALTERNATE ENTITIES" AND ALLEGE AS FOLLOWS:

17        66.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each

18   and every one of the general allegations and the allegations contained in paragraphs 1, 2, 3, 5,

19   and 45-65 above.

20        67.    Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

21   DEFENDANTS' safety masks while he and others in his immediate presence removed,

22   replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

23        68.    RESPIRATOR DEFENDANTS sold safety masks and failed to adequately warn

24   or instruct of the known and knowable dangers and risks of the ordinary, intended, and

25   foreseeable use of its safety masks, which dangers and risks would not have been, and were not,

26   recognized by RESPIRATOR DEFENDANTS' customers or ordinary consumers of the masks,

27   including Plaintiff, TERRY LEE SIEGFRIED.

28        69.    The lack of sufficient instructions and/or warnings was a substantial factor in

1 causing harm to Plaintiff, TERRY LEE SIEGFRIED, and others in Plaintiff's position working
2 with and in close proximity to such products.

3     70.    RESPIRATOR DEFENDANTS' safety masks were defective and unsafe for their
4 intended purpose and foreseeable use in that, when used said masks would result in inhalation of
5 hazardous and dangerous asbestos fibers by persons wearing the masks, including Plaintiff,
6 TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the
7 possession of RESPIRATOR DEFENDANTS.

8     71.    At the time RESPIRATOR DEFENDANTS' safety masks were used by Plaintiff
9 the products were in substantially the same condition as when they left the possession of
10 RESPIRATOR DEFENDANTS and/or any changes made to the products after they left the
11 possession of RESPIRATOR DEFENDANTS were reasonably foreseeable. RESPIRATOR
12 DEFENDANTS' safety masks were used by Plaintiff, TERRY LEE SIEGFRIED, in a way that
13 was reasonably foreseeable to RESPIRATOR DEFENDANTS. The defect in said products was
14 a substantial factor in causing harm and personal injuries to Plaintiff, TERRY LEE
15 SIEGFRIED, including malignant mesothelioma, since they were being used in a reasonably
16 foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably
17 dangerous for their ordinary and intended use.

18     72.    As a direct and proximate result of the actions and conduct outlined herein,
19 RESPIRATOR DEFENDANTS' safety masks failed to perform as safely as an ordinary
20 company or consumer would have expected in that RESPIRATOR DEFENDANTS' safety
21 masks allowed respirable asbestos fibers to be inhaled from asbestos products during the safety
22 masks ordinary and intended use, and these hazardous asbestos exposures cause severe and fatal
23 diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.

24     73.    Plaintiffs further allege Plaintiff, TERRY LEE SIEGFRIED, and his employers
25 were unaware of the defect in RESPIRATOR DEFENDANTS' safety masks and further
26 unaware of the harmful exposures to asbestos that would occur when using RESPIRATOR
27 DEFENDANTS' safety masks, and this failure of RESPIRATOR DEFENDANTS' safety masks
28 to perform as safely as expected was a substantial factor in causing his injuries.

74.     As a direct and proximate result of the actions, defects and conduct outlined herein, Plaintiff, TERRY LEE SIEGFRIED, suffered the injuries and damages alleged herein

75.     RESPIRATOR DEFENDANTS and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS are liable for the oppressive and malicious acts of its "alternate entities" and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

76.     The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing RESPIRATOR DEFENDANTS seeks punitive damages according to proof.

77.     RESPIRATOR DEFENDANTS engaged in conduct which was intended to cause injury to the Plaintiff, and despicable conduct which was carried on by RESPIRATOR DEFENDANTS with a willful and conscious disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

78.     RESPIRATOR DEFENDANTS engaged in the despicable conduct described herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

79.   As a direct and proximate result of such intentional conduct by RESPIRATOR DEFENDANTS Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FURTHER, SEVENTH SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF TERRI SIEGFRIED COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

80.   Plaintiff TERRI SIEGFRIED incorporates by reference, each and every paragraph of the First through Sixth Causes of Action herein.

