FRANK D. POND (Bar No. 126191)
JUSTIN F. CRONIN (Bar No. 260188)
jcronin@pondnorth.com
POND NORTH LLP
355 South Grand Ave., 43rd Floor
P.O. Box 17941
Los Angeles, CA 90071
Telephone: (213) 617-6170
Facsimile: (213) 623-3594

KEVIN D. JAMISON (Bar No. 222105)
kjamison@kevinjamisonlaw.com
ERIN N. EMPTING (Bar No. 272130)
eempting@kevinjamisonlaw.com
KEVIN JAMISON LAW, PC
825 East 4th Street, Suite 204
Los Angeles, CA 90013
Telephone: (213) 246-2732
Facsimile: (626) 314-1833

Attorneys for Defendant
CBS Corporation, a Delaware
corporation, f/k/a Viacom Inc., successor
by merger to CBS Corporation, a
Pennsylvania corporation, f/k/a
Westinghouse Electric Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY LEE SIEGFRIED and TERRI SIEGFRIED,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>3M COMPANY, etc., et al.<br><br>                    Defendants. | Case No: 2:18-cv-01575<br><br>**JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL**<br><br>*[Removed from the Los Angeles County Superior Court, Case No. BC691900]*<br><br>Judge:      Hon. Christina A. Snyder<br>Courtroom:  8D, 8th Floor<br><br>Case filed:  January 26, 2018<br>Removed:    February 26, 2018<br>Trial:        None |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that CBS Corporation ("Westinghouse") – a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation – hereby joins in the Notice of Removal of the above-styled civil action filed by defendant Elliott Company ("Removing Defendant").  Plaintiff TERRY LEE SIEGFRIED ("Plaintiff") alleges in his Complaint that he was exposed to asbestos while employed as an electrician at the Long Beach Naval Shipyard from approximately 1969 through 1996. [Complaint, ¶ 3, attached as "Exhibit A" to Removing Defendant's Notice of Removal, and incorporated herein by reference].  As supplemented by Plaintiff's Preliminary Fact Sheet served upon Westinghouse along with Plaintiff's Complaint and other process, Plaintiff's claims rest in part upon his alleged contact with turbines, forced draft blowers, insulation, and air ejectors that were designed, manufactured, and sold to the Navy by Westinghouse, on the following U.S. Navy vessels:  USS Roark (FF-1053); USS Gray (FF-1054); USS Hepburn (FF-1055); USS Meyerkord (FF-1058); USS Lockwood (FF-1064); USS Markin Shields (FF-1066); USS Francis Hammonds (FF-1067); USS Downes (FF-1070); UFF Cook (FF-1083); USS Barbey (FF-1088); USS Ogden (LPD-5); USS Duluth (LPD-6); USS Cleveland (LPD-7); USS Dubuque (LPD-8); USS Denver (LPD-9); USS Juneau (LPD-10); USS Norton Sound (AVM-1); USS St. Paul (CA-73); USS Chicago (CA-136); USS New Jersey (BB-62); USS Missouri (BB-63); USS Hull (DD-945); USS Morton (DD-948); USS Lofberg (DD-759); USS Tripoli (LPH-10); USS Paul Foster (DD-964); USS Kinkaid (DD-965); USS Hewitt (DD-966); USS David R. Ray (DD-971); USS Oldendorf (DD-972); USS John Young (DD-973); USS Jouett (CG-29); USS Horne (CG-30); USS Sterett (CG-31); USS Fox (CG-33); USS Tarawa (LHA-1); USS Belleau Wood (LHA-3); USS Peleiu (LHA-5); USS Henry B. Wilson (DDG-7); USS Towers (DDG-9); USS Robinson (DDG-12); USS Hoel (DDG-13); and USS Waddell (DDG-24).

[Prelim. Fact Sheet at p. 3, attached within "Exhibit A" to Removing Defendant's Notice of Removal]. As all relevant aspects of the design, manufacture, and supply of any Westinghouse turbines to the United States Navy for use aboard its vessels (and of all written materials to be supplied therewith) were directed or controlled by the Navy; as all such equipment (and related writings) were carefully reviewed, inspected, and/or tested by the Navy, and were only accepted after having been found to comply with all relevant Navy specifications and regulations; and as the Navy was, at all relevant times, independently aware of asbestos-related health hazards, Plaintiff's claims against Westinghouse are likewise subject to "federal officer" removal under 28 U.S.C. § 1442(a)(1).

## BACKGROUND

1.      On January 26, 2018, Plaintiff filed his Complaint, Case No. BC 691900, in the Superior Court of the State of California for the County of Los Angeles. A true and correct copy of the Summons, Complaint, and accompanying papers as served on Westinghouse are attached hereto collectively as "Exhibit 1." [Declaration of Justin F. Cronin ("Cronin Decl."), ¶ 3].

2.      Plaintiff served Westinghouse's agent for service with his Complaint and other papers on January 30, 2018. [Cronin Decl., ¶ 4].

3.      On February 26, 2018, Removing Defendant removed the matter to the United States District Court for the Central District of California under 28 U.S.C. § 1442(a)(1) and 1446 by filing a Notice of Removal in this court. [Notice of Removal [Doc. No. 1], already within the Court's file].

## BASIS FOR REMOVAL AS TO CLAIMS ASSERTED AGAINST WESTINGHOUSE

4.      Plaintiff claims that he has contracted mesothelioma due, in part, to contact with asbestos associated with Westinghouse turbines, forced draft blowers, insulation, and air ejectors that he alleges he encountered while employed as an electrician at the Long Beach Naval Shipyard from approximately 1969 through 1996,

3

1  and has sued Westinghouse in its capacity as manufacturer or supplier of such

2  turbines, forced draft blowers, insulation, and air ejectors. [Complaint, ¶¶ 2, 3, 4

3  attached within "Exhibit 1", Prelim. Fact Sheet at p. 3, attached within "Exhibit 1",

4  and "Exhibit A" to the Complaint; see Cronin Decl., ¶ 5].

5       5.    Thus, and as summarized herein, this action involves a person, *i.e.*,

6  Westinghouse, who – as to one or more of the claims being stated against it – acted

7  under the authority, direction, and control of an officer or agency of the United States

8  for purposes of 28 U.S.C. § 1442(a)(1) and who can state at least a colorable federal

9  law-based "government contractor" defense to one or more of those claims.

10      6.    Removal was had by the Removing Defendant within thirty (30) days of

11 Westinghouse's service with Plaintiff's Complaint and accompanying papers in this

12 civil action.

13      7.    While Westinghouse is not the Removing Defendant, and while it

14 respectfully requests an opportunity to respond more fully in writing to any remand

15 motion filed in this case, it offers the following statement and citations to authority at

16 this time as a short and plain statement of the legal and factual basis for its

17 independent right to avail itself of 28 U.S.C. § 1442(a)(1)-based jurisdiction in

18 keeping with 28 U.S.C. § 1446. Removal is proper under 28 U.S.C. § 1442(a)(1)

19 when (a) the defendant seeking removal demonstrates that it is a "person" within the

20 meaning of the statute; (b) the defendant demonstrates a causal nexus between

21 defendant's actions, taken pursuant to a federal officer's directions and under color of

22 federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable

23 federal defense." *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989); *Kirks v.*

24 *General Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009); *see also, e.g., Nesbiet v.*

25 *General Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005); *Madden v. Able Supply*

26 *Co.*, 205 F. Supp. 2d 695, 699 (S.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp.

27 1322, 1325 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099, 1101 (D. Md.

28 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).

1  Westinghouse can satisfy each of these prongs relative to Plaintiff's claims in this

2  case.

3          8.      Westinghouse is a "person" within the meaning of 28 U.S.C. §

4  1442(a)(1). *See, e.g., Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir.

5  2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998),

6  *cert. denied*, 526 U.S. 1034 (1999); *Kirks*, 654 F. Supp. 2d at 223; *Fung*, 816 F. Supp.

7  at 572.

8          9.      In all aspects of the design, manufacture, and supply of turbines to the

9  Navy for use aboard Navy vessels (including any warnings or other written materials

10  to be furnished therewith), Westinghouse was acting under the detailed direction and

11  control of one or more federal officers.  More specifically, such equipment was

12  designed, manufactured, and supplied according to precise, detailed specifications

13  promulgated and/or approved by Navy Sea Systems Command and in conjunction

14  with and under the close scrutiny of Navy personnel.  Navy engineers collaborated

15  with engineers employed by the Navy's equipment suppliers (such as Westinghouse)

16  to design a propulsion system for a ship or class of ships.  Moreover, an Inspector of

17  Naval Machinery, who had offices on the premises of Westinghouse's plants,

18  personally oversaw the manufacturing process and enforced compliance with the

19  Navy design specifications.  Further, Westinghouse Navy equipment of the type at

20  issue here, *i.e.*, turbines, was subject to various tests and trials supervised by the Navy

21  before it was approved for use on military vessels.  All materials used in

22  manufacturing a propulsion system component were analyzed and approved by the

23  Navy, and Navy officers monitored, inspected, and tested the equipment during its

24  manufacture and installation to ensure compliance with the Navy's detailed

25  specifications.  In sum, no material aspect of the design, manufacture, or supply of

26  Westinghouse turbines supplied to the United States Navy escaped the close control of

27  the Navy and its officers.  "Final say" authority rested solely with the Navy.

28  Numerous federal district courts have, in fact, held in light of these facts that

1  Westinghouse and similarly situated Navy equipment suppliers were "acting under a

2  federal officer" in the design, manufacture, and supply of their Navy equipment.

3  *Robert Oberstar, et al. v. CBS Corp., et al.*, CV 08-118-PA (JWJx), In Chambers-

4  Court Order (C.D. Cal. Feb. 11, 2008) (Hon. Percy Anderson, J.); *Donald Nelson, et*

5  *al. v. Alfa Laval, Inc., et al.*, CV 07-8338 VBF (RCx), Ruling Re: Plaintiff's Motion to

6  Remand (C.D. Cal. Feb. 8. 2008) (Hon. Valerie Baker Fairbank, J.); *see also, e.g.*

7  *Murphy v. General Electric Co.*, 2009 WL 2151192 (D. Conn. July 15, 2009);

8  *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009);

9  *Beamis v. Buffalo Pumps*, 2009 WL 462543 (D.R.I. Feb. 23, 2009); *Curry v.*

10  *American Standard, Inc.*, 2009 WL 308029 (S.D.N.Y. Feb. 6, 2009); *Redman v. A.W.*

11  *Chesterton Co.*, 2008 WL 5048205 (N.D. Cal. Nov. 25, 2008); *Carroll v. Buffalo*

12  *Pumps*, 2008 WL 4793725 (D. Conn. Oct. 27, 2008); *Dematties v. Acmat Corp.*, 2008

13  WL 4735145 (D. Conn. Oct. 27, 2008); *Redman v. A.W. Chesterton Co.*, 2008 WL

14  4447729 (N.D. Cal. Sept. 30, 2008); *Desperes v. AMPCO-Pittsburgh Corp.*, 2008 WL

15  4329881 (D. Conn. Sept. 22, 2008); *O'Connell v. Foster Wheeler Energy Corp.*, 2008

16  WL 1722079 (D. Mass. Apr. 7, 2008); *Marley v. Elliot Turbomachinery Co.*, 2008

17  WL 1700326 (S.D. Fla. Mar. 13, 2008); *Wright v. A.W. Chesterton Co.*, 2008 WL

18  512728 (N.D. Cal. Feb. 25, 2008); *Contois v. Able Indus.*, 523 F. Supp. 2d 155 (D.

19  Conn. 2007); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99 (D. Conn. 2007);

20  *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725 (N.D. Ohio Feb. 15, 2007);

21  *Nesbiet*, 399 F. Supp. 2d 205; *McAboy v. Imo Indus.*, 2005 WL 2898047 (W.D. Wash.

22  Oct. 27, 2005); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 (E.D. Va. Dec. 15, 2004);

23  *Fink v. Todd Shipyards*, 2004 WL 856734 (E.D. La. April 20, 2004); *Delancey v.*

24  *General Elec. Co.*, 2004 WL 3247173 (E.D. La. Mar. 31, 2004); *Madden*, 205 F.

25  Supp. 2d 695; *Carter v. ACandS, Inc.*, 2002 WL 31682352 (E.D. Tex. 2002); *Crocker*,

26  852 F. Supp. 1322; *Pack*, 838 F. Supp. 1099; *Fung*, 816 F. Supp. 569.  Westinghouse

27  submits that these authorities have properly interpreted and applied § 1442(a)(1) and

28  that a similar ruling would be appropriate in this case in the event Plaintiff seeks to

6

remand this matter to state court.

10.    It is "axiomatic" that, if a defendant has been sued for asbestos-related injuries purportedly arising from or relating to equipment that it manufactured and supplied to the Navy under the Navy's detailed direction and control, that defendant has been sued in relation to conduct under color of its federal office, satisfying the "causal nexus" requirement. *See, e.g., Madden*, 205 F. Supp. 2d at 701-02.

11.    As to the question of a colorable federal-law based defense, Westinghouse hereby asserts a government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988) in that (assuming, *arguendo*, that Plaintiff did encounter Westinghouse turbines during his Navy service): 1) Westinghouse designed, manufactured, and supplied those turbines (and all written materials to be furnished therewith) in accordance with "reasonably precise specifications" promulgated or adopted by the Navy; 2) the turbines (and all written materials supplied therewith) conformed with those specifications as evidenced by their acceptance following thorough Navy testing and inspection; and 3) at all times relevant to this suit, the Navy was independently aware of potential health hazards associated with asbestos exposure.  Once again, numerous courts considering the propriety of the removal of asbestos-related claims involving Westinghouse's supply of Navy turbines and related Navy equipment have found that Westinghouse can, accordingly, state at least a colorable government contractor defense in relation to such claims. *See, e.g., Allen v. CBS Corp.*, 2009 WL 4730747 at *5 (D. Conn. Dec. 1, 2009); *Mitchell*, 2004 WL 3831228 at *4; *Crocker*, 852 F. Supp. at 1327; *Pack*, 838 F. Supp. at 1103.  Further, the government contractor defense is equally applicable to Plaintiff's failure-to-warn claims. *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996).

12.    All material aspects of the design of Westinghouse's Navy turbines (and of any writings to be furnished therewith) were subject to reasonably precise

7

specifications which were promulgated or approved by the Navy – specifications which, in particular, required the use of asbestos. *Compare Glassco v. Miller Equip. Co.*, 966 F.2d 641 (11th Cir. 1992).

13.    Westinghouse's Navy turbines complied with the reasonably precise specifications which had been promulgated or approved by the Navy, and were accepted only after such compliance had been verified through rigorous Navy tests and inspections. *See, e.g., Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001); *Allen*, 2009 WL 4730747 at *5; *Murphy*, 2009 WL 2151192 at *4; *Machnik*, 506 F. Supp. 2d at 103-04.

14.    At all times relevant to this case, the Navy was independently aware of potential health hazards associated with asbestos exposure. *See, e.g., Allen*, 2009 WL 4730747 at *4-5; *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1006 (N.D. Ill. 2007); *Machnik*, 506 F. Supp. 2d at 104; *Ferguson*, 475 F. Supp. 2d at 730-31; *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1028 (S.D. Ill.1989).

Dated:  February 28, 2018                    POND NORTH LLP

By: */s/ Justin F. Cronin*
JUSTIN F. CRONIN
Attorneys for Defendant CBS Corporation, a
Delaware corporation, f/k/a Viacom Inc.,
successor by merger to CBS Corporation, a
Pennsylvania corporation, f/k/a Westinghouse
Electric Corporation

8

1

## DEMAND FOR TRIAL BY JURY

2    Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc.,

3  successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a

4  Westinghouse Electric Corporation ("Westinghouse") hereby demands a trial by jury

5  in this action.

