1  FRANK D. POND (Bar No. 126191)
   JUSTIN F. CRONIN (Bar No. 260188)
2  jcronin@pondnorth.com
   POND NORTH LLP
3  355 South Grand Ave., 43rd Floor
   P.O. Box 17941
4  Los Angeles, CA 90071
   Telephone:  (213) 617-6170
5  Facsimile:  (213) 623-3594

6  KEVIN D. JAMISON (Bar No. 222105)
   kjamison@kevinjamisonlaw.com
7  ERIN N. EMPTING (Bar No. 272130)
   eempting@kevinjamisonlaw.com
8  KEVIN JAMISON LAW, PC
   825 East 4th Street, Suite 204
9  Los Angeles, CA 90013
   Telephone: (213) 246-2732
10 Facsimile: (626) 314-1833

11 Attorneys for Defendant
   GENERAL ELECTRIC COMPANY

12

13           UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15

16 TERRY LEE SIEGFRIED and          Case No: 2:18-cv-01575
   TERRI SIEGFRIED,
17                                   *[Removed from the Los Angeles County
              Plaintiffs,            Superior Court, Case No. BC691900]*
18
        vs.                          **DEFENDANT GENERAL ELECTRIC**
19                                   **COMPANY'S JOINDER TO NOTICE OF**
   3M COMPANY, etc., et al.          **REMOVAL; DECLARATION OF JUSTIN**
20                                   **F. CRONIN**
              Defendants.
21                                   Judge:      Hon. Christina A. Snyder
                                     Courtroom: 8D, 8th Floor
22
                                     Case filed:  January 26, 2018
23                                   Removed:     February 26, 2016
                                     Trial:       None
24

25

26

27

28

   ─────────────────────────────────────────────────────
   DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
        REMOVAL; DECLARATION OF JUSTIN F. CRONIN
   4810-0453:4844-8523-3501.v2

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

2  **THE CENTRAL DISTRICT OF CALIFORNIA:**

3      **PLEASE TAKE NOTICE** that defendant General Electric Company ("GE")

4  hereby joins in the Notice of Removal of the above-styled civil action filed by

5  defendant Elliott Company ("Removing Defendant"). GE also asserts its own

6  independent grounds to support removal pursuant to 28 U.S.C. § 1442(a)(1). Relevant

7  to GE's grounds for removal, the Complaint alleges that Terry Lee Siegfried

8  ("Plaintiff") used, handled, or was otherwise exposed to asbestos during the course of

9  his work as an electrician at the Long Beach Naval Shipyard from approximately 1969

10 through 1996. [Complaint, ¶ 3, attached as "Exhibit A" to Removing Defendant's

11 Notice of Removal ("Notice of Removal")]. As supplemented by Plaintiff's

12 Preliminary Fact Sheet served upon GE along with the Complaint and other process,

13 Plaintiff's claims rest in part upon his alleged contact with main propulsion turbines

14 and turbo-generators that were designed, manufactured, and sold to the Navy by GE,

15 on the following U.S. Navy vessels: USS Roark (FF-1053); USS Gray (FF-1054);

16 USS Hepburn (FF-1055); USS Meyerkord (FF-1058); USS Lockwood (FF-1064);

17 USS Markin Shields (FF-1066); USS Francis Hammonds (FF-1067); USS Downes

18 (FF-1070); UFF Cook (FF-1083); USS Barbey (FF-1088); USS Ogden (LPD-5); USS

19 Duluth (LPD-6); USS Cleveland (LPD-7); USS Dubuque (LPD-8); USS Denver

20 (LPD-9); USS Juneau (LPD-10); USS Norton Sound (AVM-1); USS St. Paul (CA-

21 73); USS Chicago (CA-136); USS New Jersey (BB-62); USS Missouri (BB-63); USS

22 Hull (DD-945); USS Morton (DD-948); USS Lofberg (DD-759); USS Tripoli (LPH-

23 10); USS Paul Foster (DD-964); USS Kinkaid (DD-965); USS Hewitt (DD-966); USS

24 David R. Ray (DD-971); USS Oldendorf (DD-972); USS John Young (DD-973); USS

25 Jouett (CG-29); USS Horne (CG-30); USS Sterett (CG-31); USS Fox (CG-33); USS

26 Tarawa (LHA-1); USS Belleau Wood (LHA-3); USS Peleiu (LHA-5); USS Henry B.

27 Wilson (DDG-7); USS Towers (DDG-9); USS Robinson (DDG-12); USS Hoel

28 (DDG-13); and USS Waddell (DDG-24). [Prelim. Fact Sheet at p. 5, attached within

1

---

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN

4810-0453:4844-8523-3501.v2

1 | "Exhibit B" to the Notice of Removal]. Any such Navy turbines and turbo-generators
2 | were in fact delivered to the Navy by GE while acting as a government defense
3 | contractor that designed, manufactured, and sold vital military equipment to the Navy
4 | under intense supervision by the Navy's chain of command, including officers of the
5 | United States, pursuant to government contracts that incorporated detailed military
6 | specifications. GE is being sued, in part, based upon its performance of its
7 | government contracts and is thus entitled to assert the federal government contractor
8 | defense. That defense is sufficiently colorable to provide proper grounds to remove
9 | this case to federal court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer
10 | removal statute. *See Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir.), *cert. denied* 135 S.
11 | Ct. 361 (U.S. Oct. 14, 2014); *Cuomo v. Crane Co.*, 771 F.3d 113, 114-17 (2d Cir.
12 | 2014); *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012).

13 | **BACKGROUND**

14 |     1.    On January 26, 2018, Plaintiff filed his Complaint, Case No. BC691900,
15 | in the Superior Court of the State of California for the County of Los Angeles. A true
16 | and correct copy of the Summons, Complaint, and accompanying papers as served on
17 | GE are attached hereto collectively as "Exhibit 1." [Declaration of Justin F. Cronin
18 | ("Cronin Decl."), ¶ 3].

19 |     2.    Plaintiff served GE's agent for service with his Complaint and other
20 | papers on January 30, 2018. [Cronin Decl., ¶ 4].

21 |     3.    On February 26, 2018, Removing Defendant removed the matter to the
22 | United States District Court for the Central District of California under 28 U.S.C. §
23 | 1442(a)(1) and 1446 by filing a Notice of Removal in this court. [Notice of Removal
24 | [Doc. No. 1], already within the Court's file].

25 | **BASIS FOR REMOVAL AS TO CLAIMS ASSERTED AGAINST GE**

26 |     4.    Plaintiff's Complaint and accompanying papers, in relevant part, allege
27 | that Plaintiff developed malignant mesothelioma, partially, due to his exposure to
28 | asbestos associated with GE Navy turbines and turbo-generators that he encountered

2

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN
4810-0453:4844-8523-3501.v2

1    when working as an electrician at the Long Beach Naval Shipyard from approximately

2    1969 through 1996. [Complaint, ¶¶ 2, 3, 4 attached within "Exhibit A" of Removing

3    Defendant's Notice of Removal, Prelim. Fact Sheet at p. 5, attached within "Exhibit

4    B" of Removing Defendant's Notice of Removal, and "Exhibit 1" of Cronin Decl., ¶

5    5].

6         5.    Apart from joining in the removal already effected by the Removing

7    Defendant, GE submits additional grounds to support removal in that this action

8    involves a person, in this instance GE, who – in relation to the claims being stated

9    against it and as summarized herein – acted under the authority of officers of the

10   United States Navy within the meaning of 28 U.S.C. § 1442(a)(1). *See Mesa v.*

11   *California*, 489 U.S. 121 (1989). Plaintiff's Complaint alleges that he developed

12   malignant mesothelioma, and that GE is liable under negligence, strict liability, and

13   false representation theories on the assertion that Navy turbines and turbo-generators

14   aboard United States Naval vessels, were manufactured and sold to the Navy by GE,

15   and they were allegedly a source of his exposure to asbestos. Assuming, *arguendo*,

16   that GE designed and manufactured the allegedly asbestos-containing Navy turbines

17   and turbo-generators placed into issue in this case, such design and manufacture was

18   performed under close, constant, and detailed control and supervision by

19   commissioned officers and other employees of the United States Navy and under and

20   pursuant to contract to the United States Department of the Navy.

21        6.    28 U.S.C. § 1446(b) provides that a Notice of Removal must be filed

22   within thirty (30) days of receipt by the defendant of a copy of the initial pleading

23   setting forth the claim for relief upon which the action is based. GE has met this

24   requirement by filing the instant Joinder to Notice of Removal within thirty (30) days

25   of receipt of Plaintiff's Complaint and accompanying papers which sets forth

26   Plaintiff's claim that he was exposed to asbestos from GE Navy turbines and turbo-

27   generators that he encountered while working as an electrician during his service in

28   the United States Navy as noted above.

3

1    7.    Should Plaintiff file a motion to remand this case, GE respectfully

2  requests the opportunity to respond more fully in writing, including the submission of

3  affidavits and authorities, but offers the following statement and legal authorities at

4  this time.

5    8.    In order to remove a case under 28 U.S.C. § 1442(a)(1), a defendant

6  (such as GE) must show that in manufacturing the product at issue, it (1) acted under

7  the direction of federal officers, (2) can raise a colorable federal defense to plaintiff's

8  claims, and (3) demonstrate a causal nexus between plaintiff's claims and the acts it

9  performed under color of federal office. *See Fung v. Abex Corp.*, 816 F. Supp. 569,

10  571-72 (N.D. Cal. 1993).  In *Fung*, the Court addressed this issue in the context of a

11  removed case involving a plaintiff who alleged he was exposed to asbestos while

12  serving aboard submarines manufactured by General Dynamics for the United States

13  Navy.  In denying plaintiffs' motion to remand, the Court stated that to satisfy

14  removal under 28 U.S.C. § 1442(a)(1), General Dynamics must show that in

15  manufacturing its submarines for the Navy, it "(1) acted under the direction of federal

16  officers, (2) raised a federal defense to plaintiffs' claims, and (3) demonstrated a

17  causal nexus between plaintiffs' claims and the acts it performed under color of

18  federal office." *Id.* at 571-72.  The government contractor defense is equally

19  applicable to Plaintiff's failure-to-warn claims. *Butler v. Ingalls Shipbuilding, Inc.*, 89

20  F.3d 582, 586 (9th Cir. 1996); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04

21  (7th Cir. 1996).

22    9.    In this action, commissioned officers of the United States Navy, as well

23  as the Navy's chain of command, exercised direction and control over the design and

24  manufacture of the Navy turbine-generators aboard United States Naval vessels.  The

25  Navy controlled the design that was adopted, and all final design drawings and

26  specifications required express Navy approval.  Following the Government-controlled

27  design process, GE manufactured the Navy turbines and turbo-generators for the Navy

28  in strict accordance with highly detailed military specifications issued by the Navy.

4

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN
4810-0453:4844-8523-3501.v2

1    These military specifications governed all aspects of the turbines and turbo-generators

2    design and manufacture.  Adherence to such military specifications was mandatory,

3    and GE had no discretion to deviate from the precise specifications when it

4    manufactured the turbines and turbo-generators.  In fact, United States Navy officers

5    and/or their designees had the contractual right to be present during the manufacture

6    of the turbines and turbo-generators to ensure GE's exact compliance with the

7    military's specifications, and all testing of the completed turbines and turbo-

8    generators was conducted under the direction and control of United States Naval

9    officers and personnel.

10          10.     GE asserts a federal defense to this action: immunity from liability for

11   injuries arising from any acts performed under the direction of federal officers,

12   including the manufacture of products pursuant to the direction and specification of

13   federal officers.  *See Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  As

14   noted above, commissioned officers of the United States Navy exercised direction and

15   control over the construction, design, and testing of GE Navy turbines and turbo-

16   generators located on vessels built for the Navy.  Accordingly, a colorable federal

17   defense has been raised by GE and removal is proper.  *See Pack v. ACandS, Inc., et

18   al.*, 838 F. Supp. 1099 (D. Md. 1993) (because the United States Government

19   exercised extensive control over the construction, design, and testing of its marine

20   turbines, Westinghouse raised colorable federal defense under 28 U.S.C. § 1442 and

21   properly removed action to federal court); *see also Williams v. Brooks*, 945 F.2d 1322,

22   1325 fn.2 (5th Cir. 1991).  In recent years, when faced with strikingly similar

23   circumstances, the Second, Seventh, and Ninth circuits have upheld federal officer

24   removals.  *See Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014); *Leite v. Crane Co.*,

25   749 F.3d 1117 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 361 (U.S. Oct. 14, 2014);

26   *Cuomo v. Crane Co.*, 771 F.3d 113, 114-17 (2d Cir. 2014); *Ruppel v. CBS Corp.*, 701

27   F.3d 1176 (7th Cir. 2012) (reversing remand and upholding federal officer removal

28   involving Westinghouse equipment supplied to Navy warships).

5

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN
4810-0453:4844-8523-3501.v2

1    11.    GE is not required to notify and obtain the consent of any other defendant
2  in this action in order to remove Plaintiff's action as a whole under 28 U.S.C. §
3  1442(a)(1). *See Ely Mines, Inc. v. Hartford Accident & Indemnity Co.*, 644 F.2d
4  1310, 1315 (9th Cir. 1981).

5    12.    A properly removed case in which the federal district court has subject
6  matter jurisdiction cannot be remanded for discretionary or policy reasons, such as a
7  contention that judicial economy compels remand. 28 U.S.C. § 1447(c) ("[a] motion
8  to remand the case on the basis of any defect other than lack of subject matter
9  jurisdiction must be made within 30 days after the filing of the notice of removal
10  under § 1446(a). If at any time before final judgment it appears that the district court
11  lacks subject matter jurisdiction, the case shall be remanded."); *see Snapper Inc. v.*
12  *Redan*, 171 F.3d 1249, 1254 (11th Cir. 1999) (reasonable construction of 28 U.S.C. §
13  1447(c) is that the term "defect" refers to removal defects); *see also Thermtron*
14  *Prods., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976) (holding limited on other
15  grounds); *Elrad v. United Life & Accident Ins. Co.*, 624 F. Supp. 742, 743 (N.D. Ill.
16  1985).

17    13.    Section 1442 removal jurisdiction is distinct from other types of removal
18  jurisdiction in that it does not depend on the existence of original jurisdiction in the
19  federal courts. Rather, 28 U.S.C. § 1442 provides an independent grant of federal
20  removal jurisdiction premised on the federal status of the defendant and assertion of a
21  federal defense. Indeed, Plaintiff's efforts to impose liability on the government
22  contractors retained by the Navy to manufacture vital military equipment installed
23  aboard Navy warships is necessarily a suit "for or relating to" acts taken "under the
24  color of [federal] office." *See Mesa v. California*, 489 U.S. 121, 133-34 (1989).

25    14.    Section 1442 provides an absolute right of removal to federal court to
26  "any officer (or any person acting under that officer) of the United States or any
27  agency thereof" who is subjected to a civil action commenced in state court "for or
28  relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Whereas

6

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN

4810-0453:4844-8523-3501.v2

1   some courts have described a presumption against removal in other contexts, "the

2   presumption under the federal officer removal statute favors removal, for the benefit

3   of the federal officer involved in the case." *In re Asbestos Prods. Liab. Litig. (No. VI)*,

4   770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) (asbestos multidistrict litigation).  Federal

5   officer removal is afforded no less liberal construction when invoked by a private

6   party acting in its role as a government contractor.  *Watson v. Philip Morris Cos.*, 551

7   U.S. 142, 147, 153 (2007); *Davis v. South Carolina*, 107 U.S. 597, 600 (1883); *see*

8   *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012).  The Supreme Court has

9   repeatedly made clear that the federal officer right of removal pursuant to 28 U.S.C. §

10  1442 is broad and absolute, and therefore the "policy favoring removal 'should not be

11  frustrated by a narrow, grudging interpretation" of the federal officer statute (28

12  U.S.C. § 1442(a)(1)).  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting

13  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  The Supreme Court has

14  recognized that "[t]he imposition of liability on Government contractors will directly

15  affect the terms of Government contracts . . . [such that] . . . the interests of the United

16  States will be directly affected." *Boyle v. United Technologies Corp.*, 487 U.S. 500,

17  507 (1988).  Federal officer jurisdiction is thus intended to "assure that an impartial

18  setting is provided in which the federal defense of immunity can be considered."

