TUCKER ELLIS LLP
Anthony D. Brosamle SBN 208664
anthony.brosamle@tuckerellis.com
Valeria Golodnitska SBN 289865
valeria.golodnitska@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:	213.430.3400
Facsimile:	213.430.3409

TUCKER ELLIS LLP
Nicole E. Gage SBN 208658
nicole.gage@tuckerellis.com
One Market Plaza
Steuart Tower, Suite 700
San Francisco, CA  94105
Telephone:  415.617.2400
Facsimile:  415.617.2409

Attorneys for Defendant
Rockwell Automation, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY LEE SIEGFRIED and TERRI SIEGFRIED,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORIULL CO., INC. d/b/a WEIR VALVES & CONTROLS USA, INC.; AURORA PUMP COMPANY; A.O. SMITH CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY | Case No. 2:18-CV-01575<br><br>**DEFENDANT ROCKWELL AUTOMATION, INC.'S JOINDER TO DEFENDANT ELLIOTT COMPANY'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY- ACTING UNDER DIRECTION OF FEDERAL OFFICERS)** |

JOINDER TO NOTICE OF REMOVAL

PRODUCTS d/b/a WILLSON SAFETY PRODUCTS); CARRIER CORPORATION; CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually and successor-in- interest to COCHRANE CORPORATION); EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON ELECTRIC CO. (individually and as successor-in- interest to KEYSTONE VALVES AND CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in- interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL

ELECTRIC COMPANY (individually and )
as successor-in- interest to )
MASONEILAN, and MANNING, )
MAXWELL & MOORE, INC.); GIBBS )
& COX, INC.; THE GORMAN-RUPP )
COMPANY (individually and as )
successor-in-interest to PATTERSON )
PUMP COMPANY, and C.H. )
WHEELER); GOULDS ELECTRONICS )
(as successor-in-interest to ITE CIRCUIT )
BREAKER CO.); GOULDS PUMPS, )
INC.; HARDIE-TYNES CO., INC. (sued )
individually and as successor-in-interest to )
HARDIE-TYNES MANUFACTURING )
CO. and HARDIE-TYNES )
MANUFACTURING COMPANY); )
HARDIE-TYNES FOUNDRY & )
MACHINE CO. (sued individually and as )
successor-in-interest to HARDIE- TYNES )
MANUFACTURING CO. and HARDIE- )
TYNES MANUFACTURING )
COMPANY); HARDIE-TYNES, LLC )
(sued individually and as successor-in- )
interest to HARDIE-TYNES )
MANUFACTURING CO. and HARDIE- )
TYNES MANUFACTURING )
COMPANY); HERCULES )
MANUFACTURING COMPANY, INC; )
HOWDEN NORTH AMERICA, INC. )
f/k/a HOWDEN BUFFALO, INC. )
(individually and as successor-in- interest )
to BUFFALO FORGE COMPANY); IMO )
INDUSTRIES, INC. (sued individually )
and as successor-in-interest, to )
DELAVAL TURBINE, INC.); )
INGERSOLL-RAND COMPANY )
(individually and as successor-in-interest )
to TERRY STEAM TURBINE); ITT )
INDUSTRIES, INC. (sued individually )
and as successor-in-interest to BELL & )
GOSSETT, FOSTER ENGINEERING )
and HOFFMAN SPECIALTY); KERR )
MACHINERY CO. n/k/a KERR PUMP & )
SUPPLY INC.; LAWLER )
MANUFACTURING COMPANY, INC. )
f/k/a LAWLER AUTOMATIC )
CONTROLS, INC.; THE MARLEY- )
WYLAIN COMPANY; MUELLER )
STEAM SPECIALITY COMPANY n/k/a )
WATTS WATER TECHNOLOGIES, )
INC.; THE NASH ENGINEERING )
COMPANY; OWENS-ILLINOIS, INC.; )
PPG INDUSTRIES, INC. (individually )

