RILEY SAFER HOLMES & CANCILA LLP
MEGHAN R. MCMEEL (CSB #284841)
mmcmeel@rshc-law.com
200 Spectrum Center Drive, 3rd Floor
Irvine, CA  92618
Telephone:  (415) 275-8550
Facsimile:   (415) 275-8551

Attorneys for Defendant
OWENS-ILLINOIS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY LEE SIEGFRIED and TERRI SIEGFRIED,<br><br>Plaintiffs,<br><br>v.<br><br>3M COMPANY, *et al.*,<br><br>Defendants. | Case No.  2:18-cv-01575-FMO-E<br><br>(Los Angeles County Superior Court, Case No. BC691900)<br><br>**OWENS-ILLINOIS, INC.'S JOINDER TO DEFENDANT ELLIOT COMPANY'S NOTICE OF REMOVAL**<br><br>Judge:  Hon. Fernando M. Olguin<br>Courtroom:  6D, 6th Floor<br><br>Complaint Filed:  January 26, 2018<br>Removed:  February 26, 2018<br>Trial:  None |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446, Defendant Owens-Illinois, Inc. ("Owens-Illinois") hereby joins Defendant Elliot Company's notice of removal of Case No. BC691900 in the Superior Court for Los Angeles County, California, to the United States District Court for the Central District of California and further joins the notices of Crane Co., Air and Liquid Systems Corporation, CBS Corporation, and General Electric Company. Based on the following facts and declarations, removal is appropriate under 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446:

**PRELIMINARY STATEMENT**

1. On January 26, 2018, Plaintiffs commenced this action by filing a complaint against Owens-Illinois and others in Los Angeles Superior Court. In their complaint, Plaintiffs allege that Mr. Terry Lee Siegfried was injured as a result of his exposure to asbestos from Owens-Illinois while an electrician and marine electrician between approximately 1969 and 1996 on the Long Beach Naval Shipyard; USS Roark (FF-1053); USS Gray (FF-1054); USS Hepburn (FF-1055); USS Meyerkord (FF-1058); USS Lockwood (FF-1064); USS Markin Shields (FF-1066); USS Francis Hammonds (FF-1067); USS Downes (FF-1070); UFF Cook (FF-1083); USS Barbey (FF-1088); USS Ogden (LPD-5); USS Duluth (LPD-6); USS Cleveland (LPD-7); USS Dubuque (LPD-8); USS Denver (LPD-9); USS Juneau (LPD-10); USS Norton Sound (AVM-1); USS St. Paul (CA-73); USS Chicago (CA-136); USS New Jersey (BB-62); USS Missouri (BB-63); USS Hull (DD-945); USS Morton (DD-948); USS Lofberg (DD-759); USS Tripoli (LPH-10); USS Paul Foster (DD-964); USS Kinkaid (DD-965); USS Hewitt (DD-966); USS David R. Ray (DD-971); USS Oldendorf (DD~972); USS John Young (DD-973); USS Jouett (CG-29); USS Horne (CG-30); USS Sterett (CG-31); USS Fox (CG-33); USS Tarawa (LHA-1); USS Belleau Wood (LHA-3); USS Peleiu (LHA-5); USS Henry B. Wilson (DDG-7); USS Towers (DDG-9); USS Robinson (DDG-12); USS Hoel (DDG-13); and USS Waddell (DDG-24). There are no other exposure allegations related to Owens-Illinois.

2. Owens-Illinois has a federal right to remove this action to federal court because Mr. Siegfried's claimed exposure to asbestos from Owens-Illinois gives rise to a colorable federal defense — commonly called the government contractor defense. Indeed, federal courts have recognized Owens-Illinois' government contractor defense against similar asbestos claims:

> With respect to the "government contractor" defense, I conclude that there is sufficient evidence to allow the defense to go to a jury. There are military specifications

> in evidence, there's evidence of testing of the product required by the government, and there's evidence that the product cannot get onto the QPL [Qualified Products List] without having met the required specifications.
>
> ….
>
> So I conclude that, consistent with *Ruppel* [*v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012), all of the theories that the plaintiff here is mounting against Owens-Illinois could be subject to a "government contractor" defense.

