# Exhibit A

*Received by Counsel 1/30/18*

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

3M COMPANY(f/k/a MINNESOTA MINING & MANUFACTURING COMPANY)(See Attached Defendants List)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Terry Lee Siegfried and Terri Siegfried

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**JAN 26 2018**

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso:)*<br>BC 691900 |
|---|---|

Superior Court of California, County of Los Angeles
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mark A. Linder, LANIER LAW FIRM, 6810 FM 1960 West, Houston, TX 77069; 713-659-5200

DATE: January 26 2018    SHERRI R. CARTER, by SHAUNYA BOLDEN , Deputy
*(Fecha)*                 *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* SUPERIOR-LIDGERWOOD-MUNDY, individually and as successor-in-interest to M.T. Davidson Co.

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☑ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☑ by personal delivery on *(date):* 1/29/18

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AIR & LIQUID SYSTEMS CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);
ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY);
ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.;
AURORA PUMP COMPANY;
A.O. SMITH CORP.;
BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS);
CARRIER CORPORATION;
CARVER PUMP COMPANY;
CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT;
CLA-VAL CO.;
CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION);
COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);
COPES-VULCAN, INC.;
CRANE CO. (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES);
CRANE ENVIRONMENTAL, INC. (sued individually and successor-in-interest to COCHRANE CORPORATION);
EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY;
EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.);
FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY;
FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY);

Page  1  of  3

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

FOSTER WHEELER ENERGY CORPORATION;
FRASER BOILER SERVICE, INC.;
GARDNER-DENVER, INC.;
GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY);
GENERAL ELECTRIC COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING, MAXWELL & MOORE, INC.);
GIBBS & COX, INC.;
THE GORMAN-RUPP COMPANY (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H. WHEELER);
GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER CO.);
GOULDS PUMPS, INC.;
HARDIE-TYNES CO., INC. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES FOUNDRY & MACHINE CO. (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES MANUFACTURING COMPANY);
HERCULES MANUFACTURING COMPANY, INC;
HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC. (individually and as successor-in-interest to BUFFALO FORGE COMPANY);
IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE, INC.);
INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY STEAM TURBINE);
ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY);
KERR MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.;
LAWLER MANUFACTURING COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.;
THE MARLEY-WYLAIN COMPANY;
MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS WATER TECHNOLOGIES, INC.;
THE NASH ENGINEERING COMPANY;
OWENS-ILLINOIS, INC.;
PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO NOBEL INC., and DEVOE COATINGS);
QUIMBY EQUIPMENT COMPANY;
ROBERTSHAW CONTROLS COMPANY (individually and as successor-in-interest to FULTON SYLPHON COMPANY);

Page __2__ of __3__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE:<br>Terry Lee Siegfried, et al. vs. 3M Company, et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ROCKWELL AUTOMATION INC. (individually and as successor by merger to ALLEN-BRADLEY
COMPANY LLC and ROSTONE CORPORATION);
ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
RSCC WIRE & CABLE, LLC.;
SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D COMPANY;
SIEMENS CORPORATION (individually and as successor-in-interest to ITE CIRCUIT BREAKER CO.);
SIEMENS ENERGY INC. (individually and as successor by merger to DRESSER-RAND GROUP, INC.);
SPIRAX SARCO, INC.;
SPX CORPORATION (sued individually and as successor-in-interest to THE MARLEY COMPANY,
WYLAIN, INC., WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN);
STERLING FLUID SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY;
SULZER PUMPS HOUSTON, INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a
PACIFIC PUMPING COMPANY);
SUPERIOR-LIDGERWOOD-MUNDY (individually and as successor-in-interest to M.T. Davidson Co.);
VELAN VALVE CORP.;
VIAD CORP f/k/a THE DIAL
CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY);
VIKING PUMP, INC., a Unit of IDEX Corporation;
WARREN PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
WEIL-McCLAIN;
WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued individually and as successor-in-interest
to WYLAIN CO.);
WILO USA LLC (individually and as successor-in-interest to WEIL PUMP COMPANY, INC.);
WEIR VALVES & CONTROLS USA INC. f/k/a ATWOOD & MORRILL;
THE WILLIAM POWELL COMPANY;
and DOES 1-450, inclusive,

Page   3   of   3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1 | Mark A. Linder, CA Bar No. 268796
2 | Case A. Dam, CA Bar No. 589054
  | **THE LANIER LAW FIRM**
3 | 6810 FM 1960 West
  | Houston, TX 77069
4 | Telephone 713-659-5200
  | Facsimile 713-659-2204
5 |
6 | Attorneys for Plaintiffs

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 26 2018

Sherri R. Carter, Executive Officer/clerk

By Shaunya Bolden, Deputy

8 |        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 |             **FOR THE COUNTY OF LOS ANGELES**

**BC 6 9 1 9 0 0**

**TERRY LEE SIEGFRIED and
TERRI SIEGFRIED,**

Plaintiffs,

vs.

**3M COMPANY** (f/k/a MINNESOTA
MINING & MANUFACTURING
COMPANY);
**AIR & LIQUID SYSTEMS
CORPORATION** (sued individually
and as successor-in-interest to
BUFFALO PUMPS, INC.);
**ABB, INC.** (individually and as
successor-in-interest to ITE IMPERIAL
CO f/k/a ITE CIRCUIT BREAKER
COMPANY);
**ALFA LAVAL INC.** (sued individually
and as successor-in-interest to THE
DELAVAL SEPARATOR COMPANY
and SHARPLES CORPORATION);
**ATWOOD & MORRILL CO., INC.**
d/b/a WEIR VALVES & CONTROLS
USA INC.;
**AURORA PUMP COMPANY;**
**A.O. SMITH CORP.;**
**BACOU-DALLOZ USA, INC.,** (sued
as successor-in-interest and/or f/k/a
W.G.M. SAFETY PRODUCTS d/b/a

Case No.

THIS ACTION CONSTITUTES COMPLEX
ASBESTOS LITIGATION

**COMPLAINT FOR PERSONAL INJURY –
ASBESTOS (NEGLIGENCE; STRICT
LIABILITY, FALSE REPRESENTATION
UNDER RESTATEMENT OF TORTS
SECTION 402-B; INTENTIONAL
TORT/INTENTIONAL FAILURE TO
WARN; RESPIRATOR DEFENDANT'S
NEGLIGENCE; RESPIRATOR
DEFENDANTS' STRICT LIABILITY; LOSS
OF CONSORTIUM)**

1

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

WILLSON SAFETY PRODUCTS);
**CARRIER CORPORATION**;
**CARVER PUMP COMPANY**;
**CBS CORPORATION** (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT;
**CLA-VAL CO.**;
**CLEAVER-BROOKS, INC.** (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION);
**COOPER WIRING DEVICES**, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.);
**COPES-VULCAN, INC.**;
**CRANE CO.** (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES);
**CRANE ENVIRONMENTAL, INC.** (sued individually and successor-in-interest to COCHRANE CORPORATION);
**EATON CORPORATION** (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
**EATON ELECTRICAL, INC.** (sued individually and as successor-in-interest to CUTLER-HAMMER INC.);
**ELLIOT TURBOMACHINERY COMPANY** a/k/a ELLIOTT COMPANY;
**EMERSON ELECTRIC CO.** (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.);
**FISHER CONTROLS**

1  **INTERNATIONAL LLC** f/k/a
   FISHER GOVERNOR COMPANY;
2  **FMC CORPORATION** (sued
3  individually and as successor-in-interest
   to NORTHERN PUMP COMPANY
4  and PEERLESS PUMP COMPANY);
   **FOSTER WHEELER ENERGY**
5  **CORPORATION**;
6  **FRASER BOILER SERVICE, INC.;**
   **GARDNER-DENVER, INC.;**
7  **GENERAL DYNAMICS**
   **CORPORATION** (successor-in-
8  interest to BATH IRON WORKS LTD.
9  f/k/a THE HYDE WINDLASS
   COMPANY);
10 **GENERAL ELECTRIC COMPANY**
   (individually and as successor-in-
11 interest to MASONEILAN, and
   MANNING, MAXWELL & MOORE,
12 INC.);
13 **GIBBS & COX, INC.;**
   **THE GORMAN-RUPP COMPANY**
14 (individually and as successor-in-
15 interest to PATTERSON PUMP
   COMPANY, and C.H. WHEELER);
16 **GOULDS ELECTRONICS** (as
17 successor-in-interest to ITE CIRCUIT
   BREAKER CO.);
18 **GOULDS PUMPS, INC.;**
   **HARDIE-TYNES CO., INC.** (sued
19 individually and as successor-in-interest
   to HARDIE-TYNES
20 MANUFACTURING CO. and
21 HARDIE-TYNES
   MANUFACTURING COMPANY);
22 **HARDIE-TYNES FOUNDRY &**
   **MACHINE CO.** (sued individually and
23 as successor-in-interest to HARDIE-
24 TYNES MANUFACTURING CO. and
   HARDIE-TYNES
25 MANUFACTURING COMPANY);
   **HARDIE-TYNES, LLC** (sued
26 individually and as successor-in-interest
27 to HARDIE-TYNES
   MANUFACTURING CO. and
28 HARDIE-TYNES

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  MANUFACTURING COMPANY);
   **HERCULES MANUFACTURING**
2  **COMPANY, INC**;
3  **HOWDEN NORTH AMERICA, INC.**
   f/k/a HOWDEN BUFFALO, INC.
4  (individually and as successor-in-
   interest to BUFFALO FORGE
5  COMPANY);
6  **IMO INDUSTRIES, INC.** (sued
   individually and as successor-in-interest
7  to DELAVAL TURBINE, INC.);
   **INGERSOLL-RAND COMPANY**
8  (individually and as successor-in-
   interest to TERRY STEAM
9  TURBINE);
10 **ITT INDUSTRIES, INC.** (sued
   individually and as successor-in-interest
11 to BELL & GOSSETT, FOSTER
   ENGINEERING and HOFFMAN
12 SPECIALTY);
13 **KERR MACHINERY CO.** n/k/a
   KERR PUMP & SUPPLY INC.;
14 **LAWLER MANUFACTURING**
   **COMPANY, INC.** f/k/a LAWLER
15 AUTOMATIC CONTROLS, INC.;
16 **THE MARLEY-WYLAIN**
   **COMPANY**;
17 **MUELLER STEAM SPECIALITY**
   **COMPANY** n/k/a WATTS WATER
18 TECHNOLOGIES, INC.;
19 **THE NASH ENGINEERING**
   **COMPANY**;
20 **OWENS-ILLINOIS, INC.**;
21 **PPG INDUSTRIES, INC.**
   (individually and as successor-in-
22 interest to AKZO NOBEL INC., and
   DEVOE COATINGS);
23 **QUIMBY EQUIPMENT**
   **COMPANY**;
24 **ROBERTSHAW CONTROLS**
25 **COMPANY** (individually and as
   successor-in-interest to FULTON
26 SYLPHON COMPANY);
27 **ROCKWELL AUTOMATION INC.**
   (individually and as successor by
28 merger to ALLEN-BRADLEY

4

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  COMPANY LLC and ROSTONE
   CORPORATION);
2  **ROSS OPERATING VALVE**
3  **COMPANY** d/b/a ROSS CONTROLS;
   **RSCC WIRE & CABLE, LLC.;**
4  **SCHNEIDER ELECTRIC, USA,**
   **INC.,** f/k/a SQUARE D COMPANY;
5  **SIEMENS CORPORATION**
6  (individually and as successor-in-
   interest to ITE CIRCUIT BREAKER
7  CO.);
   **SIEMENS ENERGY INC.**
8  (individually and as successor by
9  merger to DRESSER-RAND GROUP,
   INC.);
10 **SPIRAX SARCO, INC.;**
   **SPX CORPORATION** (sued
11 individually and as successor-in-interest
12 to THE MARLEY COMPANY,
   WYLAIN, INC., WEIL-McCLAIN, a
13 division of WYLAIN, INC., and WEIL-
   McCLAIN);
14 **STERLING FLUID SYSTEMS,**
15 **(USA) LLC** f/k/a PEERLESS PUMP
   COMPANY;
16 **SULZER PUMPS HOUSTON, INC.**
   (sued individually and as successor-in-
17 interest to PACO PUMPS f/k/a
18 PACIFIC PUMPING COMPANY);
   **SUPERIOR-LIDGERWOOD-**
19 **MUNDY** (individually and as
   successor-in-interest to M.T. Davidson
20 Co.);
21 **VELAN VALVE CORP.;**
   **VIAD CORP** f/k/a THE DIAL
22 CORPORATION (sued individually and
   as successor-in-interest to GRISCOM-
23 RUSSELL COMPANY);
24 **VIKING PUMP, INC.,** a Unit of IDEX
   Corporation;
25 **WARREN PUMPS, LLC** (individually
   and as successor-in-interest to
26 QUIMBY PUMP COMPANY);
27 **WEIL-McCLAIN;**
   **WEIL-McCLAIN,** a division of THE
28 MARLEY COMPANY (sued

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  individually and as successor-in-interest
   to WYLAIN CO.);
2  **WILO USA LLC** (individually and as
3  successor-in-interest to WEIL PUMP
   COMPANY, INC.);
4  **WEIR VALVES & CONTROLS USA
   INC.** f/k/a ATWOOD & MORRILL;
5  **THE WILLIAM POWELL
   COMPANY;**
6  and DOES 1-450, inclusive,
7
8                                    Defendants.
9
10                  **GENERAL ALLEGATIONS**
11      COME NOW, Plaintiffs **TERRY LEE SIEGFRIED and TERRI SIEGFRIED**
12  (hereinafter "Plaintiffs") and complain and allege as follows:
13      1.     The true names and capacities, whether individual, corporate, associate,
14  governmental or otherwise, of Defendants DOES 1 through 450, inclusive, are unknown to
15  Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the
16  true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this
17  complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each
18  Defendant designated herein as a DOE is responsible, negligently or in some other actionable
19  manner, for the events and happenings hereinafter referred to, and caused injuries and damages
20  proximately thereby to the Plaintiffs, as hereinafter alleged.
21      2.     At all times herein mentioned, each of the Defendants was the agent, servant,
22  employee and/or joint venture of his co-Defendants, and each of them, and at all said times each
23  Defendant was acting in the full course and scope of said agency, service, employment and/or
24  joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein
25  mentioned, Defendants 3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING
26  COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as
27  successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as successor-
28  in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA
    LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR

1 COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a
2 WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH
3 CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in-interest and/or f/k/a W.G.M.
4 SAFETY PRODUCTS d/b/a WILLSON SAFETY PRODUCTS); CARRIER CORPORATION;
5 CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a
6 VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania
7 Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-
8 interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually
9 and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as
10 AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING
11 DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to
12 ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued
13 individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE
14 COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually
15 and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued
16 individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON
17 ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER
18 INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON
19 ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND
20 CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER
21 GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-
22 interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER
23 WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-
24 DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH
25 IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC
26 COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING,
27 MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY
28 (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.

1  WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER
2  CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as
3  successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES
4  MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued
5  individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
6  HARDIE-TYNES   MANUFACTURING   COMPANY);   HARDIE-TYNES,   LLC   (sued
7  individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
8  HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING
9  COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.
10 (individually  and  as  successor-in-interest  to  BUFFALO  FORGE  COMPANY);  IMO
11 INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,
12 INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY
13 STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to
14 BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR
15 MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING
16 COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-
17 WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS
18 WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-
19 ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO
20 NOBEL   INC.,   and   DEVOE   COATINGS);   QUIMBY   EQUIPMENT   COMPANY;
21 ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to
22 FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as
23 successor  by  merger  to  ALLEN-BRADLEY  COMPANY  LLC  and  ROSTONE
24 CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
25 RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D
26 COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE
27 CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by
28 merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,
2  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID
3  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,
4  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC
5  PUMPING  COMPANY);  SUPERIOR-LIDGERWOOD-MUNDY  (individually  and  as
6  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE
7  DIAL  CORPORATION  (sued  individually  and  as  successor-in-interest  to  GRISCOM-
8  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN
9  PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
10  WEIL-McCLAIN; WEIL-McCLAIN, a division of THE MARLEY COMPANY (sued
11  individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and
12  as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS
13  USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES
14  1-450 ("Defendants"), inclusive, were individuals, corporations, partnerships and/or
15  unincorporated associations organized and existing under and by virtue of the laws of the State
16  of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,
17  and each of them, were and are authorized to do and are doing business in the State of
18  California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and
19  each of them, were and are authorized to do and are doing business in the State of California,
20  and that said Defendants have regularly conducted business in the County of Los Angeles, State
21  of California.

22      3.    Plaintiffs allege that Plaintiff TERRY LEE SIEGFRIED was exposed to asbestos,
23  asbestos-containing products and/or products designed to be used in association with asbestos
24  products during his tenure as an electrician at Long Beach Naval Shipyard from approximately
25  1969 through 1996.