81.   Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED were married on July 7, 1991, and at all times relevant to this action were, and are now, husband and wife.

82.   Prior to Plaintiff TERRY LEE SIEGFRIED's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff TERRY LEE SIEGFRIED has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, TERRI SIEGFRIED has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

83.   Plaintiff TERRI SIEGFRIED's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

84.   As a direct and proximate result of the acts of Defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff TERRY LEE SIEGFRIED, as set forth in this complaint, Plaintiff TERRI SIEGFRIED has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of

1   services, marital relations, society, comfort, companionship, love and affection of said spouse,

2   and has suffered severe mental and emotional distress and general nervousness as a result

3   thereof.

4        WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

5   and each of them, in an amount to be proved at trial in each individual case, as follows:

6   Plaintiff TERRY LEE SIEGFRIED:

7        1.      For Plaintiff's general damages according to proof;

8        2.      For Plaintiff's loss of income, wages, and earning potential according to proof;

9        3.      For Plaintiff's medical and related expenses according to proof;

10  Plaintiff TERRI SIEGFRIED:

11       4.      For Plaintiff's damages for loss of consortium and/or society according to proof;

12  Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED:

13       5.      For Plaintiffs' cost of suit herein;

14       6.      For exemplary or punitive damages according to proof;

15       7.      For damages for fraud according to proof; and

16       8.      For such other and further relief as the Court may deem just and proper, including

17  costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and

18  related provisions of law.

19

20  DATED: January 26, 2018          **THE LANIER LAW FIRM**

21

22                                    By:

23                                         Mark A. Linder

24                                         Case A. Dam
                                           Attorneys for Plaintiffs

25

26

27

28

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: January 26, 2018          **THE LANIER LAW FIRM**

By: _____

Mark A. Linder
Case A. Dam
Attorneys for Plaintiffs

### EXHIBIT "A"

Plaintiff TERRY LEE SIEGFRIED's exposure to asbestos and asbestos-containing products occurred at various locations including but not limited to within the States of California; ; and additional sites including, but not limited to:

| Employer | Location of Exposure | Job Title | Date(s) |
|---|---|---|---|
| Long Beach Naval Shipyard | Various, including, but not limited to: Long Beach Naval Shipyard; Long Beach, CA; Roark (FF-1053); Gray (FF-1054); Hepburn (FF-1055); Meyerkord (FF-1058); Lockwood (FF-1064); Markin Shields (FF-1066); Francis Hammonds (FF-1067); Downes (FF-1070); Cook (Ff-1083); Barbey (FF-1088); Ogden (LPD-5); Duluth (LPD-6;); Cleveland (LPD-7); Dubuque (LPD-8); Denver (LPD-9); Juneau (LPD-10); Norton Sound (AVM-1); St. Paul (CA-73); Chicago (CA-136); New Jersey (BB -62); Missouri (BB-63); Hull (DD-945); Morton (DD-948); Lofberg (DD-759); Tripoli (LPH-10); Paul Foster (DD-964); Kinkaid (DD-965); Hewitt (DD-966); David R Ray (DD-971); Oldendorf (DD-972); John Young (DD -973); Jouett (CG-29); Horne (CG-30); Sterett (CG-31); Fox (CG-33); Tarawa (LHA-1): Belleau Wood (LHA-3); Peleliu (LHA-5); Henry B. Wilson (DDG-7); Towers (DDG-9); Robison (DDG-12); Hoel (DDG-13); Waddell (DDG-24) | Various, including but not limited to: Electrician, Marine Electrician | Approx. 1969-1996 |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

## EXHIBIT "B"

2      Plaintiff TERRY LEE SIEGFRIED's exposure to Defendants' Products caused severe

3  and permanent injury to Plaintiff TERRY LEE SIEGFRIED including, but not limited to,

4  mesothelioma. Plaintiff was diagnosed with mesothelioma on or about October of 2017.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28