6  Dated:  February 28, 2018                    POND NORTH LLP

7

8                                   By:  /s/ Justin F. Cronin
                                        JUSTIN F. CRONIN
9                                       Attorneys for Defendant
                                        CBS Corporation, a Delaware corporation,
                                        f/k/a Viacom Inc., successor by merger to
10                                      CBS Corporation, a Pennsylvania
                                        corporation, f/k/a Westinghouse Electric
11                                      Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL
4520-4622:4846-0568-0989.v2

## DECLARATION OF JUSTIN F. CRONIN

I, JUSTIN F. CRONIN, declare as follows:

1.     I am an attorney at law, duly licensed by and in good standing with the State Bar of California, and I am admitted to practice before the United States District Court for the Central District of California.  I am a senior associate with the law firm of Pond North LLP, attorneys of record for defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation ("Westinghouse") herein.  This declaration is made in support of Westinghouse's Joinder to the Notice of Removal filed by defendant Elliott Company.

2.     I have personal knowledge of the matters set forth in this Declaration, and if called as a witness, I would and could competently testify to the facts set forth herein.

3.     Attached hereto collectively as "Exhibit 1" are true and correct copies of the Summons, Complaint, Preliminary Fact Sheet, and accompanying papers filed by Plaintiff on January 26, 2018 as served on Westinghouse.

4.     I am informed and believe that Westinghouse's agent for service of process was served with process on January 30, 2018.

5.     In relevant part, Plaintiff's Complaint and accompanying papers, taken together, allege that Plaintiff was diagnosed with and suffers from mesothelioma related to exposure to asbestos as a result of his use, handling, and other acts with or around asbestos-containing products, including Westinghouse turbines, forced draft blowers, insulation, and air ejectors while employed as an electrician at the Long Beach Naval Shipyard, and working various U.S. Naval vessels identified in "Exhibit A" to the Complaint.  Plaintiff has sued Westinghouse as a purported supplier of asbestos-containing or asbestos-insulated turbines, forced draft blowers, insulation, and air ejectors manufactured for and supplied to the United States Navy.  [2, 3, 4

///

JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL

4520-4622:4846-0568-0989.v2

1  attached within "Exhibit 1", Prelim. Fact Sheet at p. 3, attached within "Exhibit 1",

2  and "Exhibit A" to the Complaint].

3      I declare under the penalty of perjury that the foregoing is true and correct, and

4  that this Declaration was executed this 28th day of February, 2018, at Los Angeles,

5  California.

*/s/ Justin F. Cronin*
JUSTIN F. CRONIN, Declarant

JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL

4520-4622:4846-0568-0989.v2

**EXHIBIT "1"**

 CT Corporation

**Service of Process Transmittal**
01/30/2018
CT Log Number 532706437

TO:     Kate Cook
        Electric Insurance Company
        75 Sam Fonzo Dr
        Beverly, MA 01915-1000

RE:     **Process Served in California**

FOR:    General Electric Company  (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TERRY LEE SIEGFRIED AND TERRI SIEGFRIED, PLTFS. vs. 3M COMPANY, ETC., ET AL., DFTS. // TO: GENERAL ELECTRIC COMPANY, ETC. |
| **DOCUMENT(S) SERVED:** | Summons, Order, Stipulation, Attachments, Complaint, Exhibits |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA<br>Case # BC691900 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/30/2018 at 13:21 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days alter this summons and legal papers are served on you |
| **ATTORNEY(S) / SENDER(S):** | Mark A. Linder<br>THE LAMER LAW FIRM<br>6810 FM 1960 West<br>Houston, TX 77069<br>713-659-5200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/31/2018, Expected Purge Date: 02/05/2018 |
| | Image SOP |
| | Email Notification,  Kevin Jamison  kjamison@pondnorth.com |
| | Email Notification,  Carol Johnston  cjohnston@pondnorth.com |
| | Email Notification,  Tiffany Hinton  thinton@pondnorth.com |
| | Email Notification,  Susan Combs  scombs@pondnorth.com |
| | Email Notification,  Kate Cook  kate.cook@ElectricInsurance.com |
| | Email Notification,  Valerie Gaggero  vgaggero@wfbm.com |
| | Email Notification,  Charles Sheldon  csheldon@wfbm.com |

Page 1 of  2 / RN

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
01/30/2018
CT Log Number 532706437

**TO:** Kate Cook
Electric Insurance Company
75 Sam Fonzo Dr
Beverly, MA 01915-1000

**RE:** **Process Served in California**

**FOR:** General Electric Company  (Domestic State: NY)

Email Notification,  Mark Cohen  mark.cohen1@ge.com

**SIGNED:** C T Corporation System
**ADDRESS:** 818 West Seventh Street
Los Angeles, CA 90017
**TELEPHONE:** 213-337-4615

Page 2 of  2 / RN

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

3M COMPANY(f/k/a MINNESOTA MINING & MANUFACTURING
COMPANY)(See Attached Defendants List)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Terry Lee Siegfried and Terri Siegfried

---

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 2 6 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. AVISO: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of Los Angeles<br>111 North Hill Street, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**BC 6 9 1 9 0 0** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mark A. Linder, LANIER LAW FIRM, 6810 FM 1960 West, Houston, TX 77069; 713-659-5200

DATE: January 26 2018    SHERRI R. CARTER, by    SHAUNYA BOLDEN    , Deputy
*(Fecha)*    JAN 2 6 2018    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* GENERAL ELECTRIC COMPANY, individually and as successor-in-interest to MASONNEILAN, and MANNING, MAXWELL & MOORE, INC.

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☑ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☑ by personal delivery on *(date):* 1/29/18

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);
ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY);
ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.;
AURORA PUMP COMPANY;
A.O. SMITH CORP.;
BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS);
CARRIER CORPORATION;
CARVER PUMP COMPANY;
CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT;
CLA-VAL CO.;
CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION);
COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);
COPES-VULCAN, INC.;
CRANE CO. (sued individually and as successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES);
CRANE ENVIRONMENTAL, INC. (sued individually and successor-in-interest to COCHRANE CORPORATION);
EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY;
EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.);
FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY;
FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY);

Page __1__ of __3__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Terry Lee Siegfried, et al. vs. 3M Company, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

FOSTER WHEELER ENERGY CORPORATION;
FRASER BOILER SERVICE, INC.;
GARDNER-DENVER, INC.;
GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY);
GENERAL ELECTRIC COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING, MAXWELL & MOORE, INC.);
GIBBS & COX, INC.;
THE GORMAN-RUPP COMPANY (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H. WHEELER);
GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER CO.);
GOULDS PUMPS, INC.;
HARDIE-TYNES CO., INC. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES FOUNDRY & MACHINE CO. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HERCULES MANUFACTURING COMPANY, INC;
HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY);
IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.);
INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY STEAM TURBINE);
ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY);
KERR MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.;
LAWLER MANUFACTURING COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.;
THE MARLEY-WYLAIN COMPANY;
MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS WATER TECHNOLOGIES, INC.;
THE NASH ENGINEERING COMPANY;
OWENS-ILLINOIS, INC.;
PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS);
QUIMBY EQUIPMENT COMPANY;
ROBERTSHAW CONTROLS COMPANY (individually and as successor-in-interest to FULTON SYLPHON COMPANY);

Page __2__ of __3__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Terry Lee Siegfried, et al. vs. 3M Company, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

ROCKWELL AUTOMATION INC. (individually and as successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE CORPORATION);
ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
RSCC WIRE & CABLE, LLC.;
SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D COMPANY;
SIEMENS CORPORATION (individually and as successor-in-interest to ITE CIRCUIT BREAKER CO.);
SIEMENS ENERGY INC. (individually and as successor by merger to DRESSER-RAND GROUP, INC.);
SPIRAX SARCO, INC.;
SPX CORPORATION (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN);
STERLING FLUID SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY;
SULZER PUMPS HOUSTON, INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC PUMPING COMPANY);
SUPERIOR-LIDGERWOOD-MUNDY (individually and as successor-in-interest to M.T. Davidson Co.);
VELAN VALVE CORP.;
VIAD CORP f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY);
VIKING PUMP, INC., a Unit of IDEX Corporation;
WARREN PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
WEIL-McCLAIN;
WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued individually and as successor-in-interest to WYLAIN CO.);
WILO USA LLC (individually and as successor-in-interest to WEIL PUMP COMPANY, INC.);
WEIR VALVES & CONTROLS USA INC. f/k/a ATWOOD & MORRILL;
THE WILLIAM POWELL COMPANY;
and DOES 1-450, inclusive,

Page __3__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

 

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL - COMPLEX

Case Number _____     **BC 6 9 1 9 0 0**

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 323 | 1707 | | | | |
| Hon. William F. Highberger | 322 | 1702 | | | | |
| Hon. John Shepard Wiley, Jr. | 311 | 1408 | | | | |
| Hon. Kenneth Freeman | 310 | 1412 | | | | |
| Hon. Ann Jones | 308 | 1415 | | | | |
| Hon. Maren E. Nelson | 307 | 1402 | | | | |
| Hon. Carolyn B. Kuhl | 309 | 1409 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | Hon. Steven J. Kleifield | 324 | CCW |
| | | | | *Provisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____
                                                                    (Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____, Deputy Clerk

LACIV 190 (Rev 12/17)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's Stamp |
|---|---|
| COURT ADDRESS: 111 North Hill Street, Los Angeles, CA 90012 | **CONFORMED COPY** OF ORIGINAL FILED Los Angeles Superior Court **JAN 26 2018** Sherri R. Carter, Executive Officer/clerk By Shaunya Bolden, Deputy |
| PLAINTIFF: Terry Lee Siegfried, et al. | |
| DEFENDANT: 3M Company, et al. | |
| **CIVIL DEPOSIT** | CASE NUMBER: BC 6 9 1 9 0 0 |

**CLERK: PREPARE A FORM FOR EACH DEPOSITOR PAYING SEPARATELY**

**PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:**
☐ Room 102, Central Civil   ☐ Clerk's Office , Room_____   ☐ Department Number_____

| | | Distribution Codes | Amt Due | | | Distribution Codes | Amt Due |
|---|---|---|---|---|---|---|---|
| ☐ | 251 | DAILY JURY FEES  Dates:_____ # of day(s)_____ x$_____ | | ☐ | 74 | DEPOSIT IN TRUST | |
| ☒ | 72 | JURY FEES  Trial Date:_____ (Initial Deposit) $ 150.00 | | ☐ | 101 | FIRST PAPERS- GENERAL JURISDICTION | |
| ☐ | 252 | REPORTERS FEES  Dates:_____ # of 1/2 day(s)_____ x$_____  Full Day_____ | | ☐ | 101 | FIRST PAPERS-LIMITED OVER $10,000 | |
| | | | | ☐ | 141 | With declaration Limited to $10,000 (per B&P 6322.1(a)) | |
| | | | | ☐ | 130 | Limited to $10,000 | |
| ☐ | 721 | SANCTIONS ORDERED ON  Date:_____ | | ☐ | 211 | RECLASSIFICATION FEE | |
| ☐ | 213 | MOTIONS/APPLICATION TO CONT. HEARING | | ☐ | 150 | COMPLEX LITIGATION TRIAL/PLAINTIFF | |
| | 200 | MOTIONS/APPLICATION TO CONT.TRIAL | | ☐ | 151 | COMPLEX LITIGATION TRIAL/DEFENDANT | |
| | | Other:_____ | | | | | |

To be paid via:  ☐ Cash   ☐ Check   ☐ Certified Check/Money Order   ☐ Credit Card

☐ On or Before_____   ☐ Forthwith

Payment will be made by  ☒ Plaintiff_____   ☐ Defendant_____

JOHN A. CLARKE, Executive Officer/Clerk

DATE _____   BY: _____

Deputy Clerk

**TO BE COMPLETED BY DEPOSITOR** | **CASHIER'S VALIDATION**

Depositor's Name: _____

☐ Plaintiff in Pro Per   ☐ Defendant in Pro Per

☐ Counsel for   ☐ Plaintiff _____
                                    Name of Party
              ☐ Defendant _____
                                    Name of Party

Address of depositor _____
                          Street
                     _____
                          City/State/Zip

CIV 083 03-04 (Rev. 05/06)
LASC Approved

**CIVIL DEPOSIT**
Distribution: Original - Case File  Copy-Customer

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California**
**County of Los Angeles**



**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**



**Consumer Attorneys**
**Association of Los Angeles**



**Southern California**
**Defense Counsel**

**abtl**
**Association of**
**Business Trial Lawyers**



**California Employment**
**Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association**
**Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

i

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:
_____     ➢  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:
_____     ➢  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:
_____     ➢  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:
_____     ➢  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:
_____     ➢  (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

Date:
_____     ➢  (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

Date:
_____     ➢  (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could· an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records·could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)<br>LASC Approved 04/11<br>For Optional Use     **STIPULATION – EARLY ORGANIZATIONAL MEETING**     Page 1 of 2

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

      discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

   i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
           (INSERT DATE)                        (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR PLAINTIFF)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)
Date:

_____    ➤  _____
     (TYPE OR PRINT NAME)           (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:      FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

☐    Request for Informal Discovery Conference
☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

FILED
LOS ANGELES SUPERIOR COURT

JUN 09 1995

BY T. ACUNA DEP'T

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re Los Angeles Asbestos )  No. C 700000
Litigation - General Orders )
                             )  FIRST AMENDED
                             )  GENERAL ORDER NO. 1

The Court, having conducted a hearing on its own motion,
issues the orders as hereafter set forth.

IT IS HEREBY ORDERED that all actions currently pending and
hereafter filed in the above-entitled Court alleging personal
injury or wrongful death due to exposure to an asbestos-
containing product (hereafter "Los Angeles Asbestos Litigation")
are determined to be complex litigation within the meaning of
California Rules of Court, Appendix, Division 1, Standards of
Judicial Administration Recommended by the Judicial Council
(hereafter "Standards of Judicial Administration"), Section 19.