19  *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).  Accordingly, doubts as to

20  entitlement to a federal forum are decided in favor of removal jurisdiction, as "one of

21  the most important reasons for removal is to have the validity of the defense of official

22  immunity tried in federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

23

24  Dated:  February 28, 2018                     POND NORTH LLP

25

26                                         By:    /s/ *Justin F. Cronin*
                                                  JUSTIN F. CRONIN
27                                                Attorneys for Defendant
                                                  GENERAL ELECTRIC COMPANY
28

7

1

## **DEMAND FOR TRIAL BY JURY**

2      Defendant General Electric Company ("GE") hereby demands a trial by jury in

3   this action.

4   Dated:  February 28, 2018                  POND NORTH LLP

5

6                                              By:   /s/ Justin F. Cronin

7                                                    JUSTIN F. CRONIN
                                                     Attorneys for Defendant
8                                                    GENERAL ELECTRIC COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN

4810-0453:4844-8523-3501.v2

## DECLARATION OF JUSTIN F. CRONIN

I, JUSTIN F. CRONIN, declare as follows:

1.      I am an attorney at law, duly licensed by and in good standing with the State Bar of California, and I am admitted to practice before the United States District Court for the Central District of California.  I am a senior associate with the law firm of Pond North LLP, attorneys of record for defendant General Electric Company ("GE") herein.  This declaration is made in support of GE's Joinder to the Notice of Removal filed by defendant Elliott Company.

2.      I have personal knowledge of the matters set forth in this Declaration, and if called as a witness, I would and could competently testify to the facts set forth herein.

3.      Attached hereto collectively as "Exhibit 1" are true and correct copies of the Summons, Complaint, Preliminary Fact Sheet, and accompanying papers filed by Plaintiff on January 26, 2018 as served on GE.

4.      I am informed and believe that GE's agent for service of process was served with process on January 30, 2018.

5.      Plaintiff's Complaint and accompanying papers, in relevant part, allege that Plaintiff developed malignant mesothelioma, partially, due to his use, handling, and other acts with or around asbestos containing products, including GE air chutes (circuit breakers,) main propulsion turbines and turbo-generators while he worked as an electrician at the Long Beach Naval Shipyard, and aboard the following vessels: USS Roark (FF-1053); USS Gray (FF-1054); USS Hepburn (FF-1055); USS Meyerkord (FF-1058); USS Lockwood (FF-1064); USS Markin Shields (FF-1066); USS Francis Hammonds (FF-1067); USS Downes (FF-1070); UFF Cook (FF-1083); USS Barbey (FF-1088); USS Ogden (LPD-5); USS Duluth (LPD-6); USS Cleveland (LPD-7); USS Dubuque (LPD-8); USS Denver (LPD-9); USS Juneau (LPD-10); USS Norton Sound (AVM-1); USS St. Paul (CA-73); USS Chicago (CA-136); USS New Jersey (BB-62); USS Missouri (BB-63); USS Hull (DD-945); USS Morton (DD-948);

1

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF REMOVAL; DECLARATION OF JUSTIN F. CRONIN

4810-0453;4844-8523-3501.v2

1  USS Lofberg (DD-759); USS Tripoli (LPH-10); USS Paul Foster (DD-964); USS
2  Kinkaid (DD-965); USS Hewitt (DD-966); USS David R. Ray (DD-971); USS
3  Oldendorf (DD-972); USS John Young (DD-973); USS Jouett (CG-29); USS Horne
4  (CG-30); USS Sterett (CG-31); USS Fox (CG-33); USS Tarawa (LHA-1); USS
5  Belleau Wood (LHA-3); USS Peleiu (LHA-5); USS Henry B. Wilson (DDG-7); USS
6  Towers (DDG-9); USS Robinson (DDG-12); USS Hoel (DDG-13); and USS Waddell
7  (DDG-24) from approximately 1969 through 1996.  [Complaint, ¶¶ 2, 3, 4 attached
8  within "Exhibit A" of Removing Defendant's Notice of Removal, Prelim. Fact Sheet
9  at p. 5, attached within "Exhibit B" of Removing Defendant's Notice of Removal, and
10  "Exhibit 1" of Cronin Decl., ¶ 5].

11         I declare under the penalty of perjury that the foregoing is true and correct, and
12  that this Declaration was executed this 28th day of February, 2018, at Los Angeles,
13  California.

14

15                    /s/ *Justin F. Cronin*
                      JUSTIN F. CRONIN, Declarant

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
REMOVAL; DECLARATION OF JUSTIN F. CRONIN
4810-0453:4844-8523-3501.v2

# EXHIBIT "1"

 CT Corporation

**Service of Process Transmittal**
01/30/2018
CT Log Number 532706437

TO:     Kate Cook
        Electric Insurance Company
        75 Sam Fonzo Dr
        Beverly, MA 01915-1000

RE:     **Process Served in California**

FOR:    General Electric Company  (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TERRY LEE SIEGFRIED AND TERRI SIEGFRIED, PLTFS. vs. 3M COMPANY, ETC., ET AL., DFTS. // TO: GENERAL ELECTRIC COMPANY, ETC. |
| **DOCUMENT(S) SERVED:** | Summons, Order, Stipulation, Attachments, Complaint, Exhibits |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA
Case # BC691900 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/30/2018 at 13:21 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days alter this summons and legal papers are served on you |
| **ATTORNEY(S) / SENDER(S):** | Mark A. Linder
THE LAMER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
713-659-5200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/31/2018, Expected Purge Date: 02/05/2018

Image SOP

Email Notification,  Kevin Jamison  kjamison@pondnorth.com

Email Notification,  Carol Johnston  cjohnston@pondnorth.com

Email Notification,  Tiffany Hinton  thinton@pondnorth.com

Email Notification,  Susan Combs  scombs@pondnorth.com

Email Notification,  Kate Cook  kate.cook@ElectricInsurance.com

Email Notification,  Valerie Gaggero  vgaggero@wfbm.com

Email Notification,  Charles Sheldon  csheldon@wfbm.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
01/30/2018
CT Log Number 532706437

TO:     Kate Cook
        Electric Insurance Company
        75 Sam Fonzo Dr
        Beverly, MA 01915-1000

RE:     **Process Served in California**

FOR:    General Electric Company  (Domestic State: NY)

Email Notification,  Mark Cohen  mark.cohen1@ge.com

SIGNED:      C T Corporation System
ADDRESS:     818 West Seventh Street
             Los Angeles, CA 90017
TELEPHONE:   213-337-4615

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

3M COMPANY(f/k/a MINNESOTA MINING & MANUFACTURING
COMPANY)(See Attached Defendants List)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Terry Lee Siegfried and Terri Siegfried

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es): | CASE NUMBER:<br>(Número del Caso):<br>BC 6 9 1 9 0 0 |
|---|---|

Superior Court of California, County of Los Angeles
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Mark A. Linder, LANIER LAW FIRM, 6810 FM 1960 West, Houston, TX 77069; 713-659-5200

DATE: January 26 2018                    SHERRI R. CARTER        SHAUNYA BOLDEN                    , Deputy
(Fecha)                                  (Secretario)            by                                (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): GENERAL ELECTRIC COMPANY, individually and as successor-in-interest to MASONNEILAN, and MANNING, MAXWELL & MOORE, INC.

under: ☐ CCP 416.10 (corporation)                    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)             ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)       ☑ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☑ by personal delivery on (date): 1/29/18

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-200(A)

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);
ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY);
ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.;
AURORA PUMP COMPANY;
A.O. SMITH CORP.;
BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS);
CARRIER CORPORATION;
CARVER PUMP COMPANY;
CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT;
CLA-VAL CO.;
CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION);
COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);
COPES-VULCAN, INC.;
CRANE CO. (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES);
CRANE ENVIRONMENTAL, INC. (sued individually and successor-in-interest to COCHRANE CORPORATION);
EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY;
EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.);
FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY;
FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY);

Page __1__ of __3__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE:<br>Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

FOSTER WHEELER ENERGY CORPORATION;
FRASER BOILER SERVICE, INC.;
GARDNER-DENVER, INC.;
GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY);
GENERAL ELECTRIC COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING, MAXWELL & MOORE, INC.);
GIBBS & COX, INC.;
THE GORMAN-RUPP COMPANY (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H. WHEELER);
GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER CO.);
GOULDS PUMPS, INC.;
HARDIE-TYNES CO., INC. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES FOUNDRY & MACHINE CO. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HERCULES MANUFACTURING COMPANY, INC;
HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY);
IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.);
INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY STEAM TURBINE);
ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY);
KERR MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.;
LAWLER MANUFACTURING COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.;
THE MARLEY-WYLAIN COMPANY;
MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS WATER TECHNOLOGIES, INC.;
THE NASH ENGINEERING COMPANY;
OWENS-ILLINOIS, INC.;
PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS);
QUIMBY EQUIPMENT COMPANY;
ROBERTSHAW CONTROLS COMPANY (individually and as successor-in-interest to FULTON SYLPHON COMPANY);

Page __2__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Terry Lee Siegfried, et al. vs. 3M Company, et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ROCKWELL AUTOMATION INC. (individually and as successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE CORPORATION);
ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
RSCC WIRE & CABLE, LLC.;
SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D COMPANY;
SIEMENS CORPORATION (individually and as successor-in-interest to ITE CIRCUIT BREAKER CO.);
SIEMENS ENERGY INC. (individually and as successor by merger to DRESSER-RAND GROUP, INC.);
SPIRAX SARCO, INC.;
SPX CORPORATION (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN);
STERLING FLUID SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY;
SULZER PUMPS HOUSTON, INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC PUMPING COMPANY);
SUPERIOR-LIDGERWOOD-MUNDY (individually and as successor-in-interest to M.T. Davidson Co.);
VELAN VALVE CORP.;
VIAD CORP f/k/a THE DIAL
CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY);
VIKING PUMP, INC., a Unit of IDEX Corporation;
WARREN PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
WEIL-McCLAIN;
WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued individually and as successor-in-interest to WYLAIN CO.);
WILO USA LLC (individually and as successor-in-interest to WEIL PUMP COMPANY, INC.);
WEIR VALVES & CONTROLS USA INC. f/k/a ATWOOD & MORRILL;
THE WILLIAM POWELL COMPANY;
and DOES 1-450, inclusive.

Page __3__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

 

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL - COMPLEX

Case Number _____

**BC 6 9 1 9 0 0**

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 323 | 1707 | | | | |
| Hon. William F. Highberger | 322 | 1702 | | | | |
| Hon. John Shepard Wiley, Jr. | 311 | 1408 | | | | |
| Hon. Kenneth Freeman | 310 | 1412 | | | | |
| Hon. Ann Jones | 308 | 1415 | | | | |
| Hon. Maren E. Nelson | 307 | 1402 | | | | |
| Hon. Carolyn B. Kuhl | 309 | 1409 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Hon. Steven J. Kleifield | 324 | CCW |
| | | | | ªProvisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____, Deputy Clerk

LACIV 190 (Rev 12/17)
LASC Approved 05/06    **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's Stamp<br>**CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br>JAN 26 2018<br>Sherri R. Carter, Executive Officer/Clerk<br>By Shaunya Bolden, Deputy |
|---|---|

COURT ADDRESS:
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Terry Lee Siegfried, et al.

DEFENDANT:
3M Company, et al.

| CIVIL DEPOSIT | CASE NUMBER:<br>BC 6 9 1 9 0 0 |
|---|---|

CLERK: PREPARE A FORM FOR EACH DEPOSITOR PAYING SEPARATELY

**PLEASE REPORT TO THE CLERK'S OFFICE/CASHIER:**
☐ Room 102, Central Civil    ☐ Clerk's Office , Room_____    ☐ Department Number_____

| | Distribution Codes | Amt Due | | Distribution Codes | Amt Due |
|---|---|---|---|---|---|
| ☐ | 251 DAILY JURY FEES<br>Dates:_____<br># of day(s)____ x$____ | | ☐ | 74 DEPOSIT IN TRUST | |
| ☒ | 72 JURY FEES<br>Trial Date:_____<br>(Initial Deposit) $ 150.00 | | ☐ | 101 FIRST PAPERS-<br>GENERAL JURISDICTION | |
| ☐ | 252 REPORTERS FEES<br>Dates:_____<br># of 1/2 day(s)____ x$____<br>Full Day____ | | ☐ | 101 FIRST PAPERS-LIMITED OVER $10,000 | |
| | | | ☐ | 141 With declaration Limited to $10,000<br>(per B&P 6322.1(a)) | |
| | | | ☐ | 130 Limited to $10,000 | |
| ☐ | 721 SANCTIONS ORDERED ON<br>Date:_____ | | ☐ | 211 RECLASSIFICATION FEE | |
| ☐ | 213 MOTIONS/APPLICATION TO CONT. HEARING | | ☐ | 150 COMPLEX LITIGATION TRIAL/PLAINTIFF | |
| | 200 MOTIONS/APPLICATION TO CONT.TRIAL | | ☐ | 151 COMPLEX LITIGATION TRIAL/DEFENDANT | |
| | Other: | | | | |

To be paid via:   ☐ Cash   ☐ Check   ☐ Certified Check/Money Order   ☐ Credit Card

☐ On or Before_____   ☐ Forthwith

Payment will be made by   ☒ Plaintiff_____   ☐ Defendant_____

JOHN A. CLARKE, Executive Officer/Clerk

DATE _____   BY: _____
Deputy Clerk

| TO BE COMPLETED BY DEPOSITOR | CASHIER'S VALIDATION |
|---|---|

Depositor's Name: _____

☐ Plaintiff in Pro Per    ☐ Defendant in Pro Per

☐ Counsel for    ☐ Plaintiff _____
Name of Party

☐ Defendant _____
Name of Party

Address of depositor
Street
City/State/Zip

CIV 083 03-04 (Rev. 05/06)
LASC Approved

**CIVIL DEPOSIT**
Distribution: Original - Case File   Copy-Customer

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**

**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):                    FAX NO. (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
      (INSERT DATE)                          (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at _www.lacourt.org_ under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR PLAINTIFF)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR_____)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR_____)
Date:

_____                    ➤ _____
        (TYPE OR PRINT NAME)                                  (ATTORNEY FOR_____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
   (ATTORNEY FOR PLAINTIFF)

➤ _____
   (ATTORNEY FOR DEFENDANT)

➤ _____
   (ATTORNEY FOR DEFENDANT)

➤ _____
   (ATTORNEY FOR DEFENDANT)

➤ _____
   (ATTORNEY FOR _____)

➤ _____
   (ATTORNEY FOR _____)

➤ _____
   (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

FILED
LOS ANGELES SUPERIOR COURT

JUN 0 9 1995

BY T. ACUNA DEP'T

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re Los Angeles Asbestos )   No. C 700000
Litigation - General Orders )
                             )   FIRST AMENDED
                             )   GENERAL ORDER NO. 1

The Court, having conducted a hearing on its own motion,
issues the orders as hereafter set forth.

IT IS HEREBY ORDERED that all actions currently pending and
hereafter filed in the above-entitled Court alleging personal
injury or wrongful death due to exposure to an asbestos-
containing product (hereafter "Los Angeles Asbestos Litigation")
are determined to be complex litigation within the meaning of
California Rules of Court, Appendix, Division 1, Standards of
Judicial Administration Recommended by the Judicial Council
(hereafter "Standards of Judicial Administration"), Section 19.

IT IS FURTHER ORDERED that all Los Angeles Asbestos
Litigation actions shall continue to be filed in the Central
District of the above-entitled Court both before and after the
distribution of such cases into the Central District's
Independent Calendaring ("I/C") courts.  The certificate of
assignment for each Los Angeles Asbestos Litigation case shall

-1-

1  contain the following language:  "Filed in the Central District

2  pursuant to First Amended General Order No. 1 contained in the

3  general order file, File No. C 700000."