| | |
|---|---|
| 1 | and as successor-in- interest to AKZO NOBEL INC., and DEVOE COATINGS); ) |
| 2 | QUIMBY EQUIPMENT COMPANY; ) ROBERTSHAW CONTROLS ) |
| 3 | COMPANY (individually and as ) successor-in-interest to FULTON ) |
| 4 | SYLPHON COMPANY); ROCKWELL ) AUTOMATION INC. (individually and as ) |
| 5 | successor by merger to ALLEN- ) BRADLEY COMPANY LLC and ) |
| 6 | ROSTONE CORPORATION); ROSS ) OPERATING VALVE COMPANY d/b/a ) |
| 7 | ROSS CONTROLS; RSCC WIRE & ) CABLE, LLC.;  SCJiNEWER ) |
| 8 | ELECTRIC, USA,  INC., f/k/a ) SQUARED COMPANY.  SIEMENS ) |
| 9 | CORPORATION (individually and as ) successor-in- interest to ITE CIRCUIT ) |
| 10 | BREAKER CO.); SIEMENS ENERGY ) INC. (individually and as successor by ) |
| 11 | merger to DRESSER-RAND GROUP, ) INC.); SPIRAX SARCO, INC.; SPX ) |
| 12 | CORPORATION (sued individually and ) as successor-in-interest to THE MARLEY ) |
| 13 | COMPANY, WYLAIN, INC., WEIL- ) McCLAIN, a division of WYLAIN, INC., ) |
| 14 | and WEIL-McCLAIN); STERLING ) FLUID SYSTEMS, (USA) LLC f/k/a ) |
| 15 | PEERLESS PUMP COMPANY; ) SULZER PUMPS HOUSTON, INC. (sued ) |
| 16 | individually and as successor-in- interest ) to PACO PUMPS f/k/a PACIFIC ) |
| 17 | PUMPING COMPANY); SUPERIOR- ) LIDGERWOOD- MUNDY (individually ) |
| 18 | and as successor-in-interest to M.T. ) Davidson Co.); VELAN VALVE ) |
| 19 | CORP.;VIAD CORP f/k/a THE DIAL ) CORPORATION(sued individually and as ) |
| 20 | successor-in-interest to GRISCOM- ) RUSSELL COMPANY); VIKING PUMP, ) |
| 21 | INC., a Unit of IDEX Corporation; ) WARREN PUMPS, LLC (individually ) |
| 22 | and as successor-in-interest to QUIMBY ) PUMP COMPANY); WEIL-McCLAIN; ) |
| 23 | WEIL-McCLAIN, a division of THE ) MARLEY COMPANY (sued individually ) |
| 24 | and as successor-in-interest to WYLAIN ) CO.);  WILO USA LLC(individually and ) |
| 25 | as successor-in-interest to WEIL PUMP ) COMPANY, INC.); WEIR VALVES ) |
| 26 | &CONTROLS USA INC. f/k/a ) ATWOOD & MORRILL; THE ) |
| 27 | WILLIAM POWELL COMPANY;  and ) |
| 28 | |

DOES 1-450, inclusive, )
)
           Defendants. )
)
)
)
)
)
)
&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203;&#8203; )

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant ROCKWELL AUTOMATION, INC. ("Rockwell") hereby gives notice that it joins in Defendant Elliot Company ("Elliot") Notice of Removal of the above-entitled action from the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. This notice of joinder is based on Rockwell's separate and independent right to remove under the federal officer removal statute. In support of its joinder, Rockwell respectfully states the following:

### Preliminary Matters

1. On January 26, 2018, Plaintiffs Terry Lee Siegfried and Terri Siegfried filed a Complaint for Personal Injuries against multiple defendants, including Rockwell, in the Superior Court of the State of California for the County of Los Angeles. On February 13, 2018, Rockwell filed its Answer to the Complaint. Attached hereto as Exhibit A is a true and correct copy of the Summons and Complaint served on Rockwell, and Rockwell's Answer. Rockwell has not been served with any other pleadings.

2. Plaintiffs allege in their Complaint that Terry Lee Siegfried was injured as a result of exposure to asbestos and asbestos-containing products while

working for the Long Beach Naval Shipyard aboard countless naval vessels between 1969 and 1996.

3. This case is removable based on federal officer jurisdiction under 28 U.S.C., § 1442(a)(1). Plaintiffs' claims against Rockwell are based on Mr. Siegfried's exposure to equipment allegedly supplied to the United States Navy; products that would have been designed and manufactured in accordance with specifications provided by the U.S. government, and designed and built under the direction and control of the U.S. government and its officers.