*Krik v. Owens-Illinois, Inc.*, No. 10-cv-7435, ECF No. 387, at 1506:7-1507:9 (N.D. Ill. Apr. 29, 2015), *available at* https://ecf.ilnd.uscourts.gov/doc1/067115768594, *aff'd*, *Krik v. Exxon Mobil Corp.*, 870 F.3d 669 (7th Cir. 2017); *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 839 (2d Cir. 1992) (holding that Owens-Illinois and others, as "government contractors providing asbestos insulation products in accordance with detailed government specifications, could not be held liable for the design of their products").[1]

3. Between 1948 and April 30, 1958, Owens-Illinois manufactured and sold commercial quantities of an asbestos-containing thermal insulation, called Kaylo, for use in the United States Navy. As a government contractor and before the commercial manufacture and sale of Kaylo, Owens-Illinois designed and conformed Kaylo—including the asbestos content—to the United States Navy's precise specifications. The United States Navy's certificate for approval of Owens-Illinois Kaylo made clear that approval covered all characteristics inherent in Kaylo and was based upon strict accordance with the specifications.

---

[1] *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), is not controlling. There, Owens-Illinois did not develop a record as to the government contractor defense and merely joined a codefendant's challenge on appeal. *Id.* at 809. The facts reported in *Hawaii*, and Owens-Illinois' understanding of them, have changed fundamentally in decades of litigation. Unlike the limited record in *Hawaii*, this notice shows how Kaylo was designed under the Navy's precise specifications, and the Navy considered and reviewed Kaylo, before commercial manufacture and sale. Moreover, unlike the legal standard in *Hawaii*, this notice requires a short and plain statement showing only a colorable government contractor defense. *See Dart Cherokee Operating Basin Co. v. Owens*, __ U.S. __, __, 135 S.Ct. 547, 551 (2014) (a notice of removal requires "a short and plain statement of the grounds for removal"); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) (a legal contention is "colorable" if not "immaterial and made solely for the purpose of obtaining jurisdiction," "wholly insubstantial," or "frivolous").

## SUMMARY OF THE FACTS

4. Beginning in the 1940s, the United States Navy exercised its discretion and approved precise specifications for thermal block insulation in United States Navy Specification 32-I-3 (later MIL-I-2819) and thermal pipe insulation in United States Navy Specification 32-P-8 (later MIL-I-2781). These specifications required thermal pipe and block insulation to conform in all respects to the composition approved by United States Navy. These specifications also detailed the material, workmanship, dimensions, tensile strength, packaging, marking, and many other aspects of thermal pipe and block insulation.

5. The United States Navy also exercised its discretion and approved precise specifications for packaging and marking products supplied for use in the United States Navy. According to MIL-STD-129, these specifications were intended to be uniform and mandatory and the United States Navy made clear that:

> **Unauthorized markings**. No markings shall be placed on any containers other than those specified in this standard or authorized by the cognizant activity concerned, or those required by regulation or statute.

MIL-STD-129 required some warnings on some products and required no warnings about asbestos on thermal pipe and block insulation until after the 1950s.

6. Based on the United States Navy's precise specifications, Owens-Illinois designed and conformed Kaylo thermal insulation for use in the United States Navy.

7. In 1942, before the commercial manufacture and sale of Kaylo, Owens-Illinois made test pieces of Kaylo and had them tested under the United States Navy's precise specifications at the federally funded Experiment Station at Purdue University. These test pieces of Kaylo passed all points for the Class A thermal insulation specifications, for use up to 500° F, and the Class B thermal insulation specifications, for use up to 1000° F.

8. In 1943, before the commercial manufacture and sale of Kaylo, the

United States Navy requested that Owens-Illinois furnish a test sample of Kaylo to the United States Naval Engineering Experiment Station and submit Kaylo for approval under the United States Navy's precise specifications. Owens-Illinois then met with the United States Navy at its request and submitted a test sample of Kaylo to the United States Naval Engineering Experiment Station.

9. In 1944, before the commercial manufacture and sale of Kaylo, the United States Navy recommended that the War Production Board approve at Owens-Illinois construction of a new building and installation of production equipment for manufacturing Kaylo. The United States Navy reported that the construction was essential under the Directive for War-Time Construction issued by the War Production Board.

10. In 1944, before the commercial manufacture and sale of Kaylo, the United States Naval Engineering Experiment Station performed experiments and tests on Kaylo under the United States Navy's precise specifications. The United States Naval Engineering Experiment Station found that Kaylo complied with Class A thermal insulation specifications, for use up to 500° F, and Class B thermal insulation specifications, for use up to 1000° F.