26      4.    Plaintiffs allege herein that Plaintiff TERRY LEE SIEGFRIED developed
27  malignant  mesothelioma  as  a  result  of  Defendants  AIR  &  LIQUID  SYSTEMS
28  CORPORATION (sued individually and as successor-in-interest to BUFFALO PUMPS, INC.);

ABB, INC. (individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY); ALFA LAVAL INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.; AURORA PUMP COMPANY; A.O. SMITH CORP.; CARRIER CORPORATION; CARVER PUMP COMPANY; CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT; CLA-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest to DAVIS ENGINEERING COMPANY formerly known as AQUA-CHEM, INC. doing business as CLEAVER-BROOKS DIVISION); COOPER WIRING DEVICES, a division of COOPER INDUSTRIES (individually and as successor-in-interest to ARROW-HART & HEGEMAN, INC.); COPES-VULCAN, INC.; CRANE CO. (sued individually and successor-in-interest to COCHRANE CORPORATION; CHAPMAN VALVE COMPANY and JENKINS VALVES); CRANE ENVIRONMENTAL, INC. (sued individually and successor-in-interest to COCHRANE CORPORATION); EATON CORPORATION (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); EATON ELECTRICAL, INC. (sued individually and as successor-in-interest to CUTLER-HAMMER INC.); ELLIOT TURBOMACHINERY COMPANY a/k/a ELLIOTT COMPANY; EMERSON ELECTRIC CO. (individually and as successor-in-interest to KEYSTONE VALVES AND CONTROLS, INC.); FISHER CONTROLS INTERNATIONAL LLC f/k/a FISHER GOVERNOR COMPANY; FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY and PEERLESS PUMP COMPANY); FOSTER WHEELER ENERGY CORPORATION; FRASER BOILER SERVICE, INC.; GARDNER-DENVER, INC.; GENERAL DYNAMICS CORPORATION (successor-in-interest to BATH IRON WORKS LTD. f/k/a THE HYDE WINDLASS COMPANY); GENERAL ELECTRIC COMPANY (individually and as successor-in-interest to MASONEILAN, and MANNING, MAXWELL & MOORE, INC.); GIBBS & COX, INC.; THE GORMAN-RUPP COMPANY

1    (individually and as successor-in-interest to PATTERSON PUMP COMPANY, and C.H.
2    WHEELER); GOULDS ELECTRONICS (as successor-in-interest to ITE CIRCUIT BREAKER
3    CO.); GOULDS PUMPS, INC.; HARDIE-TYNES CO., INC. (sued individually and as
4    successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and HARDIE-TYNES
5    MANUFACTURING COMPANY); HARDIE-TYNES FOUNDRY & MACHINE CO. (sued
6    individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
7    HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued
8    individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING CO. and
9    HARDIE-TYNES MANUFACTURING COMPANY); HERCULES MANUFACTURING
10   COMPANY, INC; HOWDEN NORTH AMERICA, INC. f/k/a HOWDEN BUFFALO, INC.
11   (individually and as successor-in-interest to BUFFALO FORGE COMPANY); IMO
12   INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE,
13   INC.); INGERSOLL-RAND COMPANY (individually and as successor-in-interest to TERRY
14   STEAM TURBINE); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to
15   BELL & GOSSETT, FOSTER ENGINEERING and HOFFMAN SPECIALTY); KERR
16   MACHINERY CO. n/k/a KERR PUMP & SUPPLY INC.; LAWLER MANUFACTURING
17   COMPANY, INC. f/k/a LAWLER AUTOMATIC CONTROLS, INC.; THE MARLEY-
18   WYLAIN COMPANY; MUELLER STEAM SPECIALITY COMPANY n/k/a WATTS
19   WATER TECHNOLOGIES, INC.; THE NASH ENGINEERING COMPANY; OWENS-
20   ILLINOIS, INC.; PPG INDUSTRIES, INC. (individually and as successor-in-interest to AKZO
21   NOBEL INC., and DEVOE COATINGS); QUIMBY EQUIPMENT COMPANY;
22   ROBERTSHAW CONTROLS COMPANY (individually and as successor in-interest to
23   FULTON SYLPHON COMPANY); ROCKWELL AUTOMATION INC. (individually and as
24   successor by merger to ALLEN-BRADLEY COMPANY LLC and ROSTONE
25   CORPORATION); ROSS OPERATING VALVE COMPANY d/b/a ROSS CONTROLS;
26   RSCC WIRE & CABLE, LLC.; SCHNEIDER ELECTRIC, USA, INC., f/k/a SQUARE D
27   COMPANY; SIEMENS CORPORATION (individually and as successor-in-interest to ITE
28   CIRCUIT BREAKER CO.); SIEMENS ENERGY INC. (individually and as successor by

1  merger to DRESSER-RAND GROUP, INC.); SPIRAX SARCO, INC.; SPX CORPORATION
2  (sued individually and as successor-in-interest to THE MARLEY COMPANY, WYLAIN, INC.,
3  WEIL-McCLAIN, a division of WYLAIN, INC., and WEIL-McCLAIN); STERLING FLUID
4  SYSTEMS, (USA) LLC f/k/a PEERLESS PUMP COMPANY; SULZER PUMPS HOUSTON,
5  INC. (sued individually and as successor-in-interest to PACO PUMPS f/k/a PACIFIC
6  PUMPING   COMPANY);   SUPERIOR-LIDGERWOOD-MUNDY   (individually   and   as
7  successor-in-interest to M.T. Davidson Co.); VELAN VALVE CORP.; VIAD CORP f/k/a THE
8  DIAL  CORPORATION  (sued  individually  and  as  successor-in-interest  to  GRISCOM-
9  RUSSELL COMPANY); VIKING PUMP, INC., a Unit of IDEX Corporation; WARREN
10 PUMPS, LLC (individually and as successor-in-interest to QUIMBY PUMP COMPANY);
11 WEIL-McCLAIN;  WEIL-McCLAIN,  a  division  of  THE  MARLEY  COMPANY  (sued
12 individually and as successor-in-interest to WYLAIN CO.); WILO USA LLC (individually and
13 as successor-in-interest to WEIL PUMP COMPANY, INC.); WEIR VALVES & CONTROLS
14 USA INC. f/k/a ATWOOD & MORRILL; THE WILLIAM POWELL COMPANY; and DOES
15 1-450's ("Product Defendants") negligence and Plaintiff TERRY LEE SIEGFRIED'S exposure
16 to asbestos from products sold, shipped, supplied, distributed, installed, removed, or replaced by
17 Product Defendants. These products were defective and inherently dangerous asbestos-
18 containing products and/or products defectively designed to be used in association with asbestos
19 products

20      5.      Plaintiffs additionally allege that Plaintiff TERRY LEE SIEGFRIED developed
21 malignant mesothelioma as a result of Defendants, 3M COMPANY (f/k/a MINNESOTA
22 MINING & MANUFACTURING COMPANY); BACOU-DALLOZ USA, INC., (sued as
23 successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY
24 PRODUCTS);  and  DOES  351-450's  ("RESPIRATOR  DEFENDANTS")  negligence,
25 defectively  designed  and  manufactured  safety  masks,  intentional  misrepresentation,
26 concealment, and negligent misrepresentations to Plaintiff TERRY LEE SIEGFRIED and his
27 employers regarding their safety masks.
28 ///

**FIRST CAUSE OF ACTION**

(Negligence)

PLAINTIFFS COMPLAIN OF PRODUCT DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

6.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

7.     At all times herein mentioned, each of the named Product Defendants and DOES 1-450 was the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and/or products designed to cut, saw or otherwise manipulate and products containing asbestos, including but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named Product Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products and/or products designed to cut, saw or otherwise manipulate, products containing asbestos. The following Product Defendants, and each of them, are liable for the acts of each and every "alternate entity," and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity," Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Product Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Product Defendant enjoys the

goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC.<br>DE LAVAL SEPARATOR COMPANY |
| CARRIER CORPORATION | UNITED TECHNOLOGIES CORPORATION<br>BRYANT HEATING AND AIR CONDITIONING, INC. |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CLEAVER-BROOKS, INC. | AQUA-CHEM, INC.<br>CLEAVER-BROOKS COMPANY, INC.<br>DAVIS ENGINEERING |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION<br>CHEMPUMP |
| CRANE ENVIRONMENTAL, INC. | COCHRANE CORPORATION |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |
| FMC CORPORATION | PEERLESS PUMP COMPANY<br>McNALLY INDUSTRIES-NORTHERN PUMP<br>FMC AGRICULTURAL PRODUCTS<br>FMC BIOPOLYMER<br>FMC LITHIUM<br>FMC ALKALI CHEMICALS<br>FMC FORET<br>NORTHERN PUMP COMPANY |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | | |
|---|---|---|
| 1 | FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| 2 | | FOSTER WHEELER CONTRACTORS, INC. |
| 3 | | FOSTER WHEELER CORPORATION |
| 4 | | FOSTER WHEELER DEVELOPMENT CORP. |
| 5 | | FOSTER WHEELER ENERGY RESOURCES INC. |
| 6 | | FOSTER WHEELER ENERGY SERVICES, INC. |
| 7 | | FOSTER WHEELER ENVIRESPONSE, INC. |
| 8 | | FOSTER WHEELER ENVIRONMENTAL CORPORATION |
| 9 | | FOSTER WHEELER POWER GROUP, INC. FOSTER WHEELER POWER SYSTEMS, INC. |
| 10 | | FOSTER WHEELER PYROPOWER, INC. |
| 11 | | FOSTER WHEELER REALTY SERVICES, INC. |
| 12 | | FOSTER WHEELER USA CORPORATION |
| 13 | GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION GARDNER COMPANY |
| 14 | | GARDNER DENVER INDUSTRIAL MACHINERY |
| 15 | | COOPER INDUSTRIES, INC. SYLTONE PLC |
| 16 | | TAMROTOR GEOQUIP |
| 17 | | CHAMPION PNEUMATIC MACHINERY WITTIG |
| 18 | | ALLEN-STUART EQUIPMENT COMPANY |
| 19 | | AIR RELIEF BUTTERWORTH JETTING SYSTEMS INVINCIBLE AIRFLOW SYSTEMS |
| 20 | | HAMWORTHY BELISS & MORCOM HOFFMAN AIR AND FILTRATION |
| 21 | | SYSTEMS JOY MANUFACTURING COMPANY |
| 22 | GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| 23 | | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| 24 | | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| 25 | | GENERAL ELECTRIC TRADING COMPANY |
| 26 | | |
| 27 | THE GORMAN-RUPP COMPANY | C.H. WHEELER GRISCOM-RUSSELL |
| 28 | | |

| | | |
|---|---|---|
| 1 | GOULDS PUMPS (NY), INC | GOULDS PUMPS (TX), LP |
| 2 | HARDIE-TYNES, LLC | HARDIE-TYNES MANUFACTURING CO. |
| 3 | HOWDEN NORTH AMERICA, INC. | HOWDEN BUFFALO, INC. |
| 4 | | HOWDEN FAN<br>HOWDEN FAN COMPANY |
| | | THE HOWDEN FAN COMPANY |
| 5 | | NOVENCO FANS, INC. |
| | | AMERICAN DAVIDSON INC. |
| 6 | | HOWDEN SIROCCO INC. |
| | | HOWDEN BUBBALO FANS |
| 7 | | HOWDEN BUFFALO FORGE CO. |
| | | HOWDEN |
| 8 | IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC. |
| 9 | | WARREN PUMPS, INC. |
| | | COLFAX CORPORATION |
| 10 | | IMO PUMP |
| | | IMO AB |
| 11 | | COLFAX PUMP GROUP |
| | | ALLWEILER |
| 12 | | HOUTTUIN |
| | | C.H. WHEELER |
| 13 | INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG |
| 14 | | DRESSER-RAND |
| | | POWERWORKS |
| 15 | | THERMOKING |
| | | TERRY STEAM TURBINE COMPANY |
| 16 | | WHITON MACHINE CO. |
| 17 | ITT INDUSTRIES, INC. | ITT SERVICE INDUSTRIES |
| | | CORPORATION |
| 18 | | RULE INDUSTRIES, INC. |
| | | GOULDS PUMPS, INCORPORATED |
| 19 | | GOULDS PUMPS (IPG), INC. |
| | | A-C PUMP |
| 20 | | AQUIOUS ADVANCED LIQUID |
| | | SEPARATIONS |
| 21 | | BELL & GOSSETT |
| | | DOMESTIC PUMP |
| 22 | | ENGINEERED PROCESS SOLUTIONS |
| | | GROUP |
| 23 | | FLOWTRONEX PSI INC. |
| | | ITT FLYGT |
| 24 | | HOFFMAN SPECIALTY |
| | | LOWARA |
| 25 | | MARLOW PUMPS |
| | | McDONNELL & MILLER |
| 26 | | ITT RICHTER CHEMIE-TECHNIK GmbH |
| | | SANITAIRE |
| 27 | | ITT STANDARD |
| | | VOGEL PUMPS |
| 28 | | WEDECO INDUSTRIES, INC. |

| | | |
|---|---|---|
| | | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | | NU-FLO MEASUREMENT SYSTEMS |
| | | BRANOM INSTRUMENT COMPANY |
| | | BARTON INSTRUMENTS DIVISION a/k/a PRIME MEASUREMENT PRODUCTS, LLC |
| | | NU-FLO MEASUREMENT SYSTEMS |
| | | BRANOM INSTRUMENT COMPANY |
| | OWENS-ILLINOIS, INC. | OWENS-CORNING FIBERGLAS CORPORATION |
| | | FENCO |
| | | MARINE ENGINEERING |
| | | FESCO |
| | | FIBERGLAS ENGINEERING AND SUPPLY COMPANY |
| | | WILLIAM LANE COMPANY |
| | | SILICARE INSULATION |
| | | ASBESTOS ENGINEERING & SUPPLY CO. |
| | | OWENS-BROCKWAY GLASS CONTAINERS |
| | | BROCKWAY GLASS CO., INC. |
| | | OWENS-ILLINOIS GLASS COMPANY |
| | SPX CORPORATION | THE VULCAN SOOT BLOWER COMPANY COPES-VULCAN |
| | | WEIL-MCLAIN COMPANY |
| | | THE MARLEY WYLAIN COMPANY |
| | STERLING FLUID SYSTEMS (USA) LLC | STERLING FLUID SYSTEMS (AMERICAS) INC. |
| | | STERLING FLUID SYSTEMS (CANADA) LTD. |
| | | STERLING FLUID SYSTEMS (COLOMBIA) LTD. |
| | | PEERLESS PUMP COMPANY |
| | | LaBOUR PUMP COMPANY |
| | | STERLING PEERLESS PUMPS |
| | VIAD CORPORATION | THE DIAL CORPORATION |
| | | GRISCOM-RUSSELL COMPANY |
| | VIKING PUMP, INC. | IDEX CORPORATION |
| | | ROTO KING PUMP, INC. |
| | | HOUDAILLE VIKING PUMP, INC. |
| | WARREN PUMPS, LLC | WARREN PUMPS INC. |
| | | WARREN PUMPS-HOUDAILLE, INC. |
| | | COLFAX PUMP GROUP |
| | | ALWEILER AG |
| | | HOUTTUIN BV |

17
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| | IMO PUMP |
| | ZENITH PUMPS |
| | QUIMBY PUMP CO. |
| WEIR VALVE & CONTROLS USA INC. | ATWOOD & MORRILL CO.,INC. |
| | THE WEIR GROUP PLC |
| | WEIR MINERALS |
| | WEIR CLEAR LIQUID |
| | WEIR VALVES & CONTROLS |
| | WEIR SERVICES |
| | WEIR TECHNA |
| | A & M VALVE |
| | HOPHOLD A & M, INC. |
| THE WILLIAM POWELL COMPANY | POWELL VALVES |

8.      At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos (hereinafter Defendants' Products).

9.      At all times herein mentioned, Product Defendants, their "alternate entities," and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph three 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff TERRY LEE SIEGFRIED herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to Product Defendants, their "alternate entities," and each of them,

1  thereby rendering said products unsafe and dangerous for use by "exposed person." Plaintiffs
2  herein allege that TERRY LEE SIEGFRIED was exposed to asbestos that was caused to be
3  released as a result of exposure to Defendants' Products, including but not limited to those
4  products identified in paragraph 3 above (hereinafter referred to as "Defendants' products" or
5  "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor
6  in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff
7  TERRY LEE SIEGFRIED's injuries.

8      10.    Product Defendants, their "alternate entities," and each of them, had a duty to
9  exercise reasonable care while engaging in the activities mentioned above, and each Product
10  Defendants breached said duty of reasonable care in that Product Defendants, and each of them,
11  failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to
12  test said products; failed to investigate the hazards of said products; failed to warn "exposed
13  person," including Plaintiff TERRY LEE SIEGFRIED of the health hazards of using
14  Defendants' products; failed to warn of the harmful exposures caused by use of said products to
15  cut, saw or otherwise manipulate asbestos containing products; failed to disclose the known or
16  knowable dangers of using Defendants' products; failed to obtain suitable alternative materials
17  to asbestos when such alternatives were available; and as otherwise stated herein.

18      11.    The Defendants' products were and are hazardous to the health and safety of
19  Plaintiff, and others in Plaintiff's position working with and in close proximity to such products,
20  and since on or before 1930, the hazards and dangerous propensities of the Defendants' products
21  were both known and knowable to the Product Defendants, their "alternate entities," and each of
22  them, through the use of medical and/or scientific data and other knowledge available to
23  Defendants, their "alternate entities," and each of them at the time of Product Defendants'
24  manufacture, distribution, sale, research, study, fabrication, design, modification, labeling,
25  assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting
26  for installation, repair, marketing, warranting, re-branding, re-manufacturing for others,
27  packaging and advertising, of those products, which clearly indicated the hazards and dangerous
28  propensities of asbestos presented a substantial danger to users, including Plaintiff, TERRY

1  LEE SIEGFRIED of Defendants' Products through the intended and reasonably foreseeable use
2  of those products.

3      12.    Product Defendants, their "alternate entities," and each of them, knew, or
4  reasonably should have known, that Defendants' Products were dangerous and were likely to be
5  dangerous when used in their intended and reasonably foreseeable manner.

6      13.    Product Defendants, their "alternate entities," and each of them, knew, or
7  reasonably should have known, that Defendants' Products would be installed, repaired,
8  maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept,
9  broken, "ripped out," and/or used to cut, saw or otherwise manipulate products containing
10 asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the
11 release of airborne hazardous and dangerous asbestos fibers, and that through such activity,
12 "exposed person," including Plaintiff TERRY LEE SIEGFRIED herein, would be exposed to
13 said hazardous and dangerous asbestos fibers. Product Defendants, their "alternate entities," and
14 each of them, knew or reasonably should have known that users, such as Plaintiff TERRY LEE
15 SIEGFRIED and others in his position, working with and in close proximity to Defendants'
16 Products would not realize or know the danger. Product Defendants, their "alternate entities,"
17 and each of them negligently failed to adequately warn or instruct of the dangers of the products.
18 A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the
19 same or similar circumstances, would have warned of the dangers to avoid exposing others to a
20 foreseeable risk of harm. The negligent failure of Defendants, their "alternate entities," and each
21 of them to warn was a substantial factor in causing harm to Plaintiff TERRY LEE SIEGFRIED.