IT IS FURTHER ORDERED that all Los Angeles Asbestos
Litigation actions shall continue to be filed in the Central
District of the above-entitled Court both before and after the
distribution of such cases into the Central District's
Independent Calendaring ("I/C") courts.  The certificate of
assignment for each Los Angeles Asbestos Litigation case shall

-1-

1 | contain the following language:   "Filed in the Central District
2 | pursuant to First Amended General Order No. 1 contained in the
3 | general order file, File No. C 700000."
4 | Dated:  *6-9-95*
5
6
                     BRUCE E. MITCHELL
7 | Commissioner of the Superior Court
8

-2-

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Mark A. Linder, SBN 268796<br>The Lanier Law Firm<br>6810 FM 1960 West<br>Houston, TX 77069<br>TELEPHONE NO.: 713-659-5200  FAX NO.: 713-659-2204<br>ATTORNEY FOR *(Name)*:  Plaintiff | **CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>JAN 26 2018<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Shaunya Bolden, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Terry Lee Siegfried, et al. vs. 3M Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | BC 6 9 1 9 0 0 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [✓] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify)*:
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 26 2018
Mark A. Linder
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition



| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A. Civil Case Cover Sheet Category No. | B. Type of Action (Check only one) | C. Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☑ A7221  Asbestos – Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation         Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure(34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 6 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ■ 1. □ 2. □ 3. □ 4. □ 5. □ 6. □ 7.  □ 8. □  9. □ 10. ☒ 11. | 818 W. Seventh Street |

| CITY: | STATE | ZIP CODE |
|---|---|---|
| Los Angeles | CA | 90017 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: January 26, 2018

_Marle A. Snider_
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

1  Mark A. Linder, CA Bar No. 268796
   Case A. Dam, CA Bar No. 589054
2  **THE LANIER LAW FIRM**
3  6810 FM 1960 West
   Houston, TX 77069
4  Telephone 713-659-5200
   Facsimile 713-659-2204
5
6  Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF LOS ANGELES**

10

11  **TERRY LEE SIEGFRIED and**          Case No.
    **TERRI SIEGFRIED,**
12                                        **BC 6 9 1 9 0 0**

13                                        THIS ACTION CONSTITUTES COMPLEX
                          Plaintiffs,    ASBESTOS LITIGATION
                  vs.
14                                        **COMPLAINT FOR PERSONAL INJURY –**
15  **3M COMPANY (f/k/a MINNESOTA**       **ASBESTOS (NEGLIGENCE; STRICT**
    **MINING & MANUFACTURING**            **LIABILITY, FALSE REPRESENTATION**
16  **COMPANY);**                         **UNDER RESTATEMENT OF TORTS**
    **AIR & LIQUID SYSTEMS**              **SECTION 402-B; INTENTIONAL**
17  **CORPORATION (sued individually**    **TORT/INTENTIONAL FAILURE TO**
    and as successor-in-interest to      **WARN; RESPIRATOR DEFENDANT'S**
18  BUFFALO PUMPS, INC.);                 **NEGLIGENCE; RESPIRATOR**
    **ABB, INC. (individually and as**    **DEFENDANTS' STRICT LIABILITY; LOSS**
19  successor-in-interest to ITE IMPERIAL **OF CONSORTIUM)**
    CO f/k/a ITE CIRCUIT BREAKER
20  COMPANY);
    **ALFA LAVAL INC. (sued individually**
21  and as successor-in-interest to THE
    DELAVAL SEPARATOR COMPANY
22  and SHARPLES CORPORATION);
    **ATWOOD & MORRILL CO., INC.**
23  d/b/a WEIR VALVES & CONTROLS
    USA INC.;
24  **AURORA PUMP COMPANY;**
    **A.O. SMITH CORP.;**
25  **BACOU-DALLOZ USA, INC., (sued**
    as successor-in-interest and/or f/k/a
26  W.G.M. SAFETY PRODUCTS d/b/a
27
28

                                    1

| | |
|---|---|
| 1 | WILLSON SAFETY PRODUCTS); |
| | **CARRIER CORPORATION;** |
| 2 | **CARVER PUMP COMPANY;** |
| 3 | **CBS CORPORATION** (a Delaware |
| | Corporation) f/k/a VIACOM, INC. (as |
| 4 | successor-by-merger to CBS |
| | CORPORATION) (a Pennsylvania |
| 5 | Corporation) f/k/a WESTINGHOUSE |
| 6 | ELECTRIC CORPORATION) and also |
| | as successor-in-interest to BF |
| 7 | STURTEVANT; |
| | **CLA-VAL CO.;** |
| 8 | **CLEAVER-BROOKS, INC.** (sued |
| 9 | individually and as successor-in-interest |
| | to DAVIS ENGINEERING |
| 10 | COMPANY formerly known as AQUA- |
| | CHEM, INC. doing business as |
| 11 | CLEAVER-BROOKS DIVISION); |
| 12 | **COOPER WIRING DEVICES,** a |
| | division of COOPER INDUSTRIES |
| 13 | (individually and as successor-in- |
| | interest to ARROW-HART & |
| 14 | HEGEMAN, INC.); |
| 15 | **COPES-VULCAN, INC.;** |
| | **CRANE CO.** (sued individually and |
| 16 | successor-in-interest to COCHRANE |
| | CORPORATION; CHAPMAN VALVE |
| 17 | COMPANY and JENKINS VALVES); |
| 18 | **CRANE ENVIRONMENTAL, INC.** |
| | (sued individually and successor-in- |
| 19 | interest to COCHRANE |
| | CORPORATION); |
| 20 | **EATON CORPORATION** (sued |
| 21 | individually and as successor-in-interest |
| | to CUTLER-HAMMER INC.); |
| 22 | **EATON ELECTRICAL, INC.** (sued |
| | individually and as successor-in-interest |
| 23 | to CUTLER-HAMMER INC.); |
| 24 | **ELLIOT TURBOMACHINERY** |
| | **COMPANY** a/k/a ELLIOTT |
| 25 | COMPANY; |
| 26 | **EMERSON ELECTRIC CO.** |
| | (individually and as successor-in- |
| 27 | interest to KEYSTONE VALVES AND |
| | CONTROLS, INC.); |
| 28 | **FISHER CONTROLS** |

2

1  INTERNATIONAL LLC f/k/a
   FISHER GOVERNOR COMPANY;
2  **FMC CORPORATION** (sued
3  individually and as successor-in-interest
   to NORTHERN PUMP COMPANY
4  and PEERLESS PUMP COMPANY);
   **FOSTER WHEELER ENERGY**
5  **CORPORATION;**
6  **FRASER BOILER SERVICE, INC.;**
   **GARDNER-DENVER, INC.;**
7  **GENERAL DYNAMICS**
   **CORPORATION** (successor-in-
8  interest to BATH IRON WORKS LTD.
9  f/k/a THE HYDE WINDLASS
   COMPANY);
10 **GENERAL ELECTRIC COMPANY**
   (individually and as successor-in-
11 interest to MASONEILAN, and
12 MANNING, MAXWELL & MOORE,
   INC.);
13 **GIBBS & COX, INC.;**
   **THE GORMAN-RUPP COMPANY**
14 (individually and as successor-in-
15 interest to PATTERSON PUMP
   COMPANY, and C.H. WHEELER);
16 **GOULDS ELECTRONICS** (as
   successor-in-interest to ITE CIRCUIT
17 BREAKER CO.);
18 **GOULDS PUMPS, INC.;**
   **HARDIE-TYNES CO., INC.** (sued
19 individually and as successor-in-interest
   to HARDIE-TYNES
20 MANUFACTURING CO. and
21 HARDIE-TYNES
   MANUFACTURING COMPANY);
22 **HARDIE-TYNES FOUNDRY &**
   **MACHINE CO.** (sued individually and
23 as successor-in-interest to HARDIE-
24 TYNES MANUFACTURING CO. and
   HARDIE-TYNES
25 MANUFACTURING COMPANY);
26 **HARDIE-TYNES, LLC** (sued
   individually and as successor-in-interest
27 to HARDIE-TYNES
   MANUFACTURING CO. and
28 HARDIE-TYNES

3

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

MANUFACTURING COMPANY);
**HERCULES MANUFACTURING**
**COMPANY, INC;**
**HOWDEN NORTH AMERICA, INC.**
f/k/a HOWDEN BUFFALO, INC.
(individually and as successor-in-
interest to BUFFALO FORGE
COMPANY);
**IMO INDUSTRIES, INC.** (sued
individually and as successor-in-interest
to DELAVAL TURBINE, INC.);
**INGERSOLL-RAND COMPANY**
(individually and as successor-in-
interest to TERRY STEAM
TURBINE);
**ITT INDUSTRIES, INC.** (sued
individually and as successor-in-interest
to BELL & GOSSETT, FOSTER
ENGINEERING and HOFFMAN
SPECIALTY);
**KERR MACHINERY CO.** n/k/a
KERR PUMP & SUPPLY INC.;
**LAWLER MANUFACTURING**
**COMPANY, INC.** f/k/a LAWLER
AUTOMATIC CONTROLS, INC.;
**THE MARLEY-WYLAIN**
**COMPANY;**
**MUELLER STEAM SPECIALITY**
**COMPANY** n/k/a WATTS WATER
TECHNOLOGIES, INC.;
**THE NASH ENGINEERING**
**COMPANY;**
**OWENS-ILLINOIS, INC.;**
**PPG INDUSTRIES, INC.**
(individually and as successor-in-
interest to AKZO NOBEL INC., and
DEVOE COATINGS);
**QUIMBY EQUIPMENT**
**COMPANY;**
**ROBERTSHAW CONTROLS**
**COMPANY** (individually and as
successor-in-interest to FULTON
SYLPHON COMPANY);
**ROCKWELL AUTOMATION INC.**
(individually and as successor by
merger to ALLEN-BRADLEY

4

i

1  COMPANY LLC and ROSTONE
   CORPORATION);
2  **ROSS OPERATING VALVE**
3  **COMPANY** d/b/a ROSS CONTROLS;
   **RSCC WIRE & CABLE, LLC.;**
4  **SCHNEIDER ELECTRIC, USA,**
   **INC.,** f/k/a SQUARE D COMPANY;
5  **SIEMENS CORPORATION**
6  (individually and as successor-in-
   interest to ITE CIRCUIT BREAKER
7  CO.);
   **SIEMENS ENERGY INC.**
8  (individually and as successor by
9  merger to DRESSER-RAND GROUP,
   INC.);
10 **SPIRAX SARCO, INC.;**
   **SPX CORPORATION** (sued
11 individually and as successor-in-interest
12 to THE MARLEY COMPANY,
   WYLAIN, INC., WEIL-McCLAIN, a
13 division of WYLAIN, INC., and WEIL-
   McCLAIN);
14 **STERLING FLUID SYSTEMS,**
15 **(USA) LLC** f/k/a PEERLESS PUMP
   COMPANY;
16 **SULZER PUMPS HOUSTON, INC.**
17 (sued individually and as successor-in-
   interest to PACO PUMPS f/k/a
18 PACIFIC PUMPING COMPANY);
   **SUPERIOR-LIDGERWOOD-**
19 **MUNDY** (individually and as
20 successor-in-interest to M.T. Davidson
   Co.);
21 **VELAN VALVE CORP.;**
   **VIAD CORP** f/k/a THE DIAL
22 CORPORATION (sued individually and
   as successor-in-interest to GRISCOM-
23 RUSSELL COMPANY);
24 **VIKING PUMP, INC.,** a Unit of IDEX
   Corporation;
25 **WARREN PUMPS, LLC** (individually
26 and as successor-in-interest to
   QUIMBY PUMP COMPANY);
27 **WEIL-McCLAIN;**
   **WEIL-McCLAIN,** a division of THE
28 MARLEY COMPANY (sued

individually and as successor-in-interest to WYLAIN CO.);
**WILO USA LLC** (individually and as successor-in-interest to WEIL PUMP COMPANY, INC.);
**WEIR VALVES & CONTROLS USA INC.** f/k/a ATWOOD & MORRILL, **THE WILLIAM POWELL COMPANY;**
and DOES 1-450, inclusive,

Defendants.

## GENERAL ALLEGATIONS

COME NOW, Plaintiffs **TERRY LEE SIEGFRIED** and **TERRI SIEGFRIED** (hereinafter "Plaintiffs") and complain and allege as follows:

1.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.     At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants 3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR

1  COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a

2  WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH

3  CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M.

4  SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS); CARRIER CORPORATION;

5  CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a

6  VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania

7  Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-

8  interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually

9  and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as

10  AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING

11  DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to

12  ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued

13  individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE

14  COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually

15  and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued

16  individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON

17  ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER

18  INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON

19  ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND

20  CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER

21  GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-

22  interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER

23  WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-

24  DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH

25  IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC

26  COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,

27  MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

28  (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.

WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY; ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS; RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

1  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,

2  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID

3  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,

4  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC

5  PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as

6  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE

7  DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-

8  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN

9  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);

10  WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued

11  individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and

12  as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS

13  USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES

14  1-450 ("Defendants"), inclusive, were individuals, corporations, partnerships and/or

15  unincorporated associations organized and existing under and by virtue of the laws of the State

16  of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,

17  and each of them, were and are authorized to do and are doing business in the State of

18  California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and

19  each of them, were and are authorized to do and are doing business in the State of California,

20  and that said Defendants have regularly conducted business in the County of Los Angeles, State

21  of California.

22       3.       Plaintiffs allege that Plaintiff TERRY LEE SIEGFRIED was exposed to asbestos,

23  asbestos-containing products and/or products designed to be used in association with asbestos

24  products during his tenure as an electrician at Long Beach Naval Shipyard from approximately

25  1969 through 1996.

26       4.       Plaintiffs allege herein that Plaintiff TERRY LEE SIEGFRIED developed

27  malignant mesothelioma as a result of Defendants AIR & LIQUID SYSTEMS

28  CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);

1   ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE
2   CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-
3   in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION);
4   ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.;
5   AURORA PUMP COMPANY; A.O. SMITH CORP.; CARRIER CORPORATION; CARVER
6   PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as
7   successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a
8   WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF
9   STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as
10  successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-
11  CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING
12  DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to
13  ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued
14  individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE
15  COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually
16  and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued
17  individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON
18  ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER
19  INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON
20  ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND
21  CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER
22  GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-
23  interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER
24  WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-
25  DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH
26  IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC
27  COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,
28  MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

1   (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.
2   WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER
3   CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as
4   successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES
5   MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued
6   individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
7   HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued
8   individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
9   HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING
10  COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.
11  (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO
12  INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,
13  INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY
14  STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to
15  BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR
16  MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING
17  COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-
18  WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS
19  WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-
20  ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO
21  NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;
22  ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to
23  FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as
24  successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE
25  CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
26  RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D
27  COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE
28  CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by

1   merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

2   (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,

3   WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID

4   SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,

5   INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC

6   PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as

7   successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE

8   DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-

9   RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN

10  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);

11  WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued

12  individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and

13  as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS

14  USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES

15  1-450's ("Product Defendants") negligence and Plaintiff TERRY LEE SIEGFRIED'S exposure

16  to asbestos from products sold, shipped, supplied, distributed, installed, removed, or replaced by

17  Product Defendants. These products were defective and inherently dangerous asbestos-

18  containing products and/or products defectively designed to be used in association with asbestos

19  products

20       5.       Plaintiffs additionally allege that Plaintiff TERRY LEE SIEGFRIED developed

21  malignant mesothelioma as a result of Defendants, 3M COMPANY (f/k/a MINNESOTA

22  MINING & MANUFACTURING COMPANY); BACOU-DALLOZ USA, INC., (sued as

23  successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY

24  PRODUCTS); and DOES 351-450's ("RESPIRATOR DEFENDANTS") negligence,

25  defectively designed and manufactured safety masks, intentional misrepresentation,

26  concealment, and negligent misrepresentations to Plaintiff TERRY LEE SIEGFRIED and his

27  employers regarding their safety masks.

28  ///

## FIRST CAUSE OF ACTION

(Negligence)

PLAINTIFFS COMPLAIN OF PRODUCT DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

6.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

7.     At all times herein mentioned, each of the named Product Defendants and DOES 1-450 was the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and/or products designed to cut, saw or otherwise manipulate and products containing asbestos, including but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Product Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products and/or products designed to cut, saw or otherwise manipulate, products containing asbestos. The following Product Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity," Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Product Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Product Defendant enjoys the

1  goodwill originally attached to each such "alternate entity."