4  Dated: · *6-9-95*

5

6  _Bruce Mitchell_

7  BRUCE E. MITCHELL
   Commissioner of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Mark A. Linder, SBN 268796
The Lanier Law Firm
6810 FM 1960 West
Houston, TX 77069
TELEPHONE NO.: 713-659-5200   FAX NO.: 713-659-2204
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

**FOR COURT USE ONLY**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

CASE NAME:
Terry Lee Siegfried, et al. vs. 3M Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC 6 9 1 9 0 0 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[✓] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify):
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 26 2018
Mark A. Linder
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition



| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location wherein petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B.<br>Type of Action<br>(Check only one) | C.<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☑ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐  A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐  A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐  A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐  A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐  A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐  A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐  A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐  A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐  A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐  A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐  A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐  A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐  A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐  A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐  A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐  A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐  A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐  A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐  A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐  A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐  A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐  A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐  A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐  A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐  A6032  Quiet Title | 2, 6 |
| | | ☐  A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐  A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐  A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐  A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐  A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | | CASE NUMBER |
|---|---|---|

| | A. Civil Case Cover Sheet Category No. | B. Type of Action (Check only one) | C. Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ■ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☑ 11. | ADDRESS: 818 W. Seventh Street |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90017 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __January 26, 2018__

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

1 | Mark A. Linder, CA Bar No. 268796
Case A. Dam, CA Bar No. 589054
2 | **THE LANIER LAW FIRM**
3 | 6810 FM 1960 West
Houston, TX 77069
4 | Telephone 713-659-5200
Facsimile 713-659-2204
5 |
6 | Attorneys for Plaintiffs
7 |

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10 |

11 | **TERRY LEE SIEGFRIED and
TERRI SIEGFRIED,**

12 |

13 | Plaintiffs,

vs.

14 |

15 | **3M COMPANY** (f/k/a MINNESOTA
MINING & MANUFACTURING
16 | COMPANY);
**AIR & LIQUID SYSTEMS**
17 | **CORPORATION** (sued individually
and as successor-in-interest to
18 | BUFFALO PUMPS, INC.);
**ABB, INC.** (individually and as
19 | successor-in-interest to ITE IMPERIAL
CO f/k/a ITE CIRCUIT BREAKER
20 | COMPANY);
**ALFA LAVAL INC.** (sued individually
21 | and as successor-in-interest to THE
DELAVAL SEPARATOR COMPANY
22 | and SHARPLES CORPORATION);
**ATWOOD & MORRILL CO., INC.**
23 | d/b/a WEIR VALVES & CONTROLS
24 | USA INC.;
**AURORA PUMP COMPANY;**
25 | **A.O. SMITH CORP.;**
**BACOU-DALLOZ USA, INC.,** (sued
26 | as successor-in-interest and/or f/k/a
27 | W.G.M. SAFETY PRODUCTS d/b/a
28 |

Case No.

BC 6 9 1 9 0 0

THIS ACTION CONSTITUTES COMPLEX
ASBESTOS LITIGATION

**COMPLAINT FOR PERSONAL INJURY –
ASBESTOS (NEGLIGENCE; STRICT
LIABILITY, FALSE REPRESENTATION
UNDER RESTATEMENT OF TORTS
SECTION 402-B; INTENTIONAL
TORT/INTENTIONAL FAILURE TO
WARN; RESPIRATOR DEFENDANT'S
NEGLIGENCE; RESPIRATOR
DEFENDANTS' STRICT LIABILITY; LOSS
OF CONSORTIUM)**

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  WILLSON SAFETY PRODUCTS);
   **CARRIER CORPORATION;**
2  **CARVER PUMP COMPANY;**
3  **CBS CORPORATION** (a Delaware
   Corporation) f/k/a VIACOM, INC. (as
4  successor-by-merger to CBS
   CORPORATION) (a Pennsylvania
5  Corporation) f/k/a WESTINGHOUSE
   ELECTRIC CORPORATION) and also
6  as successor-in-interest to BF
7  STURTEVANT;
   **CLA-VAL CO.;**
8  **CLEAVER-BROOKS, INC.** (sued
9  individually and as successor-in-interest
   to DAVIS ENGINEERING
10 COMPANY formerly known as AQUA-
   CHEM, INC. doing business as
11 CLEAVER-BROOKS DIVISION);
12 **COOPER WIRING DEVICES**, a
   division of COOPER INDUSTRIES
13 (individually and as successor-in-
   interest to ARROW-HART &
14 HEGEMAN, INC.);
15 **COPES-VULCAN, INC.;**
   **CRANE CO.** (sued individually and
16 successor-in-interest to COCHRANE
   CORPORATION; CHAPMAN VALVE
17 COMPANY and JENKINS VALVES);
18 **CRANE ENVIRONMENTAL, INC.**
   (sued individually and successor-in-
19 interest to COCHRANE
   CORPORATION);
20 **EATON CORPORATION** (sued
21 individually and as successor-in-interest
   to CUTLER-HAMMER INC.);
22 **EATON ELECTRICAL, INC.** (sued
   individually and as successor-in-interest
23 to CUTLER-HAMMER INC.);
24 **ELLIOT TURBOMACHINERY
   COMPANY** a/k/a ELLIOTT
25 COMPANY;
   **EMERSON ELECTRIC CO.**
26 (individually and as successor-in-
27 interest to KEYSTONE VALVES AND
   CONTROLS, INC.);
28 **FISHER CONTROLS**

2

| | |
|---|---|
| 1 | INTERNATIONAL LLC f/k/a |
| | FISHER GOVERNOR COMPANY; |
| 2 | FMC CORPORATION (sued |
| 3 | individually and as successor-in-interest |
| | to NORTHERN PUMP COMPANY |
| 4 | and PEERLESS PUMP COMPANY); |
| | FOSTER WHEELER ENERGY |
| 5 | CORPORATION; |
| 6 | FRASER BOILER SERVICE, INC.; |
| | GARDNER-DENVER, INC.; |
| 7 | GENERAL DYNAMICS |
| | CORPORATION (successor-in- |
| 8 | interest to BATH IRON WORKS LTD. |
| 9 | f/k/a THE HYDE WINDLASS |
| | COMPANY); |
| 10 | GENERAL ELECTRIC COMPANY |
| | (individually and as successor-in- |
| 11 | interest to MASONEILAN, and |
| 12 | MANNING, MAXWELL & MOORE, |
| | INC.); |
| 13 | GIBBS & COX, INC.; |
| | THE GORMAN-RUPP COMPANY |
| 14 | (individually and as successor-in- |
| 15 | interest to PATTERSON PUMP |
| | COMPANY, and C.H. WHEELER); |
| 16 | GOULDS ELECTRONICS (as |
| | successor-in-interest to ITE CIRCUIT |
| 17 | BREAKER CO.); |
| 18 | GOULDS PUMPS, INC.; |
| | HARDIE-TYNES CO., INC. (sued |
| 19 | individually and as successor-in-interest |
| | to HARDIE-TYNES |
| 20 | MANUFACTURING CO. and |
| 21 | HARDIE-TYNES |
| | MANUFACTURING COMPANY); |
| 22 | HARDIE-TYNES FOUNDRY & |
| | MACHINE CO. (sued individually and |
| 23 | as successor-in-interest to HARDIE- |
| 24 | TYNES MANUFACTURING CO. and |
| | HARDIE-TYNES |
| 25 | MANUFACTURING COMPANY); |
| 26 | HARDIE-TYNES, LLC (sued |
| | individually and as successor-in-interest |
| 27 | to HARDIE-TYNES |
| | MANUFACTURING CO. and |
| 28 | HARDIE-TYNES |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1 | MANUFACTURING COMPANY);
2 | **HERCULES MANUFACTURING COMPANY, INC;**
3 | **HOWDEN NORTH AMERICA, INC.** f/k/a HOWDEN BUFFALO, INC.
4 | (individually and as successor-in-
5 | interest to BUFFALO FORGE COMPANY);
6 | **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest
7 | to DELAVAL TURBINE, INC.);
   | **INGERSOLL-RAND COMPANY**
8 | (individually and as successor-in-
9 | interest to TERRY STEAM TURBINE);
10 | **ITT INDUSTRIES, INC.** (sued individually and as successor-in-interest
11 | to BELL & GOSSETT, FOSTER
12 | ENGINEERING and HOFFMAN SPECIALTY);
13 | **KERR MACHINERY CO.** n/k/a KERR PUMP & SUPPLY INC.;
14 | **LAWLER MANUFACTURING COMPANY, INC.** f/k/a LAWLER
15 | AUTOMATIC CONTROLS, INC.;
16 | **THE MARLEY-WYLAIN COMPANY;**
17 | **MUELLER STEAM SPECIALITY COMPANY** n/k/a WATTS WATER
18 | TECHNOLOGIES, INC.;
19 | **THE NASH ENGINEERING COMPANY;**
20 | **OWENS-ILLINOIS, INC.;**
21 | **PPG INDUSTRIES, INC.** (individually and as successor-in-
22 | interest to AKZO NOBEL INC., and DEVOE COATINGS);
23 | **QUIMBY EQUIPMENT COMPANY;**
24 | **ROBERTSHAW CONTROLS**
25 | **COMPANY** (individually and as successor-in-interest to FULTON
26 | SYLPHON COMPANY);
27 | **ROCKWELL AUTOMATION INC.** (individually and as successor by
28 | merger to ALLEN-BRADLEY

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | COMPANY LLC and ROSTONE CORPORATION); |
| 2 | **ROSS OPERATING VALVE** |
| 3 | **COMPANY** d/b/a ROSS CONTROLS; **RSCC WIRE & CABLE, LLC.;** |
| 4 | **SCHNEIDER ELECTRIC, USA, INC.,** f/k/a SQUARE D COMPANY; |
| 5 | **SIEMENS CORPORATION** |
| 6 | (individually and as successor-in-interest to ITE CIRCUIT BREAKER |
| 7 | CO.); |
| 8 | **SIEMENS ENERGY INC.** (individually and as successor by |
| 9 | merger to DRESSER-RAND GROUP, INC.); |
| 10 | **SPIRAX SARCO, INC.;** |
| 11 | **SPX CORPORATION** (sued individually and as successor-in-interest |
| 12 | to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a |
| 13 | division of WYLAIN, INC., and WEIL-McCLAIN); |
| 14 | **STERLING FLUID SYSTEMS,** |
| 15 | **(USA) LLC** f/k/a PEERLESS PUMP COMPANY; |
| 16 | **SULZER PUMPS HOUSTON, INC.** |
| 17 | (sued individually and as successor-in-interest to PACO PUMPS f/k/a |
| 18 | PACIFIC PUMPING COMPANY); |
| 19 | **SUPERIOR-LIDGERWOOD-MUNDY** (individually and as |
| 20 | successor-in-interest to M.T. Davidson Co.); |
| 21 | **VELAN VALVE CORP.;** |
| 22 | **VIAD CORP** f/k/a THE DIAL CORPORATION (sued individually and |
| 23 | as successor-in-interest to GRISCOM-RUSSELL COMPANY); |
| 24 | **VIKING PUMP, INC.,** a Unit of IDEX Corporation; |
| 25 | **WARREN PUMPS, LLC** (individually |
| 26 | and as successor-in-interest to QUIMBY PUMP COMPANY); |
| 27 | **WEIL-McCLAIN;** |
| 28 | **WEIL-McCLAIN,** a division of THE MARLEY COMPANY (sued |

5

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

individually and as successor-in-interest
to WYLAIN CO.);
**WILO USA LLC** (individually and as
successor-in-interest to WEIL PUMP
COMPANY, INC.);
**WEIR VALVES & CONTROLS USA
INC.** f/k/a ATWOOD & MORRILL,
**THE WILLIAM POWELL
COMPANY;**
and DOES 1-450, inclusive,

                    Defendants.

## GENERAL ALLEGATIONS

COME NOW, Plaintiffs **TERRY LEE SIEGFRIED and TERRI SIEGFRIED**
(hereinafter "Plaintiffs") and complain and allege as follows:

1.    The true names and capacities, whether individual, corporate, associate,
governmental or otherwise, of Defendants DOES 1 through 450, inclusive, are unknown to
Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the
true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this
complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each
Defendant designated herein as a DOE is responsible, negligently or in some other actionable
manner, for the events and happenings hereinafter referred to, and caused injuries and damages
proximately thereby to the Plaintiffs, as hereinafter alleged.

2.    At all times herein mentioned, each of the Defendants was the agent, servant,
employee and/or joint venture of his co-Defendants, and each of them, and at all said times each
Defendant was acting in the full course and scope of said agency, service, employment and/or
joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein
mentioned, Defendants 3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING
COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as
successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as successor-
in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA
LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR

1  COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a

2  WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH

3  CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M.

4  SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS); CARRIER CORPORATION;

5  CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a

6  VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania

7  Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-

8  interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually

9  and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as

10  AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING

11  DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to

12  ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued

13  individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE

14  COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually

15  and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued

16  individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON

17  ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER

18  INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON

19  ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND

20  CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER

21  GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-

22  interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER

23  WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-

24  DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH

25  IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC

26  COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,

27  MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

28  (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.

1   WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER

2   CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as

3   successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES

4   MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued

5   individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and

6   HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued

7   individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and

8   HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING

9   COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.

10  (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO

11  INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,

12  INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY

13  STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to

14  BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR

15  MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING

16  COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-

17  WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS

18  WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-

19  ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO

20  NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;

21  ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to

22  FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as

23  successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE

24  CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;

25  RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D

26  COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE

27  CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by

28  merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

1  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,
2  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID
3  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,
4  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC
5  PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as
6  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE
7  DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-
8  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN
9  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
10 WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued
11 individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and
12 as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS
13 USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES
14 1-450 ("Defendants"), inclusive, were individuals, corporations, partnerships and/or
15 unincorporated associations organized and existing under and by virtue of the laws of the State
16 of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,
17 and each of them, were and are authorized to do and are doing business in the State of
18 California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and
19 each of them, were and are authorized to do and are doing business in the State of California,
20 and that said Defendants have regularly conducted business in the County of Los Angeles, State
21 of California.

22      3.    Plaintiffs allege that Plaintiff TERRY LEE SIEGFRIED was exposed to asbestos,
23 asbestos-containing products and/or products designed to be used in association with asbestos
24 products during his tenure as an electrician at Long Beach Naval Shipyard from approximately
25 1969 through 1996.

26      4.    Plaintiffs allege herein that Plaintiff TERRY LEE SIEGFRIED developed
27 malignant mesothelioma as a result of Defendants AIR & LIQUID SYSTEMS
28 CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);

1  ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE

2  CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-

3  in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION);

4  ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.;

5  AURORA PUMP COMPANY; A.O. SMITH CORP.; CARRIER CORPORATION; CARVER

6  PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as

7  successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a

8  WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF

9  STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as

10 successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-

11 CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING

12 DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to

13 ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued

14 individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE

15 COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually

16 and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued

17 individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON

18 ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER

19 INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON

20 ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND

21 CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER

22 GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-

23 interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER

24 WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-

25 DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH

26 IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC

27 COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,

28 MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

1  (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.

2  WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER

3  CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as

4  successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES

5  MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued

6  individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and

7  HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued

8  individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and

9  HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING

10 COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.

11 (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO

12 INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,

13 INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY

14 STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to

15 BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR

16 MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING

17 COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-

18 WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS

19 WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-

20 ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO

21 NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;

22 ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to

23 FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as

24 successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE

25 CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;

26 RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D

27 COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE

28 CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by

1  merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

2  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,

3  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID

4  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,

5  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC

6  PUMPING COMPANY); SUPERIOR-LIDGERWOOD-MUNDY (individually and as

7  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE

8  DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-

9  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN

10  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);

11  WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued

12  individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and

13  as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS

14  USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES

15  1-450's ("Product Defendants") negligence and Plaintiff TERRY LEE SIEGFRIED'S exposure

16  to asbestos from products sold, shipped, supplied, distributed, installed, removed, or replaced by

17  Product Defendants. These products were defective and inherently dangerous asbestos-

18  containing products and/or products defectively designed to be used in association with asbestos

19  products

20      5.      Plaintiffs additionally allege that Plaintiff TERRY LEE SIEGFRIED developed

21  malignant mesothelioma as a result of Defendants, 3M COMPANY (f/k/a MINNESOTA

22  MINING & MANUFACTURING COMPANY); BACOU-DALLOZ USA, INC., (sued as

23  successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY

24  PRODUCTS); and DOES 351-450's ("RESPIRATOR DEFENDANTS") negligence,

25  defectively designed and manufactured safety masks, intentional misrepresentation,

26  concealment, and negligent misrepresentations to Plaintiff TERRY LEE SIEGFRIED and his

27  employers regarding their safety masks.