4. This Joinder in Elliot Company's Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b). Rockwell was served with the Summons and Complaint on January 30, 2018. The receipt of the Complaint put Rockwell on notice for the first time in this action that Plaintiffs' claims involve Mr. Siegfried exposure to asbestos in military equipment allegedly built for the United States Government pursuant to specifications provided by the U.S. Navy and under the direction and control of the U.S. government and its officers. As this Notice of Removal is being filed within 30 days of Rockwell's receipt of the Complaint, it is timely under 28 U.S.C. § 1446(b).

## Nature of the Case

5. This case is based on Plaintiffs' allegations that Mr. Siegfried contracted mesothelioma and/or other asbestos-related diseases as a result of his exposure to asbestos dust and fibers.

6. Plaintiffs assert claims against Rockwell for Negligence, Strict Liability, False Representation under Restatement of Tort Section 402-B, Intentional Tort/Intentional Failure to Warn and Loss of Consortium.

**Jurisdiction, Venue and Intradistrict Assignment**

7. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal.

8. Venue is proper in the Central District of California because the state court action, which is subject to this removal petition, was filed in the Superior Court of California for the County of Los Angeles.

9. Furthermore, §1442(a) authorizes such a removal without the consent of any other defendant. See *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other defendants joining the petition, and the entire case is removed to the federal court").

**Grounds for Removal**

10. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is removable to this Court by Rockwell pursuant to 28 U.S.C. § 1442(a)(1) in that Plaintiffs' alleged right to relief depends on the resolution of a substantial question of federal law.

11. Rockwell was at all relevant times a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) (finding that a corporate defendant was a "person").

12. Should Plaintiffs file a motion to remand this case, Rockwell respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

13. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color of federal office. See *Mesa v. California*, 489 U.S. 121, 124-25, 129-

31, 134-35 (1989); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007). Here, Rockwell has satisfied all three requirements and is entitled to the federal officer removal provision.

14. Plaintiffs claim that Mr. Siegfried was exposed to asbestos from electrical components allegedly supplied by Rockwell on board U.S. Naval vessels (Complaint, Exhibit A). Based on Plaintiffs' allegations, Rockwell has a colorable federal defense of government contractor immunity in that any products designed, manufactured, or supplied for use on U.S. Navy vessels for which Rockwell is allegedly responsible, would have been designed, manufactured, or supplied under the direction of an officer of the United States within the meaning of 28 U.S.C., § 1442(a)(1).

15. All electrical equipment and components manufactured for use on U.S. Navy vessels strictly complied with very precise Navy Department specifications or Military Specifications (MilSpecs). Before a manufacturer received authorization to manufacture or supply electrical components for/to the U.S. Navy, all of the drawings, plans, technical manuals and other design documentation first had to be inspected and approved by either U.S. Navy. During the time in question, the Navy inspections and approvals were the responsibility of the Bureau of Engineering and its successor organization, the Bureau of Ships (hereinafter "Navy"). The Navy frequently required changes in design, materials and documentation before approving the design and authorizing the manufacture of the electrical devices.

16. United States Naval Machinery Inspectors were stationed on site at manufacturing facilities to inspect and test the electrical devices during each phase of the manufacturing process. At any point, if any material, feature or component of the electrical devices failed to comply with the applicable specifications,

standards or the approved design, then it would have been rejected.  In short, if any electrical device supplied to the Navy was installed aboard a U.S. Navy vessel, then it conformed to the detailed plans that were approved by the Navy and necessarily complied with all of the precise specifications and standards, including the specification of the precise material composition of component parts, and any that may have contained asbestos.

17.   The Navy required the use of many different types of materials in the equipment built for installation aboard its ships.  Each sub-component was designed and manufactured in accordance with similarly precise specifications, standards and, design reviews which also specifically required the precise type of material to be used in these components.  Where the specifications or standards permitted the manufacturer to choose between two or more types of materials (such as plastic materials or insulation and other heat resistant materials), the manufacturer's choice was subject to specific Navy approval.  To the extent that any piece of electrical device supplied by a manufacturer to the U.S. Navy for installation on a naval vessel contained asbestos, it would have been specifically required or approved by the Navy through the specification and design approval process.

18.   If a component on a piece of naval equipment was actually installed onboard a U.S. Navy vessel, then that component and the material composition of that component also complied with the precise specifications, standards and design requirements that the Navy required for such a component.  If such a component contained asbestos, then the Navy and/or Maritime Commission required that it contain asbestos.  Therefore, every facet of the design and manufacture of electrical devices manufactured or supplied for use on a Navy vessel was controlled by an agency of the U.S. Government.