11. On January 12, 1944, before the commercial manufacture and sale of Kaylo, the United States Navy certified Owens-Illinois Kaylo block insulation—including its asbestos content—as approved under the United States Navy's precise specifications and registered it among thermal block insulation qualified for Navy use. The certificate of approval covered all characteristics inherent in Owens-Illinois Kaylo and stated that:

**NAVY SPECIFICATIONS**

> This approval is based upon material in strict accordance with the governing Navy Department specification, and nothing in connection with this approval shall be construed as a waiver of any part of the governing specifications.

12. On May 29, 1944, before the commercial manufacture and sale of Kaylo, the United States Navy certified Owens-Illinois Kaylo pipe insulation—including the asbestos content—as approved under the United States Navy's precise specifications and registered it among thermal pipe insulation qualified for Navy use. The certificate of approval covered all characteristics inherent in Owens-Illinois Kaylo and stated that:

**NAVY SPECIFICATIONS**

> This approval is based upon material in strict accordance with the governing Navy Department specification, and nothing in connection with this approval shall be construed as a waiver of any part of the governing specifications.

13. In 1948, before the commercial manufacture and sale of Kaylo, the United States Navy requested that Owens-Illinois supply Kaylo for use in the United States Navy. Owens-Illinois declined the request because it was selling only a few small orders of Kaylo for the United States Navy and could not supply large quantities of Kaylo from its pilot plant.

14. In 1948, before the commercial manufacture and sale of Kaylo, the United States Navy reported that its need for Kaylo had become extremely critical.

15. Owens-Illinois began manufacturing commercial quantities of asbestos-containing Kaylo in 1948 and ceased the manufacture and sale of Kaylo on April 30, 1958, when Owens-Illinois sold the Kaylo division to a separate company, Owens Corning Fiberglas Corp.

16. During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy sampled, inspected, and tested Kaylo for conformance with the United States Navy's precise specifications and certificates of approval. These tests required Kaylo to conform in all respects to the composition—including the asbestos content—approved by United States Navy.

The Office of Inspector of Naval Material also held shipments of Owens-Illinois Kaylo under the United States Navy's precise specifications.

17. During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, asbestos was a component part of Kaylo because the United States Navy's precise specifications in the relevant temperature range could not be met without asbestos. Owens-Illinois experimented with various substitutes for asbestos due to the high cost (asbestos was the most expensive raw ingredient) and scarcity, but none of the substitutes met all of the United States Navy's precise specifications. Only asbestos yielded the necessary degree of strength, bonding, hardness, low density, and heat conductivity to satisfy the United States Navy's precise specifications; indeed, only high temperature insulation products that contained asbestos were approved under the United States Navy's precise specification during this timeframe.

18. During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy registered Owens-Illinois Kaylo on the United States Navy's Qualified Products List ("QPL"). The United States Navy removed Owens-Illinois Kaylo from the United States Navy's QPL after Owens-Illinois ceased the manufacture and sale of Kaylo on April 30, 1958.

19. During the time that Owens-Illinois supplied Kaylo for use in the United States Navy, the United States Navy was aware of the known hazards associated with exposure to asbestos. Owens-Illinois was not aware of any danger from the use of Owens-Illinois Kaylo that it knew and that the United States Government did not know. Owens-Illinois complied with the United States Navy's precise specifications and certificates of approval by supplying Kaylo without a warning about asbestos for use in the United States Navy.

## PROCEDURAL COMPLIANCE

20. Plaintiffs had their complaint served on Owens-Illinois on February 2, 2018, and Owens-Illinois has removed this action within 30 days of being served

with the complaint and summons. Therefore, removal is timely. 28 U.S.C. § 1446(b)(1), (3).

21. Attached to the docket is a copy of all process, pleadings and orders served upon Owens-Illinois in this action. 28 U.S.C. § 1446(a).

22. Promptly after this filing, Owens-Illinois will give written notice of this notice of removal to all adverse parties and will file a copy of this notice of removal with the Clerk of the Court of Los Angeles County. 28 U.S.C. § 1446(d).

## VENUE

23. This venue is proper because Los Angeles County, California is located within the Central District of California. 28 U.S.C. § 1441(a).

## "FEDERAL OFFICER" JURISDICTION

24. This Court's jurisdiction is established by 28 U.S.C. § 1442(a)(1) because Owens-Illinois is a federal officer entitled to the government contractor defense. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).