22     14.    Plaintiff TERRY LEE SIEGFRIED used, handled, or was otherwise exposed to
23 asbestos from Defendants' Products referred to herein in a manner that was reasonably
24 foreseeable to Product Defendants and each of them. Plaintiff's exposure to Defendants'
25 Products occurred at various locations set forth in **Exhibit "A"** which is attached hereto and
26 incorporated by reference herein.

27     15.    As a direct and proximate result of the conduct of the Product Defendants, their
28 "alternate entities," and each of them, as aforesaid, Plaintiff TERRY LEE SIEGFRIED's

1  exposure to asbestos from use of Defendants' Products caused severe and permanent injury to
2  the Plaintiff. Plaintiffs are informed and believe, and thereon allege, that progressive lung
3  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without
4  perceptible trauma and that said disease results from exposure to Defendants' Products over a
5  period of time.

6      16.    Plaintiff TERRY LEE SIEGFRIED was informed of his malignant mesothelioma
7  diagnoses on or about October 2017. His malignant mesothelioma was caused by exposure to
8  asbestos from Defendants' Products and/or from the use of Defendants' Products while serving
9  as an electrician at Long Beach Naval Shipyard; both from his on "hands-on" work as an
10  electrician and from working in close proximity to other workers who cut, sawed or otherwise
11  manipulated products containing asbestos. Plaintiff TERRY LEE SIEGFRIED was not aware at
12  the time of exposure that Defendants' Products presented any risk of injury and/or disease.

13      17.    As a direct and proximate result of the aforesaid conduct of Product Defendants,
14  their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has suffered and
15  will continue to suffer permanent injuries and future injuries to his person, body and health,
16  including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue,
17  somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and
18  emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his
19  general damage in a sum in excess of the jurisdictional limit of a limited civil case.

20      18.    As a direct and proximate result of the aforesaid conduct of the Product
21  Defendants, their "alternate entities," and each of them, Plaintiff TERRY LEE SIEGFRIED has
22  incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons,
23  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact
24  amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

25      19.    As a further direct and proximate result of the said conduct of the Product
26  Defendants, their "alternate entities," and each of them, Plaintiff has incurred, and will incur,
27  loss of income, wages, profits and commissions, a diminishment of earning potential, and other
28  pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiff, subject

1  to proof at trial.

2      20.   Plaintiffs further allege that Product Defendants, their "alternate entities," and
3  each of them, also engaged in the following wrongful acts:

4          (a)   Product Defendants, their "alternate entities," and each of them, suppressed
5  from all consumers, including Plaintiff TERRY LEE SIEGFRIED medical and scientific
6  information concerning the health hazards associated with inhalation of asbestos,
7  including the substantial risk of injury or death therefrom. Although Defendants, and
8  each of them, knew of the substantial risks associated with exposure to asbestos, they
9  willfully and knowingly concealed such information from the users of their asbestos
10  and/or asbestos-containing products in conscious disregard of the rights, safety and
11  welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

12         (b)   Product Defendants, their "alternate entities," and each of them, belonged
13  to, participated in, and financially supported industry organizations which, for and on
14  behalf of Defendants, their "alternate entities," and each of them, actively promoted the
15  suppression of information about the dangers of asbestos to users of the aforementioned
16  products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED as to the
17  safety of their products. Through their participation and association with such industry
18  organizations, Product Defendants and each of them knowingly and deliberately
19  concealed and suppressed the true information regarding asbestos and its dangers, and
20  propagated misinformation intended to instill in users of Defendants' Products a false
21  security about the safety of their products;

22         (c)   Commencing in 1930 with the study of mine and mill workers at Asbestos
23  and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-
24  Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their
25  "alternate entities," and each of them, knew and possessed medical and scientific
26  information of the connection between the inhalation of asbestos fibers and asbestosis,
27  which information was disseminated through the Asbestos Textile Institute and other
28  industry organizations to all other Product Defendants, their "alternate entities," and each

of them, herein;

(d)     Product Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Product Defendants, their "alternate entities," and each of them, failed to provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the Defendants, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing such material;

(f)     Product Defendants, their "alternate entities," and each of them, knew and failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Product Defendants, their "alternate entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Product Defendants, their "alternate entities," and each of them, were under a duty to so inform and said failure was misleading;

(h)     Product Defendants, their "alternate entities," and each of them, and their

officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Product Defendants, their "alternate entities," and each of them, are liable for the oppressive and malicious acts of their "alternate entities," and each of them, and each Product Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

21.    The herein-described conduct of said Product Defendants, their "alternate entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff TERRY LEE SIEGFRIED, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause asbestos to be released, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Product Defendants, their "alternate entities," and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiff, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

22.    Product Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff TERRY LEE SIEGFRIED.

23.    Product Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.    As a direct and proximate result of such intentional conduct by Product

1  Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED

2  sustained the injuries and damages alleged herein.

3      WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate

4  entities," and each of them, as hereinafter set forth.

5                          **SECOND CAUSE OF ACTION**

6                              (Strict Liability)

7      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
       ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF PRODUCT
8    DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
                            AND ALLEGE AS FOLLOWS:

9

10     25.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each

11  and every one of the general allegations and the allegations contained in the First Cause of

    Action herein.

12
     26.    Product Defendants, their "alternate entities," and each of them, sold the
13
    aforementioned Defendants' Products and failed to adequately warn or instruct of the known
14
    and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products,
15
    which dangers and risks would not have been, and were not, recognized by ordinary consumers
16
    of the products, including Plaintiff, TERRY LEE SIEGFRIED, and the lack of sufficient
17
    instructions and/or warnings was a substantial factor in causing harm to Plaintiff TERRY LEE
18
    SIEGFRIED and others in Plaintiff's position working with and in close proximity to such
19
    products.
20
     27.    Defendants' Products were defective and unsafe for their intended purpose and
21
    foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled,
22
    removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," cut,
23
    sawed, installed, and/or used as intended, or used to cut, saw or manipulate products containing
24
    asbestos or otherwise disturbed, said products would result in the release, and therefore
25
    inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff
26
    TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the
27
    possession of the Product Defendants, their "alternate entities," and each of them. At the time
28

1  Defendants' Products were used by Plaintiff, and others in Plaintiff's position working with and
2  in close proximity to such products, the products were substantially the same as when they left
3  the possession of the Product Defendants, their "alternate entities," and each of them and/or any
4  changes made to the products after they left the possession of Defendants, their "alternate
5  entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities,"
6  and each of them. Product Defendants' asbestos and asbestos products were used by Plaintiff
7  TERRY LEE SIEGFRIED, and others in Plaintiff's position working with and in close
8  proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of
9  them. The defect in said products was a substantial factor in causing harm and personal injuries
10 to Plaintiff TERRY LEE SIEGFRIED, including malignant mesothelioma, while being used in a
11 reasonably foreseeable manner, thereby rendering said products defective, unsafe, and
12 unreasonably dangerous for their ordinary and intended use.

13     28.    As a direct and proximate result of the actions and conduct outlined herein,
14 Defendants' Products failed to perform as safely as an ordinary consumer would have expected
15 in that Defendants' Products, and each of them, caused respirable asbestos fibers to be released
16 from asbestos products during their ordinary and intended use, and such hazardous exposures
17 lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases,
18 including asbestosis, lung cancer, mesothelioma and other cancers in humans. Plaintiffs further
19 allege that "exposed person," including Plaintiff TERRY LEE SIEGFRIED, were unaware of
20 the harmful effects of asbestos and further unaware of the harmful exposures to Defendants'
21 Products when such exposures occurred, and thus the failure of Defendants' Products to perform
22 as safely as Plaintiff TERRY LEE SIEGFRIED had reason to expect was a substantial factor in
23 causing his injuries.

24     29.    As a direct and proximate result of the actions and conduct outlined herein,
25 Plaintiff TERRY LEE SIEGFRIED has suffered the injuries and damages alleged herein.

26     30.    Plaintiffs further allege that Product Defendants, their "alternate entities," and
27 each of them, also engaged in the following wrongful acts:

28          (a)    Product Defendants, their "alternate entities," and each of them, suppressed

from all consumers, including Plaintiff TERRY LEE SIEGFRIED, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person," including Plaintiff TERRY LEE SIEGFRIED;

(b)     Product Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED and as to the safety of their products. Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff TERRY LEE SIEGFRIED at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific

27
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    information of the connection between the inhalation of asbestos fibers and asbestosis,
2    which information was disseminated through the Asbestos Textile Institute and other
3    industry organizations to all other Defendants, their "alternate entities," and each of them,
4    herein;

5        (d)    Product Defendants, their "alternate entities," and each of them, failed to
6    warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which
7    were dangerous when breathed and which could cause pathological effects without
8    noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of
9    them, possessed knowledge and were under a duty to disclose that said materials were
10   dangerous and a threat to the health of persons coming into contact therewith;

11       (e)    Product Defendants, their "alternate entities," and each of them, failed to
12   provide Plaintiff TERRY LEE SIEGFRIED with information concerning adequate
13   protective masks and other equipment devised to be used when applying, mixing, sawing,
14   cutting, installing and sanding the products of the Defendants, their "alternate entities,"
15   and each of them, despite knowing that such protective measures were necessary, and
16   that they were under a duty to disclose that such materials were dangerous and would
17   result in injury to Plaintiff TERRY LEE SIEGFRIED and others applying and installing
18   such material;

19       (f)    Product Defendants, their "alternate entities," and each of them, knew and
20   failed to disclose that Plaintiff TERRY LEE SIEGFRIED and anyone similarly situated,
21   upon inhalation of asbestos would, in time, have a substantial risk of developing
22   irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

23       (g)    Product Defendants, their "alternate entities," and each of them, failed to
24   provide information of the true nature of the hazards of asbestos materials and that
25   exposure to these material would cause pathological effects without noticeable trauma to
26   the public, including buyers, users, and physicians employed by Plaintiff TERRY LEE
27   SIEGFRIED so that said physicians could not examine, diagnose, and treat Plaintiff and
28   others who were exposed to asbestos, despite the fact that Product Defendants, their

1  "alternate entities," and each of them, were under a duty to so inform and said failure was
2  misleading; and

3  (h)  Product Defendants, their "alternate entities," and each of them, and their
4  officers, directors, and managing agents participated in, authorized, expressly and
5  impliedly ratified, and had full knowledge of, or should have known of, each of the acts
6  set forth herein. Product Defendants, their "alternate entities," and each of them, are
7  liable for the oppressive and malicious acts of their "alternate entities," and each of them,
8  and each Defendant's officers, directors, and managing agents participated in, authorized,
9  expressly and impliedly ratified, and had full knowledge of, or should have known of, the
10  acts of each of their "alternate entities" as set forth herein.

11  31.  The herein-described conduct of said Product Defendants, their "alternate
12  entities," and each of them, was and is willful, malicious, oppressive, outrageous, and in
13  conscious disregard and indifference to the safety and health of "exposed person," including
14  Plaintiff TERRY LEE SIEGFRIED, in that Product Defendants, and each of them, continued to
15  manufacture, market and/or sell dangerous products known to cause severe, permanent injuries
16  and death, despite possessing knowledge of the substantial hazards posed by use of their
17  products, in order to continue to profit financially therefrom. Product Defendants, their
18  "alternate entities," and each of them, engaged in such conduct so despicable, contemptible,
19  base, vile, miserable, wretched and loathsome as to be looked down upon and despised by
20  ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil
21  Code section 3294. Plaintiff, for the sake of example and by way of punishing said Product
22  Defendants, seeks punitive damages according to proof.

23  32.  Product Defendants and each of them engaged in conduct which was intended by
24  Defendants and each of them to cause injury to the Plaintiff, and despicable conduct which was
25  carried on by the Defendant with a willful and conscious disregard of the rights or safety of
26  others, including Plaintiff TERRY LEE SIEGFRIED.

27  33.  Product Defendants, and each of them, engaged in the despicable conduct
28  described herein that subjected persons, including Plaintiff TERRY LEE SIEGFRIED, to cruel

1  and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung
2  cancer and mesothelioma, in conscious disregard of those persons' rights.

3      34.   As a direct and proximate result of such intentional conduct by Product
4  Defendants, their "alternate entities" and each of them, Plaintiff TERRY LEE SIEGFRIED
5  sustained the injuries and damages alleged herein.

6      WHEREFORE, Plaintiffs pray for judgment against Product Defendants, their "alternate
7  entities," and each of them, as hereinafter set forth.

8                        **THIRD CAUSE OF ACTION**

9              (False Representation Under Restatement of Torts Section 402-B)

10        AS AND FOR A FURTHER, THIRD SEPARATE, AND DISTINCT CAUSE OF
        ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS
11      SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
        "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:
12

13      35.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each
14  and every paragraph of the general allegations and the allegations contained in the First and
15  Second Causes of Action herein.

16      36.   At the aforementioned time when Defendants, their "alternate entities," and each
17  of them, researched, manufactured, fabricated, designed, modified, tested or failed to test,
18  inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered
19  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
20  marketed, warranted, re-branded, manufactured for others, packaged and advertised the said
21  asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their
22  "alternate entities," and each of them, expressly and impliedly represented to members of the
23  general public, including the purchasers and users of said product, and other "exposed persons,"
24  including, without limitation, Plaintiff TERRY LEE SIEGFRIED and his employers, that
25  asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for
26  which they were intended.

27      37.   The purchasers and users of said asbestos and asbestos-containing products, and
28  other "exposed persons," including, without limitation, Plaintiff TERRY LEE SIEGFRIED, and

1   his employers, relied upon said representations of Defendants, their "alternate entities," and each

2   of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

3       38.    Said representation by Defendants, their "alternate entities," and each of them,

4   were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos

5   and asbestos-containing products and equipment were not safe for their intended use, nor were

6   they of merchantable quality as represented by Defendants, their "alternate entities," and each of

7   them, in that asbestos and asbestos-containing products and equipment have very dangerous

8   properties and defects whereby said products cause asbestosis, other lung damages, and cancer,

9   and have other defects that cause injury and damage to the users of said products and other

10   "exposed persons" thereby threatening the health and life of said persons, including Plaintiff

11   TERRY LEE SIEGFRIED herein.

12       39.    As a direct and proximate result of said false representations by Defendants, their

13   "alternate entities," and each of them, Plaintiffs sustained the injuries and damages alleged

14   herein.

15       WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

16   entities," and each of them, as hereinafter set forth.

17   **FOURTH CAUSE OF ACTION**

18   (Intentional Tort/Intentional Failure to Warn)

19   AS AND FOR A FURTHER, FOURTH SEPARATE, AND DISTINCT CAUSE OF
     ACTION FOR INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN, PLAINTIFFS

20   COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND
     EACH OF THEM, AND ALLEGES AS FOLLOWS:

21

22       40.    Plaintiffs hereby incorporates by reference, as though fully set forth herein, each

23   and every paragraph of the general allegations and the allegations contained in the First through

24   Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

25       41.    At all times pertinent hereto, the Defendants their "alternate entities," and each of

26   them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code

27   of the State of California to abstain from injuring the person, property, or rights of the Plaintiffs.

28   When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities,"

1    and each of them, did do the acts and omissions in violation of that duty, thereby causing injury
2    to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts
3    falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of
4    the State of California and, more specifically, included suggestions of fact which were not true
5    and which Defendants, their "alternate entities," and each of them, did not believe to be true;
6    assertions of fact which were not true and which Defendants, their "alternate entities," and each
7    of them, had no reasonable ground for believing to be true, and the suppression of fact when a
8    duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty
9    gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the
10   aforementioned Civil Code sections.

11        42.    Since on or before 1930, the Defendants, their "alternate entities," and each of
12   them, have known and have possessed the true facts of medical and scientific data and other
13   knowledge which clearly indicated that the asbestos and asbestos-containing products and
14   equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health
15   and safety of Plaintiffs, and others in Plaintiff TERRY LEE SIEGFRIED's position working in
16   close proximity with such materials. The Defendants, their "alternate entities," and each of them,
17   have known of the dangerous propensities of the aforementioned materials and products since
18   before that time. With intent to deceive Plaintiff TERRY LEE SIEGFRIED, and others in
19   Plaintiffs' position, and with intent that he and such others should be and remain ignorant of
20   such facts with intent to induce Plaintiffs and such others to alter his and their positions to his
21   and their injury and/or risk and in order to gain advantages, the following acts occurred:

22        (a)    Defendants, their "alternate entities," and each of them, did not label any of
23        the aforementioned asbestos-containing materials, products, and equipment regarding the
24        hazards of such materials and products to the health and safety of Plaintiffs and others in
25        Plaintiffs' position working in close proximity with such materials until 1964, when
26        certain of such materials were labeled by some, but not all, of Defendants, their "alternate
27        entities," and each of them, since on or before 1930. By not labeling such materials,
28        products, and equipment as to their said hazards, Defendants, their "alternate entities,"

and each of them, caused to be suggested as a fact to Plaintiffs that it was safe for Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities," and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Plaintiffs and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "alternate entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities," and each of them, sold the aforementioned products, materials, and equipment to Plaintiff TERRY LEE SIEGFRIED's employers and others without advising Plaintiff TERRY LEE SIEGFRIED, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities," and each of them, caused to be positively asserted to Plaintiff TERRY LEE SIEGFRIED that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff TERRY LEE SIEGFRIED to work in close proximity to such materials;

(d)     Defendants, their "alternate entities," and each of them, suppressed from Plaintiffs medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities," and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public

Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiffs and others to be and remain ignorant thereof. Defendants, their "alternate entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)    Defendants, their "alternate entities," and each of them, belonged to, participated in, and financially supported industry organizations which, for and on behalf of Defendants, their "alternate entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff TERRY LEE SIEGFRIED by the suggestions and deceptions set forth above in this cause of action;

(f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the industry organizations to all other Defendants, their "alternate entities," and each of them, herein. Defendants, their "alternate entities," and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiffs. Such facts did mislead Plaintiffs and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff TERRY LEE SIEGFRIED the true facts concerning such knowledge of danger, which Defendants, their "alternate entities," and each of them, were bound to disclose;

(g)    Defendants, their "alternate entities," and each of them, failed to warn Plaintiff TERRY LEE SIEGFRIED and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were

1     dangerous and a threat to the health of persons coming into contact therewith;

2          (h)     Defendants, their "alternate entities," and each of them, failed to provide

3 Plaintiff TERRY LEE SIEGFRIED with information concerning adequate protective

4 masks and other equipment to be used when applying and installing the products of the

5 Defendants, their "alternate entities," and each of them, despite knowing that such

6 protective measures were necessary, and that they were under a duty to disclose that such

7 materials were dangerous and would result in injury to Plaintiff TERRY LEE

8 SIEGFRIED and others applying and installing such material;

9          (i)     Defendants, their "alternate entities," and each of them, when under a duty

10 to so disclose, concealed from Plaintiff TERRY LEE SIEGFRIED the true nature of the

11 industrial exposure of Plaintiff TERRY LEE SIEGFRIED and knew that Plaintiff and

12 anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible

13 conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate

14 entities," and each of them, also concealed from Plaintiff TERRY LEE SIEGFRIED and

15 others that harmful materials to which they were exposed would cause pathological

16 effects without noticeable trauma;

17          (j)     Defendants, their "alternate entities," and each of them, failed to provide

18 information of the true nature of the hazards of asbestos materials and that exposure to

19 these material would cause pathological effects without noticeable trauma to the public,

20 including buyers, users, and physicians employed by Plaintiff TERRY LEE SIEGFRIED

21 so that said physicians could not examine, diagnose, and treat Plaintiffs and others who

22 were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and

23 each of them, were under a duty to so inform and said failure was misleading;

24          (k)     Defendants, their "alternate entities," and each of them, willfully failed and

25 omitted to complete and file a First Report of Occupational Injury or Illness regarding

26 Plaintiffs' injuries, as required by law, and did willfully fail and omit to file a Report of

27 Injury and Occupational Disease with the State of California. Plaintiff TERRY LEE

28 SIEGFRIED was in the class of persons with respect to whom a duty was owed to file

1  such reports and who would have been protected thereby if the fact of danger from

2  products complained of had become known;

3      (l)     Defendants, their "alternate entities," and each of them, having such

4  aforementioned knowledge, and the duty to inform Plaintiff TERRY LEE SIEGFRIED

5  about the true facts, and knowing the Plaintiff TERRY LEE SIEGFRIED did not possess

6  such knowledge and would breathe such material innocently, acted falsely and

7  fraudulently and with full intent to cause Plaintiff TERRY LEE SIEGFRIED to remain

8  unaware of the true facts and to induce Plaintiff TERRY LEE SIEGFRIED to work in a

9  dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil

10  Code of the State of California.

11      43.    As a direct and proximate result of such intentional conduct by Defendants, their

12  "alternate entities" and each of them, Plaintiffs sustained and continue to sustain the injuries and

13  damages alleged herein.