2

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| CARRIER CORPORATION | UNITED TECHNOLOGIES CORPORATION<br>BRYANT HEATING AND AIR CONDITIONING, INC. |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br>DAVIS ENGINEERING |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION<br>CHEMPUMP |
| CRANE ENVIRONMENTAL, INC. | COCHRANE CORPORATION |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |
| FMC CORPORATION | PEERLESS PUMP COMPANY<br>McNALLY INDUSTRIES-NORTHERN PUMP<br>FMC AGRICULTURAL PRODUCTS<br>FMC BIOPOLYMER<br>FMC LITHIUM<br>FMC ALKALI CHEMICALS<br>FMC FORET<br>NORTHERN PUMP COMPANY |

14

| | | |
|---|---|---|
| 1 | FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| 2 | | FOSTER WHEELER CONTRACTORS, INC. |
| 3 | | FOSTER WHEELER CORPORATION |
| 4 | | FOSTER WHEELER DEVELOPMENT CORP. |
| 5 | | FOSTER WHEELER ENERGY RESOURCES INC. |
| 6 | | FOSTER WHEELER ENERGY SERVICES, INC. |
| 7 | | FOSTER WHEELER ENVIRESPONSE, INC. |
| 8 | | FOSTER WHEELER ENVIRONMENTAL CORPORATION |
| 9 | | FOSTER WHEELER POWER GROUP, INC. FOSTER WHEELER POWER SYSTEMS, INC. |
| 10 | | FOSTER WHEELER PYROPOWER, INC. |
| 11 | | FOSTER WHEELER REALTY SERVICES, INC. |
| 12 | | FOSTER WHEELER USA CORPORATION |
| 13 | GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION GARDNER COMPANY |
| 14 | | GARDNER DENVER INDUSTRIAL MACHINERY |
| 15 | | COOPER INDUSTRIES, INC. SYLTONE PLC |
| 16 | | TAMROTOR GEOQUIP |
| 17 | | CHAMPION PNEUMATIC MACHINERY WITTIG |
| 18 | | ALLEN-STUART EQUIPMENT COMPANY |
| 19 | | AIR RELIEF BUTTERWORTH JETTING SYSTEMS |
| 20 | | INVINCIBLE AIRFLOW SYSTEMS HAMWORTHY BELISS & MORCOM |
| 21 | | HOFFMAN AIR AND FILTRATION SYSTEMS |
| 22 | | JOY MANUFACTURING COMPANY |
| 23 | GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| 24 | | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| 25 | | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| 26 | | GENERAL ELECTRIC TRADING COMPANY |
| 27 | THE GORMAN-RUPP COMPANY | C.H. WHEELER GRISCOM-RUSSELL |
| 28 | | |

| | | |
|---|---|---|
| 1 | GOULDS PUMPS (NY), INC | GOULDS PUMPS (TX), LP |
| 2 | HARDIE-TYNES, LLC | HARDIE-TYNES MANUFACTURING CO. |
| 3 | HOWDEN NORTH AMERICA, INC. | HOWDEN BUFFALO, INC. |
| 4 | | HOWDEN FAN<br>HOWDEN FAN COMPANY<br>THE HOWDEN FAN COMPANY |
| 5 | | NOVENCO FANS, INC.<br>AMERICAN DAVIDSON INC. |
| 6 | | HOWDEN SIROCCO INC.<br>HOWDEN BUBBALO FANS |
| 7 | | HOWDEN BUFFALO FORGE CO.<br>HOWDEN |
| 8 | IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC. |
| 9 | | WARREN PUMPS, INC.<br>COLFAX CORPORATION |
| 10 | | IMO PUMP<br>IMO AB |
| 11 | | COLFAX PUMP GROUP<br>ALLWEILER |
| 12 | | HOUTTUIN<br>C.H. WHEELER |
| 13 | INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG |
| 14 | | DRESSER-RAND<br>POWERWORKS |
| 15 | | THERMOKING<br>TERRY STEAM TURBINE COMPANY |
| 16 | | WHITON MACHINE CO. |
| 17 | ITT INDUSTRIES, INC. | ITT SERVICE INDUSTRIES CORPORATION |
| 18 | | RULE INDUSTRIES, INC.<br>GOULDS PUMPS, INCORPORATED |
| 19 | | GOULDS PUMPS (IPG), INC.<br>A-C PUMP |
| 20 | | AQUIOUS ADVANCED LIQUID SEPARATIONS |
| 21 | | BELL & GOSSETT<br>DOMESTIC PUMP |
| 22 | | ENGINEERED PROCESS SOLUTIONS GROUP |
| 23 | | FLOWTRONEX PSI INC.<br>ITT FLYGT |
| 24 | | HOFFMAN SPECIALTY<br>LOWARA |
| 25 | | MARLOW PUMPS<br>McDONNELL & MILLER |
| 26 | | ITT RICHTER CHEMIE-TECHNIK GmbH<br>SANITAIRE |
| 27 | | ITT STANDARD<br>VOGEL PUMPS |
| 28 | | WEDECO INDUSTRIES, INC. |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | | |
|---|---|---|
| 1 | | BARTON INSTRUMENTS DIVISION a/k/a |
| 2 | | PRIME MEASUREMENT PRODUCTS, LLC |
| | | NU-FLO MEASUREMENT SYSTEMS |
| 3 | | BRANOM INSTRUMENT COMPANY |
| | | BARTON INSTRUMENTS DIVISION a/k/a |
| 4 | | PRIME MEASUREMENT PRODUCTS, LLC |
| 5 | | NU-FLO MEASUREMENT SYSTEMS |
| | | BRANOM INSTRUMENT COMPANY |
| 6 | | |
| 7 | OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| | | FENCO |
| 8 | | MARINE ENGINEERING |
| | | FESCO |
| 9 | | FIBERGLAS ENGINEERING AND SUPPLY |
| 10 | | COMPANY |
| | | WILLIAM LANE COMPANY |
| 11 | | SILICARE INSULATION |
| | | ASBESTOS ENGINEERING & SUPPLY |
| 12 | | CO. |
| | | OWENS-BROCKWAY GLASS |
| 13 | | CONTAINERS |
| | | BROCKWAY GLASS CO., INC. |
| 14 | | OWENS-ILLINOIS GLASS COMPANY |
| 15 | SPX CORPORATION | THE VULCAN SOOT BLOWER |
| | | COMPANY COPES-VULCAN |
| 16 | | WEIL-MCLAIN COMPANY |
| | | THE MARLEY WYLAIN COMPANY |
| 17 | | |
| 18 | STERLING FLUID SYSTEMS (USA) LLC | STERLING FLUID SYSTEMS (AMERICAS) INC. |
| | | STERLING FLUID SYSTEMS (CANADA) |
| 19 | | LTD. |
| | | STERLING FLUID SYSTEMS |
| 20 | | (COLOMBIA) LTD. |
| | | PEERLESS PUMP COMPANY |
| 21 | | LaBOUR PUMP COMPANY |
| | | STERLING PEERLESS PUMPS |
| 22 | | |
| 23 | VIAD CORPORATION | THE DIAL CORPORATION |
| | | GRISCOM-RUSSELL COMPANY |
| 24 | VIKING PUMP, INC. | IDEX CORPORATION |
| | | ROTO KING PUMP, INC. |
| 25 | | HOUDAILLE VIKING PUMP, INC. |
| 26 | WARREN PUMPS, LLC | WARREN PUMPS INC. |
| | | WARREN PUMPS-HOUDAILLE, INC. |
| 27 | | COLFAX PUMP GROUP |
| | | ALWEILER AG |
| 28 | | HOUTTUIN BV |

COMPLAINT FOR PERSONAL INJURY -- ASBESTOS

| | | |
|---|---|---|
| 1 | | IMO PUMP |
| | | ZENITH PUMPS |
| 2 | | QUIMBY PUMP CO. |
| 3 | WEIR VALVE & CONTROLS USA INC. | ATWOOD & MORRILL CO.,INC. |
| | | THE WEIR GROUP PLC |
| 4 | | WEIR MINERALS |
| | | WEIR CLEAR LIQUID |
| 5 | | WEIR VALVES & CONTROLS |
| | | WEIR SERVICES |
| 6 | | WEIR TECHNA |
| | | A & M VALVE |
| 7 | | HOPHOLD A & M, INC. |
| 8 | THE WILLIAM POWELL COMPANY | POWELL VALVES |

8. At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos (hereinafter Defendants' Products).

9. At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph three 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff TERRY LEE SIEGFRIED herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to Product Defendants, their "alternate entities," and each of them,

18

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   thereby rendering said products unsafe and dangerous for use by "exposed person." Plaintiffs

2   herein allege that TERRY LEE SIEGFRIED was exposed to asbestos that was caused to be

3   released as a result of exposure to Defendants' Products, including but not limited to those

4   products identified in paragraph 3 above (hereinafter referred to as "Defendants' products" or

5   "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor

6   in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff

7   TERRY LEE SIEGFRIED's injuries.

8          10.    Product Defendants, their "alternate entities," and each of them, had a duty to

9   exercise reasonable care while engaging in the activities mentioned above, and each Product

10  Defendants breached said duty of reasonable care in that Product Defendants, and each of them,

11  failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to

12  test said products; failed to investigate the hazards of said products; failed to warn "exposed

13  person," including Plaintiff TERRY LEE SIEGFRIED of the health hazards of using

14  Defendants' products; failed to warn of the harmful exposures caused by use of said products to

15  cut, saw or otherwise manipulate asbestos containing products; failed to disclose the known or

16  knowable dangers of using Defendants' products; failed to obtain suitable alternative materials

17  to asbestos when such alternatives were available; and as otherwise stated herein.

18         11.    The Defendants' products were and are hazardous to the health and safety of

19  Plaintiff, and others in Plaintiff's position working with and in close proximity to such products,

20  and since on or before 1930, the hazards and dangerous propensities of the Defendants' products

21  were both known and knowable to the Product Defendants, their "alternate entities," and each of

22  them, through the use of medical and/or scientific data and other knowledge available to

23  Defendants, their "alternate entities," and each of them at the time of Product Defendants'

24  manufacture, distribution, sale, research, study, fabrication, design, modification, labeling,

25  assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting

26  for installation, repair, marketing, warranting, re-branding, re-manufacturing for others,

27  packaging and advertising, of those products, which clearly indicated the hazards and dangerous

28  propensities of asbestos presented a substantial danger to users, including Plaintiff, TERRY

1  LEE SIEGFRIED of Defendants' Products through the intended and reasonably foreseeable use
2  of those products.

3      12.   Product Defendants, their "alternate entities," and each of them, knew, or
4  reasonably should have known, that Defendants' Products were dangerous and were likely to be
5  dangerous when used in their intended and reasonably foreseeable manner.

6      13.   Product Defendants, their "alternate entities," and each of them, knew, or
7  reasonably should have known, that Defendants' Products would be installed, repaired,
8  maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept,
9  broken, "ripped out," and/or used to cut, saw or otherwise manipulate products containing
10  asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the
11  release of airborne hazardous and dangerous asbestos fibers, and that through such activity,
12  "exposed person," including Plaintiff TERRY LEE SIEGFRIED herein, would be exposed to
13  said hazardous and dangerous asbestos fibers. Product Defendants, their "alternate entities," and
14  each of them, knew or reasonably should have known that users, such as Plaintiff TERRY LEE
15  SIEGFRIED and others in his position, working with and in close proximity to Defendants'
16  Products would not realize or know the danger. Product Defendants, their "alternate entities,"
17  and each of them negligently failed to adequately warn or instruct of the dangers of the products.
18  A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the
19  same or similar circumstances, would have warned of the dangers to avoid exposing others to a
20  foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities," and each
21  of them to warn was a substantial factor in causing harm to Plaintiff TERRY LEE SIEGFRIED.

22      14.   Plaintiff TERRY LEE SIEGFRIED used, handled, or was otherwise exposed to
23  asbestos from Defendants' Products referred to herein in a manner that was reasonably
24  foreseeable to Product Defendants and each of them. Plaintiff's exposure to Defendants'
25  Products occurred at various locations set forth in **Exhibit "A"** which is attached hereto and
26  incorporated by reference herein.

27      15.   As a direct and proximate result of the conduct of the Product Defendants, their
28  "alternate entities," and each of them, as aforesaid, Plaintiff TERRY LEE SIEGFRIED's

1  exposure to asbestos from use of Defendants' Products caused severe and permanent injury to

2  the Plaintiff. Plaintiffs are informed and believe, and thereon allege, that progressive lung

3  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

4  perceptible trauma and that said disease results from exposure to Defendants' Products over a

5  period of time.

6      16.    Plaintiff TERRY LEE SIEGFRIED was informed of his malignant mesothelioma

7  diagnoses on or about October 2017. His malignant mesothelioma was caused by exposure to

8  asbestos from Defendants' Products and/or from the use of Defendants' Products while serving

9  as an electrician at Long Beach Naval Shipyard; both from his on "hands-on" work as an

10 electrician and from working in close proximity to other workers who cut, sawed or otherwise

11 manipulated products containing asbestos. Plaintiff TERRY LEE SIEGFRIED was not aware at

12 the time of exposure that Defendants' Products presented any risk of injury and/or disease.

13     17.    As a direct and proximate result of the aforesaid conduct of Product Defendants,

14 their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has suffered and

15 will continue to suffer permanent injuries and future injuries to his person, body and health,

16 including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,

17 somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and

18 emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his

19 general damage in a sum in excess of the jurisdictional limit of a limited civil case.

20     18.    As a direct and proximate result of the aforesaid conduct of the Product

21 Defendants, their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has

22 incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons,

23 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

24 amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

25     19.    As a further direct and proximate result of the said conduct of the Product

26 Defendants, their "alternate entities," and each of them, Plaintiff has incurred, and will incur,

27 loss of income, wages, profits and commissions, a diminishment of earning potential, and other

28 pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject

1    to proof at trial.

2        20.    Plaintiffs further allege that Product Defendants, their "alternate entities," and

3    each of them, also engaged in the following wrongful acts:

4            (a)    Product Defendants, their "alternate entities," and each of them, suppressed

5        from all consumers, including Plaintiff TERRY LEE SIEGFRIED medical and scientific

6        information concerning the health hazards associated with inhalation of asbestos,

7        including the substantial risk of injury or death therefrom. Although Defendants, and

8        each of them, knew of the substantial risks associated with exposure to asbestos, they

9        willfully and knowingly concealed such information from the users of their asbestos

10       and/or asbestos-containing products in conscious disregard of the rights, safety and

11       welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

12           (b)    Product Defendants, their "alternate entities," and each of them, belonged

13       to, participated in, and financially supported industry organizations which, for and on

14       behalf of Defendants, their "alternate entities," and each of them, actively promoted the

15       suppression of information about the dangers of asbestos to users of the aforementioned

16       products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED as to the

17       safety of their products. Through their participation and association with such industry

18       organizations, Product Defendants and each of them knowingly and deliberately

19       concealed and suppressed the true information regarding asbestos and its dangers, and

20       propagated misinformation intended to instill in users of Defendants' Products a false

21       security about the safety of their products;

22           (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos

23       and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

24       Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

25       "alternate entities," and each of them, knew and possessed medical and scientific

26       information of the connection between the inhalation of asbestos fibers and asbestosis,

27       which information was disseminated through the Asbestos Textile Institute and other

28       industry organizations to all other Product Defendants, their "alternate entities," and each

of them, herein;

(d)     Product Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Product Defendants, their "alternate entities," and each of them, failed to provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing such material;

(f)     Product Defendants, their "alternate entities," and each of them, knew and failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Product Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Product Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading;

(h)     Product Defendants, their "alternate entities," and each of them, and their

1  officers, directors, and managing agents participated in, authorized, expressly and
2  impliedly ratified, and had full knowledge of, or should have known of, each of the acts
3  set forth herein. Product Defendants, their "alternate entities," and each of them, are
4  liable for the oppressive and malicious acts of their "alternate entities," and each of them,
5  and each Product Defendant's officers, directors, and managing agents participated in,
6  authorized, expressly and impliedly ratified, and had full knowledge of, or should have
7  known of, the acts of each of their "alternate entities" as set forth herein.

8      21.   The herein-described conduct of said Product Defendants, their "alternate
9  entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in
10 conscious disregard and indifference to the safety and health of "exposed person," including
11 Plaintiff TERRY LEE SIEGFRIED, in that Defendants, and each of them, continued to
12 manufacture, market and/or sell dangerous products known to cause asbestos to be released, and
13 to cause severe, permanent injuries and death, despite possessing knowledge of the substantial
14 hazards posed by use of their products, in order to continue to profit financially therefrom.
15 Product Defendants, their "alternate entities," and each of them, engaged in such conduct so
16 despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down
17 upon and despised by ordinary people and justifies an award of punitive and exemplary damages
18 pursuant to Civil Code section 3294. Plaintiff, for the sake of example and by way of punishing
19 said Defendants, seek punitive damages according to proof.