28  ///

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

**FIRST CAUSE OF ACTION**

(Negligence)

PLAINTIFFS COMPLAIN OF PRODUCT DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

6.    Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

7.    At all times herein mentioned, each of the named Product Defendants and DOES 1-450 was the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and/or products designed to cut, saw or otherwise manipulate and products containing asbestos, including but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Product Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products and/or products designed to cut, saw or otherwise manipulate, products containing asbestos. The following Product Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity," Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Product Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Product Defendant enjoys the

goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| CARRIER CORPORATION | UNITED TECHNOLOGIES CORPORATION<br>BRYANT HEATING AND AIR CONDITIONING, INC. |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br>DAVIS ENGINEERING |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION<br>CHEMPUMP |
| CRANE ENVIRONMENTAL, INC. | COCHRANE CORPORATION |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |
| FMC CORPORATION | PEERLESS PUMP COMPANY<br>McNALLY INDUSTRIES-NORTHERN PUMP<br>FMC AGRICULTURAL PRODUCTS<br>FMC BIOPOLYMER<br>FMC LITHIUM<br>FMC ALKALI CHEMICALS<br>FMC FORET<br>NORTHERN PUMP COMPANY |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| | FOSTER WHEELER CONTRACTORS, INC. |
| | FOSTER WHEELER CORPORATION |
| | FOSTER WHEELER DEVELOPMENT CORP. |
| | FOSTER WHEELER ENERGY RESOURCES INC. |
| | FOSTER WHEELER ENERGY SERVICES, INC. |
| | FOSTER WHEELER ENVIRESPONSE, INC. |
| | FOSTER WHEELER ENVIRONMENTAL CORPORATION |
| | FOSTER WHEELER POWER GROUP, INC. |
| | FOSTER WHEELER POWER SYSTEMS, INC. |
| | FOSTER WHEELER PYROPOWER, INC. |
| | FOSTER WHEELER REALTY SERVICES, INC. |
| | FOSTER WHEELER USA CORPORATION |
| GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION |
| | GARDNER COMPANY |
| | GARDNER DENVER INDUSTRIAL MACHINERY |
| | COOPER INDUSTRIES, INC. |
| | SYLTONE PLC |
| | TAMROTOR |
| | GEOQUIP |
| | CHAMPION PNEUMATIC MACHINERY |
| | WITTIG |
| | ALLEN-STUART EQUIPMENT COMPANY |
| | AIR RELIEF |
| | BUTTERWORTH JETTING SYSTEMS |
| | INVINCIBLE AIRFLOW SYSTEMS |
| | HAMWORTHY BELISS & MORCOM |
| | HOFFMAN AIR AND FILTRATION SYSTEMS |
| | JOY MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| | GENERAL ELECTRIC TRADING COMPANY |
| THE GORMAN-RUPP COMPANY | C.H. WHEELER |
| | GRISCOM-RUSSELL |

| # | | |
|---|---|---|
| 1 | GOULDS PUMPS (NY), INC | GOULDS PUMPS (TX), LP |
| 2 | HARDIE-TYNES, LLC | HARDIE-TYNES MANUFACTURING CO. |
| 3 | HOWDEN NORTH AMERICA, INC. | HOWDEN BUFFALO, INC. |
| 4 | | HOWDEN FAN<br>HOWDEN FAN COMPANY<br>THE HOWDEN FAN COMPANY |
| 5 | | NOVENCO FANS, INC.<br>AMERICAN DAVIDSON INC. |
| 6 | | HOWDEN SIROCCO INC.<br>HOWDEN BUBBALO FANS |
| 7 | | HOWDEN BUFFALO FORGE CO.<br>HOWDEN |
| 8 | | |
| 9 | IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC.<br>WARREN PUMPS, INC.<br>COLFAX CORPORATION |
| 10 | | IMO PUMP<br>IMO AB |
| 11 | | COLFAX PUMP GROUP<br>ALLWEILER |
| 12 | | HOUTTUIN<br>C.H. WHEELER |
| 13 | | |
| 14 | INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG<br>DRESSER-RAND<br>POWERWORKS |
| 15 | | THERMOKING<br>TERRY STEAM TURBINE COMPANY |
| 16 | | WHITON MACHINE CO. |
| 17 | ITT INDUSTRIES, INC. | ITT SERVICE INDUSTRIES<br>CORPORATION |
| 18 | | RULE INDUSTRIES, INC.<br>GOULDS PUMPS, INCORPORATED |
| 19 | | GOULDS PUMPS (IPG), INC.<br>A-C PUMP |
| 20 | | AQUIOUS ADVANCED LIQUID<br>SEPARATIONS |
| 21 | | BELL & GOSSETT<br>DOMESTIC PUMP |
| 22 | | ENGINEERED PROCESS SOLUTIONS<br>GROUP |
| 23 | | FLOWTRONEX PSI INC.<br>ITT FLYGT |
| 24 | | HOFFMAN SPECIALTY<br>LOWARA |
| 25 | | MARLOW PUMPS<br>McDONNELL & MILLER |
| 26 | | ITT RICHTER CHEMIE-TECHNIK GmbH<br>SANITAIRE |
| 27 | | ITT STANDARD<br>VOGEL PUMPS |
| 28 | | WEDECO INDUSTRIES, INC. |

16

| | |
|---|---|
| | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| | BRANOM INSTRUMENT COMPANY |
| | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| | BRANOM INSTRUMENT COMPANY |
| OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| | FENCO |
| | MARINE ENGINEERING |
| | FESCO |
| | FIBERGLAS ENGINEERING AND SUPPLY COMPANY |
| | WILLIAM LANE COMPANY |
| | SILICARE INSULATION |
| | ASBESTOS ENGINEERING & SUPPLY CO. |
| | OWENS-BROCKWAY GLASS CONTAINERS |
| | BROCKWAY GLASS CO., INC. |
| | OWENS-ILLINOIS GLASS COMPANY |
| SPX CORPORATION | THE VULCAN SOOT BLOWER COMPANY COPES-VULCAN |
| | WEIL-MCLAIN COMPANY |
| | THE MARLEY WYLAIN COMPANY |
| STERLING FLUID SYSTEMS (USA) LLC | STERLING FLUID SYSTEMS (AMERICAS) INC. |
| | STERLING FLUID SYSTEMS (CANADA) LTD. |
| | STERLING FLUID SYSTEMS (COLOMBIA) LTD. |
| | PEERLESS PUMP COMPANY |
| | LaBOUR PUMP COMPANY |
| | STERLING PEERLESS PUMPS |
| VIAD CORPORATION | THE DIAL CORPORATION |
| | GRISCOM-RUSSELL COMPANY |
| VIKING PUMP, INC. | IDEX CORPORATION |
| | ROTO KING PUMP, INC. |
| | HOUDAILLE VIKING PUMP, INC. |
| WARREN PUMPS, LLC | WARREN PUMPS INC. |
| | WARREN PUMPS-HOUDAILLE, INC. |
| | COLFAX PUMP GROUP |
| | ALWEILER AG |
| | HOUTTUIN BV |

17

| | |
|---|---|
| | IMO PUMP |
| | ZENITH PUMPS |
| | QUIMBY PUMP CO. |
| WEIR VALVE & CONTROLS USA INC. | ATWOOD & MORRILL CO.,INC. |
| | THE WEIR GROUP PLC |
| | WEIR MINERALS |
| | WEIR CLEAR LIQUID |
| | WEIR VALVES & CONTROLS |
| | WEIR SERVICES |
| | WEIR TECHNA |
| | A & M VALVE |
| | HOPHOLD A & M, INC. |
| THE WILLIAM POWELL COMPANY | POWELL VALVES |

8.     At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos (hereinafter Defendants' Products).

9.     At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph three 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff TERRY LEE SIEGFRIED herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to Product Defendants, their "alternate entities," and each of them,

1 thereby rendering said products unsafe and dangerous for use by "exposed person." Plaintiffs

2 herein allege that TERRY LEE SIEGFRIED was exposed to asbestos that was caused to be

3 released as a result of exposure to Defendants' Products, including but not limited to those

4 products identified in paragraph 3 above (hereinafter referred to as "Defendants' products" or

5 "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor

6 in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff

7 TERRY LEE SIEGFRIED's injuries.

8     10.    Product Defendants, their "alternate entities," and each of them, had a duty to

9 exercise reasonable care while engaging in the activities mentioned above, and each Product

10 Defendants breached said duty of reasonable care in that Product Defendants, and each of them,

11 failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to

12 test said products; failed to investigate the hazards of said products; failed to warn "exposed

13 person," including Plaintiff TERRY LEE SIEGFRIED of the health hazards of using

14 Defendants' products; failed to warn of the harmful exposures caused by use of said products to

15 cut, saw or otherwise manipulate asbestos containing products; failed to disclose the known or

16 knowable dangers of using Defendants' products; failed to obtain suitable alternative materials

17 to asbestos when such alternatives were available; and as otherwise stated herein.

18     11.    The Defendants' products were and are hazardous to the health and safety of

19 Plaintiff, and others in Plaintiff's position working with and in close proximity to such products,

20 and since on or before 1930, the hazards and dangerous propensities of the Defendants' products

21 were both known and knowable to the Product Defendants, their "alternate entities," and each of

22 them, through the use of medical and/or scientific data and other knowledge available to

23 Defendants, their "alternate entities," and each of them at the time of Product Defendants'

24 manufacture, distribution, sale, research, study, fabrication, design, modification, labeling,

25 assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting

26 for installation, repair, marketing, warranting, re-branding, re-manufacturing for others,

27 packaging and advertising, of those products, which clearly indicated the hazards and dangerous

28 propensities of asbestos presented a substantial danger to users, including Plaintiff, TERRY

1   LEE SIEGFRIED of Defendants' Products through the intended and reasonably foreseeable use

2   of those products.

3       12.    Product Defendants, their "alternate entities," and each of them, knew, or

4   reasonably should have known, that Defendants' Products were dangerous and were likely to be

5   dangerous when used in their intended and reasonably foreseeable manner.

6       13.    Product Defendants, their "alternate entities," and each of them, knew, or

7   reasonably should have known, that Defendants' Products would be installed, repaired,

8   maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept,

9   broken, "ripped out," and/or used to cut, saw or otherwise manipulate products containing

10  asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the

11  release of airborne hazardous and dangerous asbestos fibers, and that through such activity,

12  "exposed person," including Plaintiff TERRY LEE SIEGFRIED herein, would be exposed to

13  said hazardous and dangerous asbestos fibers. Product Defendants, their "alternate entities," and

14  each of them, knew or reasonably should have known that users, such as Plaintiff TERRY LEE

15  SIEGFRIED and others in his position, working with and in close proximity to Defendants'

16  Products would not realize or know the danger. Product Defendants, their "alternate entities,"

17  and each of them negligently failed to adequately warn or instruct of the dangers of the products.

18  A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the

19  same or similar circumstances, would have warned of the dangers to avoid exposing others to a

20  foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities," and each

21  of them to warn was a substantial factor in causing harm to Plaintiff TERRY LEE SIEGFRIED.

22      14.    Plaintiff TERRY LEE SIEGFRIED used, handled, or was otherwise exposed to

23  asbestos from Defendants' Products referred to herein in a manner that was reasonably

24  foreseeable to Product Defendants and each of them. Plaintiff's exposure to Defendants'

25  Products occurred at various locations set forth in **Exhibit "A"** which is attached hereto and

26  incorporated by reference herein.

27      15.    As a direct and proximate result of the conduct of the Product Defendants, their

28  "alternate entities," and each of them, as aforesaid, Plaintiff TERRY LEE SIEGFRIED's

1   exposure to asbestos from use of Defendants' Products caused severe and permanent injury to

2   the Plaintiff. Plaintiffs are informed and believe, and thereon allege, that progressive lung

3   disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

4   perceptible trauma and that said disease results from exposure to Defendants' Products over a

5   period of time.

6         16.    Plaintiff TERRY LEE SIEGFRIED was informed of his malignant mesothelioma

7   diagnoses on or about October 2017. His malignant mesothelioma was caused by exposure to

8   asbestos from Defendants' Products and/or from the use of Defendants' Products while serving

9   as an electrician at Long Beach Naval Shipyard; both from his on "hands-on" work as an

10   electrician and from working in close proximity to other workers who cut, sawed or otherwise

11   manipulated products containing asbestos. Plaintiff TERRY LEE SIEGFRIED was not aware at

12   the time of exposure that Defendants' Products presented any risk of injury and/or disease.

13         17.    As a direct and proximate result of the aforesaid conduct of Product Defendants,

14   their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has suffered and

15   will continue to suffer permanent injuries and future injuries to his person, body and health,

16   including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,

17   somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and

18   emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his

19   general damage in a sum in excess of the jurisdictional limit of a limited civil case.

20         18.    As a direct and proximate result of the aforesaid conduct of the Product

21   Defendants, their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has

22   incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons,

23   nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

24   amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

25         19.    As a further direct and proximate result of the said conduct of the Product

26   Defendants, their "alternate entities," and each of them, Plaintiff has incurred, and will incur,

27   loss of income, wages, profits and commissions, a diminishment of earning potential, and other

28   pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject

1   to proof at trial.

2       20.     Plaintiffs further allege that Product Defendants, their "alternate entities," and

3   each of them, also engaged in the following wrongful acts:

4           (a)     Product Defendants, their "alternate entities," and each of them, suppressed

5       from all consumers, including Plaintiff TERRY LEE SIEGFRIED medical and scientific

6       information concerning the health hazards associated with inhalation of asbestos,

7       including the substantial risk of injury or death therefrom. Although Defendants, and

8       each of them, knew of the substantial risks associated with exposure to asbestos, they

9       willfully and knowingly concealed such information from the users of their asbestos

10      and/or asbestos-containing products in conscious disregard of the rights, safety and

11      welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

12          (b)     Product Defendants, their "alternate entities," and each of them, belonged

13      to, participated in, and financially supported industry organizations which, for and on

14      behalf of Defendants, their "alternate entities," and each of them, actively promoted the

15      suppression of information about the dangers of asbestos to users of the aforementioned

16      products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED as to the

17      safety of their products. Through their participation and association with such industry

18      organizations, Product Defendants and each of them knowingly and deliberately

19      concealed and suppressed the true information regarding asbestos and its dangers, and

20      propagated misinformation intended to instill in users of Defendants' Products a false

21      security about the safety of their products;

22          (c)     Commencing in 1930 with the study of mine and mill workers at Asbestos

23      and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

24      Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

25      "alternate entities," and each of them, knew and possessed medical and scientific

26      information of the connection between the inhalation of asbestos fibers and asbestosis,

27      which information was disseminated through the Asbestos Textile Institute and other

28      industry organizations to all other Product Defendants, their "alternate entities," and each

1   of them, herein;

2         (d)    Product Defendants, their "alternate entities," and each of them, failed to

3   warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which

4   were dangerous when breathed and which could cause pathological effects without

5   noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of

6   them, possessed knowledge and were under a duty to disclose that said materials were

7   dangerous and a threat to the health of persons coming into contact therewith;

8         (e)    Product Defendants, their "alternate entities," and each of them, failed to

9   provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate

10   protective masks and other equipment devised to be used when applying, mixing, sawing,

11   cutting, installing and sanding the products of the Defendants, their "alternate entities,"

12   and each of them, despite knowing that such protective measures were necessary, and

13   that they were under a duty to disclose that such materials were dangerous and would

14   result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing

15   such material;

16         (f)    Product Defendants, their "alternate entities," and each of them, knew and

17   failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated,

18   upon inhalation of asbestos would, in time, have a substantial risk of developing

19   irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

20         (g)    Product Defendants, their "alternate entities," and each of them, failed to

21   provide information of the true nature of the hazards of asbestos materials and that

22   exposure to these material would cause pathological effects without noticeable trauma to

23   the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE

24   SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and

25   others who were exposed to asbestos, despite the fact that Product Defendants, their

26   "alternate entities," and each of them, were under a duty to so inform and said failure was

27   misleading;

28         (h)    Product Defendants, their "alternate entities," and each of them, and their

officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Product Defendants, their "alternate entities," and each of them, are liable for the oppressive and malicious acts of their "alternate entities," and each of them, and each Product Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

21.     The herein-described conduct of said Product Defendants, their "alternate entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff TERRY LEE SIEGFRIED, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause asbestos to be released, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Product Defendants, their "alternate entities," and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiff, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

22.     Product Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff TERRY LEE SIEGFRIED.

23.     Product Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.     As a direct and proximate result of such intentional conduct by Product

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

2  sustained the injuries and damages alleged herein.