19. Rockwell asserts a colorable federal defense to Plaintiffs' claims, which are affirmatively barred by government contractor immunity as stated by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988), and by the Ninth Circuit Court of Appeals in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983). Pursuant to this federal defense, equipment manufacturers, such as Rockwell, cannot be held liable under state law for any injuries caused by the equipment built for or under the control of the U.S. Government when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to these specifications; and (3) the equipment supplier warns the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military. See *Boyle*, supra, 487 U.S. 500 at 512; *McKay*, supra, 704 F.2d. 444 at 451; *Sundstrom*, supra, 816 F.Supp. 587 at 596-97.

20. Here, Rockwell has raised a colorable federal defense to this action under government contractor immunity. To the extent Plaintiffs claim Rockwell is responsible for electrical components on board U.S. Naval vessels, (1) such components or equipment would have been designed and manufactured pursuant to precise specifications provided and approved by the U.S. Government through the Navy and/or Coast Guard, (2) the components and equipment would have conformed to those specifications, and (3) the U.S. Government, one of the world's leaders in industrial hygiene concerns, would have possessed information equal to or superior to that of Rockwell concerning issues of industrial hygiene and asbestos medicine, including the potential hazards involved with use of asbestos-containing components or materials associated with electrical or other Naval/marine equipment. Thus, Rockwell would not have had knowledge of any hazards associated with the use of the equipment which was not already known to the U.S. Government.

21. A causal nexus exists between Plaintiffs' claims and the acts allegedly performed by Rockwell under the direction of federal officers. Plaintiffs' claims against Rockwell arise out of Mr. Siegfried's alleged work on and around electrical equipment on board U.S. Navy for which Rockwell is allegedly responsible. Any electrical components provided for use in those vessels would have been designed and manufactured pursuant to precise federal regulations and/or military specifications, and built under the detailed and direct control of federal officers. The conduct attributable to Rockwell is inseparable from the government specifications, regulations, and oversight, and a clear causal nexus exists between Plaintiffs' claims and the acts performed under color of federal office. Rockwell has more than a colorable federal defense to this state action under government contractor immunity. See *Boyle*, supra, 487 U.S. at 512; *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.* 838 F. Supp. 1099 (D. Md. 1993); *Crocker v. Borden* 852 F.Supp. 1322 (E.D. La. 1994); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998).

22. The existence of a single removable claim allows removal of the entire action. 28 U.S.C. § 1441(c). *National Audubon Society v. Dept. of Water*, 496 F.Supp. 499, 509 (E.D. Cal. 1980).

23. Notice of Elliot Company's removal has been filed with the state court and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

24. This Notice of Joinder and Joinder is based on this Notice of Removal to the United States District Court, the Certificate of Service of Notice to Adverse Party of Removal filed in the state court action, the Notice to Adverse Party of Removal to Federal Court filed in the state court action, the complete file in the state court case, and any other matters which the court deems applicable.

WHEREFORE, Rockwell hereby joins in Elliot Company's Notice of Removal and consents thereto to said removal of this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California. In the event that Elliot Company is dismissed from this action or withdraws its Notice of Removal, Rockwell prays that this Court retain jurisdiction based on Rockwell's independent right to federal officer removal jurisdiction as set forth herein.

DATED: March 1, 2018                                TUCKER ELLIS LLP

By: *(signature)*
Nicole E. Gage
Attorneys for Defendant,
ROCKWELL AUTOMATION, INC.

## CERTIFICATE OF SERVICE

I, Debbie Estebanez, certify and declare as follows: I am over the age of 18 years and not a party to this action. I am employed by the law firm Tucker Ellis LLP, and my business address is One Market Plaza, Steuart Tower, Suite 700, San Francisco, California 94105, which is located in the city, county and state where the service described below took place. My email address is debbie.estebanez@tuckerellis.com.

On March 1, 2018, I served on all interested parties in this action a copy of the following document(s):

**DEFENDANT ROCKWELL AUTOMATION, INC.'S JOINDER TO DEFENDANT ELLIOTT COMPANY'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS)**

[ X ]   by electronically serving the documents described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the PACER website.

[ X ]   FEDERAL:  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 1, 2018, at San Francisco, California.



Debbie Estebanez