### Owens-Illinois is a person under Section 1442(a)(1).

25. As a corporation, Owens-Illinois is a "person" within the meaning of the federal officer removal statute. 28 U.S.C. § 1442(a)(1); 1 U.S.C. § 1.

### Owens-Illinois acted under the direction of federal officers.

26. Owens-Illinois' provision of asbestos-containing thermal insulation to the United States Navy was carried out under the direction and supervision of the United States Navy for the purpose of assisting the United States government in carrying out its duties. *Tennessee v. Davis*, 100 U.S. 257, 263 (1880) (government "can act only through its officers and agents"); *Watson*, 551 U.S. at 151-52 (a person "acts under" a federal officer if its activities "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior"); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008) (a person "acts under" a federal officer if

it produces products "that, in the absence of Defendants, the Government would have had to produce itself").

**Plaintiffs' claims relate to Owens-Illinois' role as a government contractor.**

27. Assuming the truth of Plaintiffs' allegations (which are contested), there is a causal nexus between Plaintiffs' alleged injuries and Owens-Illinois' alleged conduct as a federal officer.

28. The nexus exists because the alleged acts forming the basis of Plaintiffs' claims—Owens-Illinois' supply of asbestos-containing thermal insulation to the United States Navy—was performed at the request of, and under close supervision and control by, the United States Navy. *Isaacson*, 517 F.3d at 137 (a causal nexus exists when a defendant is sued "*because of* what they were asked to do by the Government" (emphasis added)).

**Owens-Illinois has a colorable federal defense under *Boyle*.**

29. Owens-Illinois has a colorable federal government contractor defense because:

    a. the United States Navy exercised its discretion and approved reasonably precise specifications for Owens-Illinois Kaylo supplied to the United States Navy;

    b. the Owens-Illinois Kaylo product and packaging conformed to those specifications; and

    c. the United States Navy knew of any dangers in the use of Owens-Illinois Kaylo that were known to Owens-Illinois, and Owens-Illinois thus provided any warning (none) about any dangers in the use of Kaylo that were known to Owens-Illinois but not to the United States.

*Boyle*, 487 U.S. at 512.

**Any disclaimer of jurisdiction is invalid.**

30. Any attempt to disclaim federal jurisdiction is not effective. "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

31. Plaintiffs' allegations against Owens-Illinois arise from Mr. Siegfried's alleged exposure to asbestos from asbestos-containing thermal insulation that Owens-Illinois supplied to the United States Navy. There are no other exposure allegations related to Owens-Illinois.

32. Because Plaintiffs' claims relate to Owens-Illinois' work as a military contractor, any disclaimer cannot overcome Owens-Illinois' absolute right to have its federal defenses adjudicated by a federal court. *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969) ("Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of the federal forum."); *Manypenny*, 451 U.S. at 242 ("[T]he right of removal is absolute for conduct performed under color of federal office ….").

## SUPPLEMENTAL JURISDICTION

33. Plaintiffs' remaining claims are so related to their claim arising out of Mr. Siegfried's work that those remaining claims form part of the same case or controversy under Article III of the United States Constitution. Thus, pursuant to 28 U.S.C. § 1367(a) and § 1441, this Court has supplemental jurisdiction over Plaintiffs' remaining claims.

# CONCLUSION

For these reasons, Defendant Owens-Illinois, Inc. hereby joins the notices of removal of Case No. BC691900 in the Superior Court for Los Angeles County, California, to the United States District Court for the Central District of California by Defendants Elliot Company, Crane Co., Air and Liquid Systems Corporation, CBS Corporation, and General Electric Company.  If for any reason, any of the defendants do not pursue removal, Owens-Illinois reserves its right to assert its arguments for removal and pursue the positions articulated in this joinder of notice of removal.

Dated:  March 2, 2018                                    RILEY SAFER HOLMES & CANCILA LLP


By: */s/ Meghan R. McMeel*
Meghan R. McMeel
Attorneys for Defendant
OWENS-ILLINOIS, INC.

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies on March 2, 2018 that copies of these papers were served under Federal Rule of Civil Procedure 5 by electronic means to all counsel of record.

Dated: March 2, 2018            RILEY SAFER HOLMES & CANCILA LLP


By: */s/ Meghan R. McMeel*
Meghan R. McMeel
Attorneys for Defendant
OWENS-ILLINOIS, INC.

4832-6230-9470, v. 3

Certificate of Service – 2:18-cv-01575-FMO-E