14      44.    The herein-described conduct of said Defendants, their "alternate entities," and

15  each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard

16  and indifference to the safety and health of "exposed persons." Plaintiffs, for the sake of

17  example and by way of punishing said Defendants, seek punitive damages according to proof.

18      WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate

19  entities," and each of them, as hereinafter set forth.

20                          **FIFTH CAUSE OF ACTION**

21                          (Respirator Defendant's Negligence)

22  AS AND FOR A FIFTH FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE
    OF ACTION, PLAINTIFFS COMPLAIN OF RESPIRATOR DEFENDANTS 3M COMPANY
23  f/k/a MINNESOTA MINING & MANUFACTURING COMPANY, BACOU-DALLOZ USA,
    INC., (sued as successor-in-interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a
24  WILLSON SAFETY PRODUCTS); and DOES 351-450, and THEIR "ALTERNATE
    ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25

26      45.    Plaintiffs incorporate herein by reference, as though fully set forth therein, the

27  general allegations set forth above.

28      46.    Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

1  DEFENDANTS' safety masks while he and others in his immediate presence removed,
2  replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

3      47.  At all times herein mentioned, RESPIRATOR DEFENDANTS were the
4  successor, successor-in-business, successor-in-product line or a portion thereof, parent,
5  subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an
6  entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,
7  assembling, distributing, buying, offering for sale, supplying, selling, inspecting, marketing,
8  warranting, re-branding, manufacturing for others, packaging and advertising safety masks.

9  **DEFENDANT**                    **ALTERNATE ENTITY**

10
11  3M COMPANY                     MINNESOTA MINING AND
                                               MANUFACTURING

12  BACOU-DALLOZ USA, INC          W.G.M. SAFETY PRODUCTS
                                               WILLSON SAFETY PRODUCTS

13

14      48.  At all times herein mentioned, RESPIRATOR DEFENDANTS and their "alternate
15  entities" were engaged in the business of researching, manufacturing, fabricating, designing,
16  modifying, labeling, assembling, distributing, buying, offering for sale, supplying, selling,
17  inspecting, servicing, installing, renting, marketing, warranting, re-branding, manufacturing for
18  others, packaging, and advertising safety masks.

19      49.  RESPIRATOR DEFENDANTS knew, or reasonably should have known, that
20  safety masks were dangerous and were likely to be dangerous when used in their intended and
21  reasonably foreseeable manner.

22      50.  At all times herein mentioned, RESPIRATOR DEFENDANTS singularly and
23  jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed,
24  modified, tested or failed to test, warned or failed to warn of the health hazards, labeled,
25  assembled, distributed, bought, offered for sale, supplied, sold, inspected, serviced, installed,
26  repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised
27  safety masks to be used with asbestos, and were unreasonably dangerous because respirable
28  asbestos fibers could be and were inhaled while wearing RESPIRATOR DEFENDANTS' safety

1  masks resulting in personal injuries to users, consumers, workers, bystanders, and others,

2  including Plaintiff, TERRY LEE SIEGFRIED.

3      51.    Said safety masks were used at all times in a manner that was reasonably

4  foreseeable to RESPIRATOR DEFENDANTS thereby rendering said products unsafe and

5  dangerous for use by Plaintiff, TERRY LEE SIEGFRIED. Plaintiffs herein allege that

6  RESPIRATOR DEFENDANTS' negligence caused Plaintiff, TERRY LEE SIEGFRIED, to be

7  exposed to asbestos released from asbestos containing products, and that RESPIRATOR

8  DEFENDANTS' negligence and Plaintiff's exposures to asbestos resulting therefrom were

9  substantial contributing factors in the development of Plaintiff's malignant mesothelioma and

10  death, and therefore proximately caused Plaintiffs' injuries and damages.

11      52.    At all relevant times, RESPIRATOR DEFENDANTS had a duty to exercise

12  reasonable care while engaging in the activities mentioned above and RESPIRATOR

13  DEFENDANTS breached said duty of reasonable care in that RESPIRATOR DEFENDANTS

14  failed to safely and adequately design, manufacture and/or sell its safety masks; failed to test or

15  adequately test its safety masks; failed to investigate the hazards of its safety masks; failed to

16  instruct on safer uses of its safety masks to minimize or eliminate harmful exposures; failed to

17  warn "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, of the health hazards of

18  using RESPIRATOR DEFENDANTS' safety masks; failed to warn of the harmful exposures

19  caused by use of RESPIRATOR DEFENDANTS' safety masks; failed to instruct on safer uses

20  of said safety masks to minimize harmful exposures; failed to disclose the known or knowable

21  dangers of using RESPIRATOR DEFENDANTS' safety masks; and/or failed to obtain or offer

22  suitable alternative RESPIRATOR DEFENDANTS' safety masks when such alternatives were

23  available.

24      53.    Since on or before 1930, the hazards and dangerous propensities of the asbestos

25  were both known and knowable to RESPIRATOR DEFENDANTS through the use of medical

26  and/or scientific data and other knowledge available to RESPIRATOR DEFENDANTS at the

27  time of its manufacture, distribution, sale, research, study, fabrication, design, modification,

28  labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation,

1     contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for
2     others, packaging and advertising, of its safety masks, all of which clearly indicated the hazards
3     and dangerous propensities of exposures to asbestos and that they presented a substantial danger
4     to end users, including Plaintiff, TERRY LEE SIEGFRIED.

5         54.     RESPIRATOR DEFENDANTS knew, or reasonably should have known, that is
6     safety masks would be used during the installation, repair, maintenance, overhaul, removal,
7     sawing, chipping, hammering, mixing, scraping, sanding, sweeping, breaking, "ripping out,"
8     cutting, dumping, disturbing or handling of asbestos, or otherwise in the ordinary, intended and
9     foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and
10    that through such activity, "exposed person," including Plaintiff, TERRY LEE SIEGFRIED,
11    herein, would be exposed to said hazardous and dangerous asbestos fibers while using
12    RESPIRATOR DEFENDANTS' safety masks in an intended and reasonably foreseeable
13    manner.

14        55.     RESPIRATOR DEFENDANTS' negligent failure to warn was a substantial factor
15    in causing harm to Plaintiff, TERRY LEE SIEGFRIED. RESPIRATOR DEFENDANTS knew
16    or reasonably should have known that users, such as Plaintiff, TERRY LEE SIEGFRIED, and
17    others in his position, working with and in close proximity to asbestos would not realize or
18    know the danger of asbestos while wearing its safety masks. RESPIRATOR DEFENDANTS
19    thereafter negligently failed to adequately warn or instruct of the dangers of asbestos while using
20    its safety masks, as reasonable designers, manufacturers, distributors, sellers, or suppliers, under
21    the same or similar circumstances, would have warned of these dangers to avoid asbestos
22    exposures, a foreseeable risk of harm.

23        56.     At all relevant, RESPIRATOR DEFENDANTS were additionally negligent
24    because they failed to recall/retrofit their safety masks in that RESPIRATOR DEFENDANTS
25    manufactured/distributed/sold products, that RESPIRATOR DEFENDANTS knew or
26    reasonably should have known were dangerous or were likely to be dangerous when used in a
27    reasonably foreseeable manner; that RESPIRATOR DEFENDANTS became aware of the
28    defectiveness of their safety masks after the product was sold to Plaintiff's employer; that

1    RESPIRATOR DEFENDANTS failed to recall/retrofit or warn of the dangers of using their
2    safety masks; that a reasonable manufacturer/distributor/seller under the same or similar
3    circumstance would have recalled/retrofitted the product; that Plaintiff, TERRY LEE
4    SIEGFRIED, was injured by asbestos using RESPIRATOR DEFENDANTS' safety masks; and
5    that RESPIRATOR DEFENDANTS' failure to recall/retrofit their masks was a substantial
6    factor in causing Plaintiff, TERRY LEE SIEGFRIED'S injuries and death.

7        57.    Plaintiffs further allege that RESPIRATOR DEFENDANTS also engaged in the
8    following wrongful acts:

9        (a)    RESPIRATOR DEFENDANTS suppressed from all consumers, including
10   Plaintiff, TERRY LEE SIEGFRIED, medical and scientific information concerning the
11   health hazards associated with inhalation of asbestos, including the substantial risk of
12   injury or death therefrom. Although RESPIRATOR DEFENDANTS knew of the
13   substantial risks associated with exposure to asbestos, they willfully and knowingly
14   concealed such information from the users of their asbestos and/or asbestos-containing
15   products in conscious disregard of the rights, safety and welfare of "exposed person,"
16   including Plaintiff, TERRY LEE SIEGFRIED;

17       (b)    RESPIRATOR DEFENDANTS belonged to, participated in, and
18   financially supported industry organizations, including but not limited to the Gypsum
19   Association, Asbestos Information Association, Industrial Hygiene Foundation and
20   others, which, for and on behalf of RESPIRATOR DEFENDANTS actively promoted the
21   suppression of information about the dangers of asbestos to users of the aforementioned
22   products and materials, thereby misleading Plaintiff, TERRY LEE SIEGFRIED, as to the
23   safety of their products. Through their participation and association with such industry
24   organizations, RESPIRATOR DEFENDANTS knowingly and deliberately concealed and
25   suppressed the true information regarding asbestos and its dangers, and propagated
26   misinformation intended to instill a false security about the asbestos. The Dust Control
27   Committee, which changed its name to the Air Hygiene Committee, of the Asbestos
28   Textile Institute, was specifically enlisted to study the subject of dust control. Discussions

1    in this committee were held many times regarding the dangers inherent in asbestos and

2    the dangers, which arise from the lack of control of dust, and such information was

3    suppressed from public dissemination from 1946 to a date unknown to Plaintiff, TERRY

4    LEE SIEGFRIED, at this time;

5         (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos

6    and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-

7    Manhattan plants in Manheim and Charleston, South Carolina, RESPIRATOR

8    DEFENDANTS knew and possessed medical and scientific information of the

9    connection between the inhalation of asbestos fibers and asbestosis, which information

10   was disseminated through the Asbestos Textile Institute and other industry organizations

11   to RESPIRATOR DEFENDANTS. RESPIRATOR DEFENDANTS thereafter failed to

12   provide this information to consumers;

13        (d)    RESPIRATOR DEFENDANTS failed to warn Plaintiff, TERRY LEE

14   SIEGFRIED, and others of the nature of said materials which were dangerous when

15   breathed and which could cause pathological effects without noticeable trauma, despite

16   the fact that RESPIRATOR DEFENDANTS and its "alternate entities" possessed

17   knowledge and were under a duty to disclose that said materials were dangerous and a

18   threat to the health of persons coming into contact therewith;

19        (e)    RESPIRATOR DEFENDANTS failed to provide Plaintiff, TERRY LEE

20   SIEGFRIED, with information concerning adequate protective masks and other

21   equipment devised to be used when applying, mixing, sawing, cutting, installing and

22   sanding asbestos containing products, despite knowing that such protective measures

23   were necessary, and that they were under a duty to disclose that such materials were

24   dangerous and would result in injury to Plaintiff, TERRY LEE SIEGFRIED, and others

25   applying and installing such material;

26        (f)    RESPIRATOR DEFENDANTS knew and failed to disclose that Plaintiff,

27   TERRY LEE SIEGFRIED, and anyone similarly situated, upon inhalation of asbestos

28   would, in time, have a substantial risk of developing irreversible conditions of

pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     RESPIRATOR DEFENDANTS failed to provide information of the true nature of the hazards of its masks and asbestos and that exposure to asbestos would cause pathological effects without immediate, noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff, TERRY LEE SIEGFRIED, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that RESPIRATOR DEFENDANTS were under a duty to so inform and said failure was misleading;

(h)     RESPIRATOR DEFENDANTS and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS is liable for the oppressive and malicious acts of their "alternate entities" and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

58.     The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market, supply, distribute and/or sell dangerous safety masks known to allow exposures to asbestos, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of its safety masks, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome so as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said RESPIRATOR DEFENDANTS, seek punitive damages according to proof.

59.     RESPIRATOR DEFENDANTS engaged in conduct which was intended by

1  RESPIRATOR DEFENDANTS to cause injury to the Plaintiff, and its despicable conduct
2  which was carried on by the RESPIRATOR DEFENDANTS with a willful and conscious
3  disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

4      60.    RESPIRATOR DEFENDANTS engaged in the despicable conduct described
5  herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust
6  hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and
7  mesothelioma, in conscious disregard of those persons' rights.

8      61.    As a direct and proximate result of the conduct of RESPIRATOR
9  DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, was exposed to asbestos which caused
10 severe and permanent injury and death to the Plaintiff, the nature of which, along with the date
11 of Plaintiff diagnosis and death and the date he learned such injuries were attributable to
12 exposure to RESPIRATOR DEFENDANTS. Plaintiffs are now informed and believe, and
13 thereon allege, that progressive lung disease, cancer and other serious diseases are caused by
14 inhalation of asbestos fibers without immediate, perceptible trauma and that said disease results
15 from exposure to asbestos.

16     62.    Plaintiff, TERRY LEE SIEGFRIED suffered from malignant mesothelioma,
17 caused by RESPIRATOR DEFENDANTS' negligence and Plaintiff's exposure to asbestos
18 because of his reliance and use of RESPIRATOR DEFENDANTS' safety masks while
19 handling, cutting, sawing, lathing or otherwise manipulating asbestos and products containing
20 asbestos including those products identified in paragraph 3 above. Plaintiff, TERRY LEE
21 SIEGFRIED, was not aware at the time of exposure that RESPIRATOR DEFENDANTS' safety
22 masks presented any risk of injury and/or disease.

23     63.    As a direct and proximate result of such intentional conduct by RESPIRATOR
24 DEFENDANTS, Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages
25 alleged herein, Plaintiff, TERRY LEE SIEGFRIED, suffered injuries to his person, body and
26 health, and death, including, but not limited to, pain, discomfort, loss of weight, loss of appetite,
27 fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental
28 and emotional distress attendant thereto, all to Plaintiffs' general damage in a sum in excess of

1  the jurisdictional limit of a limited civil case.

2    64.    As a direct and proximate result of the aforesaid conduct of RESPIRATOR

3  DEFENDANTS, Plaintiffs incurred, are presently incurring, and will incur in the future, liability

4  for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical

5  treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to

6  proof at trial.

7    65.    As a further direct and proximate result of the said conduct of the RESPIRATOR

8  DEFENDANTS, Plaintiffs incurred, and will incur, loss of income, wages, profits and

9  commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact

10  amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

11    WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

12  hereinafter set forth.

13                          **SIXTH CAUSE OF ACTION**

14                          (Respirator Defendants' Strict Liability)

15    AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF
      ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF RESPIRATOR

16  DEFENDANTS AND THEIR "ALTERNATE ENTITIES" AND ALLEGE AS FOLLOWS:

17    66.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each

18  and every one of the general allegations and the allegations contained in paragraphs 1, 2, 3, 5,

19  and 45-65 above.

20    67.    Plaintiff, TERRY LEE SIEGFRIED, was given and wore RESPIRATOR

21  DEFENDANTS' safety masks while he and others in his immediate presence removed,

22  replaced, installed, and cleaned up asbestos-containing products at Long Beach Naval Shipyard.

23    68.    RESPIRATOR DEFENDANTS sold safety masks and failed to adequately warn

24  or instruct of the known and knowable dangers and risks of the ordinary, intended, and

25  foreseeable use of its safety masks, which dangers and risks would not have been, and were not,

26  recognized by RESPIRATOR DEFENDANTS' customers or ordinary consumers of the masks,

27  including Plaintiff, TERRY LEE SIEGFRIED.