20     22.   Product Defendants and each of them engaged in conduct which was intended by
21 Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was
22 carried on by the Defendant with a willful and conscious disregard of the rights or safety of
23 others, including Plaintiff TERRY LEE SIEGFRIED.

24     23.   Product Defendants, and each of them, engaged in the despicable conduct
25 described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel
26 and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung
27 cancer and mesothelioma, in conscious disregard of those persons' rights.

28     24.   As a direct and proximate result of such intentional conduct by Product

Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF PRODUCT DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

26.    Product Defendants, their "alternate entities," and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiff, TERRY LEE SIEGFRIED, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff TERRY LEE SIEGFRIED and others in Plaintiff's position working with and in close proximity to such products.

27.    Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," cut, sawed, installed, and/or used as intended, or used to cut, saw or manipulate products containing asbestos or otherwise disturbed, said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the possession of the Product Defendants, their "alternate entities," and each of them. At the time

1  Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and

2  in close proximity to such products, the products were substantially the same as when they left

3  the possession of the Product Defendants, their "alternate entities," and each of them and/or any

4  changes made to the products after they left the possession of Defendants, their "alternate

5  entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities,"

6  and each of them. Product Defendants' asbestos and asbestos products were used by Plaintiff

7  TERRY LEE SIEGFRIED, and others in Plaintiff's position working with and in close

8  proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of

9  them. The defect in said products was a substantial factor in causing harm and personal injuries

10  to Plaintiff TERRY LEE SIEGFRIED, including malignant mesothelioma, while being used in a

11  reasonably foreseeable manner, thereby rendering said products defective, unsafe, and

12  unreasonably dangerous for their ordinary and intended use.

13      28.    As a direct and proximate result of the actions and conduct outlined herein,

14  Defendants' Products failed to perform as safely as an ordinary consumer would have expected

15  in that Defendants' Products, and each of them, caused respirable asbestos fibers to be released

16  from asbestos products during their ordinary and intended use, and such hazardous exposures

17  lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases,

18  including asbestosis, lung cancer, mesothelioma and other cancers in humans. Plaintiffs further

19  allege that "exposed person," including Plaintiff TERRY LEE SIEGFRIED, were unaware of

20  the harmful effects of asbestos and further unaware of the harmful exposures to Defendants'

21  Products when such exposures occurred, and thus the failure of Defendants' Products to perform

22  as safely as Plaintiff TERRY LEE SIEGFRIED had reason to expect was a substantial factor in

23  causing his injuries.

24      29.    As a direct and proximate result of the actions and conduct outlined herein,

25  Plaintiff TERRY LEE SIEGFRIED has suffered the injuries and damages alleged herein.

26      30.    Plaintiffs further allege that Product Defendants, their "alternate entities," and

27  each of them, also engaged in the following wrongful acts:

28          (a)    Product Defendants, their "alternate entities," and each of them, suppressed

1  from all consumers, including Plaintiff TERRY LEE SIEGFRIED, medical and scientific

2  information concerning the health hazards associated with inhalation of asbestos,

3  including the substantial risk of injury or death therefrom. Although Defendants, and

4  each of them, knew of the substantial risks associated with exposure to asbestos, they

5  willfully and knowingly concealed such information from the users of their asbestos

6  and/or asbestos-containing products in conscious disregard of the rights, safety and

7  welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

8        (b)    Product Defendants, their "alternate entities," and each of them, belonged

9  to, participated in, and financially supported industry organizations, including but not

10  limited to the Gypsum Association, Asbestos Information Association, Industrial

11  Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate

12  entities," and each of them, actively promoted the suppression of information about the

13  dangers of asbestos to users of the aforementioned products and materials, thereby

14  misleading Plaintiff TERRY LEE SIEGFRIED and as to the safety of their products.

15  Through their participation and association with such industry organizations, Defendants

16  and each of them knowingly and deliberately concealed and suppressed the true

17  information regarding asbestos and its dangers, and propagated misinformation intended

18  to instill in users of Defendants' Products a false security about the safety of their

19  products. The Dust Control Committee, which changed its name to the Air Hygiene

20  Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject

21  of dust control. Discussions in this committee were held many times regarding the

22  dangers inherent in asbestos and the dangers, which arise from the lack of control of dust,

23  and such information was suppressed from public dissemination from 1946 to a date

24  unknown to Plaintiff TERRY LEE SIEGFRIED at this time;

25        (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos

26  and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

27  Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

28  "alternate entities," and each of them, knew and possessed medical and scientific

1    information of the connection between the inhalation of asbestos fibers and asbestosis,

2    which information was disseminated through the Asbestos Textile Institute and other

3    industry organizations to all other Defendants, their "alternate entities," and each of them,

4    herein;

5           (d)    Product Defendants, their "alternate entities," and each of them, failed to

6    warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which

7    were dangerous when breathed and which could cause pathological effects without

8    noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of

9    them, possessed knowledge and were under a duty to disclose that said materials were

10    dangerous and a threat to the health of persons coming into contact therewith;

11           (e)    Product Defendants, their "alternate entities," and each of them, failed to

12    provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate

13    protective masks and other equipment devised to be used when applying, mixing, sawing,

14    cutting, installing and sanding the products of the Defendants, their "alternate entities,"

15    and each of them, despite knowing that such protective measures were necessary, and

16    that they were under a duty to disclose that such materials were dangerous and would

17    result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing

18    such material;

19           (f)    Product Defendants, their "alternate entities," and each of them, knew and

20    failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated,

21    upon inhalation of asbestos would, in time, have a substantial risk of developing

22    irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

23           (g)    Product Defendants, their "alternate entities," and each of them, failed to

24    provide information of the true nature of the hazards of asbestos materials and that

25    exposure to these material would cause pathological effects without noticeable trauma to

26    the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE

27    SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and

28    others who were exposed to asbestos, despite the fact that Product Defendants, their

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   "alternate entities," and each of them, were under a duty to so inform and said failure was

2   misleading; and

3         (h)   Product Defendants, their "alternate entities," and each of them, and their

4   officers, directors, and managing agents participated in, authorized, expressly and

5   impliedly ratified, and had full knowledge of, or should have known of, each of the acts

6   set forth herein. Product Defendants, their "alternate entities," and each of them, are

7   liable for the oppressive and malicious acts of their "alternate entities," and each of them,

8   and each Defendant's officers, directors, and managing agents participated in, authorized,

9   expressly and impliedly ratified, and had full knowledge of, or should have known of, the

10  acts of each of their "alternate entities" as set forth herein.

11      31.   The herein-described conduct of said Product Defendants, their "alternate

12  entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in

13  conscious disregard and indifference to the safety and health of "exposed person," including

14  Plaintiff TERRY LEE SIEGFRIED, in that Product Defendants, and each of them, continued to

15  manufacture, market and/or sell dangerous products known to cause severe, permanent injuries

16  and death, despite possessing knowledge of the substantial hazards posed by use of their

17  products, in order to continue to profit financially therefrom. Product Defendants, their

18  "alternate entities," and each of them, engaged in such conduct so despicable, contemptible,

19  base, vile, miserable, wretched and loathsome as to be looked down upon and despised by

20  ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil

21  Code section 3294. Plaintiff, for the sake of example and by way of punishing said Product

22  Defendants, seeks punitive damages according to proof.

23      32.   Product Defendants and each of them engaged in conduct which was intended by

24  Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was

25  carried on by the Defendant with a willful and conscious disregard of the rights or safety of

26  others, including Plaintiff TERRY LEE SIEGFRIED.

27      33.   Product Defendants, and each of them, engaged in the despicable conduct

28  described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel

1   and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung

2   cancer and mesothelioma, in conscious disregard of those persons' rights.

3       34.   As a direct and proximate result of such intentional conduct by Product

4   Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

5   sustained the injuries and damages alleged herein.

6       WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

7   entities," and each of them, as hereinafter set forth.

8   **THIRD CAUSE OF ACTION**

9   (False Representation Under Restatement of Torts Section 402-B)

10  AS AND FOR A FURTHER, THIRD SEPARATE, AND DISTINCT CAUSE OF
    ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS

11  SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
    "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12

13      35.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each

14  and every paragraph of the general allegations and the allegations contained in the First and

15  Second Causes of Action herein.

16      36.   At the aforementioned time when Defendants, their "alternate entities," and each

17  of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

18  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered

19  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

20  marketed, warranted, re-branded, manufactured for others, packaged and advertised the said

21  asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their

22  "alternate entities," and each of them, expressly and impliedly represented to members of the

23  general public, including the purchasers and users of said product, and other "exposed persons,"

24  including, without limitation, Plaintiff TERRY LEE SIEGFRIED and his employers, that

25  asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for

26  which they were intended.

27      37.   The purchasers and users of said asbestos and asbestos-containing products, and

28  other "exposed persons," including, without limitation, Plaintiff TERRY LEE SIEGFRIED, and

his employers, relied upon said representations of Defendants, their "alternate entities," and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

38.   Said representation by Defendants, their "alternate entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities," and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons" thereby threatening the health and life of said persons, including Plaintiff TERRY LEE SIEGFRIED herein.

39.   As a direct and proximate result of said false representations by Defendants, their "alternate entities," and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

(Intentional Tort/Intentional Failure to Warn)

AS AND FOR A FURTHER, FOURTH SEPARATE, AND DISTINCT CAUSE OF ACTION FOR INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

40.   Plaintiffs hereby incorporates by reference, as though fully set forth herein, each and every paragraph of the general allegations and the allegations contained in the First through Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

41.   At all times pertinent hereto, the Defendants their "alternate entities," and each of them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California to abstain from injuring the person, property, or rights of the Plaintiffs. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities,"

1   and each of them, did do the acts and omissions in violation of that duty, thereby causing injury

2   to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts

3   falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of

4   the State of California and, more specifically, included suggestions of fact which were not true

5   and which Defendants, their "alternate entities," and each of them, did not believe to be true;

6   assertions of fact which were not true and which Defendants, their "alternate entities," and each

7   of them, had no reasonable ground for believing to be true, and the suppression of fact when a

8   duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty

9   gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the

10  aforementioned Civil Code sections.

11      42.    Since on or before 1930, the Defendants, their "'alternate entities," and each of

12  them, have known and have possessed the true facts of medical and scientific data and other

13  knowledge which clearly indicated that the asbestos and asbestos-containing products and

14  equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health

15  and safety of Plaintiffs, and others in Plaintiff TERRY LEE SIEGFRIED's position working in

16  close proximity with such materials. The Defendants, their "alternate entities," and each of them,

17  have known of the dangerous propensities of the aforementioned materials and products since

18  before that time. With intent to deceive Plaintiff TERRY LEE SIEGFRIED, and others in

19  Plaintiffs' position, and with intent that he and such others should be and remain ignorant of

20  such facts with intent to induce Plaintiffs and such others to alter his and their positions to his

21  and their injury and/or risk and in order to gain advantages, the following acts occurred:

22          (a)    Defendants, their "alternate entities," and each of them, did not label any of

23              the aforementioned asbestos-containing materials, products, and equipment regarding the

24              hazards of such materials and products to the health and safety of Plaintiffs and others in

25              Plaintiffs' position working in close proximity with such materials until 1964, when

26              certain of such materials were labeled by some, but not all, of Defendants, their "alternate

27              entities," and each of them, since on or before 1930. By not labeling such materials,

28              products, and equipment as to their said hazards, Defendants, their "alternate entities,"

1  and each of them, caused to be suggested as a fact to Plaintiffs that it was safe for

2  Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials, when in

3  fact it was not true; and Defendants, their "alternate entities," and each of them, did not

4  believe it to be true;

5        (b)    Defendants, their "alternate entities," and each of them, suppressed

6  information relating to the danger of use of the aforementioned materials, products, and

7  equipment by requesting the suppression of information to the Plaintiffs and the general

8  public concerning the dangerous nature of the aforementioned materials to workers, by

9  not allowing such information to be disseminated in a manner which would have given

10  general notice to the public and knowledge of the hazardous nature thereof when

11  Defendants, their "alternate entities," and each of them, were bound to disclose such

12  information;

13        (c)    Defendants, their "alternate entities," and each of them, sold the

14  aforementioned products, materials, and equipment to Plaintiff TERRY LEE

15  SIEGFRIED's employers and others without advising Plaintiff TERRY LEE

16  SIEGFRIED, his employer, and others of the dangers of use of such materials to persons

17  working in close proximity thereto when Defendants, their "alternate entities," and each

18  of them, knew of such dangers, and had a duty to disclose such dangers all as set forth

19  herein. By said conduct, Defendants, their "alternate entities," and each of them, caused

20  to be positively asserted to Plaintiff TERRY LEE SIEGFRIED that which was not true

21  and that which Defendants, their "alternate entities," and each of them had no reasonable

22  ground for believing to be true, to wit: that it was safe for Plaintiff TERRY LEE

23  SIEGFRIED to work in close proximity to such materials;

24        (d)    Defendants, their "alternate entities," and each of them, suppressed from

25  Plaintiffs medical and scientific data and knowledge of the results of studies including,

26  but not limited to, the information and contents of the "Lanza Report." Although bound to

27  disclose it, Defendants, their "alternate entities," and each of them, influenced A. J.

28  Lanza, M.D. to change his report, the altered version of which was published in Public

1    Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiffs and others to be

2    and remain ignorant thereof. Defendants, their "alternate entities," and each of them,

3    caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of

4    danger, thereby lessening the probability of notice of danger to the users thereof;

5        (e)    Defendants, their "alternate entities," and each of them, belonged to,

6    participated in, and financially supported industry organizations which, for and on behalf

7    of Defendants, their "alternate entities," and each of them, actively promoted the

8    suppression of information of danger to users of the aforementioned products and

9    materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED by the suggestions and

10   deceptions set forth above in this cause of action;

11       (f)    Commencing in 1930 with the study of mine and mill workers at Asbestos

12   and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

13   Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

14   "alternate entities," and each of them, knew and possessed medical and scientific

15   information of the connection between the inhalation of asbestos fibers and asbestosis,

16   which information was disseminated through the industry organizations to all other

17   Defendants, their "alternate entities," and each of them, herein. Defendants, their

18   "alternate entities," and each of them, suggested to the public as a fact that which is not

19   true and disseminated other facts likely to mislead Plaintiffs. Such facts did mislead

20   Plaintiffs and others by withholding the afore-described medical and scientific data and

21   other knowledge and by not giving Plaintiff TERRY LEE SIEGFRIED the true facts

22   concerning such knowledge of danger, which Defendants, their "alternate entities," and

23   each of them, were bound to disclose;

24       (g)    Defendants, their "alternate entities," and each of them, failed to warn

25   Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were

26   dangerous when breathed and which could cause pathological effects without noticeable

27   trauma, despite the fact that Defendants, their "alternate entities," and each of them,

28   possessed knowledge and were under a duty to disclose that said materials were

dangerous and a threat to the health of persons coming into contact therewith;

(h)    Defendants, their "alternate entities," and each of them, failed to provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective masks and other equipment to be used when applying and installing the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing such material;

(i)    Defendants, their "alternate entities," and each of them, when under a duty to so disclose, concealed from Plaintiff TERRY LEE SIEGFRIED the true nature of the industrial exposure of Plaintiff TERRY LEE SIEGFRIED and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities," and each of them, also concealed from Plaintiff TERRY LEE SIEGFRIED and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)    Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading;

(k)    Defendants, their "alternate entities," and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiffs' injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff TERRY LEE SIEGFRIED was in the class of persons with respect to whom a duty was owed to file

1   such reports and who would have been protected thereby if the fact of danger from

2   products complained of had become known;

3       (l)    Defendants, their "alternate entities," and each of them, having such

4   aforementioned knowledge, and the duty to inform Plaintiff TERRY LEE SIEGFRIED

5   about the true facts, and knowing the Plaintiff TERRY LEE SIEGFRIED did not possess

6   such knowledge and would breathe such material innocently, acted falsely and

7   fraudulently and with full intent to cause Plaintiff TERRY LEE SIEGFRIED to remain

8   unaware of the true facts and to induce Plaintiff TERRY LEE SIEGFRIED to work in a

9   dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil

10  Code of the State of California.

11      43.    As a direct and proximate result of such intentional conduct by Defendants, their

12  "alternate entities" and each of them, Plaintiffs sustained and continue to sustain the injuries and

13  damages alleged herein.