3      WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

4  entities," and each of them, as hereinafter set forth.

5                          **SECOND CAUSE OF ACTION**

6                                (Strict Liability)

7      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
       ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF PRODUCT
8  DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
                          AND ALLEGE AS FOLLOWS:

9

10     25.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each

11 and every one of the general allegations and the allegations contained in the First Cause of

   Action herein.
12

13     26.    Product Defendants, their "alternate entities," and each of them, sold the

14 aforementioned Defendants' Products and failed to adequately warn or instruct of the known

   and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products,
15
   which dangers and risks would not have been, and were not, recognized by ordinary consumers
16
   of the products, including Plaintiff, TERRY LEE SIEGFRIED, and the lack of sufficient
17
   instructions and/or warnings was a substantial factor in causing harm to Plaintiff TERRY LEE
18
   SIEGFRIED and others in Plaintiff's position working with and in close proximity to such
19
   products.
20

21     27.    Defendants' Products were defective and unsafe for their intended purpose and

22 foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled,

   removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," cut,
23
   sawed, installed, and/or used as intended, or used to cut, saw or manipulate products containing
24
   asbestos or otherwise disturbed, said products would result in the release, and therefore
25
   inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff
26
   TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the
27
   possession of the Product Defendants, their "alternate entities," and each of them. At the time
28

                                        25

1  Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and
2  in close proximity to such products, the products were substantially the same as when they left
3  the possession of the Product Defendants, their "alternate entities," and each of them and/or any
4  changes made to the products after they left the possession of Defendants, their "alternate
5  entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities,"
6  and each of them. Product Defendants' asbestos and asbestos products were used by Plaintiff
7  TERRY LEE SIEGFRIED, and others in Plaintiff's position working with and in close
8  proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of
9  them. The defect in said products was a substantial factor in causing harm and personal injuries
10  to Plaintiff TERRY LEE SIEGFRIED, including malignant mesothelioma, while being used in a
11  reasonably foreseeable manner, thereby rendering said products defective, unsafe, and
12  unreasonably dangerous for their ordinary and intended use.

13      28.   As a direct and proximate result of the actions and conduct outlined herein,
14  Defendants' Products failed to perform as safely as an ordinary consumer would have expected
15  in that Defendants' Products, and each of them, caused respirable asbestos fibers to be released
16  from asbestos products during their ordinary and intended use, and such hazardous exposures
17  lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases,
18  including asbestosis, lung cancer, mesothelioma and other cancers in humans. Plaintiffs further
19  allege that "exposed person," including Plaintiff TERRY LEE SIEGFRIED, were unaware of
20  the harmful effects of asbestos and further unaware of the harmful exposures to Defendants'
21  Products when such exposures occurred, and thus the failure of Defendants' Products to perform
22  as safely as Plaintiff TERRY LEE SIEGFRIED had reason to expect was a substantial factor in
23  causing his injuries.

24      29.   As a direct and proximate result of the actions and conduct outlined herein,
25  Plaintiff TERRY LEE SIEGFRIED has suffered the injuries and damages alleged herein.

26      30.   Plaintiffs further allege that Product Defendants, their "alternate entities," and
27  each of them, also engaged in the following wrongful acts:

28          (a)   Product Defendants, their "alternate entities," and each of them, suppressed

26
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    from all consumers, including Plaintiff TERRY LEE SIEGFRIED, medical and scientific

2    information concerning the health hazards associated with inhalation of asbestos,

3    including the substantial risk of injury or death therefrom. Although Defendants, and

4    each of them, knew of the substantial risks associated with exposure to asbestos, they

5    willfully and knowingly concealed such information from the users of their asbestos

6    and/or asbestos-containing products in conscious disregard of the rights, safety and

7    welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

8          (b)      Product Defendants, their "alternate entities," and each of them, belonged

9    to, participated in, and financially supported industry organizations, including but not

10    limited to the Gypsum Association, Asbestos Information Association, Industrial

11    Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate

12    entities," and each of them, actively promoted the suppression of information about the

13    dangers of asbestos to users of the aforementioned products and materials, thereby

14    misleading Plaintiff TERRY LEE SIEGFRIED and as to the safety of their products.

15    Through their participation and association with such industry organizations, Defendants

16    and each of them knowingly and deliberately concealed and suppressed the true

17    information regarding asbestos and its dangers, and propagated misinformation intended

18    to instill in users of Defendants' Products a false security about the safety of their

19    products. The Dust Control Committee, which changed its name to the Air Hygiene

20    Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject

21    of dust control. Discussions in this committee were held many times regarding the

22    dangers inherent in asbestos and the dangers, which arise from the lack of control of dust,

23    and such information was suppressed from public dissemination from 1946 to a date

24    unknown to Plaintiff TERRY LEE SIEGFRIED at this time;

25          (c)      Commencing in 1930 with the study of mine and mill workers at Asbestos

26    and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

27    Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their

28    "alternate entities," and each of them, knew and possessed medical and scientific

1   information of the connection between the inhalation of asbestos fibers and asbestosis,

2   which information was disseminated through the Asbestos Textile Institute and other

3   industry organizations to all other Defendants, their "alternate entities," and each of them,

4   herein;

5           (d)    Product Defendants, their "alternate entities," and each of them, failed to

6   warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which

7   were dangerous when breathed and which could cause pathological effects without

8   noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of

9   them, possessed knowledge and were under a duty to disclose that said materials were

10   dangerous and a threat to the health of persons coming into contact therewith;

11           (e)    Product Defendants, their "alternate entities," and each of them, failed to

12   provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate

13   protective masks and other equipment devised to be used when applying, mixing, sawing,

14   cutting, installing and sanding the products of the Defendants, their "alternate entities,"

15   and each of them, despite knowing that such protective measures were necessary, and

16   that they were under a duty to disclose that such materials were dangerous and would

17   result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing

18   such material;

19           (f)    Product Defendants, their "alternate entities," and each of them, knew and

20   failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated,

21   upon inhalation of asbestos would, in time, have a substantial risk of developing

22   irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

23           (g)    Product Defendants, their "alternate entities," and each of them, failed to

24   provide information of the true nature of the hazards of asbestos materials and that

25   exposure to these material would cause pathological effects without noticeable trauma to

26   the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE

27   SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and

28   others who were exposed to asbestos, despite the fact that Product Defendants, their

1   "alternate entities," and each of them, were under a duty to so inform and said failure was

2   misleading; and

3        (h)  Product Defendants, their "alternate entities," and each of them, and their

4   officers, directors, and managing agents participated in, authorized, expressly and

5   impliedly ratified, and had full knowledge of, or should have known of, each of the acts

6   set forth herein. Product Defendants, their "alternate entities," and each of them, are

7   liable for the oppressive and malicious acts of their "alternate entities," and each of them,

8   and each Defendant's officers, directors, and managing agents participated in, authorized,

9   expressly and impliedly ratified, and had full knowledge of, or should have known of, the

10   acts of each of their "alternate entities" as set forth herein.

11       31.   The herein-described conduct of said Product Defendants, their "alternate

12   entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in

13   conscious disregard and indifference to the safety and health of "exposed person," including

14   Plaintiff TERRY LEE SIEGFRIED, in that Product Defendants, and each of them, continued to

15   manufacture, market and/or sell dangerous products known to cause severe, permanent injuries

16   and death, despite possessing knowledge of the substantial hazards posed by use of their

17   products, in order to continue to profit financially therefrom. Product Defendants, their

18   "alternate entities," and each of them, engaged in such conduct so despicable, contemptible,

19   base, vile, miserable, wretched and loathsome as to be looked down upon and despised by

20   ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil

21   Code section 3294. Plaintiff, for the sake of example and by way of punishing said Product

22   Defendants, seeks punitive damages according to proof.

23       32.   Product Defendants and each of them engaged in conduct which was intended by

24   Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was

25   carried on by the Defendant with a willful and conscious disregard of the rights or safety of

26   others, including Plaintiff TERRY LEE SIEGFRIED.

27       33.   Product Defendants, and each of them, engaged in the despicable conduct

28   described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel

1  and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung

2  cancer and mesothelioma, in conscious disregard of those persons' rights.

3      34.    As a direct and proximate result of such intentional conduct by Product

4  Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

5  sustained the injuries and damages alleged herein.

6      WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

7  entities," and each of them, as hereinafter set forth.

8              **THIRD CAUSE OF ACTION**

9          (False Representation Under Restatement of Torts Section 402-B)

10      AS AND FOR A FURTHER, THIRD SEPARATE, AND DISTINCT CAUSE OF
        ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS
11      SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
        "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12

13      35.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each

14  and every paragraph of the general allegations and the allegations contained in the First and

15  Second Causes of Action herein.

16      36.    At the aforementioned time when Defendants, their "alternate entities," and each

17  of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,

18  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered

19  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

20  marketed, warranted, re-branded, manufactured for others, packaged and advertised the said

21  asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their

22  "alternate entities," and each of them, expressly and impliedly represented to members of the

23  general public, including the purchasers and users of said product, and other "exposed persons,"

24  including, without limitation, Plaintiff TERRY LEE SIEGFRIED and his employers, that

25  asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for

26  which they were intended.

27      37.    The purchasers and users of said asbestos and asbestos-containing products, and

28  other "exposed persons," including, without limitation, Plaintiff TERRY LEE SIEGFRIED, and

30

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   his employers, relied upon said representations of Defendants, their "alternate entities," and each

2   of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

3       38.    Said representation by Defendants, their "alternate entities," and each of them,

4   were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos

5   and asbestos-containing products and equipment were not safe for their intended use, nor were

6   they of merchantable quality as represented by Defendants, their "alternate entities," and each of

7   them, in that asbestos and asbestos-containing products and equipment have very dangerous

8   properties and defects whereby said products cause asbestosis, other lung damages, and cancer,

9   and have other defects that cause injury and damage to the users of said products and other

10  "exposed persons" thereby threatening the health and life of said persons, including Plaintiff

11  TERRY LEE SIEGFRIED herein.

12      39.    As a direct and proximate result of said false representations by Defendants, their

13  "alternate entities," and each of them, Plaintiffs sustained the injuries and damages alleged

14  herein.

15      WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

16  entities," and each of them, as hereinafter set forth.

17                          **FOURTH CAUSE OF ACTION**

18                      (Intentional Tort/Intentional Failure to Warn)

19      AS AND FOR A FURTHER, FOURTH SEPARATE, AND DISTINCT CAUSE OF
    ACTION FOR INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN, PLAINTIFFS
20  COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND
                      EACH OF THEM, AND ALLEGES AS FOLLOWS:

21

22      40.    Plaintiffs hereby incorporates by reference, as though fully set forth herein, each

23  and every paragraph of the general allegations and the allegations contained in the First through

24  Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

25      41.    At all times pertinent hereto, the Defendants their "alternate entities," and each of

26  them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code

27  of the State of California to abstain from injuring the person, property, or rights of the Plaintiffs.

28  When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities,"

1  and each of them, did do the acts and omissions in violation of that duty, thereby causing injury

2  to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts

3  falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of

4  the State of California and, more specifically, included suggestions of fact which were not true

5  and which Defendants, their "alternate entities," and each of them, did not believe to be true;

6  assertions of fact which were not true and which Defendants, their "alternate entities," and each

7  of them, had no reasonable ground for believing to be true, and the suppression of fact when a

8  duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty

9  gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the

10  aforementioned Civil Code sections.

11       42.     Since on or before 1930, the Defendants, their "'alternate entities," and each of

12  them, have known and have possessed the true facts of medical and scientific data and other

13  knowledge which clearly indicated that the asbestos and asbestos-containing products and

14  equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health

15  and safety of Plaintiffs, and others in Plaintiff TERRY LEE SIEGFRIED's position working in

16  close proximity with such materials. The Defendants, their "alternate entities," and each of them,

17  have known of the dangerous propensities of the aforementioned materials and products since

18  before that time. With intent to deceive Plaintiff TERRY LEE SIEGFRIED, and others in

19  Plaintiffs' position, and with intent that he and such others should be and remain ignorant of

20  such facts with intent to induce Plaintiffs and such others to alter his and their positions to his

21  and their injury and/or risk and in order to gain advantages, the following acts occurred:

22            (a)    Defendants, their "alternate entities," and each of them, did not label any of

23         the aforementioned asbestos-containing materials, products, and equipment regarding the

24         hazards of such materials and products to the health and safety of Plaintiffs and others in

25         Plaintiffs' position working in close proximity with such materials until 1964, when

26         certain of such materials were labeled by some, but not all, of Defendants, their "alternate

27         entities," and each of them, since on or before 1930. By not labeling such materials,

28         products, and equipment as to their said hazards, Defendants, their "alternate entities,"

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    and each of them, caused to be suggested as a fact to Plaintiffs that it was safe for

2    Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials, when in

3    fact it was not true; and Defendants, their "alternate entities," and each of them, did not

4    believe it to be true;

5              (b)    Defendants, their "alternate entities," and each of them, suppressed

6    information relating to the danger of use of the aforementioned materials, products, and

7    equipment by requesting the suppression of information to the Plaintiffs and the general

8    public concerning the dangerous nature of the aforementioned materials to workers, by

9    not allowing such information to be disseminated in a manner which would have given

10   general notice to the public and knowledge of the hazardous nature thereof when

11   Defendants, their "alternate entities," and each of them, were bound to disclose such

12   information;

13             (c)    Defendants, their "alternate entities," and each of them, sold the

14   aforementioned products, materials, and equipment to Plaintiff TERRY LEE

15   SIEGFRIED's employers and others without advising Plaintiff TERRY LEE

16   SIEGFRIED, his employer, and others of the dangers of use of such materials to persons

17   working in close proximity thereto when Defendants, their "alternate entities," and each

18   of them, knew of such dangers, and had a duty to disclose such dangers all as set forth

19   herein. By said conduct, Defendants, their "alternate entities," and each of them, caused

20   to be positively asserted to Plaintiff TERRY LEE SIEGFRIED that which was not true

21   and that which Defendants, their "alternate entities," and each of them had no reasonable

22   ground for believing to be true, to wit: that it was safe for Plaintiff TERRY LEE

23   SIEGFRIED to work in close proximity to such materials;

24             (d)    Defendants, their "alternate entities," and each of them, suppressed from

25   Plaintiffs medical and scientific data and knowledge of the results of studies including,

26   but not limited to, the information and contents of the "Lanza Report." Although bound to

27   disclose it, Defendants, their "alternate entities," and each of them, influenced A. J.