28    69.    The lack of sufficient instructions and/or warnings was a substantial factor in

                                      44
                    COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  causing harm to Plaintiff, TERRY LEE SIEGFRIED, and others in Plaintiff's position working
2  with and in close proximity to such products.

3       70.    RESPIRATOR DEFENDANTS' safety masks were defective and unsafe for their
4  intended purpose and foreseeable use in that, when used said masks would result in inhalation of
5  hazardous and dangerous asbestos fibers by persons wearing the masks, including Plaintiff,
6  TERRY LEE SIEGFRIED. The defect existed in all of said products when they left the
7  possession of RESPIRATOR DEFENDANTS.

8       71.    At the time RESPIRATOR DEFENDANTS' safety masks were used by Plaintiff
9  the products were in substantially the same condition as when they left the possession of
10  RESPIRATOR DEFENDANTS and/or any changes made to the products after they left the
11  possession of RESPIRATOR DEFENDANTS were reasonably foreseeable. RESPIRATOR
12  DEFENDANTS' safety masks were used by Plaintiff, TERRY LEE SIEGFRIED, in a way that
13  was reasonably foreseeable to RESPIRATOR DEFENDANTS. The defect in said products was
14  a substantial factor in causing harm and personal injuries to Plaintiff, TERRY LEE
15  SIEGFRIED, including malignant mesothelioma, since they were being used in a reasonably
16  foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably
17  dangerous for their ordinary and intended use.

18       72.    As a direct and proximate result of the actions and conduct outlined herein,
19  RESPIRATOR DEFENDANTS' safety masks failed to perform as safely as an ordinary
20  company or consumer would have expected in that RESPIRATOR DEFENDANTS' safety
21  masks allowed respirable asbestos fibers to be inhaled from asbestos products during the safety
22  masks ordinary and intended use, and these hazardous asbestos exposures cause severe and fatal
23  diseases, including asbestosis, lung cancer, mesothelioma and other cancers in humans.

24       73.    Plaintiffs further allege Plaintiff, TERRY LEE SIEGFRIED, and his employers
25  were unaware of the defect in RESPIRATOR DEFENDANTS' safety masks and further
26  unaware of the harmful exposures to asbestos that would occur when using RESPIRATOR
27  DEFENDANTS' safety masks, and this failure of RESPIRATOR DEFENDANTS' safety masks
28  to perform as safely as expected was a substantial factor in causing his injuries.

74. As a direct and proximate result of the actions, defects and conduct outlined herein, Plaintiff, TERRY LEE SIEGFRIED, suffered the injuries and damages alleged herein

75. RESPIRATOR DEFENDANTS and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. RESPIRATOR DEFENDANTS are liable for the oppressive and malicious acts of its "alternate entities" and its officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

76. The herein-described conduct of said RESPIRATOR DEFENDANTS was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff, TERRY LEE SIEGFRIED, in that RESPIRATOR DEFENDANTS continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. RESPIRATOR DEFENDANTS engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing RESPIRATOR DEFENDANTS seeks punitive damages according to proof.

77. RESPIRATOR DEFENDANTS engaged in conduct which was intended to cause injury to the Plaintiff, and despicable conduct which was carried on by RESPIRATOR DEFENDANTS with a willful and conscious disregard of the rights or safety of others, including Plaintiff, TERRY LEE SIEGFRIED.

78. RESPIRATOR DEFENDANTS engaged in the despicable conduct described herein that subjected persons, including Plaintiff, TERRY LEE SIEGFRIED, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

1    79.    As a direct and proximate result of such intentional conduct by RESPIRATOR

2    DEFENDANTS Plaintiff, TERRY LEE SIEGFRIED, sustained the injuries and damages

3    alleged herein.

4    WHEREFORE, Plaintiffs pray for judgment against RESPIRATOR DEFENDANTS as

5    hereinafter set forth.

6    ## SEVENTH CAUSE OF ACTION

7    (Loss of Consortium)

8    AS AND FOR A FURTHER, SEVENTH SEPARATE, AND DISTINCT CAUSE OF
     ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF TERRI SIEGFRIED COMPLAINS OF
9    DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM,
     AND ALLEGES AS FOLLOWS:

10

11   80.    Plaintiff TERRI SIEGFRIED incorporates by reference, each and every paragraph

12   of the First through Sixth Causes of Action herein.

13   81.    Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED were married on

14   July 7, 1991, and at all times relevant to this action were, and are now, husband and wife.

15   82.    Prior to Plaintiff TERRY LEE SIEGFRIED's injuries as alleged, he was able and

16   did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof,

17   Plaintiff TERRY LEE SIEGFRIED has been unable to perform the necessary duties as a spouse

18   and the work and services usually performed in the care, maintenance, and management of the

19   family home, and he will be unable to perform such work, service and duties in the future. As a

20   proximate result thereof, TERRI SIEGFRIED has been permanently deprived and will be

21   deprived of the consortium of her spouse, including the performance of duties, all to his

22   damages, in an amount presently unknown but which will be proved at the time of trial.

23   83.    Plaintiff TERRI SIEGFRIED's discovery of this cause of her loss of consortium,

24   as herein alleged, first occurred within one year of the date this Complaint was filed.

25   84.    As a direct and proximate result of the acts of Defendants, their "alternate

26   entities," and each of them, and the severe injuries caused thereby to Plaintiff TERRY LEE

27   SIEGFRIED, as set forth in this complaint, Plaintiff TERRI SIEGFRIED has suffered, and for a

28   long period of time will continue to suffer, loss of consortium, including, but not limited, loss of

1   services, marital relations, society, comfort, companionship, love and affection of said spouse,

2   and has suffered severe mental and emotional distress and general nervousness as a result

3   thereof.

4        WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities,"

5   and each of them, in an amount to be proved at trial in each individual case, as follows:

6        Plaintiff TERRY LEE SIEGFRIED:

7       1.    For Plaintiff's general damages according to proof;

8       2.    For Plaintiff's loss of income, wages, and earning potential according to proof;

9       3.    For Plaintiff's medical and related expenses according to proof;

10      Plaintiff TERRI SIEGFRIED:

11      4.    For Plaintiff's damages for loss of consortium and/or society according to proof;

12      Plaintiffs TERRY LEE SIEGFRIED and TERRI SIEGFRIED:

13      5.    For Plaintiffs' cost of suit herein;

14      6.    For exemplary or punitive damages according to proof;

15      7.    For damages for fraud according to proof; and

16      8.    For such other and further relief as the Court may deem just and proper, including

17   costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and

18   related provisions of law.

19

20   DATED: January 26, 2018      **THE LANIER LAW FIRM**

21

22              By: _Mark A. Linder_

23                     Mark A. Linder

24                     Case A. Dam

                      Attorneys for Plaintiffs

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs hereby demand trial by jury as to all issues so triable.

3 DATED: January 26, 2018      **THE LANIER LAW FIRM**

4

5      By:

6           Mark A. Linder

7           Case A. Dam
          Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

Plaintiff TERRY LEE SIEGFRIED's exposure to asbestos and asbestos-containing products occurred at various locations including but not limited to within the States of California, , and additional sites including, but not limited to:

| Employer | Location of Exposure | Job Title | Date(s) |
|---|---|---|---|
| Long Beach Naval Shipyard | Various, including, but not limited to: Long Beach Naval Shipyard; Long Beach, CA; Roark (FF-1053); Gray (FF-1054); Hepburn (FF-1055); Meyerkord (FF-1058); Lockwood (FF-1064); Markin Shields (FF-1066); Francis Hammonds (FF-1067); Downes (FF-1070); Cook (Ff-1083); Barbey (FF-1088); Ogden (LPD-5); Duluth (LPD-6;); Cleveland (LPD-7); Dubuque (LPD-8); Denver (LPD-9); Juneau (LPD-10); Norton Sound (AVM-1); St. Paul (CA-73); Chicago (CA-136); New Jersey (BB -62); Missouri (BB-63); Hull (DD-945); Morton (DD-948); Lofberg (DD-759); Tripoli (LPH-10); Paul Foster (DD-964); Kinkaid (DD-965); Hewitt (DD-966); David R Ray (DD-971); Oldendorf (DD-972); John Young (DD - 973); Jouett (CG-29); Horne (CG-30); Sterett (CG-31); Fox (CG-33); Tarawa (LHA-1); Belleau Wood (LHA-3); Peleliu (LHA-5); Henry B. Wilson (DDG-7); Towers (DDG-9); Robison (DDG-12); Hoel (DDG-13); Waddell (DDG-24) | Various, including but not limited to: Electrician, Marine Electrician | Approx. 1969-1996 |

1

## EXHIBIT "B"

2     Plaintiff TERRY LEE SIEGFRIED's exposure to Defendants' Products caused severe

3 and permanent injury to Plaintiff TERRY LEE SIEGFRIED including, but not limited to,

4 mesothelioma. Plaintiff was diagnosed with mesothelioma on or about October of 2017.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit B

1   MORGAN, LEWIS & BOCKIUS LLP
    JOSEPH DUFFY, SBN 241854
2   joseph.duffy@morganlewis.com
    300 S. Grand Avenue, Twenty-Second Floor
3   Los Angeles, CA 90071-3132
    Tel:   +1.213.612.2500
4   Fax:  +1.213.612.2501

5   MORGAN, LEWIS & BOCKIUS LLP
    AMY J. TALARICO, SBN 209112
6   amy.talarico@morganlewis.com
    MARISA R. CHAVES, SBN 236533
7   marisa.chaves@morganlewis.com
    One Market, Spear Street Tower
8   San Francisco, CA 94105-1126
    Tel:   +1.415.442.1000
9   Fax:  +1.415.442.1001

10  Attorneys for Defendant
    ELLIOTT COMPANY
11

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

14

15  **TERRY LEE SIEGFRIED** and **TERRI**      Case No.
16  **SIEGFRIED,**
                                               **DEFENDANT ELLIOTT**
17                    Plaintiffs,              **COMPANY'S NOTICE OF**
                                               **REMOVAL OF ACTION**
18          vs.                                **UNDER 28 U.S.C. 1442(a)(1)**
                                               **FEDERAL OFFICER**
19  **3M COMPANY** (f/k/a MINNESOTA
20  MINING & MANUFACTURING                     (Los Angeles County Superior Court
    COMPANY); **AIR & LIQUID SYSTEMS**         Case No. BC691900)
21  **CORPORATION** (sued individually and
22  as successor-in-interest to BUFFALO
    PUMPS, INC.; **ABB, INC.** individually
23  and as successor-in-interest to ITE
24  IMPERIAL CO f/k/a ITE CIRCUIT
    BREAKER COMPANY); **ALFA LAVAL**
25  **INC.** (sued individually and as successor-
26  in-interest to THE DELAVAL
    SEPARATOR COMPANY and
27  SHARPLES CORPORATION);
28  **ATWOOD & MORRILL CO., INC.,**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4                    1        DEFENDANT ELLIOTT COMPANY'S
                                                      NOTICE OF REMOVAL

| | |
|---|---|
| 1 | d/b/a WEIR VALVES & CONTROLS |
| 2 | USA, INC.; **AURORA PUMP** |
| | **COMPANY; A.O. SMITH CORP.,** |
| 3 | **BACOU-DALLOZ USA, INC.** (sued as |
| 4 | successor-in-interest and/or f/k/a W.G.M. |
| | SAFETY PRODUCTS d/b/a WILLSON |
| 5 | SAFETY PRODUCTS); **CARRIER** |
| 6 | **CORPORATION; CARVER PUMP** |
| | **COMPANY; CBS CORPORATION** (a |
| 7 | Delaware Corporation) f/k/a VIACOM, |
| 8 | INC., as successor-by-merger to CBS |
| | CORPORATION (a Pennsylvania |
| 9 | Corporation) f/k/a WESTINGHOUSE |
| 10 | ELECTRIC CORPORATION, and also as |
| | successor-in-interest to BF |
| 11 | STURTEVANT; **CLA-VAL CO.;** |
| 12 | **CLEAVER-BROOKS, INC.** (sued |
| | individually and as successor-in-interest to |
| 13 | DAVIS ENGINEERING COMPANY |
| 14 | formerly known as AQUA-CHEM, INC. |
| | doing business as CLEAVER-BROOKS |
| 15 | DIVISION); **COOPER WIRING** |
| 16 | **DEVICES,** a division of COOPER |
| | INDUSTRIES (individually and as |
| 17 | successor-in-interest to ARROW-HART & |
| 18 | HEGEMAN, INC.); **COPES-VULCAN,** |
| | **INC.; CRANE CO.** (sued individually |
| 19 | and as successor-in-interest to |
| 20 | COCHRANE CORPORATION; |
| | CHAPMAN VALVE COMPANY and |
| 21 | JENKINS VALVES); **CRANE** |
| 22 | **ENVIRONMENTAL, INC.** (sued |
| | individually and as successor-in-interest to |
| 23 | COCHRANE CORPORATION); **EATON** |
| 24 | **CORPORATION** (sued individually and |
| | as successor-in-interest to CUTLER- |
| 25 | HAMMER INC.); **EATON** |
| 26 | **ELECTRICAL, INC.** (sued individually |
| | and as successor-in-interest to CUTLER- |
| 27 | HAMMER INC.); **ELLIOT** |
| 28 | **TURBOMACHINERY COMPANY** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

2

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

1    a/k/a ELLIOTT COMPANY; **EMERSON**
2    **ELECTRIC CO.** (individually and as
    successor-in-interest to KEYSTONE
3    VALVES AND CONTROLS, INC.);
4    **FISHER CONTROLS**
    **INTERNATIONAL LLC** f/k/a FISHER
5    GOVERNOR COMPANY; **FMC**
6    **CORPORATION** (sued individually and
    as successor-in-interest to NORTHERN
7    PUMP COMPANY and PEERLESS
8    PUMP COMPANY); **FOSTER**
    **WHEELER ENERGY**
9    **CORPORATION; FRASER BOILER**
10   **SERVICE, INC.; GARDNER-**
    **DENVER, INC.; GENERAL**
11   **DYNAMICS CORPORATION**
12   (successor-in-interest to BATH IRON
    WORKS LTD. f/k/a THE HYDE
13   WINDLASS COMPANY); **GENERAL**
14   **ELECTRIC COMPANY** (individually
    and as successor-in-interest to
15   MASONEILAN, and MANNING,
16   MAXWELL & MOORE, INC.); **GIBBS**
    **& COX, INC.; THE GORMAN-RUPP**
17   **COMPANY** (individually and as
18   successor-in-interest to PATTERSON
    PUMP COMPANY, and C.H.
19   WHEELER); **GOULDS**
20   **ELECTRONICS** (as successor-in-
    interest to ITE CIRCUIT BREAKER
21   CO.); **GOULDS PUMPS, INC.;**
22   **HARDIE-TYNES CO., INC.** (sued
    individually and as successor-in-interest
23   to HARDIE-TYNES
24   MANUFACTURING CO. and HARDIE-
    TYNES MANUFACTURING
25   COMPANY); **HARDIE-TYNES**
26   **FOUNDRY & MACHINE CO.** (sued
    individually and as successor-in-interest
27   to HARDIE-TYNES
28   MANUFACTURING CO. and HARDIE-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

1  TYNES MANUFACTURING
2  COMPANY); **HARDIE-TYNES, LLC**
   (sued individually and as successor-in-
3  interest to HARDIE-TYNES
4  MANUFACTURING CO. and HARDIE-
   TYNES MANUFACTURING
5  COMPANY); **HERCULES**
6  **MANUFACTURING COMPANY,**
   **INC; HOWDEN NORTH AMERICA,**
7  **INC.** f/k/a HOWDEN BUFFALO, INC.
8  (individually and as successor-in-interest
   to BUFFALO FORGE COMPANY);
9  **IMO INDUSTRIES, INC.** (sued
10 individually and as successor-in-interest
   to DELAVAL TURBINE, INC.);
11 **INGERSOLL-RAND COMPANY**
12 (individually and as successor-in-interest
   to TERRY STEAM TURBINE); **ITT**
13 **INDUSTRIES, INC.** (sued individually
14 and as successor-in-interest to BELL &
   GOSSETT, FOSTER ENGINEERING
15 and HOFFMAN SPECIALTY); **KERR**
16 **MACHINERY CO.** n/k/a KERR PUMP
   & SUPPLY INC.; **LAWLER**
17 **MANUFACTURING COMPANY,**
18 **INC.** f/k/a LAWLER AUTOMATIC
   CONTROLS, INC.; **THE MARLEY-**
19 **WYLAIN COMPANY; MUELLER**
20 **STEAM SPECIALITY COMPANY**
   n/k/a WATTS WATER
21 TECHNOLOGIES, INC.; **THE NASH**
22 **ENGINEERING COMPANY;**
   **OWENS-ILLINOIS, INC.; PPG**
23 **INDUSTRIES, INC.** (individually and as
24 successor-in-interest to AKZO NOBEL
   INC., and DEVOE COATINGS);
25 **QUIMBY EQUIPMENT COMPANY;**
26 **ROBERTSHAW CONTROLS**
   **COMPANY** (individually and as
27 successor-in-interest to FULTON
28 SYLPHON COMPANY); **ROCKWELL**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

4

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

Case 2:18-cv-01575-FMO-E   Document 125-1   Filed 03/07/18   Page 62 of 96   Page ID
#:7704
Case 2:18-cv-01575   Document 1   Filed 02/26/18   Page 5 of 12   Page ID #:5

1  **AUTOMATION INC.** (individually and
2  as successor by merger to ALLEN-
   BRADLEY COMPANY LLC and
3  ROSTONE CORPORATION); **ROSS**
4  **OPERATING VALVE COMPANY**
   d/b/a ROSS CONTROLS; **RSCC WIRE**
5  **& CABLE, LLC.; SCHNEIDER**
6  **ELECTRIC, USA, INC.,** f/k/a SQUARE
   D COMPANY; **SIEMENS**
7  **CORPORATION** (individually and as
8  successor-in-interest to ITE CIRCUIT
   BREAKER CO.); **SIEMENS ENERGY**
9  **INC.** (individually and as successor by
10 merger to DRESSER-RAND GROUP,
   INC.); **SPIRAX SARCO, INC.; SPX**
11 **CORPORATION** (sued individually and
12 as successor-in-interest to THE MARLEY
   COMPANY, **WYLAIN, INC., WEIL-**
13 **McCLAIN,** a division of WYLAIN, INC.,
14 and WEIL-McCLAIN); **STERLING**
   **FLUID SYSTEMS, (USA) LLC** f/k/a
15 PEERLESS PUMP COMPANY;
16 **SULZER PUMPS HOUSTON, INC.**
   (sued individually and as successor-in-
17 interest to PACO PUMPS f/k/a PACIFIC
18 PUMPING COMPANY); **SUPERIOR-**
   **LIDGERWOOD-MUNDY** (individually
19 and as successor-in-interest to M.T.
20 Davidson Co.); **VELAN VALVE CORP.;**
   **VIAD CORP** f/k/a THE DIAL
21 CORPORATION (sued individually and
22 as successor-in-interest to GRISCOM-
   RUSSELL COMPANY); **VIKING**
23 **PUMP, INC.,** a Unit of IDEX
24 Corporation; **WARREN PUMPS, LLC**
   (individually and as successor-in-interest
25 to QUIMBY PUMP COMPANY); **WEIL-**
26 **McCLAIN; WEIL-McCLAIN,** a division
   of THE MARLEY COMPANY (sued
27 individually and as successor-in-interest to
28 WYLAIN CO.); **WILO USA LLC**

Morgan, Lewis &
Bockius LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

5

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

1  (individually and as successor-in-interest
2  to WEIL PUMP COMPANY, INC.);
   **WEIR VALVES & CONTROLS USA**
3  **INC.** f/k/a ATWOOD & MORRILL; **THE**
4  **WILLIAM POWELL COMPANY**; and
   DOES 1-450, inclusive,
5
                  Defendants.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

6

TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THE
CLERK OF THE ABOVE-ENTITLED COURT:

     **PLEASE TAKE NOTICE THAT** Defendant Elliott Company ("Elliott")
hereby gives notice of the removal of this action filed by Plaintiffs Terry Lee
Siegfried ("Mr. Siegfried) and Terri Siegfried ("Mrs. Siegfried") (collectively,
"Plaintiffs") from the Superior Court of the State of California, County of Los
Angeles, to the United States District Court for the Central District of California
pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, whereby this Court has subject
matter jurisdiction to adjudicate claims with respect to persons acting at the
direction of an officer or agency of the United States.  Elliott's grounds for removal
are more particularly stated as follows:

I.