14      44.    The herein-described conduct of said Defendants, their "alternate entities," and

15  each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard

16  and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

17  example and by way of punishing said Defendants, seek punitive damages according to proof.

18      WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

19  entities," and each of them, as hereinafter set forth.

20  **FIFTH CAUSE OF ACTION**

21  (Respirator Defendant's Negligence)

22  AS AND FOR A FIFTH FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE
    OF ACTION, PLAINTIFFS COMPLAIN OF RESPIRATOR DEFENDANTS 3M COMPANY

23  f/k/a MINNESOTA MINING & MANUFACTURING COMPANY, BACOU-DALLOZ USA,
    INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a

24  WILLSON SAFETY PRODUCTS); and DOES 351-450, and THEIR "ALTERNATE
    ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25

26      45.    Plaintiffs incorporate herein by reference, as though fully set forth therein, the

27  general allegations set forth above.

28      46.    Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

36

1   DEFENDANTS' safety masks while he and others in his immediate presence removed,

2   replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

3       47.   At all times herein mentioned, RESPIRATOR DEFENDANTS were the

4   successor, successor-in-business, successor-in-product line or a portion thereof, parent,

5   subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an

6   entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,

7   assembling, distributing, buying, offering for sale, supplying, selling, inspecting, marketing,

8   warranting, re-branding, manufacturing for others, packaging and advertising safety masks.

9   | **DEFENDANT** | **ALTERNATE ENTITY** |
| --- | --- |
| 3M COMPANY | MINNESOTA MINING AND MANUFACTURING |
| BACOU-DALLOZ USA, INC | W.G.M. SAFETY PRODUCTS WILLSON SAFETY PRODUCTS |

14      48.   At all times herein mentioned, RESPIRATOR DEFENDANTS and their "alternate

15  entities" were engaged in the business of researching, manufacturing, fabricating, designing,

16  modifying, labeling, assembling, distributing, buying, offering for sale, supplying, selling,

17  inspecting, servicing, installing, renting, marketing, warranting, re-branding, manufacturing for

18  others, packaging, and advertising safety masks.

19      49.   RESPIRATOR DEFENDANTS knew, or reasonably should have known, that

20  safety masks were dangerous and were likely to be dangerous when used in their intended and

21  reasonably foreseeable manner.

22      50.   At all times herein mentioned, RESPIRATOR DEFENDANTS singularly and

23  jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed,

24  modified, tested or failed to test, warned or failed to warn of the health hazards, labeled,

25  assembled, distributed, bought, offered for sale, supplied, sold, inspected, serviced, installed,

26  repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised

27  safety masks to be used with asbestos, and were unreasonably dangerous because respirable

28  asbestos fibers could be and were inhaled while wearing RESPIRATOR DEFENDANTS' safety

1  masks resulting in personal injuries to users, consumers, workers, bystanders, and others,

2  including Plaintiff, TERRY LEE SIEGFRIED.

3      51.    Said safety masks were used at all times in a manner that was reasonably

4  foreseeable to RESPIRATOR DEFENDANTS thereby rendering said products unsafe and

5  dangerous for use by Plaintiff, TERRY LEE SIEGFRIED. Plaintiffs herein allege that

6  RESPIRATOR DEFENDANTS' negligence caused Plaintiff, TERRY LEE SIEGFRIED, to be

7  exposed to asbestos released from asbestos containing products, and that RESPIRATOR

8  DEFENDANTS' negligence and Plaintiff's exposures to asbestos resulting therefrom were

9  substantial contributing factors in the development of Plaintiff's malignant mesothelioma and

10 death, and therefore proximately caused Plaintiffs' injuries and damages.

11     52.    At all relevant times, RESPIRATOR DEFENDANTS had a duty to exercise

12 reasonable care while engaging in the activities mentioned above and RESPIRATOR

13 DEFENDANTS breached said duty of reasonable care in that RESPIRATOR DEFENDANTS

14 failed to safely and adequately design, manufacture and/or sell its safety masks; failed to test or

15 adequately test its safety masks; failed to investigate the hazards of its safety masks; failed to

16 instruct on safer uses of its safety masks to minimize or eliminate harmful exposures; failed to

17 warn "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, of the health hazards of

18 using RESPIRATOR DEFENDANTS' safety masks; failed to warn of the harmful exposures

19 caused by use of RESPIRATOR DEFENDANTS' safety masks; failed to instruct on safer uses

20 of said safety masks to minimize harmful exposures; failed to disclose the known or knowable

21 dangers of using RESPIRATOR DEFENDANTS' safety masks; and/or failed to obtain or offer

22 suitable alternative RESPIRATOR DEFENDANTS' safety masks when such alternatives were

23 available.

24     53.    Since on or before 1930, the hazards and dangerous propensities of the asbestos

25 were both known and knowable to RESPIRATOR DEFENDANTS through the use of medical

26 and/or scientific data and other knowledge available to RESPIRATOR DEFENDANTS at the

27 time of its manufacture, distribution, sale, research, study, fabrication, design, modification,

28 labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,

1   contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for

2   others, packaging and advertising, of its safety masks, all of which clearly indicated the hazards

3   and dangerous propensities of exposures to asbestos and that they presented a substantial danger

4   to end users, including Plaintiff, TERRY LEE SIEGFRIED.

5        54.    RESPIRATOR DEFENDANTS knew, or reasonably should have known, that is

6   safety masks would be used during the installation, repair, maintenance, overhaul, removal,

7   sawing, chipping, hammering, mixing, scraping, sanding, sweeping, breaking, "ripping out,"

8   cutting, dumping, disturbing or handling of asbestos, or otherwise in the ordinary, intended and

9   foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and

10   that through such activity, "exposed person," including Plaintiff, TERRY LEE SIEGFRIED,

11   herein, would be exposed to said hazardous and dangerous asbestos fibers while using

12   RESPIRATOR DEFENDANTS' safety masks in an intended and reasonably foreseeable

13   manner.

14        55.    RESPIRATOR DEFENDANTS' negligent failure to warn was a substantial factor

15   in causing harm to Plaintiff, TERRY LEE SIEGFRIED. RESPIRATOR DEFENDANTS knew

16   or reasonably should have known that users, such as Plaintiff, TERRY LEE SIEGFRIED, and

17   others in his position, working with and in close proximity to asbestos would not realize or

18   know the danger of asbestos while wearing its safety masks. RESPIRATOR DEFENDANTS

19   thereafter negligently failed to adequately warn or instruct of the dangers of asbestos while using

20   its safety masks, as reasonable designers, manufacturers, distributors, sellers, or suppliers, under

21   the same or similar circumstances, would have warned of these dangers to avoid asbestos

22   exposures, a foreseeable risk of harm.

23        56.    At all relevant, RESPIRATOR DEFENDANTS were additionally negligent

24   because they failed to recall/retrofit their safety masks in that RESPIRATOR DEFENDANTS

25   manufactured/distributed/sold products, that RESPIRATOR DEFENDANTS knew or

26   reasonably should have known were dangerous or were likely to be dangerous when used in a

27   reasonably foreseeable manner; that RESPIRATOR DEFENDANTS became aware of the

28   defectiveness of their safety masks after the product was sold to Plaintiff's employer; that

1  RESPIRATOR DEFENDANTS failed to recall/retrofit or warn of the dangers of using their

2  safety masks; that a reasonable manufacturer/distributor/seller under the same or similar

3  circumstance would have recalled/retrofitted the product; that Plaintiff, TERRY LEE

4  SIEGFRIED, was injured by asbestos using RESPIRATOR DEFENDANTS' safety masks; and

5  that RESPIRATOR DEFENDANTS' failure to recall/retrofit their masks was a substantial

6  factor in causing Plaintiff, TERRY LEE SIEGFRIED'S injuries and death.

7       57.   Plaintiffs further allege that RESPIRATOR DEFENDANTS also engaged in the

8  following wrongful acts:

9       (a)   RESPIRATOR DEFENDANTS suppressed from all consumers, including

10  Plaintiff, TERRY LEE SIEGFRIED, medical and scientific information concerning the

11  health hazards associated with inhalation of asbestos, including the substantial risk of

12  injury or death therefrom. Although RESPIRATOR DEFENDANTS knew of the

13  substantial risks associated with exposure to asbestos, they willfully and knowingly

14  concealed such information from the users of their asbestos and/or asbestos-containing

15  products in conscious disregard of the rights, safety and welfare of "exposed person,"

16  including Plaintiff, TERRY LEE SIEGFRIED;

17       (b)   RESPIRATOR DEFENDANTS belonged to, participated in, and

18  financially supported industry organizations, including but not limited to the Gypsum

19  Association, Asbestos Information Association, Industrial Hygiene Foundation and

20  others, which, for and on behalf of RESPIRATOR DEFENDANTS actively promoted the

21  suppression of information about the dangers of asbestos to users of the aforementioned

22  products and materials, thereby misleading Plaintiff, TERRY LEE SIEGFRIED, as to the

23  safety of their products. Through their participation and association with such industry

24  organizations, RESPIRATOR DEFENDANTS knowingly and deliberately concealed and

25  suppressed the true information regarding asbestos and its dangers, and propagated

26  misinformation intended to instill a false security about the asbestos. The Dust Control

27  Committee, which changed its name to the Air Hygiene Committee, of the Asbestos

28  Textile Institute, was specifically enlisted to study the subject of dust control. Discussions

1    in this committee were held many times regarding the dangers inherent in asbestos and

2    the dangers, which arise from the lack of control of dust, and such information was

3    suppressed from public dissemination from 1946 to a date unknown to Plaintiff, TERRY

4    LEE SIEGFRIED, at this time;

5        (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos

6    and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

7    Manhattan plants in Manheim and Charleston, South Carolina, RESPIRATOR

8    DEFENDANTS knew and possessed medical and scientific information of the

9    connection between the inhalation of asbestos fibers and asbestosis, which information

10   was disseminated through the Asbestos Textile Institute and other industry organizations

11   to RESPIRATOR DEFENDANTS. RESPIRATOR DEFENDANTS thereafter failed to

12   provide this information to consumers;

13       (d)    RESPIRATOR DEFENDANTS failed to warn Plaintiff, TERRY LEE

14   SIEGFRIED, and others of the nature of said materials which were dangerous when

15   breathed and which could cause pathological effects without noticeable trauma, despite

16   the fact that RESPIRATOR DEFENDANTS and its "alternate entities" possessed

17   knowledge and were under a duty to disclose that said materials were dangerous and a

18   threat to the health of persons coming into contact therewith;

19       (e)    RESPIRATOR DEFENDANTS failed to provide Plaintiff, TERRY LEE

20   SIEGFRIED, with information concerning adequate protective masks and other

21   equipment devised to be used when applying, mixing, sawing, cutting, installing and

22   sanding asbestos containing products, despite knowing that such protective measures

23   were necessary, and that they were under a duty to disclose that such materials were

24   dangerous and would result in injury to Plaintiff, TERRY LEE SIEGFRIED, and others

25   applying and installing such material;

26       (f)    RESPIRATOR DEFENDANTS knew and failed to disclose that Plaintiff,

27   TERRY LEE SIEGFRIED, and anyone similarly situated, upon inhalation of asbestos

28   would, in time, have a substantial risk of developing irreversible conditions of

pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     RESPIRATOR DEFENDANTS failed to provide information of the true nature of the hazards of its masks and asbestos and that exposure to asbestos would cause pathological effects without immediate, noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff, TERRY LEE SIEGFRIED, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that RESPIRATOR DEFENDANTS were under a duty to so inform and said failure was misleading;

(h)     RESPIRATOR DEFENDANTS and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS is liable for the oppressive and malicious acts of their "alternate entities" and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

58.     The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market, supply, distribute and/or sell dangerous safety masks known to allow exposures to asbestos, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of its safety masks, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome so as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said RESPIRATOR DEFENDANTS, seek punitive damages according to proof.

59.     RESPIRATOR DEFENDANTS engaged in conduct which was intended by

1  RESPIRATOR DEFENDANTS to cause injury to the Plaintiff, and its despicable conduct
2  which was carried on by the RESPIRATOR DEFENDANTS with a willful and conscious
3  disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

4    60.    RESPIRATOR DEFENDANTS engaged in the despicable conduct described
5  herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust
6  hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and
7  mesothelioma, in conscious disregard of those persons' rights.

8    61.    As a direct and proximate result of the conduct of RESPIRATOR
9  DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, was exposed to asbestos which caused
10  severe and permanent injury and death to the Plaintiff, the nature of which, along with the date
11  of Plaintiff diagnosis and death and the date he learned such injuries were attributable to
12  exposure to RESPIRATOR DEFENDANTS. Plaintiffs are now informed and believe, and
13  thereon allege, that progressive lung disease, cancer and other serious diseases are caused by
14  inhalation of asbestos fibers without immediate, perceptible trauma and that said disease results
15  from exposure to asbestos.

16    62.    Plaintiff, TERRY LEE SIEGFRIED suffered from malignant mesothelioma,
17  caused by RESPIRATOR DEFENDANTS' negligence and Plaintiff's exposure to asbestos
18  because of his reliance and use of RESPIRATOR DEFENDANTS' safety masks while
19  handling, cutting, sawing, lathing or otherwise manipulating asbestos and products containing
20  asbestos including those products identified in paragraph 3 above. Plaintiff, TERRY LEE
21  SIEGFRIED, was not aware at the time of exposure that RESPIRATOR DEFENDANTS' safety
22  masks presented any risk of injury and/or disease.

23    63.    As a direct and proximate result of such intentional conduct by RESPIRATOR
24  DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages
25  alleged herein, Plaintiff, TERRY LEE SIEGFRIED, suffered injuries to his person, body and
26  health, and death, including, but not limited to, pain, discomfort, loss of weight, loss of appetite,
27  fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental
28  and emotional distress attendant thereto, all to Plaintiffs' general damage in a sum in excess of

1  the jurisdictional limit of a limited civil case.

2      64.   As a direct and proximate result of the aforesaid conduct of RESPIRATOR

3  DEFENDANTS, Plaintiffs incurred, are presently incurring, and will incur in the future, liability

4  for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical

5  treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to

6  proof at trial.

7      65.   As a further direct and proximate result of the said conduct of the RESPIRATOR

8  DEFENDANTS, Plaintiffs incurred, and will incur, loss of income, wages, profits and

9  commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact

10  amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

11      WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

12  hereinafter set forth.

13  **SIXTH CAUSE OF ACTION**

14  (Respirator Defendants' Strict Liability)

15  AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF
    ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF RESPIRATOR

16  DEFENDANTS AND THEIR "ALTERNATE ENTITIES" AND ALLEGE AS FOLLOWS:

17      66.   Plaintiffs incorporate herein by reference, as though fully set forth therein, each

18  and every one of the general allegations and the allegations contained in paragraphs 1, 2, 3, 5,

19  and 45-65 above.

20      67.   Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

21  DEFENDANTS' safety masks while he and others in his immediate presence removed,

22  replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

23      68.   RESPIRATOR DEFENDANTS sold safety masks and failed to adequately warn

24  or instruct of the known and knowable dangers and risks of the ordinary, intended, and

25  foreseeable use of its safety masks, which dangers and risks would not have been, and were not,

26  recognized by RESPIRATOR DEFENDANTS' customers or ordinary consumers of the masks,

27  including Plaintiff, TERRY LEE SIEGFRIED.