28   Lanza, M.D. to change his report, the altered version of which was published in Public

Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiffs and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)   Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported industry organizations which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED by the suggestions and deceptions set forth above in this cause of action;

(f)   Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the industry organizations to all other Defendants, their "alternate entities," and each of them, herein. Defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiffs. Such facts did mislead Plaintiffs and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff TERRY LEE SIEGFRIED the true facts concerning such knowledge of danger, which Defendants, their "alternate entities," and each of them, were bound to disclose;

(g)   Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were

1    dangerous and a threat to the health of persons coming into contact therewith;

2          (h)    Defendants, their "alternate entities," and each of them, failed to provide

3    Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective

4    masks and other equipment to be used when applying and installing the products of the

5    Defendants, their "alternate entities," and each of them, despite knowing that such

6    protective measures were necessary, and that they were under a duty to disclose that such

7    materials were dangerous and would result in injury to Plaintiff TERRY LEE

8    SIEGFRIED and others applying and installing such material;

9          (i)    Defendants, their "alternate entities," and each of them, when under a duty

10   to so disclose, concealed from Plaintiff TERRY LEE SIEGFRIED the true nature of the

11   industrial exposure of Plaintiff TERRY LEE SIEGFRIED and knew that Plaintiff and

12   anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible

13   conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate

14   entities," and each of them, also concealed from Plaintiff TERRY LEE SIEGFRIED and

15   others that harmful materials to which they were exposed would cause pathological

16   effects without noticeable trauma;

17         (j)    Defendants, their "alternate entities," and each of them, failed to provide

18   information of the true nature of the hazards of asbestos materials and that exposure to

19   these material would cause pathological effects without noticeable trauma to the public,

20   including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED

21   so that said physicians could not examine, diagnose, and treat Plaintiffs and others who

22   were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and

23   each of them, were under a duty to so inform and said failure was misleading;

24         (k)    Defendants, their "alternate entities," and each of them, willfully failed and

25   omitted to complete and file a First Report of Occupational Injury or Illness regarding

26   Plaintiffs' injuries, as required by law, and did willfully fail and omit to file a Report of

27   Injury and Occupational Disease with the State of California. Plaintiff TERRY LEE

28   SIEGFRIED was in the class of persons with respect to whom a duty was owed to file

1    such reports and who would have been protected thereby if the fact of danger from

2    products complained of had become known;

3           (l)      Defendants, their "alternate entities," and each of them, having such

4    aforementioned knowledge, and the duty to inform Plaintiff TERRY LEE SIEGFRIED

5    about the true facts, and knowing the Plaintiff TERRY LEE SIEGFRIED did not possess

6    such knowledge and would breathe such material innocently, acted falsely and

7    fraudulently and with full intent to cause Plaintiff TERRY LEE SIEGFRIED to remain

8    unaware of the true facts and to induce Plaintiff TERRY LEE SIEGFRIED to work in a

9    dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the <u>Civil</u>

10    <u>Code of the State of California</u>.

11       43.     As a direct and proximate result of such intentional conduct by Defendants, their

12    "alternate entities" and each of them, Plaintiffs sustained and continue to sustain the injuries and

13    damages alleged herein.

14       44.     The herein-described conduct of said Defendants, their "alternate entities," and

15    each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard

16    and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

17    example and by way of punishing said Defendants, seek punitive damages according to proof.

18       WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

19    entities," and each of them, as hereinafter set forth.

20                          **FIFTH CAUSE OF ACTION**

21                    (Respirator Defendant's Negligence)

22         AS AND FOR A FIFTH FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE
OF ACTION, PLAINTIFFS COMPLAIN OF RESPIRATOR DEFENDANTS 3M COMPANY

23    f/k/a MINNESOTA MINING & MANUFACTURING COMPANY, BACOU-DALLOZ USA,
INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a

24    WILLSON SAFETY PRODUCTS); and DOES 351-450, and THEIR "ALTERNATE
ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25

26       45.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the

27    general allegations set forth above.

28       46.     Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

1   DEFENDANTS' safety masks while he and others in his immediate presence removed,

2   replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

3       47.   At all times herein mentioned, RESPIRATOR DEFENDANTS were the

4   successor, successor-in-business, successor-in-product line or a portion thereof, parent,

5   subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an

6   entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,

7   assembling, distributing, buying, offering for sale, supplying, selling, inspecting, marketing,

8   warranting, re-branding, manufacturing for others, packaging and advertising safety masks.

9   **DEFENDANT**                          **ALTERNATE ENTITY**

10

11  3M COMPANY                             MINNESOTA MINING AND
                                           MANUFACTURING

12  BACOU-DALLOZ USA, INC                  W.G.M. SAFETY PRODUCTS
                                           WILLSON SAFETY PRODUCTS
13

14      48.   At all times herein mentioned, RESPIRATOR DEFENDANTS and their "alternate

15  entities" were engaged in the business of researching, manufacturing, fabricating, designing,

16  modifying, labeling, assembling, distributing, buying, offering for sale, supplying, selling,

17  inspecting, servicing, installing, renting, marketing, warranting, re-branding, manufacturing for

18  others, packaging, and advertising safety masks.

19      49.   RESPIRATOR DEFENDANTS knew, or reasonably should have known, that

20  safety masks were dangerous and were likely to be dangerous when used in their intended and

21  reasonably foreseeable manner.

22      50.   At all times herein mentioned, RESPIRATOR DEFENDANTS singularly and

23  jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed,

24  modified, tested or failed to test, warned or failed to warn of the health hazards, labeled,

25  assembled, distributed, bought, offered for sale, supplied, sold, inspected, serviced, installed,

26  repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised

27  safety masks to be used with asbestos, and were unreasonably dangerous because respirable

28  asbestos fibers could be and were inhaled while wearing RESPIRATOR DEFENDANTS' safety

1  masks resulting in personal injuries to users, consumers, workers, bystanders, and others,

2  including Plaintiff, TERRY LEE SIEGFRIED.

3      51.    Said safety masks were used at all times in a manner that was reasonably

4  foreseeable to RESPIRATOR DEFENDANTS thereby rendering said products unsafe and

5  dangerous for use by Plaintiff, TERRY LEE SIEGFRIED. Plaintiffs herein allege that

6  RESPIRATOR DEFENDANTS' negligence caused Plaintiff, TERRY LEE SIEGFRIED, to be

7  exposed to asbestos released from asbestos containing products, and that RESPIRATOR

8  DEFENDANTS' negligence and Plaintiff's exposures to asbestos resulting therefrom were

9  substantial contributing factors in the development of Plaintiff's malignant mesothelioma and

10  death, and therefore proximately caused Plaintiffs' injuries and damages.

11     52.    At all relevant times, RESPIRATOR DEFENDANTS had a duty to exercise

12  reasonable care while engaging in the activities mentioned above and RESPIRATOR

13  DEFENDANTS breached said duty of reasonable care in that RESPIRATOR DEFENDANTS

14  failed to safely and adequately design, manufacture and/or sell its safety masks; failed to test or

15  adequately test its safety masks; failed to investigate the hazards of its safety masks; failed to

16  instruct on safer uses of its safety masks to minimize or eliminate harmful exposures; failed to

17  warn "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, of the health hazards of

18  using RESPIRATOR DEFENDANTS' safety masks; failed to warn of the harmful exposures

19  caused by use of RESPIRATOR DEFENDANTS' safety masks; failed to instruct on safer uses

20  of said safety masks to minimize harmful exposures; failed to disclose the known or knowable

21  dangers of using RESPIRATOR DEFENDANTS' safety masks; and/or failed to obtain or offer

22  suitable alternative RESPIRATOR DEFENDANTS' safety masks when such alternatives were

23  available.

24     53.    Since on or before 1930, the hazards and dangerous propensities of the asbestos

25  were both known and knowable to RESPIRATOR DEFENDANTS through the use of medical

26  and/or scientific data and other knowledge available to RESPIRATOR DEFENDANTS at the

27  time of its manufacture, distribution, sale, research, study, fabrication, design, modification,

28  labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,

1  contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for
2  others, packaging and advertising, of its safety masks, all of which clearly indicated the hazards
3  and dangerous propensities of exposures to asbestos and that they presented a substantial danger
4  to end users, including Plaintiff, TERRY LEE SIEGFRIED.

5      54.   RESPIRATOR DEFENDANTS knew, or reasonably should have known, that is
6  safety masks would be used during the installation, repair, maintenance, overhaul, removal,
7  sawing, chipping, hammering, mixing, scraping, sanding, sweeping, breaking, "ripping out,"
8  cutting, dumping, disturbing or handling of asbestos, or otherwise in the ordinary, intended and
9  foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and
10  that through such activity, "exposed person," including Plaintiff, TERRY LEE SIEGFRIED,
11  herein, would be exposed to said hazardous and dangerous asbestos fibers while using
12  RESPIRATOR DEFENDANTS' safety masks in an intended and reasonably foreseeable
13  manner.

14      55.   RESPIRATOR DEFENDANTS' negligent failure to warn was a substantial factor
15  in causing harm to Plaintiff, TERRY LEE SIEGFRIED. RESPIRATOR DEFENDANTS knew
16  or reasonably should have known that users, such as Plaintiff, TERRY LEE SIEGFRIED, and
17  others in his position, working with and in close proximity to asbestos would not realize or
18  know the danger of asbestos while wearing its safety masks. RESPIRATOR DEFENDANTS
19  thereafter negligently failed to adequately warn or instruct of the dangers of asbestos while using
20  its safety masks, as reasonable designers, manufacturers, distributors, sellers, or suppliers, under
21  the same or similar circumstances, would have warned of these dangers to avoid asbestos
22  exposures, a foreseeable risk of harm.

23      56.   At all relevant, RESPIRATOR DEFENDANTS were additionally negligent
24  because they failed to recall/retrofit their safety masks in that RESPIRATOR DEFENDANTS
25  manufactured/distributed/sold products, that RESPIRATOR DEFENDANTS knew or
26  reasonably should have known were dangerous or were likely to be dangerous when used in a
27  reasonably foreseeable manner; that RESPIRATOR DEFENDANTS became aware of the
28  defectiveness of their safety masks after the product was sold to Plaintiff's employer; that

1   RESPIRATOR DEFENDANTS failed to recall/retrofit or warn of the dangers of using their
2   safety masks; that a reasonable manufacturer/distributor/seller under the same or similar
3   circumstance would have recalled/retrofitted the product; that Plaintiff, TERRY LEE
4   SIEGFRIED, was injured by asbestos using RESPIRATOR DEFENDANTS' safety masks; and
5   that RESPIRATOR DEFENDANTS' failure to recall/retrofit their masks was a substantial
6   factor in causing Plaintiff, TERRY LEE SIEGFRIED'S injuries and death.

7       57.   Plaintiffs further allege that RESPIRATOR DEFENDANTS also engaged in the
8   following wrongful acts:

9           (a)   RESPIRATOR DEFENDANTS suppressed from all consumers, including
10          Plaintiff, TERRY LEE SIEGFRIED, medical and scientific information concerning the
11          health hazards associated with inhalation of asbestos, including the substantial risk of
12          injury or death therefrom. Although RESPIRATOR DEFENDANTS knew of the
13          substantial risks associated with exposure to asbestos, they willfully and knowingly
14          concealed such information from the users of their asbestos and/or asbestos-containing
15          products in conscious disregard of the rights, safety and welfare of "exposed person,"
16          including Plaintiff, TERRY LEE SIEGFRIED;

17          (b)   RESPIRATOR DEFENDANTS belonged to, participated in, and
18          financially supported industry organizations, including but not limited to the Gypsum
19          Association, Asbestos Information Association, Industrial Hygiene Foundation and
20          others, which, for and on behalf of RESPIRATOR DEFENDANTS actively promoted the
21          suppression of information about the dangers of asbestos to users of the aforementioned
22          products and materials, thereby misleading Plaintiff, TERRY LEE SIEGFRIED, as to the
23          safety of their products. Through their participation and association with such industry
24          organizations, RESPIRATOR DEFENDANTS knowingly and deliberately concealed and
25          suppressed the true information regarding asbestos and its dangers, and propagated
26          misinformation intended to instill a false security about the asbestos. The Dust Control
27          Committee, which changed its name to the Air Hygiene Committee, of the Asbestos
28          Textile Institute, was specifically enlisted to study the subject of dust control. Discussions

in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff, TERRY LEE SIEGFRIED, at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, RESPIRATOR DEFENDANTS knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to RESPIRATOR DEFENDANTS. RESPIRATOR DEFENDANTS thereafter failed to provide this information to consumers;

(d)     RESPIRATOR DEFENDANTS failed to warn Plaintiff, TERRY LEE SIEGFRIED, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that RESPIRATOR DEFENDANTS and its "alternate entities" possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     RESPIRATOR DEFENDANTS failed to provide Plaintiff, TERRY LEE SIEGFRIED, with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding asbestos containing products, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff, TERRY LEE SIEGFRIED, and others applying and installing such material;

(f)     RESPIRATOR DEFENDANTS knew and failed to disclose that Plaintiff, TERRY LEE SIEGFRIED, and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of

1    pneumoconiosis, asbestosis, mesothelioma and/or cancer;

2        (g)    RESPIRATOR DEFENDANTS failed to provide information of the true

3    nature of the hazards of its masks and asbestos and that exposure to asbestos would cause

4    pathological effects without immediate, noticeable trauma to the public, including buyers,

5    users, and physicians employed by Plaintiff, TERRY LEE SIEGFRIED, so that said

6    physicians could not examine, diagnose, and treat Plaintiff and others who were exposed

7    to asbestos, despite the fact that RESPIRATOR DEFENDANTS were under a duty to so

8    inform and said failure was misleading;

9        (h)    RESPIRATOR DEFENDANTS and its officers, directors, and managing

10   agents participated in, authorized, expressly and impliedly ratified, and had full

11   knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR

12   DEFENDANTS is liable for the oppressive and malicious acts of their "alternate entities"

13   and each Defendant's officers, directors, and managing agents participated in, authorized,

14   expressly and impliedly ratified, and had full knowledge of, or should have known of, the

15   acts of each of their "alternate entities" as set forth herein.

16       58.    The herein-described conduct of said RESPIRATOR DEFENDANTS was and is

17   willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the

18   safety and health of "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, in that

19   RESPIRATOR DEFENDANTS continued to manufacture, market, supply, distribute and/or sell

20   dangerous safety masks known to allow exposures to asbestos, and to cause severe, permanent

21   injuries and death, despite possessing knowledge of the substantial hazards posed by use of its

22   safety masks, in order to continue to profit financially therefrom. RESPIRATOR

23   DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable,

24   wretched and loathsome so as to be looked down upon and despised by ordinary people and

25   justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.

26   Plaintiffs, for the sake of example and by way of punishing said RESPIRATOR

27   DEFENDANTS, seek punitive damages according to proof.

28       59.    RESPIRATOR DEFENDANTS engaged in conduct which was intended by

1 | RESPIRATOR DEFENDANTS to cause injury to the Plaintiff, and its despicable conduct

2 | which was carried on by the RESPIRATOR DEFENDANTS with a willful and conscious

3 | disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

4 |     60.   RESPIRATOR DEFENDANTS engaged in the despicable conduct described

5 | herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust

6 | hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and

7 | mesothelioma, in conscious disregard of those persons' rights.

8 |     61.   As a direct and proximate result of the conduct of RESPIRATOR

9 | DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, was exposed to asbestos which caused

10 | severe and permanent injury and death to the Plaintiff, the nature of which, along with the date

11 | of Plaintiff diagnosis and death and the date he learned such injuries were attributable to

12 | exposure to RESPIRATOR DEFENDANTS. Plaintiffs are now informed and believe, and

13 | thereon allege, that progressive lung disease, cancer and other serious diseases are caused by

14 | inhalation of asbestos fibers without immediate, perceptible trauma and that said disease results

15 | from exposure to asbestos.

16 |     62.   Plaintiff, TERRY LEE SIEGFRIED suffered from malignant mesothelioma,

17 | caused by RESPIRATOR DEFENDANTS' negligence and Plaintiff's exposure to asbestos

18 | because of his reliance and use of RESPIRATOR DEFENDANTS' safety masks while

19 | handling, cutting, sawing, lathing or otherwise manipulating asbestos and products containing

20 | asbestos including those products identified in paragraph 3 above. Plaintiff, TERRY LEE

21 | SIEGFRIED, was not aware at the time of exposure that RESPIRATOR DEFENDANTS' safety

22 | masks presented any risk of injury and/or disease.

23 |     63.   As a direct and proximate result of such intentional conduct by RESPIRATOR

24 | DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages

25 | alleged herein, Plaintiff, TERRY LEE SIEGFRIED, suffered injuries to his person, body and

26 | health, and death, including, but not limited to, pain, discomfort, loss of weight, loss of appetite,

27 | fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental

28 | and emotional distress attendant thereto, all to Plaintiffs' general damage in a sum in excess of

1  the jurisdictional limit of a limited civil case.

2      64.    As a direct and proximate result of the aforesaid conduct of RESPIRATOR

3  DEFENDANTS, Plaintiffs incurred, are presently incurring, and will incur in the future, liability

4  for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical

5  treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to

6  proof at trial.

7      65.    As a further direct and proximate result of the said conduct of the RESPIRATOR

8  DEFENDANTS, Plaintiffs incurred, and will incur, loss of income, wages, profits and

9  commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact

10  amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

11      WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

12  hereinafter set forth.

13                          **SIXTH CAUSE OF ACTION**

14                      (Respirator Defendants' Strict Liability)

15      AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF
        ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF RESPIRATOR
16  DEFENDANTS AND THEIR "ALTERNATE ENTITIES" AND ALLEGE AS FOLLOWS:

17      66.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each

18  and every one of the general allegations and the allegations contained in paragraphs 1, 2, 3, 5,

19  and 45-65 above.