**PROCEDURAL HISTORY AND BACKGROUND**

    1.    Plaintiffs filed their Complaint against Elliott, among numerous other
defendants, on or about January 28, 2018.  A conformed copy of the Complaint is
attached hereto as **Exhibit A**.

    2.    Elliott was served with the Complaint on or about January 30, 2018.

    3.    Plaintiffs allege that Mr. Siegfried "was exposed to asbestos, asbestos-
containing products and/or products designed to be used in association with
asbestos products." Exh. A, § III.  Plaintiffs further allege that Mr. Siegfried
developed mesothelioma as a result of his exposure to asbestos from defendants'
products.  Exh. A, § IV.

    4.    Plaintiffs allege that Mr. Siegfried was exposed to asbestos during his
tenure as an electrician at the Long Beach Naval Shipyard.  Exh. A, § III.  Plaintiffs
allege that Mr. Siegfried was exposed to asbestos at the Long Beach Naval
Shipyard in California, a U.S. federal government shipyard, which serviced U.S.
Naval ships.  *See id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

7

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

5.      Mr. Siegfried claims liability against Elliott and other defendants based upon Negligence; Strict Liability; False Representation Under Restatement of Torts Section 402-B; Intentional Tort/Intentional Failure to Warn. *Id.* at § VI-XLIV.  Plaintiffs generally allege that Mr. Siegfried's mesothelioma was caused by defendants' negligence and Mr. Siegfried's exposure to asbestos from products sold, shipped, supplied, distributed, installed, removed, or replaced by "Product Defendants," and that these products were "defective and inherently dangerous asbestos-containing products defectively designed to be used in association with asbestos products." without specifying any particular act of any particular Defendant that allegedly caused harm. *See id.* at § IV.

## II.

## BASIS FOR REMOVAL

**A.    Timeliness, Venue, and Notices**

6.      This Notice of Removal is timely filed within thirty (30) days of Elliott's January 30, 2018 notice of Plaintiffs' claim that Mr. Siegfried was allegedly injured due to asbestos exposure that occurred at Long Beach Naval Shipyard in California.

7.      Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1442(a) because the Complaint was filed in Los Angeles, California and is currently pending in this District.

8.      Attached hereto as **Exhibit B** is a copy of all process, pleadings, and orders served upon Elliott to date in this matter as required by 28 U.S.C. § 1446(a).

9.      Pursuant to 28 U.S.C. § 1446(d), Elliott will file written notice regarding this Notice of Removal with the Superior Court for Los Angeles County, California and will serve the same on counsel for Plaintiffs and those defense counsel known to Elliott who have entered appearances in the state court action.  A copy of this Notice of Filing Notice of Removal is attached hereto as **Exhibit C**.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

8

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

1         10.    The requisite filing fee has been tendered to the Clerk of the United

2   States District Court for the Central District of California.

3         11.    If any question arises regarding the propriety of removal, Elliott

4   respectfully requests the opportunity to present a brief and/or oral argument in

5   support of the removability of this case.

6         12.    Assignment of this action to the Los Angeles Division is proper as the

7   Complaint was filed in Los Angeles County.

8   **B.**      **The Federal Officer Removal Statute Authorizes Removal of This Action**

9         13.    Plaintiffs claim that Mr. Siegfried was allegedly exposed to asbestos

10   while he worked at the Long Beach Naval Shipyard, and in which he purportedly

11   encountered or was exposed to equipment that contained asbestos.  This Court has

12   subject matter jurisdiction pursuant to 28 U.S.C. § 1442 because, in the

13   manufacture of products for the federal government, Elliott acted under the

14   direction of an officer of the United States within the meaning of

15   28 U.S.C. § 1442(a)(1).

16         14.    The Complaint alleges that Mr. Siegfried worked with or around

17   products manufactured by Elliott, as well as other defendants.  Exh. A. at § IV.

18   There is no allegation in the Complaint that Mr. Siegfried ever encountered Elliott

19   products outside his work at the Long Beach Naval Shipyard.

20         15.    Though Plaintiffs do not expressly allege that Mr. Siegfried was

21   exposed to any particular product manufactured by Elliott while Mr. Siegfried

22   worked at the Long Beach Naval Shipyard, to the extent Mr. Siegfried may have

23   been exposed to asbestos associated with any Elliott products while at the Long

24   Beach Naval Shipyard, any and all such equipment manufactured and supplied by

25   Elliott for the federal government was designed and manufactured in accordance

26   with detailed specifications required by the federal government, and was designed

27   and built under the direction and control of the federal government and its officers.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

9

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

Case 2:18-cv-01575-FMO-E   Document 125-1   Filed 03/07/18   Page 67 of 96   Page ID
#:749
Case 2:18-cv-01575   Document 1   Filed 02/26/18   Page 10 of 12   Page ID #:10

1       16.    If Elliott products were in fact used at the Long Beach Naval Shipyard,

2  those products were manufactured for use by the federal government pursuant to

3  contracts and specifications executed by the federal government.  Accordingly,

4  Elliott acted pursuant to direction of a federal officer during the performance of

5  agreements to manufacture and sell equipment to the federal government for the

6  Long Beach Naval Shipyard, including all aspects of warnings associated with any

7  such equipment.

8       17.    This case therefore is removable based on the Federal Officer Removal

9  Statute, 28 U.S.C. § 1442(a)(1).  The Federal Officer Removal Statute,

10  28 U.S.C. § 1442, guarantees an absolute right to a federal forum in any civil or

11  criminal action filed in state court "that is against or directed to" a federal officer or

12  "any person acting under that officer," such as a government contractor, when the

13  suit is "for or relating to any act under color of such [federal] office."  28 U.S.C.

14  § 1442(a).  All requirements for Federal Officer Removal Jurisdiction are met here.

15       18.    Elliott, as a corporation, is a "person" within the meaning of 28 U.S.C.

16  § 1442(a).  *See, e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.4 (9th Cir. 2014);

17  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135–36 (2d Cir. 2008).

18       19.    Elliott is entitled to remove this action because Plaintiffs' alleged

19  claims are "for or relating to" Elliott's work at the U.S. federal government's Long

20  Beach Naval Shipyard.  Plaintiffs seek to recover for injuries purportedly caused by

21  products Elliott manufactured at the federal government's direction and under its

22  control.  *See In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457,

23  471–72 (3d Cir. 2015) (construing The Removal Clarification Act of 2011, Pub. L.

24  11251, 125 Stat. 545 (2011) and holding that under the 2011 amendments to the

25  Federal Officer Removal Statute, defendants no longer need to establish a "causal

26  nexus" between challenged acts and federal authority to support Federal Officer

27  Removal Jurisdiction).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

20.   Elliott hereby gives notice of its assertion of the "government

contractor defense" to each of Plaintiffs' claims. Under *Boyle v. United*

*Technologies Corp.*, 487 U.S. 500 (1988), a government contractor is immune from

state tort liability for product defects when (1) the United States approved

reasonably precise specifications for the product at issue; (2) the equipment

conformed to the Government's specifications; and (3) the supplier warned the

United States about the dangers in the use of the equipment that were known to the

supplier but not to the United States. *Id.* at 512; *see also Getz v. Boeing Co.*, 654

F.3d 852, 861 (9th Cir. 2011) (same).

21.   Elliott's assertion of the "government contractor" defense here is

"colorable." To the extent Elliott equipment was present at the Long Beach Naval

Shipyard or aboard U.S. Naval ships, Elliott supplied the federal government with

various components and machinery used at the Long Beach Naval Shipyard and

any Naval ships. Those components were at all times designed and manufactured

under contract with the federal government and pursuant to detailed specifications

issued by the government.

22.   The federal government also issued reasonably precise specifications

for product manuals and associated warnings used at the Long Beach Naval

Shipyard. As to Elliott's products, the federal government oversaw, exercised

discretion over, and ultimately approved the content of all instructional manuals,

packaging, and product warnings for Elliott's products intended for use at the Long

Beach Naval Shipyard or aboard any U.S. Naval ships, to the extent said equipment

was present. Elliott's product manuals and any associated product warnings

conformed to the federal government's specifications.

23.   The federal government was aware of the potential hazards of asbestos

by the early 1920s, and the information about asbestos possessed by the federal

government far exceeded any information that possibly could have been available

to Elliott.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4

11

DEFENDANT ELLIOTT COMPANY'S
NOTICE OF REMOVAL

24.     Insofar as it is necessary under the Federal Officer Removal Statute following the amendments to 28 U.S.C. § 1442(a)(1) in 2011, a "causal nexus" exists between Plaintiffs' claims and Elliott's alleged actions undertaken at a federal officer's direction because Elliott's products were manufactured pursuant to detailed federal government specifications, and any applicable warnings and product manuals Elliott may have provided for products intended for use at the Long Beach Naval Shipyard were subject to the federal government's ultimate authority, control, discretion, and approval. *See Leite*, 749 F.3d at 1120.

WHEREFORE, Defendant Elliott Company, pursuant to and in conformance with the requirements of 28 U.S.C. §§ 1442 and 1446, removes this action from the Superior Court of the State of California, County of Los Angeles.


Dated:  February 26, 2018          MORGAN, LEWIS & BOCKIUS LLP

                                   By  /s/ *Joseph Duffy*
                                       Joseph Duffy

                                   Attorneys for Defendant
                                   ELLIOTT COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 95981597.4                              12              DEFENDANT ELLIOTT COMPANY'S
                                                               NOTICE OF REMOVAL

Exhibit C

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 2 6 2018

Sherri R. Carter, Executive Office/Clerk
By: _____ , Deputy
Brenny Smith

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
PATRICK J. FOLEY, SB# 180391
2 | E-Mail: Patrick.Foley@lewisbrisbois.com
TRENTON E. HARTZLER, SB# 318319
3 | E-Mail: Trenton.Hartzler@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, SUPERIOR-
LIDGERWOOD MUNDY
7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10 |

11 | TERRY LEE SIEGFRIED and TERRI
SIEGFRIED,

CASE NO. BC691900
(Hon. Steven J. Kleifield, Dept. 324)

12 |
Plaintiffs,

**NOTICE OF MOTION AND MOTION TO
QUASH SERVICE OF SUMMONS;
MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF
TRENTON HARTZLER**

13 |
vs.

14 |
3M COMPANY (f/k/a MINNESOTA
15 | MINING & MANUFACTURING
COMPANY); AIR & LIQUID SYSTEMS
16 | CORPORATION (sued individually and as
successor-in-interest to BUFFALO PUMPS,
17 | INC.); ABB, INC. (individually and as
successor-in-interest to ITE IMPERIAL CO.
18 | f/k/a ITE CIRCUIT BREAKER COMPANY);
ALFA LAVAL INC. (sued individual and as
19 | successor-in-interest to THE DELAVAL
SEPARATOR COMPANY and SHARPLES
20 | CORPORATION); ATWOOD & MORRILL
CO., INC. d/b/a WEIR VALVES &
21 | CONTROLS USA INC.; AURORA PUMP
COMPANY; A.O. SMITH CORP.; BACOU-
22 | DALLOZ USA, INC., (sued as successor-in-
interest and/or f/k/a W.G.M. SAFETY
23 | PRODUCTS d/b/a WILLSON SAFETY
PRODUCTS); CARRIER CORPORATION;
24 | CARVER PUMP COMPANY; CBS
CORPORATION (a Delaware Corporation)
25 | f/k/a VIACOM, INC. (as successor-by-merger
to CBS CORPORATION) (a Pennsylvania
26 | Corporation) f/k/a WESTINGHOUSE
ELECTRIC CORPORATION) and also as
27 | successor-in-interest to BF STURTEVANT;
CAL-VAL CO.; CLEAVER-BROOKS, INC.
28 | (sued individually and as successor-in-interest

Hearing Date: March 29, 2018
Time: 1:45 p.m.
Department: 324

Action Filed: January 26, 2018
Trial Date: None Set

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1 to DAVIS ENGINEERING COMPANY
formerly known as AQUA-CHEM, INC.
2 doing business as CLEAVER-BROOKS
DIVISION); COOPER WIRING DEVICES, a
3 division of COOPER INDUSTRIES
(individually and as successor-in-interest to
4 ARROW-HART & HEGEMAN, INC.);
COPES-VULCAN, INC.; CRANE CO. (sued
5 individually and successor-in-interest to
COCHRANE CORPORATION; CHAPMAN
6 VALVE COMPANY and JENKINS
VALVES); CRANE ENVIRONMENTAL,
7 INC. (sued individually and successor-in-
interest to COCHRANE CORPORATION);
8 EATON CORPORATION (sued individually
and as successor-in-interest to CUTLER-
9 HAMMER INC.); EATON ELECTRICAL,
INC. (sued individually and as successor-in-
10 interest to CUTLER-HAMMER INC.);
ELLIOT TURBOMACHINERY COMPANY
11 a/k/a ELLIOTT COMPANY; EMERSON
ELECTRICT CO. (individually and as
12 successor-in-interest to KEYSTONE
VALVES AND CONTROLS, INC.); FISHER
13 CONTROLS INTERNATIONAL LLC f/k/a
FISHER GOVERNOR COMPANY; FMC
14 CORPORATION (sued individually and as
successor-in-interest to NORTHERN PUMP
15 COMPANY and PEERLESS PUMP
COMPANY); FOSTER WHEELER
16 ENERGY CORPORATION; FRASHER
BOILER SERVICE, INCL.; GARDNER-
17 DENVER, INC.; GENERAL DYNAMICS
CORPORATION (successor-in-interest to
18 BATH IRON WORKS LTD. f/k/a THE
HYDE WINDLASS COMPANY);
19 GENERAL ELECTRIC COMPANY
(individually and as successor-in-interest to
20 MASONEILAN, and MANNING,
MAXWELL & MOORE, INC.); GIBBS &
21 COX, INC.; THE GORMAN-RUPP
COMPANY (individually and as successor-in-
22 interest to PATTERSON PUMP COMPANY,
and C.H. WHEELER); GOULDS
23 ELECTRONICS (as successor-in-interest to
ITE CIRCUIT BREAKER CO.); GOULDS
24 PUMPS, INC.; HARDIE-TYNES CO., INC.
(sued individually and as successor-in-interest
25 to HARDIE-TYNES MANUFACTURING
CO. and HARDIE-TYNES
26 MANUFACTURING COMPANY);
HARDIE-TYNES FOUNDARY &
27 MACHINE CO. (sued individually and as
successor-in-interest to HARDIE-TYNES
28 MANUFACTURING CO. and HARDIE-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1                                    2