28      69.   The lack of sufficient instructions and/or warnings was a substantial factor in

1  causing harm to Plaintiff, TERRY LEE SIEGFRIED, and others in Plaintiff's position working

2  with and in close proximity to such products.

3      70.    RESPIRATOR DEFENDANTS' safety masks were defective and unsafe for their

4  intended purpose and foreseeable use in that, when used said masks would result in inhalation of

5  hazardous and dangerous asbestos fibers by persons wearing the masks, including Plaintiff,

6  TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the

7  possession of RESPIRATOR DEFENDANTS.

8      71.    At the time RESPIRATOR DEFENDANTS' safety masks were used by Plaintiff

9  the products were in substantially the same condition as when they left the possession of

10  RESPIRATOR DEFENDANTS and/or any changes made to the products after they left the

11  possession of RESPIRATOR DEFENDANTS were reasonably foreseeable. RESPIRATOR

12  DEFENDANTS' safety masks were used by Plaintiff, TERRY LEE SIEGFRIED, in a way that

13  was reasonably foreseeable to RESPIRATOR DEFENDANTS. The defect in said products was

14  a substantial factor in causing harm and personal injuries to Plaintiff, TERRY LEE

15  SIEGFRIED, including malignant mesothelioma, since they were being used in a reasonably

16  foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably

17  dangerous for their ordinary and intended use.

18      72.    As a direct and proximate result of the actions and conduct outlined herein,

19  RESPIRATOR DEFENDANTS' safety masks failed to perform as safely as an ordinary

20  company or consumer would have expected in that RESPIRATOR DEFENDANTS' safety

21  masks allowed respirable asbestos fibers to be inhaled from asbestos products during the safety

22  masks ordinary and intended use, and these hazardous asbestos exposures cause severe and fatal

23  diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.

24      73.    Plaintiffs further allege Plaintiff, TERRY LEE SIEGFRIED, and his employers

25  were unaware of the defect in RESPIRATOR DEFENDANTS' safety masks and further

26  unaware of the harmful exposures to asbestos that would occur when using RESPIRATOR

27  DEFENDANTS' safety masks, and this failure of RESPIRATOR DEFENDANTS' safety masks

28  to perform as safely as expected was a substantial factor in causing his injuries.

74.     As a direct and proximate result of the actions, defects and conduct outlined herein, Plaintiff, TERRY LEE SIEGFRIED, suffered the injuries and damages alleged herein

75.     RESPIRATOR DEFENDANTS and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS are liable for the oppressive and malicious acts of its "alternate entities" and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

76.     The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing RESPIRATOR DEFENDANTS seeks punitive damages according to proof.

77.     RESPIRATOR DEFENDANTS engaged in conduct which was intended to cause injury to the Plaintiff, and despicable conduct which was carried on by RESPIRATOR DEFENDANTS with a willful and conscious disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

78.     RESPIRATOR DEFENDANTS engaged in the despicable conduct described herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

1       79.   As a direct and proximate result of such intentional conduct by RESPIRATOR

2   DEFENDANTS Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages

3   alleged herein.

4       WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

5   hereinafter set forth.

6   **SEVENTH CAUSE OF ACTION**

7   (Loss of Consortium)

8   AS AND FOR A FURTHER, SEVENTH SEPARATE, AND DISTINCT CAUSE OF
ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF TERRI SIEGFRIED COMPLAINS OF

9   DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
AND ALLEGES AS FOLLOWS:

10

11       80.   Plaintiff TERRI SIEGFRIED incorporates by reference, each and every paragraph

12   of the First through Sixth Causes of Action herein.

13       81.   Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED were married on

14   July 7, 1991, and at all times relevant to this action were, and are now, husband and wife.

15       82.   Prior to Plaintiff TERRY LEE SIEGFRIED's injuries as alleged, he was able and

16   did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof,

17   Plaintiff TERRY LEE SIEGFRIED has been unable to perform the necessary duties as a spouse

18   and the work and services usually performed in the care, maintenance, and management of the

19   family home, and he will be unable to perform such work, service and duties in the future. As a

20   proximate result thereof, TERRI SIEGFRIED has been permanently deprived and will be

21   deprived of the consortium of her spouse, including the performance of duties, all to his

22   damages, in an amount presently unknown but which will be proved at the time of trial.

23       83.   Plaintiff TERRI SIEGFRIED's discovery of this cause of her loss of consortium,

24   as herein alleged, first occurred within one year of the date this Complaint was filed.

25       84.   As a direct and proximate result of the acts of Defendants, their "alternate

26   entities," and each of them, and the severe injuries caused thereby to Plaintiff TERRY LEE

27   SIEGFRIED, as set forth in this complaint, Plaintiff TERRI SIEGFRIED has suffered, and for a

28   long period of time will continue to suffer, loss of consortium, including, but not limited, loss of

47
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  services, marital relations, society, comfort, companionship, love and affection of said spouse,

2  and has suffered severe mental and emotional distress and general nervousness as a result

3  thereof.

4       WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

5  and each of them, in an amount to be proved at trial in each individual case, as follows:

6       Plaintiff TERRY LEE SIEGFRIED:

7       1.    For Plaintiff's general damages according to proof;

8       2.    For Plaintiff's loss of income, wages, and earning potential according to proof;

9       3.    For Plaintiff's medical and related expenses according to proof;

10     Plaintiff TERRI SIEGFRIED:

11     4.    For Plaintiff's damages for loss of consortium and/or society according to proof;

12     Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED:

13     5.    For Plaintiffs' cost of suit herein;

14     6.    For exemplary or punitive damages according to proof;

15     7.    For damages for fraud according to proof; and

16     8.    For such other and further relief as the Court may deem just and proper, including

17  costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and

18  related provisions of law.

19

20  DATED: January 26, 2018      **THE LANIER LAW FIRM**

21

22           By:

23

24             Mark A. Linder

25             Case A. Dam

26             Attorneys for Plaintiffs

27

28

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

## DEMAND FOR JURY TRIAL

2   Plaintiffs hereby demand trial by jury as to all issues so triable.

3   DATED: January 26, 2018          **THE LANIER LAW FIRM**

4

5   By:

6   Mark A. Linder

7   Case A. Dam
    Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

i

**EXHIBIT "A"**

Plaintiff TERRY LEE SIEGFRIED's exposure to asbestos and asbestos-containing products occurred at various locations including but not limited to within the States of California, , and additional sites including, but not limited to:

| Employer | Location of Exposure | Job Title | Date(s) |
|---|---|---|---|
| Long Beach Naval Shipyard | Various, including, but not limited to: Long Beach Naval Shipyard; Long Beach, CA; Roark (FF-1053); Gray (FF-1054); Hepburn (FF-1055); Meyerkord (FF-1058); Lockwood (FF-1064); Markin Shields (FF-1066); Francis Hammonds (FF-1067); Downes (FF-1070); Cook (Ff-1083); Barbey (FF-1088); Ogden (LPD-5); Duluth (LPD-6;); Cleveland (LPD-7); Dubuque (LPD-8); Denver (LPD-9); Juneau (LPD-10); Norton Sound (AVM-1); St. Paul (CA-73); Chicago (CA-136); New Jersey (BB -62); Missouri (BB-63); Hull (DD-945); Morton (DD-948); Lofberg (DD-759); Tripoli (LPH-10); Paul Foster (DD-964); Kinkaid (DD-965); Hewitt (DD-966); David R Ray (DD-971); Oldendorf (DD-972); John Young (DD -973); Jouett (CG-29); Horne (CG-30); Sterett (CG-31); Fox (CG-33); Tarawa (LHA-1); Belleau Wood (LHA-3); Peleliu (LHA-5); Henry B. Wilson (DDG-7); Towers (DDG-9); Robison (DDG-12); Hoel (DDG-13); Waddell (DDG-24) | Various, including but not limited to: Electrician, Marine Electrician | Approx. 1969-1996 |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

i

1

**EXHIBIT "B"**

2      Plaintiff TERRY LEE SIEGFRIED's exposure to Defendants' Products caused severe

3  and permanent injury to Plaintiff TERRY LEE SIEGFRIED including, but not limited to,

4  mesothelioma. Plaintiff was diagnosed with mesothelioma on or about October of 2017.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Mark A. Linder, CA Bar No. 268796
   Case A. Dam, CA Bar No. 289054
2  **THE LANIER LAW FIRM**
3  6810 FM 1960 West
   Houston, TX 77069
4  Telephone: 713-659-5200
   Facsimile: 713-659-2204
5

6  Attorneys for Plaintiffs

7

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF LOS ANGELES**

10  **TERRY LEE SIEGFRIED and TERRI**          Case No.
    **SIEGFRIED,**
11

12                          Plaintiffs,        **NOTICE FOR POSTING JURY FEES**
                 vs.
13

14  **3M COMPANY** (f/k/a MINNESOTA
    MINING & MANUFACTURING
15  COMPANY);
    **AIR & LIQUID SYSTEMS**
16  **CORPORATION** (sued individually and
    as successor-in-interest to BUFFALO
17  PUMPS, INC.);
18  **ABB, INC.** (individually and as successor-
    in-interest to ITE IMPERIAL CO f/k/a
19  ITE CIRCUIT BREAKER COMPANY);
20  **ALFA LAVAL INC.** (sued individually
    and as successor-in-interest to THE
21  DELAVAL SEPARATOR COMPANY
    and SHARPLES CORPORATION);
22  **ATWOOD & MORRILL CO., INC.**
    d/b/a WEIR VALVES & CONTROLS
23  USA INC.;
24  **AURORA PUMP COMPANY;**
    **A.O. SMITH CORP.;**
25  **BACOU-DALLOZ USA, INC.,** (sued as
    successor-in-interest and/or f/k/a W.G.M.
26  SAFETY PRODUCTS d/b/a WILLSON
    SAFETY PRODUCTS);
27  **CARRIER CORPORATION;**
28  **CARVER PUMP COMPANY;**

                                    1

1  **CBS CORPORATION** (a Delaware
   Corporation) f/k/a VIACOM, INC. (as
2  successor-by-merger to CBS
3  CORPORATION) (a Pennsylvania
   Corporation) f/k/a WESTINGHOUSE
4  ELECTRIC CORPORATION) and also as
   successor-in-interest to BF
5  STURTEVANT;
6  **CLA-VAL CO.;**
   **CLEAVER-BROOKS, INC.** (sued
7  individually and as successor-in-interest to
   DAVIS ENGINEERING COMPANY
8  formerly known as AQUA-CHEM, INC.
9  doing business as CLEAVER-BROOKS
   DIVISION);
10 **COOPER WIRING DEVICES,** a
   division of COOPER INDUSTRIES
11 (individually and as successor-in-interest
12 to ARROW-HART & HEGEMAN, INC.);
   **COPES-VULCAN, INC.;**
13 **CRANE CO.** (sued individually and
   successor-in-interest to COCHRANE
14 CORPORATION; CHAPMAN VALVE
15 COMPANY and JENKINS VALVES);
   **CRANE ENVIRONMENTAL, INC.**
16 (sued individually and successor-in-
   interest to COCHRANE
17 CORPORATION);
18 **EATON CORPORATION** (sued
   individually and as successor-in-interest to
19 CUTLER-HAMMER INC.);
20 **EATON ELECTRICAL, INC.** (sued
   individually and as successor-in-interest to
21 CUTLER-HAMMER INC.);
   **ELLIOT TURBOMACHINERY**
22 **COMPANY** a/k/a ELLIOTT COMPANY;
   **EMERSON ELECTRIC CO.**
23 (individually and as successor-in-interest
24 to KEYSTONE VALVES AND
   CONTROLS, INC.);
25 **FISHER CONTROLS**
   **INTERNATIONAL LLC** f/k/a FISHER
26 GOVERNOR COMPANY;
27 **FMC CORPORATION** (sued
   individually and as successor-in-interest to
28 NORTHERN PUMP COMPANY and

PEERLESS PUMP COMPANY);
**FOSTER WHEELER ENERGY**
**CORPORATION;**
**FRASER BOILER SERVICE, INC.;**
**GARDNER-DENVER, INC.;**
**GENERAL DYNAMICS**
**CORPORATION** (successor-in-interest
to BATH IRON WORKS LTD. f/k/a THE
HYDE WINDLASS COMPANY);
**GENERAL ELECTRIC COMPANY**
(individually and as successor-in-interest
to MASONEILAN, and MANNING,
MAXWELL & MOORE, INC.);
**GIBBS & COX, INC.;**
**THE GORMAN-RUPP COMPANY**
(individually and as successor-in-interest
to PATTERSON PUMP COMPANY, and
C.H. WHEELER);
**GOULDS ELECTRONICS** (as
successor-in-interest to ITE CIRCUIT
BREAKER CO.);
**GOULDS PUMPS, INC.;**
**HARDIE-TYNES CO., INC.** (sued
individually and as successor-in-interest to
HARDIE-TYNES MANUFACTURING
CO. and HARDIE-TYNES
MANUFACTURING COMPANY);
**HARDIE-TYNES FOUNDRY &**
**MACHINE CO.** (sued individually and as
successor-in-interest to HARDIE-TYNES
MANUFACTURING CO. and HARDIE-
TYNES MANUFACTURING
COMPANY);
**HARDIE-TYNES, LLC** (sued
individually and as successor-in-interest to
HARDIE-TYNES MANUFACTURING
CO. and HARDIE-TYNES
MANUFACTURING COMPANY);
**HERCULES MANUFACTURING**
**COMPANY, INC;**
**HOWDEN NORTH AMERICA, INC.**
f/k/a HOWDEN BUFFALO, INC.
(individually and as successor-in-interest
to BUFFALO FORGE COMPANY);
**IMO INDUSTRIES, INC.** (sued
individually and as successor-in-interest to

DELAVAL TURBINE, INC.);
**INGERSOLL-RAND COMPANY**
(individually and as successor-in-interest
to TERRY STEAM TURBINE);
**ITT INDUSTRIES, INC.** (sued
individually and as successor-in-interest to
BELL & GOSSETT, FOSTER
ENGINEERING and HOFFMAN
SPECIALTY);
**KERR MACHINERY CO.** n/k/a KERR
PUMP & SUPPLY INC.;
**LAWLER MANUFACTURING
COMPANY, INC.** f/k/a LAWLER
AUTOMATIC CONTROLS, INC.;
**THE MARLEY-WYLAIN COMPANY;**
**MUELLER STEAM SPECIALITY
COMPANY** n/k/a WATTS WATER
TECHNOLOGIES, INC.;
**THE NASH ENGINEERING
COMPANY;**
**OWENS-ILLINOIS, INC.;**
**PPG INDUSTRIES, INC.** (individually
and as successor-in-interest to AKZO
NOBEL INC., and DEVOE COATINGS);
**QUIMBY EQUIPMENT COMPANY;**
**ROBERTSHAW CONTROLS
COMPANY** (individually and as
successor-in-interest to FULTON
SYLPHON COMPANY);
**ROCKWELL AUTOMATION INC.**
(individually and as successor by merger
to ALLEN-BRADLEY COMPANY LLC
and ROSTONE CORPORATION);
**ROSS OPERATING VALVE
COMPANY** d/b/a ROSS CONTROLS;
**RSCC WIRE & CABLE, LLC.;**
**SCHNEIDER ELECTRIC, USA, INC.,**
f/k/a SQUARE D COMPANY;
**SIEMENS CORPORATION**
(individually and as successor-in-interest
to ITE CIRCUIT BREAKER CO.);
**SIEMENS ENERGY INC.** (individually
and as successor by merger to DRESSER-
RAND GROUP, INC.);
**SPIRAX SARCO, INC.;**
**SPX CORPORATION** (sued individually

4

1  and as successor-in-interest to THE
   MARLEY COMPANY, WYLAIN, INC.,
2  WEIL-McCLAIN, a division of WYLAIN,
   INC., and WEIL-McCLAIN);
3  **STERLING FLUID SYSTEMS, (USA)**
   **LLC** f/k/a PEERLESS PUMP
4  COMPANY;
5  **SULZER PUMPS HOUSTON, INC.**
6  (sued individually and as successor-in-
   interest to PACO PUMPS f/k/a PACIFIC
7  PUMPING COMPANY);
8  **SUPERIOR-LIDGERWOOD-MUNDY**
   (individually and as successor-in-interest
9  to M.T. Davidson Co.);
   **VELAN VALVE CORP.;**
10 **VIAD CORP** f/k/a THE DIAL
   CORPORATION (sued individually and
11 as successor-in-interest to GRISCOM-
   RUSSELL COMPANY);
12 **VIKING PUMP, INC.,** a Unit of IDEX
13 Corporation;
   **WARREN PUMPS, LLC** (individually
14 and as successor-in-interest to QUIMBY
   PUMP COMPANY);
15 **WEIL-McCLAIN;**
16 **WEIL-McCLAIN,** a division of THE
   MARLEY COMPANY (sued individually
17 and as successor-in-interest to WYLAIN
   CO.);
18 **WILO USA LLC** (individually and as
19 successor-in-interest to WEIL PUMP
   COMPANY, INC.);
20 **WEIR VALVES & CONTROLS USA**
21 **INC.** f/k/a ATWOOD & MORRILL;
   **THE WILLIAM POWELL**
22 **COMPANY;**
   and DOES 1-450, inclusive,
23
24                                   Defendants.