20      67.    Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

21  DEFENDANTS' safety masks while he and others in his immediate presence removed,

22  replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

23      68.    RESPIRATOR DEFENDANTS sold safety masks and failed to adequately warn

24  or instruct of the known and knowable dangers and risks of the ordinary, intended, and

25  foreseeable use of its safety masks, which dangers and risks would not have been, and were not,

26  recognized by RESPIRATOR DEFENDANTS' customers or ordinary consumers of the masks,

27  including Plaintiff, TERRY LEE SIEGFRIED.

28      69.    The lack of sufficient instructions and/or warnings was a substantial factor in

1   causing harm to Plaintiff, TERRY LEE SIEGFRIED, and others in Plaintiff's position working
2   with and in close proximity to such products.

3       70.    RESPIRATOR DEFENDANTS' safety masks were defective and unsafe for their
4   intended purpose and foreseeable use in that, when used said masks would result in inhalation of
5   hazardous and dangerous asbestos fibers by persons wearing the masks, including Plaintiff,
6   TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the
7   possession of RESPIRATOR DEFENDANTS.

8       71.    At the time RESPIRATOR DEFENDANTS' safety masks were used by Plaintiff
9   the products were in substantially the same condition as when they left the possession of
10  RESPIRATOR DEFENDANTS and/or any changes made to the products after they left the
11  possession of RESPIRATOR DEFENDANTS were reasonably foreseeable. RESPIRATOR
12  DEFENDANTS' safety masks were used by Plaintiff, TERRY LEE SIEGFRIED, in a way that
13  was reasonably foreseeable to RESPIRATOR DEFENDANTS. The defect in said products was
14  a substantial factor in causing harm and personal injuries to Plaintiff, TERRY LEE
15  SIEGFRIED, including malignant mesothelioma, since they were being used in a reasonably
16  foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably
17  dangerous for their ordinary and intended use.

18      72.    As a direct and proximate result of the actions and conduct outlined herein,
19  RESPIRATOR DEFENDANTS' safety masks failed to perform as safely as an ordinary
20  company or consumer would have expected in that RESPIRATOR DEFENDANTS' safety
21  masks allowed respirable asbestos fibers to be inhaled from asbestos products during the safety
22  masks ordinary and intended use, and these hazardous asbestos exposures cause severe and fatal
23  diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.

24      73.    Plaintiffs further allege Plaintiff, TERRY LEE SIEGFRIED, and his employers
25  were unaware of the defect in RESPIRATOR DEFENDANTS' safety masks and further
26  unaware of the harmful exposures to asbestos that would occur when using RESPIRATOR
27  DEFENDANTS' safety masks, and this failure of RESPIRATOR DEFENDANTS' safety masks
28  to perform as safely as expected was a substantial factor in causing his injuries.

74.    As a direct and proximate result of the actions, defects and conduct outlined herein, Plaintiff, TERRY LEE SIEGFRIED, suffered the injuries and damages alleged herein

75.    RESPIRATOR DEFENDANTS and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS are liable for the oppressive and malicious acts of its "alternate entities" and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

76.    The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing RESPIRATOR DEFENDANTS seeks punitive damages according to proof.

77.    RESPIRATOR DEFENDANTS engaged in conduct which was intended to cause injury to the Plaintiff, and despicable conduct which was carried on by RESPIRATOR DEFENDANTS with a willful and conscious disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

78.    RESPIRATOR DEFENDANTS engaged in the despicable conduct described herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

79.    As a direct and proximate result of such intentional conduct by RESPIRATOR DEFENDANTS Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Loss of Consortium)

AS AND FOR A FURTHER, SEVENTH SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF TERRI SIEGFRIED COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

80.    Plaintiff TERRI SIEGFRIED incorporates by reference, each and every paragraph of the First through Sixth Causes of Action herein.

81.    Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED were married on July 7, 1991, and at all times relevant to this action were, and are now, husband and wife.

82.    Prior to Plaintiff TERRY LEE SIEGFRIED's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Plaintiff TERRY LEE SIEGFRIED has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, TERRI SIEGFRIED has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

83.    Plaintiff TERRI SIEGFRIED's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

84.    As a direct and proximate result of the acts of Defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff TERRY LEE SIEGFRIED, as set forth in this complaint, Plaintiff TERRI SIEGFRIED has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of

1  services, marital relations, society, comfort, companionship, love and affection of said spouse,

2  and has suffered severe mental and emotional distress and general nervousness as a result

3  thereof.

4         WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

5  and each of them, in an amount to be proved at trial in each individual case, as follows:

6         Plaintiff TERRY LEE SIEGFRIED:

7         1.     For Plaintiff's general damages according to proof;

8         2.     For Plaintiff's loss of income, wages, and earning potential according to proof;

9         3.     For Plaintiff's medical and related expenses according to proof;

10        Plaintiff TERRI SIEGFRIED:

11        4.     For Plaintiff's damages for loss of consortium and/or society according to proof;

12        Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED:

13        5.     For Plaintiffs' cost of suit herein;

14        6.     For exemplary or punitive damages according to proof;

15        7.     For damages for fraud according to proof; and

16        8.     For such other and further relief as the Court may deem just and proper, including

17  costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and

18  related provisions of law.

19

20  DATED: January 26, 2018            **THE LANIER LAW FIRM**

21

22                                     By:

23                                          Mark A. Linder
                                            Case A. Dam
24                                          Attorneys for Plaintiffs

25

26

27

28

48

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs hereby demand trial by jury as to all issues so triable.

3   DATED: January 26, 2018          **THE LANIER LAW FIRM**

4

5                                    By:

6                                    Mark A. Linder
7                                    Case A. Dam
8                                    Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT "A"**

2      Plaintiff TERRY LEE SIEGFRIED's exposure to asbestos and asbestos-containing

3  products occurred at various locations including but not limited to within the States of

4  California, , and additional sites including, but not limited to:

| Employer | Location of Exposure | Job Title | Date(s) |
|---|---|---|---|
| Long Beach Naval Shipyard | Various, including, but not limited to: Long Beach Naval Shipyard; Long Beach, CA; Roark (FF-1053); Gray (FF-1054); Hepburn (FF-1055); Meyerkord (FF-1058); Lockwood (FF-1064); Markin Shields (FF-1066); Francis Hammonds (FF-1067); Downes (FF-1070); Cook (Ff-1083); Barbey (FF-1088); Ogden (LPD-5); Duluth (LPD-6;); Cleveland (LPD-7); Dubuque (LPD-8); Denver (LPD-9); Juneau (LPD-10); Norton Sound (AVM-1); St. Paul (CA-73); Chicago (CA-136); New Jersey (BB -62); Missouri (BB-63); Hull (DD-945); Morton (DD-948); Lofberg (DD-759); Tripoli (LPH-10); Paul Foster (DD-964); Kinkaid (DD-965); Hewitt (DD-966); David R Ray (DD-971); Oldendorf (DD-972); John Young (DD -973); Jouett (CG-29); Home (CG-30); Sterett (CG-31); Fox (CG-33); Tarawa (LHA-1); Belleau Wood (LHA-3); Peleliu (LHA-5); Henry B. Wilson (DDG-7); Towers (DDG-9); Robison (DDG-12); Hoel (DDG-13); Waddell (DDG-24) | Various, including but not limited to: Electrician, Marine Electrician | Approx. 1969-1996 |

50

i

1

**EXHIBIT "B"**

2        Plaintiff TERRY LEE SIEGFRIED's exposure to Defendants' Products caused severe

3   and permanent injury to Plaintiff TERRY LEE SIEGFRIED including, but not limited to,

4   mesothelioma. Plaintiff was diagnosed with mesothelioma on or about October of 2017.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark A. Linder, CA Bar No. 268796
Case A. Dam, CA Bar No. 289054
**THE LANIER LAW FIRM**
6810 FM 1960 West
Houston, TX 77069
Telephone: 713-659-5200
Facsimile: 713-659-2204

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| **TERRY LEE SIEGFRIED and TERRI SIEGFRIED,**<br><br>Plaintiffs,<br><br>vs.<br><br>**3M COMPANY** (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY);<br>**AIR & LIQUID SYSTEMS CORPORATION** (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);<br>**ABB, INC.** (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY);<br>**ALFA LAVAL INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION);<br>**ATWOOD & MORRILL CO., INC.** d/b/a WEIR VALVES & CONTROLS USA INC.;<br>**AURORA PUMP COMPANY;**<br>**A.O. SMITH CORP.;**<br>**BACOU-DALLOZ USA, INC.,** (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS);<br>**CARRIER CORPORATION;**<br>**CARVER PUMP COMPANY;** | Case No.<br><br>**NOTICE FOR POSTING JURY FEES** |

1    **CBS CORPORATION** (a Delaware
    Corporation) f/k/a VIACOM, INC. (as
2    successor-by-merger to CBS
    CORPORATION) (a Pennsylvania
3    Corporation) f/k/a WESTINGHOUSE
    ELECTRIC CORPORATION) and also as
4    successor-in-interest to BF
5    STURTEVANT;
    **CLA-VAL CO.;**
6    **CLEAVER-BROOKS, INC.** (sued
7    individually and as successor-in-interest to
    DAVIS ENGINEERING COMPANY
8    formerly known as AQUA-CHEM, INC.
    doing business as CLEAVER-BROOKS
9    DIVISION);
10   **COOPER WIRING DEVICES,** a
    division of COOPER INDUSTRIES
11   (individually and as successor-in-interest
12   to ARROW-HART & HEGEMAN, INC.);
    **COPES-VULCAN, INC.;**
13   **CRANE CO.** (sued individually and
    successor-in-interest to COCHRANE
14   CORPORATION; CHAPMAN VALVE
15   COMPANY and JENKINS VALVES);
    **CRANE ENVIRONMENTAL, INC.**
16   (sued individually and successor-in-
    interest to COCHRANE
17   CORPORATION);
18   **EATON CORPORATION** (sued
    individually and as successor-in-interest to
19   CUTLER-HAMMER INC.);
    **EATON ELECTRICAL, INC.** (sued
20   individually and as successor-in-interest to
21   CUTLER-HAMMER INC.);
    **ELLIOT TURBOMACHINERY**
22   **COMPANY** a/k/a ELLIOTT COMPANY;
    **EMERSON ELECTRIC CO.**
23   (individually and as successor-in-interest
24   to KEYSTONE VALVES AND
    CONTROLS, INC.);
25   **FISHER CONTROLS**
    **INTERNATIONAL LLC** f/k/a FISHER
26   GOVERNOR COMPANY;
27   **FMC CORPORATION** (sued
    individually and as successor-in-interest to
28   NORTHERN PUMP COMPANY and

2
PLAINTIFFS' NOTICE OF POSTING JURY FEES

PEERLESS PUMP COMPANY);
**FOSTER WHEELER ENERGY**
**CORPORATION;**
**FRASER BOILER SERVICE, INC.;**
**GARDNER-DENVER, INC.;**
**GENERAL DYNAMICS**
**CORPORATION** (successor-in-interest
to BATH IRON WORKS LTD. f/k/a THE
HYDE WINDLASS COMPANY);
**GENERAL ELECTRIC COMPANY**
(individually and as successor-in-interest
to MASONEILAN, and MANNING,
MAXWELL & MOORE, INC.);
**GIBBS & COX, INC.;**
**THE GORMAN-RUPP COMPANY**
(individually and as successor-in-interest
to PATTERSON PUMP COMPANY, and
C.H. WHEELER);
**GOULDS ELECTRONICS** (as
successor-in-interest to ITE CIRCUIT
BREAKER CO.);
**GOULDS PUMPS, INC.;**
**HARDIE-TYNES CO., INC.** (sued
individually and as successor-in-interest to
HARDIE-TYNES MANUFACTURING
CO. and HARDIE-TYNES
MANUFACTURING COMPANY);
**HARDIE-TYNES FOUNDRY &**
**MACHINE CO.** (sued individually and as
successor-in-interest to HARDIE-TYNES
MANUFACTURING CO. and HARDIE-
TYNES MANUFACTURING
COMPANY);
**HARDIE-TYNES, LLC** (sued
individually and as successor-in-interest to
HARDIE-TYNES MANUFACTURING
CO. and HARDIE-TYNES
MANUFACTURING COMPANY);
**HERCULES MANUFACTURING**
**COMPANY, INC;**
**HOWDEN NORTH AMERICA, INC.**
f/k/a HOWDEN BUFFALO, INC.
(individually and as successor-in-interest
to BUFFALO FORGE COMPANY);
**IMO INDUSTRIES, INC.** (sued
individually and as successor-in-interest to

3

1  DELAVAL TURBINE, INC.);
2  **INGERSOLL-RAND COMPANY**
   (individually and as successor-in-interest
3  to TERRY STEAM TURBINE);
   **ITT INDUSTRIES, INC.** (sued
4  individually and as successor-in-interest to
   BELL & GOSSETT, FOSTER
5  ENGINEERING and HOFFMAN
   SPECIALTY);
6  **KERR MACHINERY CO.** n/k/a KERR
7  PUMP & SUPPLY INC.;
   **LAWLER MANUFACTURING**
8  **COMPANY, INC.** f/k/a LAWLER
9  AUTOMATIC CONTROLS, INC.;
   **THE MARLEY-WYLAIN COMPANY;**
10 **MUELLER STEAM SPECIALITY**
   **COMPANY** n/k/a WATTS WATER
11 TECHNOLOGIES, INC.;
12 **THE NASH ENGINEERING**
   **COMPANY;**
13 **OWENS-ILLINOIS, INC.;**
   **PPG INDUSTRIES, INC.** (individually
14 and as successor-in-interest to AKZO
15 NOBEL INC., and DEVOE COATINGS);
   **QUIMBY EQUIPMENT COMPANY;**
16 **ROBERTSHAW CONTROLS**
   **COMPANY** (individually and as
17 successor-in-interest to FULTON
18 SYLPHON COMPANY);
   **ROCKWELL AUTOMATION INC.**
19 (individually and as successor by merger
   to ALLEN-BRADLEY COMPANY LLC
20 and ROSTONE CORPORATION);
21 **ROSS OPERATING VALVE**
   **COMPANY** d/b/a ROSS CONTROLS;
22 **RSCC WIRE & CABLE, LLC.;**
   **SCHNEIDER ELECTRIC, USA, INC.,**
23 f/k/a SQUARE D COMPANY;
24 **SIEMENS CORPORATION**
   (individually and as successor-in-interest
25 to ITE CIRCUIT BREAKER CO.);
26 **SIEMENS ENERGY INC.** (individually
   and as successor by merger to DRESSER-
27 RAND GROUP, INC.);
   **SPIRAX SARCO, INC.;**
28 **SPX CORPORATION** (sued individually

4
PLAINTIFFS' NOTICE OF POSTING JURY FEES

1  and as successor-in-interest to THE
   MARLEY COMPANY, WYLAIN, INC.,
2  WEIL-McCLAIN, a division of WYLAIN,
   INC., and WEIL-McCLAIN);
3  **STERLING FLUID SYSTEMS, (USA)**
4  **LLC f/k/a PEERLESS PUMP**
   **COMPANY;**
5  **SULZER PUMPS HOUSTON, INC.**
6  (sued individually and as successor-in-
   interest to PACO PUMPS f/k/a PACIFIC
7  PUMPING COMPANY);
   **SUPERIOR-LIDGERWOOD-MUNDY**
8  (individually and as successor-in-interest
9  to M.T. Davidson Co.);
   **VELAN VALVE CORP.;**
10 **VIAD CORP** f/k/a THE DIAL
   CORPORATION (sued individually and
11 as successor-in-interest to GRISCOM-
   RUSSELL COMPANY);
12 **VIKING PUMP, INC.**, a Unit of IDEX
13 Corporation;
   **WARREN PUMPS, LLC** (individually
14 and as successor-in-interest to QUIMBY
   PUMP COMPANY);
15 **WEIL-McCLAIN;**
16 **WEIL-McCLAIN**, a division of THE
   MARLEY COMPANY (sued individually
17 and as successor-in-interest to WYLAIN
   CO.);
18 **WILO USA LLC** (individually and as
19 successor-in-interest to WEIL PUMP
   COMPANY, INC.);
20 **WEIR VALVES & CONTROLS USA**
21 **INC.** f/k/a ATWOOD & MORRILL;
   **THE WILLIAM POWELL**
22 **COMPANY;**
   and DOES 1-450, inclusive,
23
24                                    Defendants.