1  TYNES MANUFACTURING COMPANY);
   HARDIE-TYNES, LLC (sued individually
2  and as successor-in-interest to HARDIE-
   TYNES MANUFACTURING CO. and
3  HARDIE-TYNES MANUFACTURING
   COMPANY); HERCULES
4  MANUFACTURING COMPANY, INC.;
   HOWDEN NORTH AMERICA, INC. f/k/a
5  HOWDEN BUFFALO, INC. (individually and
   as successor-in-interest to BUFFALO FORGE
6  COMPANY); IMO INDUSTRIES (sued
   individually and as successor-in-interest to
7  DELAVAL TURBINE, INC.); INGERSOL-
   RAND COMPANY (individually and as
8  successor-in-interest to TERRY STEAM
   TURBINE); ITT INDUSTRIES, INC. (sued
9  individually and as successor-in-interest to
   BELL & GOSSETT, FOSTER
10 ENGINEERING and HOFFMAN
   SPECIALTY); KERR MACHINERY CO.
11 n/k/a KERR PUMP & SUPPLY INC.;
   LAWLER MANUFACTURING COMPANY,
12 INC. f/k/a LAWLER AUTOMATIC
   CONTROLS, INC.; THE MARLEY-
13 WYLAIN COMPANY; MUELLER STEAM
   SPECIALITY COMPANY n/k/a WATTS
14 WATER TECHNOLOGIES, INC ; THE
   NASH ENGINEERING COMPANY;
15 OWENS-ILLINOIS, INC.; PPG
   INDUSTRIES, INC. (successor-in-interest to
16 AKZO NOBEL INC., and DEVOE
   COATINGS); QUIMBY EQUIPMENT
17 COMPANY; ROBERTSHAW CONTROLS
   COMPANY (individually and as successor-in-
18 interest to FULTON SYLPHON COMPANY);
   ROCKWELL AUTOMATION INC.
19 (individually and as successor by merger to
   ALLEN-BRADLEY COMPANY LLC and
20 ROSTONE CORPORATION); ROSS
   OPERATING VALVE COMPANY d/b/a
21 ROSS CONTROLS; RSCC WIRE & CABLE,
   LLC; SCHNEIDER ELECTRIC, USA, INC.,
22 f/k/a SQUARE D COMPANY; SIEMANS
   CORPORATION (individually and as
23 successor-in-interest to ITE CIRCUIT
   BREAKER CO.); SEIMENS ENERGY INC.
24 (individually and as successor by merger to
   DRESSER-RAND GROUP, INC.); SPIRAX
25 SARCO, INC.; SPX CORPORATION (sued
   individually and as successor-in-interest to
26 THE MARLEY COMPANY, WYLAIN,
   INC.. WEIL-McCLAIN, a division of
27 WYLAIN, INC., and WEIL-McCLAIN);
   STERLING FLUID SYSTEMS, (USA) LLC
28 f/k/a PEERLESS PUMP COMPANY;

4843-8315-7086.1                                      3
          NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1  SULZER PUMPS HOUSTON, INC. (sued
   individually and as successor-in-interest to
2  PACO PUMPS f/k/a PACIFIC PUMPING
   COMPANY); SUPERIOR-LIDGERWOOD-
3  MUNDY (individually and as successor-in-
   interest to M.T. Davidson Co.); WELAN
4  VALVE CORP.; VIAD CORP f/k/a THE
   DIAL CORPORATION (sued individually
5  and as successor-in-interest to GRISCOM-
   RUSSELL COMPANY); VIKING PUMP,
6  INC., a Unit of IDEX Corporation; WARREN
   PUMPS, LLC (individually and as successor-
7  in-interest to QUIMBY PUMP COMPANY);
   WEIL-McCLAIN; WEIL-McCLAIN, a
8  division of THE MARLEY COMPANY (sued
   individually and as successor-in-interest to
9  WYLAIN CO.); WILO USA LLC
   (individually and as successor-in-interest to
10 WEIL PUMP COMPANY, INC.); WEIR
   VALVES & CONTROLS USA INC. f/k/a
11 ATWOOD & MORRILL; THE WILLIAM
   POWELL COMPANY; and DOES 1-450,
12 inclusive,

13            Defendants.

14

15        TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

16        PLEASE TAKE NOTICE that on March 29, 2018, at 1:45 p.m. or as soon thereafter as

17  counsel may be heard in Department 324 of the above-entitled Court, located at 600 S.

18  Commonwealth Avenue, Los Angeles, California, Specially Appearing Defendant Superior-

19  Lidgerwood-Mundy Corporation ("SLM") will move this Court for an Order Quashing Service of

20  Summons and dismissing SLM from this action.

21        This Motion is made on the ground that this Court lacks personal jurisdiction over SLM

22  because SLM is not a California resident and no constitutionally-sufficient basis for personal

23  jurisdiction exists between SLM and the State of California. This Motion is made on the further

24  ground that this Court has the power to grant the relief requested pursuant to Code of Civil

25  Procedure Sections 413.10, 416.10, 418.10, and 581 and case law construing those statutes.

26        This Motion will be based on this Notice and accompanying Memorandum of Points and

27  Authorities and Declaration of Trenton Hartzler, on all documents in the Court's file in this

28  ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1                    4
                NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1  action, and on such other documentary and oral evidence as may be presented at the time of the

2  hearing.

3  DATED: February 28, 2018             TRENTON E. HARTZLER
                                        LEWIS BRISBOIS BISGAARD & SMITH LLP
4

5

6                                       By:
                                        Trenton E. Hartzler
7                                       Attorneys for Defendant, SUPERIOR-
                                        LIDGERWOOD MUNDY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1                      **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **1.   INTRODUCTION**

3       This action arises out of Plaintiffs' decedent's alleged injuries caused by alleged asbestos

4 exposure. Plaintiffs allege that decedent was exposed to various asbestos-containing products at

5 unspecified jobs during the period from approximately 1969 to 1996.

6       On January 26, 2018, Plaintiffs filed their Complaint for Wrongful Death and Survival

7 Action – Asbestos in this action, alleging causes of action for negligence and strict liability against

8 numerous defendants, including SLM. On January 30, 2018, Plaintiffs served SLM with the

9 Summons and Complaint in this action by personal service at SLM's offices in Superior,

10 Wisconsin.

11       SLM contends that this Court lacks personal jurisdiction over SLM because SLM is a

12 foreign corporation that does not have the constitutionally-required minimum contacts with the

13 State of California necessary for this court to exercise personal jurisdiction. Consequently, SLM

14 specially appears and respectfully requests that this Court quash service of the Summons on SLM.

15 **2.   AUTHORITY FOR MOTION TO QUASH SERVICE OF SUMMONS**

16      *Code of Civil Procedure* Section 418.10(a) provides, in relevant part:

17           [O]n or before the last day of his or her time to plead or within any
further time that the court may for good cause allow, [a defendant]
18           may serve and file a notice of motion ...

19           (1) To quash service of summons on the ground of lack of
jurisdiction of the court over him or her.
20

21       On information and belief, SLM received the Summons and Complaint for Wrongful

22 Death and Survival Action – Asbestos in this action via personal service on January 30, 2018.

23 Accordingly, this Motion is timely.

24 **3.   THIS COURT LACKS PERSONAL JURISDICTION OVER SLM, A WISCONSIN
CORPORATION**
25

26      California's long arm statute provides the boundaries of personal jurisdiction in this State.

27 *Code Civ. Pro.* § 410.10 provides that personal jurisdiction can be founded "on any basis not

28 inconsistent with the Constitution of this state or the United States." (*Id.*) Accordingly, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1       6

1   exercise of personal jurisdiction by California courts must conform itself with the limits of due

2   process under the state and federal constitutions, as they have been defined by the United States

3   Supreme Court.

4       The constitutional limitations provide that a California court may only exercise personal

5   jurisdiction over SLM, a non-resident defendant, in such a manner that will not deprive SLM of

6   liberty or property without due process of law. (*Code Civ. Pro.* § 410.10; U.S. Const., Amend.

7   XIV; Cal. Const., Art. I, § 7.) Due process requires that, in order to subject a defendant who is not

8   present within the territory of the forum to a judgment *in personam*, the defendant must have

9   "certain minimum contacts [with the forum state] such that the maintenance of the suit does not

10   offend 'traditional notions of fair play and substantial justice'." (*International Shoe Co. v.*

11   *Washington* (1945) 326 U.S. 310, 316 [quoting *Milliken v. Meyer* (1940) 311 U.S. 457, 463];

12   *Shearer v. Superior Court* (1977) 70 Cal.App.3d 424.) The concept of minimum contacts between

13   the nonresident defendant and the State of California embodies the rationale of "fair play and

14   substantial justice." (*Titus v. Superior Court* (1972) 23 Cal.App.3d 792, 800.) The minimum

15   contacts requirement is applicable to nonresident individuals, as well as non-resident corporations

16   such as SLM. (*Arnesen v. Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995- 996.)

17       To impose personal liability or obligation in favor of a plaintiff, therefore, a state court

18   must have personal jurisdiction over a defendant. (*Burnham v. Superior Court* (1990) 495 U.S.

19   604, 609; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 91.) Personal jurisdiction is

20   based on the presence of reasonable notice to the defendant that an action has been brought, and a

21   sufficient connection between the defendant and the forum state. (*Kulko*, 436 U.S. at 91.)

22   California jurisprudence recognizes two types of personal jurisdiction over nonresident

23   defendants: (1) "general" jurisdiction; and (2) "special" or "limited" jurisdiction.

24       If a defendant's contacts with the forum state are extensive, wide-ranging, continuous or

25   systematic, general personal jurisdiction may be warranted for all causes of action asserted against

26   the defendant in that state, regardless of how they arise. (*Cornelison v. Chaney* (1976) 16 Cal.3d

27   143, 147; *Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445-446.) However,

28   where the nonresident's contacts with California are less significant, the defendant may be subject

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1      7

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1 to "specific" or "limited" personal jurisdiction but only if the specific litigation at issue arises out
2 of the defendant's activities within the forum state. (*Id.*)

3    SLM contends that Plaintiffs cannot meet their burden of proof to establish either form of
4 personal jurisdiction. As will be demonstrated, this Court cannot exercise either general or
5 specific personal jurisdiction over SLM, a Wisconsin corporation.

6    **A.    This Court Lacks General Personal Jurisdiction Over SLM**

7    The Court's exercise of general personal jurisdiction requires Plaintiffs to show that
8 SLM's activities are sufficiently wide-ranging, systematic and continuous within the State of
9 California. (*International Shoe Co.*, 326 U.S. at 316; *Cornelison*, 16 Cal.3d at 147, 149 [no
10 personal jurisdiction over defendant who made 20 trips a year into the state to deliver and obtain
11 goods].) The existence of general personal jurisdiction over SLM depends on the nature and
12 quality of SLM's activities in this state. SLM contends that this Court does not have general
13 personal jurisdiction over it because it cannot be shown that SLM has "contacts with the forum
14 that are so wide-ranging that they take the place of physical presence in the forum as a basis for
15 jurisdiction." (*Vons Cos., Inc.*, 14 Cal.4th at 446.)

16    SLM is a Wisconsin corporation that manufactures pumps for marine vessels and other
17 equipment. (Hartzler Decl., Exhibit A, ¶¶ 2, 3, 4.) SLM does not regularly sell any products in
18 California or perform any services in California. (Hartzler Decl., Exhibit A, ¶¶ 5, 6, 7, 8, 9.)
19 SLM's headquarters and principal place of business are located in Superior, Wisconsin. (Hartzler
20 Decl., Exhibit A, ¶¶ 2,3.) SLM does not maintain any bank accounts, offices, headquarters,
21 employees or assets, or own any property in the State of California. (Hartzler Decl., Exhibit A, ¶¶
22 2,3, 8, 9.) In sum, there are no wide-ranging business relationships, contacts, or activities between
23 SLM and California. (Hartzler Decl., Exhibit A, ¶¶ 2, 3, 5, 6, 7, 8, 9.)

24    SLM sold a small number of pumps to a United States Navy subcontractor in California
25 during the years 1978, 1981-1984 and 1986 and one winch to Los Angeles County in 2011.
26 (Hartzler Decl., Exhibit A, ¶ 10.) The law is settled that when a non-resident ceases to do business
27 in the forum it is no longer subject to general jurisdiction on causes of action independent of that
28 business. (*Serafini v. Sup. Ct.* (Khadir) (1998) 68 Cal.App.4th 70, 79, 80 Cal. Rptr. 2d 159, 165.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1                                          8
NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1    The case of *Felix v. Bomoro* (1987) 196 Cal.App.3d 106 is directly on point. In that case,

2    the trial court quashed the service of summons upon a German corporation that allegedly

3    manufactured a defective latch in a Volkswagen vehicle. Plaintiffs had sued the foreign

4    corporation for products liability due to injuries sustained in the Volkswagen in an automobile

5    accident in California. The appellate court affirmed the trial court's finding that the State of

6    California could not exercise jurisdiction over the German manufacturer. The Court held: "[T]he

7    strictures of the due process clause forbid a court from exercising personal jurisdiction over a

8    foreign corporation that merely places its products into the stream of commerce even though it

9    may foresee that those products will ultimately wind their way into the forum state." (*Id.* at 114-

10   115.)

11   Even if it was foreseeable that a product could come into the forum state, where the non-

12   resident corporation does not regularly sell its products in the forum, and has no contacts with the

13   forum, it is not subject to local jurisdiction in product liability actions. (*Worldwide Volkswagen v.*

14   *Woodson* (1980) 444 U.S. 286, 297.) Moreover, the purchaser's unilateral decision to bring goods

15   into the forum state does not constitute "purposeful availment" by the out of state retailer or

16   distributor. (*Id.*)

17   SLM pumps and winches were never available on a retail basis in the State of California.

18   (Hartzler Decl., Exhibit A, ¶¶4, 5, 6, 7.) SLM had no way of knowing, or of controlling, whether

19   the United States Navy or its subcontractors brought pumps into the State of California, so its

20   single direct contact with California was the sale of one winch to Los Angeles County three years

21   ago. This Court, like the Felix Court, "can only conclude that it would be manifestly unjust to

22   require [SLM] to defend itself against [plaintiff's] suit in this state." (*Felix v. Bomoro* (1987) 196

23   Cal.App.3d 106, 116.)

24   Clearly, there is no basis to "reasonably and in fairness" conclude that SLM has "extensive

25   and wide-ranging" or "substantial, systematic and continuous" contacts with the State of

26   California justifying general personal jurisdiction. Therefore, this Court cannot exercise general

27   personal jurisdiction over SLM.

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**B.**   <u>This Court Lacks Specific Personal Jurisdiction Over SLM</u>

Since, as discussed above, SLM does not meet the criteria for general personal jurisdiction, Plaintiffs must prove that "limited" or "specific" personal jurisdiction over SLM exists. Plaintiffs cannot meet their burden.

The California Supreme Court instructs:

> If ... the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (*Cornelison*, 16 Cal.3d at 147-148.)

Plaintiffs must prove: (1) that SLM *purposefully directed* its activities at residents of California, (2) that SLM's contacts with California are sufficient to subject SLM to a lawsuit in California on a cause of action *related to or arising out of those activities in California*; and (3) that the exercise of jurisdiction by California comports with fair play and substantial justice. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, 476; *Sibley v. Superior Court* (1976) 16 Cal.3d 442, 446-447) In other words, specific personal jurisdiction *must be based on activities in California allegedly giving rise to the cause of action in this case.* (*Boaz v. Boyle & Co., Inc.* (1995) 40 Cal.App.4th 700, 717.)

In other words, the causes of action must have some "nexus" with the non-resident's California-related activities. (*Cornelison, supra,* 16 Cal. App. 3d at 149-150.) The California Supreme Court has determined that specific jurisdiction cannot be established where the cause of action does not have a "substantial connection to the non-resident's forum contacts." (*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal. App. 4th 434, 452, 58 Cal. Rptr. 2d 899, 910 [emphasis added].)

In this action, Plaintiffs allege that decedent was exposed to asbestos at Long Beach Naval Shipyard from pumps manufactured by SLM. Plaintiffs allegations pertain to exposure at Long Beach Naval Shipyard and do not arise out of or relate to SLM actions in California.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1

10

4.     **PLAINTIFF HAS THE BURDEN OF PROVING THAT THE COURT HAS PERSONAL JURISDICTION OVER SLM AND HE CANNOT MEET HIS BURDEN**

It is well settled that where the validity of service of process on a non-resident corporation is challenged by a motion to quash, the burden is on the plaintiff to establish valid service. (*Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 710.) Moreover, this burden extends to proving "the fact of compliance with California's statutory provisions for acquiring jurisdiction." (*General Motors Corp. v. Superior Court* (1971) 15 Cal.App.3d 81, 85-86 .) Furthermore, procedural rules governing service of process are to be strictly construed. Again, the *General Motors* court observed: "It is a settled rule that where the statute requires notice to be given a party of any action of a court in any proceeding the notice so given must be precisely the one prescribed by the statute." (*Id.* at 86 [emphasis added; citations omitted].) Ultimately, the burden is on the plaintiff to demonstrate by a preponderance of the evidence that all jurisdiction criteria are met. (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232.)

In this case, Plaintiffs cannot meet their burden of proof by a preponderance of the evidence. It is undisputed that SLM is a non-resident corporation that has no contacts with the State of California and its few contacts in the past do not amount to purposeful direction and/or are distinct from the Plaintiff's causes of action alleged in this case. Simply put, Plaintiff can show no significant relationship between SLM and the State of California or this action.

5.     **CONCLUSION**

For the foregoing reasons, Specially Appearing Defendant Superior-Lidgerwood-Mundy Corporation requests that its Motion to Quash Service of Summons be granted, that it be dismissed

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   from this action pursuant to Code of Civil Procedure Section 581(h), and that it be granted any

2   further relief that this Court deems just and necessary.

3

    DATED: February 28, 2018          TRENTON E. HARTZLER

4                                       LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6                             By: _____

7                                  Trenton E. Hartzler

                                    Attorneys for Defendant, SUPERIOR-

8                                     LIDGERWOOD MUNDY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1                     12

1            **DECLARATION OF TRENTON HARTZLER**

2       I, TRENTON HARTZLER, declare as follows:

3       1.     I am an attorney duly licensed to practice in all of the courts in the State of

4 California and am an associate with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for

5 Specially Appearing Defendant Superior-Lidgerwood-Mundy Corporation ("SLM") herein. The

6 facts set forth herein are within my personal knowledge, and if sworn I could and would

7 competently testify thereto.

8       2.     Attached hereto as Exhibit A is a true and correct copy of the Declaration of Arthur

9 Woodman filed in a prior case where SLM's Motion to Dismiss for Lack of Personal Jurisdiction

10 was granted, the case being Walashek et al. v. Air & Liquid Systems, et al., U.S. District Court,

11 Southern District of California Case No. 3:14-CV-01567-BTM-BGS.

12       3.     Arthur Woodman is unavailable until March 7, 2018. However, since the present

13 Motion to Quash must be filed now, a supplemental declaration from Mr. Woodman will be made

14 when he becomes available. All pertinent information contained in the prior declaration applies to

15 the instant matter except for Paragraph 11.