25  ///
26  ///
27  ///
28  ///

PLAINTIFFS' NOTICE OF POSTING JURY FEES

1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that Plaintiffs have posted Jury Fees in the amount of $150 in

3  the above-entitled matter.

4

5  DATED: January 26, 2018        **THE LANIER LAW FIRM**

6

7                      By:

8

9                      Mark A. Linder
10                     Case A. Dam
                       Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF TEXAS                          )

COUNTY OF HARRIS                        )

    I am employed in the County of Harris, State of Texas.  I am over eighteen years of age and not a party to the within action; my business address is 6810 FM 1960 West, Houston, Texas 77069.

    On the date set forth below, I served the foregoing document(s) described as:

**PLAINTIFFS' NOTICE OF POSTING JURY FEES**

    By the method as described below:

[   ]   **BY MAIL:**   I caused such envelope(s) to be deposited in the mail at Houston, Texas, with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[   ]   **BY FACSIMILE:**   I caused a courtesy copy to be transmitted by facsimile to the facsimile number of the offices of the addressee(s) as indicated on the attached service list.

[   ]   **BY FEDERAL EXPRESS:**      I caused such envelope to be transmitted by federal express for next day delivery (by 10:30 a.m.) to the offices of the addressee(s) as indicated on the attached service list.

[ XX ] **BY PERSONAL SERVICE:**  I caused a courtesy copy to be hand delivered to the office of the addressee(s) as indicated in the attached service list.

[   ]   **BY ELECTRONIC SERVICE:**  I caused such document to be electronically served through File & Serve Xpress E-Serve on the recipients designated on the Transaction Receipt located on the File & Serve Xpress website (see attached service list).

    I declare under penalty of perjury, under the laws of the State of California that the above is true and correct.

    Executed this 26th day of January, 2018, at Houston, Texas.

*Sadie Turner*

SADIE TURNER

7

PLAINTIFFS' NOTICE OF POSTING JURY FEES

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| | | |
|---|---|---|
| **3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY)**<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **AIR AND LIQUID SYSTEMS CORPORATION**, as successor by merger to Buffalo Pumps, Inc.<br><br>**Registered Agent:**<br>CT Corporation System<br>116 Pine St, Ste. 320<br>Harrisburg, PA 17101-1250 | **ABB, INC.** (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA 90017 |
| **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION)<br><br>**Registered Agent:**<br>c/o CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060 | **ATWOOD & MORRILL CO., INC.** d/b/a WEIR VALVES & CONTROLS USA INC.<br><br>**Registered Agent:**<br>29 Old Right Road<br>Ipswich, MA 01938 | **AURORA PUMP COMPANY**<br><br>**Registered Agent:**<br>c/o Lynette Jones<br>13515 Ballantyne Corporate Place<br>Charlotte, NC 28277 |
| **A.O. SMITH CORP.**<br><br>**Registered Agent:**<br>The Prentice-Hall Corporation System, Inc.<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **BACOU-DALLOZ USA, INC.,** (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS<br><br>**Registered Agent:**<br>Corporation Service Company<br>222 Jefferson Blvd., Suite 200<br>Warwick, RI 02888<br>D | **CARRIER CORPORATION**<br><br>**Registered Agent:**<br>CT Corporation System<br>450 Veterans Memorial Parkway, Suite 7A<br>East Providence, RI 02914 |
| **CARVER PUMP COMPANY**<br><br>**Registered Agent:**<br>L & W Agents Inc<br>220 N Main St Ste 600<br>Davenport, IA, 52801 | **CBS CORPORATION** ((a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT<br><br>**Registered Agent:**<br>Corporation Service Company<br>Suite 400<br>2711 Centerville Road<br>Wilmington, Delaware 19808 | **CLA-VAL CO.**<br><br>**Registered Agent:**<br>Kelly Henrie, Communications Manager, Authorized to Accept<br>1701 Placentia Avenue<br>Costa Mesa, CA 92627 |

1

 

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST

Case No. BC_____

January 26, 2018

| | | |
|---|---|---|
| **CLEAVER-BROOKS, INC.** sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION<br><br>**Registered Agent:**<br>Corporation Service Company<br>2711 Centerville Rd., Suite 400<br>Wilmington, DE 19808 | **COOPER WIRING DEVICES,** a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);<br><br>**Registered Agent:**<br>CT Corporation System<br>350 North St. Paul Street, Suite 2900, Dallas, TX 75201 | **COPES-VULCAN, INC.**<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 |
| **CRANE CO.** individually and as successor in interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **CRANE ENVIRONMENTAL, INC.** individually and as successor in interest to COCHRANE CORPORATION<br><br>**Registered Agent:**<br>C T Corporation System<br>1200 South Pine Island Road<br>Plantation FL 33324 | **EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER-HAMMER INC.)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 |
| **EATON ELECTRICAL, INC.** (sued individually and as successor-in-interest to CUTLER-HAMMER INC.)<br><br>**Registered Agent:**<br>c/o Sam Anderson<br>1111 Superior A venue<br>Cleveland, OH 44114 | **ELLIOT TURBOMACHINERY COMPANY, INC.**<br><br>**Registered Agent:**<br>CT Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | **EMERSON ELECTRIC CO.** (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.)<br><br>**Registered Agent:**<br>c/o Sara Bosco<br>8000 West Florissant Ave.<br>St. Louis, MO 63136 |
| **FISHER CONTROLS INTERNATIONAL LLC** f/k/a FISHER GOVERNOR COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **FMC CORPORATION** (individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **FOSTER WHEELER ENERGY CORPORATION**<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 |
| **FRASER BOILER SERVICE, INC.**<br><br>**Registered Agent:**<br>Resource Transition Consultants Llc<br>144 Railroad Ave # 310<br>Edmonds, WA, 98020-0000 | **GARDNER-DENVER, INC.**<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **GENERAL DYNAMICS CORPORATION** (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY)<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St<br>**Wilmington, DE 19801** |

◯                    ◯

## SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
### SERVICE LIST

Case No. BC_____

### January 26, 2018

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY,** individually and as successor-in-interest to MASONNEILAN, and MANNING, MAXWELL & MOORE, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **GIBBS & COX, INC.**<br><br>**Registered Agent:**<br>CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060 | **THE GORMAN-RUPP COMPANY,** individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H. WHEELER<br><br>**Registered Agent:**<br>CSC-Lawyers Incorporating Service<br>50 West Broad Street, Suite 1800<br>Columbus, OH 43215 |
| **GOULDS ELECTRONICS** (as successor-in-interest to ITE CIRCUIT BREAKER CO.)<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA 90017 | **GOULDS PUMPS, INC.**<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St<br>Wilmington, DE 19801 | **HARDIE-TYNES FOUNDRY & MACHINE CO.** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>National Registered Agents, Inc.<br>150 S. Perry St.<br>Montgomery, AL 36104 |
| **HARDIE-TYNES CO., INC.** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>Charles W. Debardeleben<br>800 28th St. North<br>Birmingham, AL 35203 | **HARDIE-TYNES, LLC** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>National Registered Agents, Inc.<br>2 North Jackson Street, Suite 605<br>Montgomery, AL 36104 | **HERCULES MANUFACTURING COMPANY, INC.**<br><br>**Registered Agent:**<br>Brinkley Technology Group, Llc<br>2770 Erie St S<br>Massillon, OH 44646 |
| **HOWDEN NORTH AMERICA, INC.** f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY)<br><br>**Registered Agent:**<br>CT Corporation System<br>2 Office Park Court, Suite 103<br>Columbia, SC 29223 | **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **INGERSOLL-RAND COMPANY,** individually and as successor-in- ) interest to TERRY STEAM TURBINE<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 |

3

1

 

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| ITT INDUSTRIES, INC. sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFMAN SPECIALTY)<br><br>**Registered Agent:**<br>CT Corporation System<br>208 S. LaSalle St., Suite 814<br>Chicago, IL 60604 | KERR MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.<br><br>**Registered Agent:**<br>12880 Cloverdale<br>Oak Park, MI 48237 | LAWLER MANUFACTURING COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.<br><br>**Registered Agent:**<br>5330 East 25th Street<br>Indianapolis, IN 46218 |
|---|---|---|
| THE MARLEY-WYLAIN COMPANY<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 | MUELLER STEAM SPECIALITY now known as WATTS WATER TECHNOLOGIES, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>155 Federal St, Ste 700<br>Boston, MA 02110 | THE NASH ENGINEERING COMPANY, INC.<br><br>**Registered Agent:**<br>c/o United States Corporation Company<br>50 Weston Street<br>Hartford, CT 06120-15317 |
| OWENS-ILLINOIS, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>4400 Easton Commons Way Suite 125<br>Columbus,OH 43219 | PPG INDUSTRIES, INC. successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS<br><br>**Registered Agent:**<br>The Prentice-Hall<br>Corporation System, Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 | QUIMBY EQUIPMENT COMPANY<br><br>**Registered Agent:**<br>88 Sunnyside Blvd<br>Plainview, NY 11803 |
| ROBERTSHAW CONTROLS COMPANY I/A/S TO FULTON SYLPHON COMPANY<br><br>**Registered Agent:**<br>CT Corporatin Sytem<br>208 So Lasalle St, Suite 814<br>Chicago, IL 60604 | ROCKWELL AUTOMATION INC., as successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE CORPORATION;<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS<br><br>**Registered Agent:**<br>Claude D Mencotti<br>1250 Stephenson Highway<br>Troy, MI 48083 |
| RSCC Wire & Cable, LLC.<br><br>**Registered Agent:**<br>Corporation Service Company<br>50 Weston Street<br>Hartford, CT, 06120-1537 | SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D COMPANY<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | SIEMENS CORPORATION (as successor-in-interest to ITE CIRCUIT BREAKER CO.)<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA  90017 |

## SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
### SERVICE LIST

Case No. BC_____

### January 26, 2018

| | | |
|---|---|---|
| **SIEMENS ENERGY INC.** individually and as successor by merger to DRESSER-RAND GROUP, INC.<br><br>**Registered Agent:**<br>C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324 | **SPIRAX SARCO, INC.**<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **SPX CORPORATION** individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN<br><br>**Registered Agent:**<br>The Corporation Company<br>555 Capitol Mall Ste 1000<br>Sacramento, CA 95814 |
| **STERLING FLUID SYSTEMS (USA)LLC** f/k/a PEERLESS PUMP COMPANY<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center 1209 Orange St<br>Wilmington, DE 19801 | **SULZER PUMPS HOUSTON, INC.** (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC PUMPING COMPANY)<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 | **SUPERIOR-LIDGERWOOD-MUNDY,** individually and as successor-in-interest to M.T. Davidson Co.<br><br>**Registered Agent:**<br>Arthur Robert Woodman<br>302 Grand Avenue<br>Superior, WI 54880 |
| **VELAN VALVE CORPORATION**<br><br>**Registered Agent:**<br>CSC-Laywers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **VIAD CORP,** f/k/a The Dial Corporation, individually and as successor-in-interest to Griscom-Russell Company<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **VIKING PUMP, INC.,** a Unit of IDEX Corporation<br><br>**Registered Agent:**<br>CT Corporation System<br>500 East Court Avenue<br>Des Moines, IA 50309 |
| **WARREN PUMPS, LLC,** individually and as successor-in-interest to QUIMBY PUMP COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **WEIL-MCLAIN,**<br><br>**Registered Agent:**<br>CT Corporation System<br>150 West Market Street, Suite 800<br>Indianapolis, IN 46204 | **WEIL-MCLAIN,** a division of THE MARLEY-WYLAIN COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>150 West Market Street, Suite 800<br>Indianapolis, IN 46204 |
| **WILO USA LLC,** successor-in-interest to WEIL PUMP COMPANY, INC.<br><br>**Registered Agent:**<br>Corporation Service Company<br>8040 Excelsior Dr Ste 400<br>Madison , WI 53717 | **WEIR VALVES & CONTROLS USA INC.** f/k/a ATWOOD & MORRILL<br><br>**Registered Agent:**<br>Joseph Descavich<br>155 Federal Street, 7th FL<br>Boston, MA 02110 | **THE WILLIAM POWELL COMPANY**<br><br>**Registered Agent:**<br>2503 Spring Grove Ave<br>Cincinnati, OH 45214 |



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL - COMPLEX

Case Number _____

**BC 6 9 1 9 0 0**

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 323 | 1707 | | | | |
| Hon. William F. Highberger | 322 | 1702 | | | | |
| Hon. John Shepard Wiley, Jr. | 311 | 1408 | | | | |
| Hon. Kenneth Freeman | 310 | 1412 | | | | |
| Hon. Ann Jones | 308 | 1415 | | | | |
| Hon. Maren E. Nelson | 307 | 1402 | | | | |
| Hon. Carolyn B. Kuhl | 309 | 1409 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | Hon. Steven J. Kleifield | 324 | CCW |
| | | | | *Provisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lacourt.org under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR PLAINTIFF)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR DEFENDANT)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date:

_____   ➤   _____
(TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____          _____
                                                                        JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

    - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

    - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

■ **Arbitration**

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

■ **Mandatory Settlement Conference (MSC)**

**Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Additional Information**

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**CERTIFICATE OF SERVICE**

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 355 South Grand Ave., 43rd Floor, P.O. Box 17941, Los Angeles, CA 90071.

On February 28, 2018, I served the following document(s): **JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL; DECLARATION OF JUSTIN F. CRONIN** on the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

THE LANIER LAW FIRM                     All Defendants appearing herein
6810 FM 1960 West
Houston TX 77069

☐   I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at, Los Angeles, California.

☐   By Overnight Service: I caused the above-referenced document(s) to be deposited in a box or other facility regularly maintained by the overnight courier, or I delivered the above-referenced document(s) to an overnight courier service, for delivery to the above addressee(s).

☒   By E-Service: I electronically served the above document(s) via ECF/PACER.

☐   By Personal Service: I caused to be delivered by courier **Nationwide Legal Express,** such envelope by hand to the offices of the above addressee(s).

☐   By Personal Service: I delivered such envelope by hand to the offices of the addressee(s).

☐   By Facsimile Machine: The document was transmitted by facsimile transmission to the number(s) indicated and was reported as complete and without error.

Executed: February 28, 2018

☐   (State)          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

James A. Choi

JOINDER BY DEFENDANT CBS CORPORATION TO NOTICE OF REMOVAL
4520-4622:4846-0568-0989.v2