25 ///

26 ///

27 ///

28 ///

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that Plaintiffs have posted Jury Fees in the amount of $150 in

3   the above-entitled matter.

4

5   DATED: January 26, 2018          **THE LANIER LAW FIRM**

6

7                                    By:

8

9                                    _____
                                     Mark A. Linder

10                                   Case A. Dam
                                     Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF TEXAS      )

COUNTY OF HARRIS   )

I am employed in the County of Harris, State of Texas.  I am over eighteen years of age and not a party to the within action; my business address is 6810 FM 1960 West, Houston, Texas 77069.

On the date set forth below, I served the foregoing document(s) described as:

**PLAINTIFFS' NOTICE OF POSTING JURY FEES**

By the method as described below:

[  ]  **BY MAIL**:  I caused such envelope(s) to be deposited in the mail at Houston, Texas, with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  It is aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[  ]  **BY FACSIMILE**:  I caused a courtesy copy to be transmitted by facsimile to the facsimile number of the offices of the addressee(s) as indicated on the attached service list.

[  ]  **BY FEDERAL EXPRESS**:  I caused such envelope to be transmitted by federal express for next day delivery (by 10:30 a.m.) to the offices of the addressee(s) as indicated on the attached service list.

[ XX ]**BY PERSONAL SERVICE**:  I caused a courtesy copy to be hand delivered to the office of the addressee(s) as indicated in the attached service list.

[  ]  **BY ELECTRONIC SERVICE**:  I caused such document to be electronically served through File & Serve Xpress E-Serve on the recipients designated on the Transaction Receipt located on the File & Serve Xpress website (see attached service list).

I declare under penalty of perjury, under the laws of the State of California that the above is true and correct.

Executed this 26th day of January, 2018, at Houston, Texas.

*Sadie Turner*

SADIE TURNER

PLAINTIFFS' NOTICE OF POSTING JURY FEES

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| | | |
|---|---|---|
| **3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY)**<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **AIR AND LIQUID SYSTEMS CORPORATION,** as successor by merger to Buffalo Pumps, Inc.<br><br>**Registered Agent:**<br>CT Corporation System<br>116 Pine St, Ste. 320<br>Harrisburg, PA 17101-1250 | **ABB, INC.** (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA 90017 |
| **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION)<br><br>**Registered Agent:**<br>c/o CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060 | **ATWOOD & MORRILL CO., INC.** d/b/a WEIR VALVES & CONTROLS USA INC.<br><br>**Registered Agent:**<br>29 Old Right Road<br>Ipswich, MA 01938 | **AURORA PUMP COMPANY**<br><br>**Registered Agent:**<br>c/o Lynette Jones<br>13515 Ballantyne Corporate Place<br>Charlotte, NC 28277 |
| **A.O. SMITH CORP.**<br><br>**Registered Agent:**<br>The Prentice-Hall Corporation System, Inc.<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **BACOU-DALLOZ USA, INC.,** (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS<br><br>**Registered Agent:**<br>Corporation Service Company<br>222 Jefferson Blvd., Suite 200<br>Warwick, RI 02888<br>□ | **CARRIER CORPORATION**<br><br>**Registered Agent:**<br>CT Corporation System<br>450 Veterans Memorial Parkway, Suite 7A<br>East Providence, RI 02914 |
| **CARVER PUMP COMPANY**<br><br>**Registered Agent:**<br>L & W Agents Inc<br>220 N Main St Ste 600<br>Davenport, IA, 52801 | **CBS CORPORATION** ((a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT<br><br>**Registered Agent:**<br>Corporation Service Company<br>Suite 400<br>2711 Centerville Road<br>Wilmington, Delaware 19808 | **CLA-VAL CO.**<br><br>**Registered Agent:**<br>Kelly Henrie, Communications Manager, Authorized to Accept<br>1701 Placentia Avenue<br>Costa Mesa, CA 92627 |

1

 

## SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
### SERVICE LIST
#### Case No. BC_____
#### January 26, 2018

| CLEAVER-BROOKS, INC. sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION<br><br>**Registered Agent:**<br>Corporation Service Company<br>2711 Centerville Rd., Suite 400<br>Wilmington, DE 19808 | COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);<br><br>**Registered Agent:**<br>CT Corporation System<br>350 North St. Paul Street, Suite 2900, Dallas, TX 75201 | COPES-VULCAN, INC.<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 |
|---|---|---|
| CRANE CO. individually and as successor in interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | CRANE ENVIRONMENTAL, INC. individually and as successor in interest to COCHRANE CORPORATION<br><br>**Registered Agent:**<br>C T Corporation System<br>1200 South Pine Island Road<br>Plantation FL 33324 | EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 |
| EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.)<br><br>**Registered Agent:**<br>c/o Sam Anderson<br>1111 Superior A venue<br>Cleveland, OH 44114 | ELLIOT TURBOMACHINERY COMPANY, INC.<br><br>**Registered Agent:**<br>CT Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.)<br><br>**Registered Agent:**<br>c/o Sara Bosco<br>8000 West Florissant Ave.<br>St. Louis, MO 63136 |
| FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | FMC CORPORATION (individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | FOSTER WHEELER ENERGY CORPORATION<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 |
| FRASER BOILER SERVICE, INC.<br><br>**Registered Agent:**<br>Resource Transition Consultants Llc<br>144 Railroad Ave # 310<br>Edmonds, WA, 98020-0000 | GARDNER-DENVER, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY)<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St<br>Wilmington, DE 19801 |

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY,** individually and as successor-in-interest to MASONNEILAN, and MANNING, MAXWELL & MOORE, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **GIBBS & COX, INC.**<br><br>**Registered Agent:**<br>CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060 | **THE GORMAN-RUPP COMPANY,** individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H. WHEELER<br><br>**Registered Agent:**<br>CSC-Lawyers Incorporating Service<br>50 West Broad Street, Suite 1800<br>Columbus, OH 43215 |
| **GOULDS ELECTRONICS** (as successor-in-interest to ITE CIRCUIT BREAKER CO.)<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA 90017 | **GOULDS PUMPS, INC.**<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St<br>Wilmington, DE 19801 | **HARDIE-TYNES FOUNDRY & MACHINE CO.** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>National Registered Agents, Inc.<br>150 S. Perry St.<br>Montgomery, AL 36104 |
| **HARDIE-TYNES CO., INC.** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>Charles W. Debardeleben<br>800 28th St. North<br>Birmingham, AL 35203 | **HARDIE-TYNES, LLC** (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY)<br><br>**Registered Agent:**<br>National Registered Agents, Inc.<br>2 North Jackson Street, Suite 605<br>Montgomery, AL 36104 | **HERCULES MANUFACTURING COMPANY, INC.**<br><br>**Registered Agent:**<br>Brinkley Technology Group, Llc<br>2770 Erie St S<br>Massillon, OH 44646 |
| **HOWDEN NORTH AMERICA, INC.** f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY)<br><br>**Registered Agent:**<br>CT Corporation System<br>2 Office Park Court, Suite 103<br>Columbia, SC 29223 | **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.)<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **INGERSOLL-RAND COMPANY,** individually and as successor-in- ) interest to TERRY STEAM TURBINE<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 |

 

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| | | |
|---|---|---|
| **ITT INDUSTRIES, INC.** sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFMAN SPECIALTY)<br><br>**Registered Agent:**<br>CT Corporation System<br>208 S. LaSalle St., Suite 814<br>Chicago, IL 60604 | **KERR MACHINERY CO.** n/k/a KERR PUMP & SUPPLY INC.<br><br>**Registered Agent:**<br>12880 Cloverdale<br>Oak Park, MI 48237 | **LAWLER MANUFACTURING COMPANY, INC.** f/k/a LAWLER AUTOMATIC CONTROLS, INC.<br><br>**Registered Agent:**<br>5330 East 25th Street<br>Indianapolis, IN 46218 |
| **THE MARLEY-WYLAIN COMPANY**<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 | **MUELLER STEAM SPECIALITY** now known as WATTS WATER TECHNOLOGIES, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>155 Federal St, Ste 700<br>Boston, MA 02110 | **THE NASH ENGINEERING COMPANY, INC.**<br><br>**Registered Agent:**<br>c/o United States Corporation Company<br>50 Weston Street<br>Hartford, CT 06120-15317 |
| **OWENS-ILLINOIS, INC.**<br><br>**Registered Agent:**<br>CT Corporation System<br>4400 Easton Commons Way Suite 125<br>Columbus, OH 43219 | **PPG INDUSTRIES, INC.** successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS<br><br>**Registered Agent:**<br>The Prentice-Hall<br>Corporation System, Inc.<br>251 Little Falls Drive<br>Wilmington, DE 19808 | **QUIMBY EQUIPMENT COMPANY**<br><br>**Registered Agent:**<br>88 Sunnyside Blvd<br>Plainview, NY 11803 |
| **ROBERTSHAW CONTROLS COMPANY** I/A/S TO FULTON SYLPHON COMPANY<br><br>**Registered Agent:**<br>CT Corporatin Sytem<br>208 So Lasalle St, Suite 814<br>Chicago, IL 60604 | **ROCKWELL AUTOMATION INC.,** as successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE CORPORATION;<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | **ROSS OPERATING VALVE COMPANY** d/b/a ROSS CONTROLS<br><br>**Registered Agent:**<br>Claude D Mencotti<br>1250 Stephenson Highway<br>Troy, MI 48083 |
| **RSCC Wire & Cable, LLC.**<br><br>**Registered Agent:**<br>Corporation Service Company<br>50 Weston Street<br>Hartford, CT, 06120-1537 | **SCHNEIDER ELECTRIC, USA, INC.,** f/k/a SQUARE D COMPANY<br><br>**Registered Agent:**<br>CSC - Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | **SIEMENS CORPORATION** (as successor-in-interest to ITE CIRCUIT BREAKER CO.)<br><br>**Registered Agent:**<br>CT Corporation System<br>818 W. Seventh Street<br>Los Angeles, CA  90017 |

SIEGFRIED vs. AIR AND LIQUID SYSTEMS CORPORATION, et al.
SERVICE LIST
Case No. BC_____
January 26, 2018

| | | |
|---|---|---|
| SIEMENS ENERGY INC. individually and as successor by merger to DRESSER-RAND GROUP, INC.<br><br>**Registered Agent:**<br>C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324 | SPIRAX SARCO, INC.<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | SPX CORPORATION individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC., WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN<br><br>**Registered Agent:**<br>The Corporation Company<br>555 Capitol Mall Ste 1000<br>Sacramento, CA 95814 |
| STERLING FLUID SYSTEMS (USA)LLC f/k/a PEERLESS PUMP COMPANY<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>Corporation Trust Center 1209 Orange St<br>Wilmington, DE 19801 | SULZER PUMPS HOUSTON, INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC PUMPING COMPANY)<br><br>**Registered Agent:**<br>The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19850 | SUPERIOR-LIDGERWOOD-MUNDY, individually and as successor-in-interest to M.T. Davidson Co.<br><br>**Registered Agent:**<br>Arthur Robert Woodman<br>302 Grand Avenue<br>Superior, WI 54880 |
| VELAN VALVE CORPORATION<br><br>**Registered Agent:**<br>CSC-Laywers Incorporating Service<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 | VIAD CORP, f/k/a The Dial Corporation, individually and as successor-in-interest to Griscom-Russell Company<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | VIKING PUMP, INC., a Unit of IDEX Corporation<br><br>**Registered Agent:**<br>CT Corporation System<br>500 East Court Avenue<br>Des Moines, IA 50309 |
| WARREN PUMPS, LLC, individually and as successor-in-interest to QUIMBY PUMP COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>c/o Vivian Imperial<br>818 W Seventh St Ste 930<br>Los Angeles CA 90017 | WEIL-MCLAIN,<br><br>**Registered Agent:**<br>CT Corporation System<br>150 West Market Street, Suite 800<br>Indianapolis, IN 46204 | WEIL-MCLAIN, a division of THE MARLEY-WYLAIN COMPANY<br><br>**Registered Agent:**<br>CT Corporation System<br>150 West Market Street, Suite 800<br>Indianapolis, IN 46204 |
| WILO USA LLC, successor-in-interest to WEIL PUMP COMPANY, INC.<br><br>**Registered Agent:**<br>Corporation Service Company<br>8040 Excelsior Dr Ste 400<br>Madison , WI 53717 | WEIR VALVES & CONTROLS USA INC. f/k/a ATWOOD & MORRILL<br><br>**Registered Agent:**<br>Joseph Descavich<br>155 Federal Street, 7th FL<br>Boston, MA 02110 | THE WILLIAM POWELL COMPANY<br><br>**Registered Agent:**<br>2503 Spring Grove Ave<br>Cincinnati, OH 45214 |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL - COMPLEX

Case Number _____

**BC 6 9 1 9 0 0**

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 323 | 1707 | | | | |
| Hon. William F. Highberger | 322 | 1702 | | | | |
| Hon. John Shepard Wiley, Jr. | 311 | 1408 | | | | |
| Hon. Kenneth Freeman | 310 | 1412 | | | | |
| Hon. Ann Jones | 308 | 1415 | | | | |
| Hon. Maren E. Nelson | 307 | 1402 | | | | |
| Hon. Carolyn B. Kuhl | 309 | 1409 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | Hon. Steven J. Kleifield | 324 | CCW |
| | | | | *Provisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____, Deputy Clerk

LACIV 190 (Rev 12/17)   **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

   i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at ***www.lacourt.org*** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR PLAINTIFF)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR DEFENDANT)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____)

Date: _____

_____    ➤     _____
(TYPE OR PRINT NAME)        (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1.  Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2.  At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3.  Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a.  The party requesting the Informal Discovery Conference will:

        i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii.  Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b.  Any Answer to a Request for Informal Discovery Conference must:

        i.   Also be filed on the approved form (copy attached);

        ii.  Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____           ➤    _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR PLAINTIFF)

Date:

_____           ➤    _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____           ➤    _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____           ➤    _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____           ➤    (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

Date:

_____           ➤    (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

Date:

_____           ➤    (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:
_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

   In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

   - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

   - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

1

## CERTIFICATE OF SERVICE

2    I declare that I am over the age of eighteen (18) and not a party to this action.
My business address is 355 South Grand Ave., 43rd Floor, P.O. Box 17941, Los
3    Angeles, CA  90071.

4    On February 28, 2018, I served the following document(s): **DEFENDANT
GENERAL ELECTRIC COMPANY'S JOINDER TO NOTICE OF
5    REMOVAL; DECLARATION OF JUSTIN F. CRONIN,** on the interested parties
in this action by placing a true and correct copy of such document, enclosed in a
6    sealed envelope, addressed as follows:

7    The Lanier Law Firm                       All Defendants appearing herein
6810 FM 1960 West
8    Houston, TX  77069
*Attorneys from Plaintiffs*
9

10   ☐    I am readily familiar with the business' practice for collection and processing of
correspondence for mailing with the United States Postal Service.  I know that
11        the correspondence was deposited with the United States Postal Service on the
same day this declaration was executed in the ordinary course of business. I
12        know that the envelope was sealed and, with postage thereon fully prepaid,
placed for collection and mailing on this date in the United States mail at, Los
13        Angeles, California.

14   ☐    By Overnight Service: I caused the above-referenced document(s) to be
deposited in a box or other facility regularly maintained by the overnight
15        courier, or I delivered the above-referenced document(s) to an overnight courier
service, for delivery to the above addressee(s).
16

17   ☒    By E-Service: I electronically served the above document(s) via ECF/PACER.

     ☐    By Personal Service:  I caused to be delivered by courier **Nationwide Legal
18        Express,** such envelope by hand to the offices of the above addressee(s).

19   ☐    By Personal Service:  I delivered such envelope by hand to the offices of the
addressee(s).
20

21   Executed:  February 28, 2018

22   ☐    (State)        I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.

23   ☒    (Federal) I declare that I am employed in the office of a member of the bar of
this court at whose direction the service was made.
24

25

26                                  James A. Choi

27

28
                                         3