16       4.     SLM has filed a Motion to Quash Service of Summons or a Motion to Dismiss for

17 Lack of Personal Jurisdiction in prior lawsuits filed against it in the State of California.

18 Subsequent to the filing of each motion to quash or motion to dismiss, SLM was dismissed, either

19 voluntarily by the plaintiff(s)' attorneys or by court order granting SLM's motion to quash or

20 motion to dismiss in each of the following cases: Alice McGlade, et al. v. Asbestos Defendants,

21 San Francisco Superior Court Case No. 313708 (SLM was substituted into the action in place of

22 Doe 9 by Amendment to Complaint filed March 2, 2005); Samuel Panzer v. Asbestos Defendants,

23 San Francisco Superior Court Case No. CGC-04-43026 (SLM was substituted into the action in

24 place of Doe 21 and served on April 25, 2005); Maxine Finkelstein, etc., et al. v. Asbestos

25 Defendants, San Francisco Superior Court Case No. 436112 (SLM was served with the Second

26 Amended Complaint on July 30, 2005; Gerald Barlow and Annette Barlow v. American Standard,

27 Inc., etc., et al., Los Angeles County Superior Court Case No. BC335153 (M.T. Davison Co. was

28 served with the Complaint in August, 2005); Stanley Sparks and Linda Sparks v. Asbestos

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1          13

1  Defendants, San Francisco Superior Court Case No. CGC-05-442672 (SLM was served with the

2  Complaint on July 30, 2005); Marc Norvell, etc., et al. v. Asbestos Defendants, San Francisco

3  Superior Court Case No. 419044 (The Complaint was filed on July 28, 2005. SLM was served in

4  approximately September, 2005); Stephanie Berg, etc., et al. v. Asbestos Defendants, San

5  Francisco Superior Court Case No. CGC-05-444220 (SLM was served in September, 2005);

6  Albert Rice v. Asbestos Defendants, San Francisco Superior Court Case No. CGC-05-444852

7  (The Complaint was filed on September 14, 2005 SLM was served in approximately October,

8  2005); Paul G. Jones and Marcia Jones v. American Standard, Inc., etc., et al., Los Angeles

9  County Superior Court Case No. BC342802 (Complaint was filed on November 9, 2005. SLM

10 was served in late approximately November – early December, 2005; Joni Karber, etc., et al. v.

11 Asbestos Defendants, San Francisco Superior Court Case No. CGC-05-443980 (The Complaint

12 was filed on August 11, 2005. SLM was served in approximately April, 2005); Harold Dunham

13 and Marilyn Dunham v. Asbestos Defendants, San Francisco Superior Court Case No. CGC-06-

14 449792 (Complaint was filed on February 24, 2005. SLM was served in approximately

15 September, 2006); Charles Tilton v. Asbestos Defendants, San Francisco Superior Court Case No.

16 CGC-06-456617 (The Complaint was filed on October 2, 2006. SLM was served in

17 approximately December, 2006); Lloyd T. Hughes v. Butterworth, Inc., et al., Los Angeles County

18 Superior Court Case No. BC365783. (The Complaint was filed on February 2, 2007. SLM was

19 served in approximately March, 2007); Jimmie J. Dudash and Carol S. Dudash v. A.W. Chesterton

20 Company, et al., San Francisco Superior Court Case No. CGC-07-274081. (The Complaint was

21 filed on February 27, 2007. SLM was served in approximately March, 2007); Thomas Taylor v.

22 Asbestos Defendants, San Francisco Superior Court Case No. CGC-07-274220. (The Complaint

23 was filed on June 4, 2007. SLM was served in approximately July, 2007); Eloise Bromley, etc., et

24 al. v. A.W. Chesterton Company, et al., Alameda County Superior Court Case No. RG 07 325342.

25 (The Complaint was filed in October, 2007. SLM was served in approximately December, 2007);

26 Edward Lopez, etc., et al. v. ACandS Inc., et al., San Francisco Superior Court Case No. CGC-07-

27 274327. (SLM was apparently served in December, 2008); Marvin M. Acuff, Jr. v. Alfa Laval

28 Inc., etc., et al., Los Angeles County Superior Court Case No. BC400236. (Complaint was filed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1                                14
NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

1  on October 17, 2008. SLM was served in approximately March, 2009); David Overby and

2  Margaret Overby v. Alfa Laval, Inc., etc., et al., Los Angeles County Superior Court Case No.

3  BC452072. (Complaint was filed on December 28, 2010. SLM was served in January, 2011);

4  Oliver Brown v. General Electric Company, et al., U.S. District Court, Northern District of

5  California Case No. CV 11 0273. (Complaint was filed on January 19, 2011. SLM was served in

6  March, 2011); Walashek et al. v. Air & Liquid Systems, et al., U.S. District Court, Southern

7  District of California Case No. 3:14-CV-01567-BTM-BGS. (Complaint was filed on March 24,

8  2014, SLM was served in June, 2014).

9       5.    Attached hereto as Exhibit B is a true and correct copy of the Order Granting

10  Motion to Dismiss in the case of Walashek et al. v. Air & Liquid Systems, et al., U.S. District

11  Court, Southern District of California Case No. 3:14-CV-01567-BTM-BGS.

12       I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct.

14       Executed on February 28, 2018 at Los Angeles, California.

15

16                            Trenton E. Hartzler

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4843-8315-7086.1

15

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

EXHIBIT "A"

## DECLARATION OF ARTHUR WOODMAN

I, ARTHUR WOODMAN, declare as follows:

1.      I am the Vice President and Chief Financial Officer of Superior-Lidgerwood-Mundy Corporation ("SLM"). I am fully competent and authorized to make this declaration on behalf of SLM and the facts stated herein are within my personal knowledge, based upon my employment by SLM for over 40 years and my personal familiarity with SLM and its business activities.

2.      SLM is a corporation organized under the laws of the State of Wisconsin. SLM's principal place of business is located at 302 Grand Avenue, Superior, Wisconsin.

3.      SLM's manufacturing facilities are located solely in Superior, Wisconsin.

4.      SLM manufactures pumps exclusively for sale to the United States Navy and United States Navy subcontractors. It also manufactures winches.

5.      SLM has never sold its pumps in California on a retail basis and SLM has never made its pumps available on a commercial basis to entities other than those contracting with the United States Navy. SLM has sold one winch in California.

6.      SLM has never manufactured its products in the State of California.

7.      SLM is not licensed to do business in California and does not have an agent for service of process in California.

8.      SLM does not own real estate in California, does not maintain offices, manufacturing plants, or retail outlets in California, and does not have employees, agents, post office boxes, or bank accounts in California.

9.      SLM does not and is not required to pay taxes in California and is not required to and does not file any type of governmental report in California.

10.     In 1978, 1980, 1981, 1982, 1983, 1984 and 1986, SLM sold a small number of pumps to a United States Navy contractor who owned a shipyard located in California. A total of 213 pumps were shipped to California to that United States Navy contractor. In 2011, SLM sold one winch to Los Angeles County, California.

4840-2904-2460.1

11

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ARTHUR WOODMAN

1      11.     SLM was served with the Summons and Complaint in this action on or about June

2 3, 2014, at its headquarters and principal place of business in Superior, Wisconsin.

3      I declare under penalty of perjury under the laws of the State of California that the

4 foregoing is true and correct.

5      Executed on July _____, 2014 at Superior, Wisconsin.

6

7 

                         Arthur Woodman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                               12

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION OF ARTHUR WOODMAN

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

EXHIBIT "B"

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   GAIL ELIZABETH WALASHEK,                    Case No. 14cv1567 BTM(BGS)
     individually and as successor in interest
12   to the Estate of MICHAEL WALASHEK,          **ORDER GRANTING MOTION TO
     et al.,                                     DISMISS**
13
                              Plaintiffs,
14
         v.
15
     AIR & LIQUID SYSTEMS
16   CORPORATION (sued as succesor-by-
     merger to BUFFALO PUMPS, INC.), et
17   al.,

18                            Defendants.

19
          Specially appearing Defendant Superior-Lidgerwood-Mundy Corporation
20
     ("SLM") has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). For
21
     the reasons discussed below, Defendant's motion is GRANTED.
22

23                            I. BACKGROUND
24
          This case is a wrongful death action. Plaintiffs allege that the decedent,
25
     Michael Walashek, developed malignant mesothelioma as a result of exposure
26
     to asbestos from various products that were manufactured, supplied, sold, or
27
     distributed by Defendants, including SLM. Plaintiffs allege that Mr. Walashek
28
     was exposed to the asbestos during the course of his employment at various

1   jobs from approximately 1967 to 1986.

2       On March 24, 2014, Plaintiffs filed a Complaint for Wrongful Death and
3   Survival Action in the Superior Court of the State of California for the County
4   of San Diego.

5       On June 3, 2014, Plaintiffs served SLM with the Summons and
6   Complaint. (Woodman Decl. ¶¶ 11-12.)

7       On June 27, 2014, Defendant Carrier Corporation removed the State
8   Court Action to this Court. Because the removal was based on federal officer
9   removal jurisdiction under 28 U.S.C. § 1442(a)(1), Carrier Corporation asserted
10  that it did not need to obtain the consent of any other defendant for the
11  removal. (Notice of Removal, ¶ 11.)

12      According to SLM, the Notice of Removal was never served on SLM.
13  (Woodman Decl. ¶ 13; Graniez Decl. ¶ 5.) The Certificate of Service attached
14  to the Notice of Removal does not indicate service on SLM.

15      On July 2, 2014, SLM electronically filed a Motion to Quash Service of
16  Summons in state court. (RJN, Ex. C.) The basis of the motion was that SLM
17  is not subject to personal jurisdiction in the State of California. The motion was
18  accepted for filing by the state court. (RJN, Ex. D.)

19      Counsel for SLM first learned about the removal of the case on August
20  1, 2014. (Graniez Decl. ¶ 6; Riscksecker Decl. ¶¶ 2-30.)

21      On August 20, 2014, SLM filed the instant motion.[1]

22

23                          II. DISCUSSION

24      SLM brings this motion on the ground that the Court lacks personal
25  jurisdiction over SLM. As discussed below, the Court agrees with SLM.

26      Both the California long-arm statute and Fed. R. Civ. P. 4(k)(2) require

27

28      [1] The Court finds that SLM's motion was filed in a timely manner given SLM's lack
    of notice regarding the removal of the action.

1 that the exercise of personal jurisdiction comply with federal due process
2 requirements. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir.
3 2006). Generally, a court may exercise jurisdiction over a nonresident
4 defendant where the defendant's minimum contacts with the forum state render
5 the maintenance of the action inoffensive to traditional concepts of fair play and
6 substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 320
7 (1945).

8      There are two types of personal jurisdiction — general and specific.
9 Specific jurisdiction exists when a defendant's contacts with the forum have
10 given rise to the suit. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
11 U.S. 408, 414 n. 8 (1984). In contrast, general jurisdiction allows a defendant
12 "to be haled into court in the forum state to answer for any of its activities
13 anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d
14 797, 801 (9th Cir. 2004). Recently, the Supreme Court clarified that the
15 appropriate inquiry for purposes of general jurisdiction is "whether that
16 corporation's affiliations with the State are so 'continuous and systematic' as
17 to render [it] essentially at home in the forum state." Daimler AG v. Bauman,
18 __ U.S. __, 134 S.Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires
19 Operations, S.A. v. Brown, 564 U.S. __, 131 S.Ct. 2846, 2851 (2011)).
20 General jurisdiction does not exist just because a corporation "engages in a
21 substantial, continuous, and systematic course of business" in a state.
22 Daimler, 134 S.Ct. at 761.

23      Plaintiffs do not claim that the Court has specific jurisdiction over SLM.
24 Instead, Plaintiffs contend that the Court has general jurisdiction over SLM
25 based on SLM's sale of M.T. Davidson pumps containing asbestos gaskets and
26 packing materials to Naval shipyards in California. The evidence shows that
27 between 1978-1986, SLM shipped 213 pumps to a United States Navy
28 contractor who owned a shipyard located in California. Plaintiffs have not

3             14cv1567 BTM(BGS)

1 | presented any evidence that SLM continued to do business with shipyards in
2 | California after 1986.

3 |     SLM is a corporation organized under the laws of Wisconsin, with its
4 | principal place of business in Wisconsin. (Woodman Decl. ¶ 2.) SLM's
5 | manufacturing facilities are located in Wisconsin. (Id. at ¶ 3.) Other than the
6 | sale of one winch to Los Angeles County three years ago, SLM denies contacts
7 | with California after 1986. (Reply at 3.) SLM is not licensed to do business in
8 | California, does not own real estate in California, does not maintain offices or
9 | employees in California, does not have bank accounts in California, and does
10 | not pay taxes in California. (Woodman Decl. ¶¶ 7-9.)

11 |     It appears that Plaintiffs rely solely on SLM's shipment of the 213 pumps
12 | to California from 1978-1986 as the basis for the exercise of general
13 | jurisdiction. However, the Court is not convinced that SLM's contacts with
14 | California more than 25 years ago render SLM's affiliations with California so
15 | "continuous and systematic" as to render SLM "essentially at home" in
16 | California. For purposes of general jurisdiction, courts should consider all of
17 | the defendant's contacts with the forum state over a period of years prior to the
18 | plaintiff's filing of the complaint. 4 C. Wright, A. Miller, E. Cooper, & R. Freer,
19 | Federal Practice and Procedure § 1067.5 (3d ed.) Most courts examine a
20 | defendant's contacts over a period of three to seven years prior to the filing of
21 | the complaint. Id. See also Metropolitan Life Ins. Co., v. Robertson-CECO
22 | Corp., 84 F.3d 560, 569-70 (2d Cir. 1996) (holding that district courts should
23 | examine a defendant's contacts with the forum state over a time period that is
24 | reasonable under the circumstances, and examining the defendant's contacts
25 | during the six-year period before the filing of the suit).

26 |     Plaintiffs have not cited any authority for considering decades' old
27 | contacts for purposes of determining general jurisdiction. Even if the Court
28 | could look back that far, due to the lack of evidence that other than the sale of

4

1  one winch, SLM engaged in direct business with California after 1986, the
2  Court cannot conclude that SLM has continuous and systematic contacts with
3  California such that SLM is, at present, essentially at home in California.
4  Plaintiffs have not carried their burden of establishing that this Court has
5  personal jurisdiction over SLM.

6

7                              III. CONCLUSION

8         For the reasons discussed above, SLM's motion to dismiss for lack of
9  personal jurisdiction is **GRANTED**. Plaintiffs' Complaint is **DISMISSED** as to
10 Defendant SLM. Pursuant to Fed. R. Civ. P. 54(b), the Court directs entry of
11 final judgment dismissing Plaintiffs' claims against Defendant SLM because
12 there is no just reason for delay.

13

14 IT IS SO ORDERED.

15 DATED: December 29, 2014

16                                      BARRY TED MOSKOWITZ, Chief Judge
17                                      United States District Court

18

19

20

21

22

23

24

25

26

27

28

                              5                    14cv1567 BTM(BGS)

1 | ## CALIFORNIA STATE COURT PROOF OF SERVICE

2 | Terry Lee Siegfried and Terri Siegfried v. 3M Company, et al. - Case No. BC691900

3 | STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4 |     At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.

5

6 |     On February 28, 2018, I served the following document(s):

7 |     I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

8 | ***See service list on File & ServeXpress website***

9 |     The documents were served by the following means:

10 | ☒     (BY ELECTRONIC SERVICE VIA ONE LEGAL FILE & SERVE) Based on a court order I caused the above-entitled document(s) to be served through One Legal File & Serve
11 | at cweb2.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. The service transmission was reported as complete and a copy of the One
12 | Legal File & Serve Filing Receipt Page/Confirmation will be filed, deposited, or maintained with the original document(s) in this office.

13

14 | ☐     (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

15 | ☐     Placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing
16 | correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal
17 | Service, in a sealed envelope or package with the postage fully prepaid.

18 |     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

19

20 |     Executed on February 28, 2018, at Los Angeles, California.

21

22 | Loreta Sanchez

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
PATRICK J. FOLEY, SB# 180391
2 | E-Mail: Patrick.Foley@lewisbrisbois.com
TRENTON E. HARTZLER, SB# 318319
3 | E-Mail: Trenton.Hartzler@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 | Los Angeles, California 90071
Telephone: 213.250.1800
5 | Facsimile: 213.250.7900

6 | Attorneys for Defendant, SUPERIOR-
LIDGERWOOD MUNDY
7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

| | |
|---|---|
| 11  TERRY LEE SIEGFRIED and TERRI SIEGFRIED, | CASE NO. BC691900 (Hon. Steven J. Kleifield, Dept. 324) |
| 12 | |
| 13  Plaintiffs, | **NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS;** |
| 14  vs. | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF** |
| 15  3M COMPANY (f/k/a MINNESOTA MINING & MANUFACTURING | **TRENTON HARTZLER** |
| 16  COMPANY); AIR & LIQUID SYSTEMS CORPORATION (sued individually and as | Hearing Date:  March 29, 2018 |
| 17  successor-in-interest to BUFFALO PUMPS, INC.); ABB, INC. (individually and as | Time:  1:45 p.m. Department:  324 |
| 18  successor-in-interest to ITE IMPERIAL CO. f/k/a ITE CIRCUIT BREAKER COMPANY); | |
| 19  ALFA LAVAL INC. (sued individual and as successor-in-interest to THE DELAVAL | Action Filed:  January 26, 2018 Trial Date:  None Set |
| 20  SEPARATOR COMPANY and SHARPLES CORPORATION); ATWOOD & MORRILL | |
| 21  CO., INC. d/b/a WEIR VALVES & CONTROLS USA INC.; AURORA PUMP | |
| 22  COMPANY; A.O. SMITH CORP.; BACOU-DALLOZ USA, INC., (sued as successor-in- | |
| 23  interest and/or f/k/a W.G.M. SAFETY PRODUCTS d/b/a WILLSON SAFETY | |
| 24  PRODUCTS); CARRIER CORPORATION; CARVER PUMP COMPANY; CBS | |
| 25  CORPORATION (a Delaware Corporation) f/k/a VIACOM, INC. (as successor-by-merger | |
| 26  to CBS CORPORATION) (a Pennsylvania Corporation) f/k/a WESTINGHOUSE | |
| 27  ELECTRIC CORPORATION) and also as successor-in-interest to BF STURTEVANT; | |
| 28  CAL-VAL CO.; CLEAVER-BROOKS, INC. (sued individually and as successor-in-interest | |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4843-8315-7086.1

NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS

61742780
Feb 26 2018
03:13PM